IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | Criminal No. 8:25-cr-00006-LKG |
| | * | |
| THOMAS C. GOLDSTEIN | * | |
| | * | |

**MEMORANDUM AND ORDER**

On January 27, 2025, Defendant Thomas C. Goldstein ("Mr. Goldstein") made his initial appearance in this Court on the Indictment. ECF No. 4. At the conclusion of the hearing, Mr. Goldstein was released on conditions of release. ECF No. 6. On February 9, 2025, the Government filed an *ex parte* motion to revoke Mr. Goldstein's conditions of release, alleging that Mr. Goldstein had failed to disclose to his supervising Pretrial Services officer that he was the owner of two cryptocurrency accounts and that he had failed to obtain the approval of Pretrial Services before transferring funds from those accounts.[1] ECF No. 35. On February 10, 2025, the Court granted the Government's motion and issued an arrest warrant for Mr. Goldstein. ECF No. 37. Mr. Goldstein was arrested at the courthouse on the same day and appeared before the Court. ECF No. 42. He denied that the accounts belonged to him, denied that he had made transfers from the accounts while on conditions of release, and promised to present evidence that would absolve him of the wrongdoing alleged in the Government's motion to revoke his conditions of release.

---

[1] The Government also argued that there was probable cause to believe that Mr. Goldstein had violated 18 U.S.C. § 1001 by making false statements to his Pretrial Services officer. The Court did not reach this issue at the revocation hearing.

After hearing from the parties (Mr. Goldstein was proceeding in a pro se status at that time), the Court entered an Order of Detention, finding that there was clear and convincing evidence that Mr. Goldstein had violated his conditions of release by (1) failing to disclose his ownership interest in two cryptocurrency accounts (the parties refer to the accounts as the "935B" wallet and the "54E3" wallet) and (2) making transfers from those accounts without the permission of Pretrial Services. ECF No. 42.

Regarding the 935B wallet, on February 4, 2025—just six days after Mr. Goldstein's initial appearance and release on conditions—8 million USDT[2] was deposited into the wallet, followed by a transfer of 3 million USDT out. ECF No. 35 at 6. Two days later, on February 6, 2025—and 30 minutes after the government moved to strike Mr. Goldstein's pro se motion to modify his conditions to release—another 3 million USDT was transferred out of the wallet. ECF No. 52 at 4. The Court understands the 935B wallet to have a 2 million USDT balance, which is equivalent to $2 million. *Id.* As to the 54E3 wallet, on February 5, 2025, the same day Mr. Goldstein filed his pro se motion and after a long period of the wallet sitting dormant, 1,306.32 USDT was deposited into the wallet and 22,006.84 USDT was transferred out. *Id.* at 5. Messages dating back to 2023 indicate that Mr. Goldstein had been involved in organizing, directing, and ensuring that cryptocurrency transactions went through on both of these wallets. *See* ECF Nos. 35 & 44. Neither party has provided the Court with sufficient information for the Court to determine ownership of the cryptocurrency wallets at the time of the February 2025 transactions.

On February 11, 2025, Mr. Goldstein, through retained counsel, filed an Emergency Motion to Revoke Order of Detention ("Motion"). ECF No. 44. In the Motion, Mr. Goldstein states

---

[2] USDT is the symbol for Tether, a cryptocurrency pegged to the value of the U.S. dollar. ECF No. 35 at 5.

that he is not the owner of the two cryptocurrency wallets and that he was not involved in any transfer of funds from the wallets while on conditions of release. The Motion presents a plausible explanation: in the past, Mr. Goldstein had instructed others to use these wallets to send or receive payments that benefited him in some way, but the wallets were never actually his.[3]

As evidence that Mr. Goldstein owns the 935B wallet, the Government presented messages exchanged between Mr. Goldstein and a third party ("the Fixer") in 2023, wherein Mr. Goldstein provided the 935B wallet information to the Fixer and then confirmed receipt of a $500,000 transaction. ECF No. 35 at 7-8. Mr. Goldstein now provides an earlier message exchange between himself and another third party ("Tiger") from an encrypted text messaging platform. In this exchange, Tiger provided Mr. Goldstein the address of the 935B wallet and then Mr. Goldstein confirmed with Tiger—contemporaneously with the messages exchanged with the Fixer—that Tiger had received the transfer. Mr. Goldstein argues that this proves that Tiger, rather than Mr. Goldstein, owns the 935B wallet.[4] ECF No. 44 at 4-6.

To prove that Mr. Goldstein owns the 54E3 wallet, the Government presented a subpoena response letter where a third party ("Professional Gambler-1") confirmed that a 2023 transfer of $242,410 to the wallet from Professional Gambler-1 was "payment for a 2023 poker loss to Mr. Goldstein." ECF No. 35-10 at 1. To refute the Government's proffer, Mr. Goldstein submits a 2023 message exchange where Mr. Goldstein told a third party that he wanted to send $220,000 USDT

---

[3] The resolution of this Motion does not require that the Government provide Mr. Goldstein with a preview of its case or vice versa. As such, no testimony or cross-examination of witnesses has been permitted. In addition, Mr. Goldstein's request to proceed in a hybrid manner with his retained counsel will not be permitted. *See United States v. Miller*, 54 F.4th 219, 226 (4th Cir. 2022) (explaining that "district courts are 'not require[d] . . . to permit 'hybrid' representation,' which occurs when a person is represented by counsel but still seeks to act as her own attorney, during a court hearing or jury trial") (quoting *McKaskle v. Wiggins*, 465 U.S. 168, 183 (1984)).

[4] To be clear, many of Mr. Goldstein's assertions are largely conclusory assertions supported by carefully culled snippets of text messages.

to "Mr. T." ECF No. 44 at 7. The third party provided Mr. Goldstein with an "ERC address," which apparently corresponded to the 54E3 wallet. Mr. Goldstein sent the third party a "Transaction ID" to confirm that the payment to Mr. T had been made. Several hours later, the third party asked, "USDT242,410 transferred to Mr T, right?" Mr. Goldstein responded in the affirmative. *Id.* at 8. Mr. Goldstein argues that this shows that thee 54E3 wallet does not belong to him, but rather belongs to "Mr. T." *Id.* at 7-8.

Under 18 U.S.C. § 3148, a defendant's conditions of release must be revoked if, after a hearing, the Court

> (1) finds that there is—
>     (A) probable cause to believe that the person has committed a Federal, State, or local crime while on release; or
>     (B) clear and convincing evidence that the person has violated any other condition of release; and
> (2) finds that—
>     (A) based on the factors set forth in section 3142(g) of this title, there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or
>     (B) the person is unlikely to abide by any condition or combination of conditions of release.

18 U.S.C. § 3148(b).

During the February 10th hearing, the Court found by clear and convincing evidence that Mr. Goldstein had violated his conditions of release by concealing his ownership of two cryptocurrency accounts from his supervising Pretrial Services officer and by failing to obtain permission before transferring funds from those accounts. This finding was based on the Government's evidentiary proffer in its Motion to Revoke. ECF No. 35.

Given the information that Mr. Goldstein has now presented in his Motion, the Court is no longer convinced, by clear and convincing evidence, that Mr. Goldstein violated his conditions of release. *See Jimenez v. DaimlerChrysler Corp.*, 269 F.3d 439, 450 (4th Cir. 2001) ("[C]lear and

convincing has been defined as evidence of such weight that it produces in the mind of the trier of fact a firm belief or conviction, without hesitancy, as to the truth of the allegations sought to be established, and, as well, as evidence that proves the facts at issue to be highly probable.") (internal quotation marks, citations, and alterations omitted).

The Court is highly suspicious that Mr. Goldstein has used cryptocurrency while on conditions of release. There is ample evidence that Mr. Goldstein has been and remains a sophisticated and frequent user of cryptocurrency for years. He has used cryptocurrency—or directed others to use it on his behalf—to pay for everything from gambling losses to luxury watches for multiple women. *See* ECF No. 52. And it now even appears that Mr. Goldstein currently has cryptocurrency accounts—besides the 935B and 54E3 wallets—that he controls, and of which he did not inform his supervising Pretrial Services officer.

To be clear, Mr. Goldstein has not disproven the Government's allegations that he violated his conditions of release. The Court finds it quite possible that Mr. Goldstein is the owner of the 935B and 54E3 wallets and that he transferred the funds just as the Government alleges. But Mr. Goldstein's submission casts sufficient doubt on the Government's allegations that the Court can no longer find by clear and convincing evidence that he violated the conditions of release. If the preponderance of the evidence standard applied under 18 U.S.C. § 3148(b), Mr. Goldstein would remain detained. But because Mr. Goldstein can only be detained on clear and convincing evidence that he violated the conditions of release, he must be released. *See id.* Mr. Goldstein's Motion (ECF No. 44) is **GRANTED**.

In light of the additional information presented by the parties in connection with Mr. Goldstein's Motion, the Court will enter an Amended Order Setting Conditions of Release. This Amended Order will place additional restrictions on Mr. Goldstein while he is pending trial. 18

U.S.C. § 3142(c)(3) ("The judicial officer may at any time amend the order to impose additional or different conditions of release."). These added restrictions are necessary to reasonably assure that Mr. Goldstein appears as required. Given Mr. Goldstein's extensive past use of cryptocurrency, the Court finds it likely that Mr. Goldstein has access to funds that have yet to be identified, and which he might use to flee from prosecution in this case. The Amended Order Setting Conditions of Release will be entered separately.

Date: February 13, 2025                    /s/
                                          Timothy J. Sullivan
                                          Chief United States Magistrate Judge