**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | **CRIMINAL NO. LKG-25-6** |
| **THOMAS C. GOLDSTEIN,** | * | |
| | * | |
| Defendant. | * | |
| | ******** | |

**DEFENDANT THOMAS C. GOLDSTEIN'S
EMERGENCY MOTION TO COMPEL
<u>PRODUCTION OF CERTAIN GRAND JURY TESTIMONY</u>**

# TABLE OF CONTENTS

|   | Page |
|---|---|
| INTRODUCTION | 1 |
| BACKGROUND | 1 |
| ARGUMENT | 3 |
| CONCLUSION | 7 |

**INTRODUCTION**

Defendant Thomas C. Goldstein respectfully moves for an order directing the government to disclose all grand jury testimony relating to its claim that Mr. Goldstein "offered to pay a potential witness cryptocurrency." Monitoring Appeal Opp. (ECF No. 83) 15. In the alternative, the Court should order the government to submit that testimony for *in camera* review and determine on that basis whether it will be disclosed to the defense. Mr. Goldstein respectfully requests that the Court address this Motion on an emergency basis because the government has put this evidence directly at issue with respect to his pending appeal of a condition of his release. Accordingly, Mr. Goldstein respectfully requests that the Court order the government to respond to this Emergency Motion by March 14, 2025, and permit Mr. Goldstein to submit a reply by March 18, 2025.

**BACKGROUND**

The government has repeatedly asserted at length that Mr. Goldstein "offered to pay a potential witness cryptocurrency, under circumstances that strongly suggest he sought to obstruct the investigation." Monitoring Appeal Opp. 15-18; *see also* Release Opp. (ECF No. 51) 8-9; *Ex Parte* Arrest Motion (ECF No. 40) at 17. Both sides agree "that this is a 'very serious accusation.'" Monitoring Appeal Opp. 15 (quoting Monitoring Appeal Opening Br. (ECF No. 81) 23). Here, the government invokes it as a basis to secure the pervasive monitoring of Mr. Goldstein's electronic devices. Before the Magistrate Judge, the government argued that it justified Mr. Goldstein's immediate arrest and detention. *See Ex Parte* Arrest Motion 17 ("This raises the serious concern that Defendant's recent cryptocurrency transactions may also be used to influence potential witnesses to his crimes. Indeed, Defendant has already transferred over $6 million in cryptocurrency out of the wallets this week to yet-unknown individuals. Such conduct

1

would be harmful to the administration of justice, to the integrity of the Court, and to the integrity of this court system more broadly.")

The allegation is all the more serious because the government has stridently pressed it in multiple filings on the public record, with obvious consequences for Mr. Goldstein's reputation. The defense has strongly protested this claim (*see, e.g.*, Monitoring Appeal Opening Br. 23), but in response the government confidently insists that "it is borne out by the facts." Monitoring Appeal Opp. 15.

Importantly, the government has taken care to stress that the allegation is not based on inference or speculation. To the contrary, the government has specifically represented to the Court that it rests on "contemporaneous documents and *sworn testimony* concerning those offers." Release Opp. 8 (emphasis added). It has moreover provided a detailed recitation of the facts surrounding these events, which presumably must have been derived from that same sworn testimony. Monitoring Appeal Opp. 15-18.

The government represents to the Court that the testimony supports the conclusion that "Defendant had no credible reason to make the offers other than to attempt to prevent the potential witness from assisting in the investigation, or ensure that the potential witness would not divulge the full truth about Defendant's conduct." *Id.* at 17 (citation and internal quotation marks omitted). It claims unqualifiedly that the evidence can be understood *only* this way. *See Ex Parte* Arrest Motion 17 ("[T]here was no other credible reason for doing so than to attempt to prevent the potential witness from assisting in the investigation.").

Based on the facts alleged by the government, the witness is a former assistant to Mr. Goldstein and office manager of the Goldstein & Russell law firm. The government's filings appear to be referring to this witness's testimony before the grand jury in this case. For the

reasons that follow, this Court should order the government to disclose to the defense the testimony relating to the allegation or, at the least, the Court should itself review that testimony *in camera* in the first instance.

## **ARGUMENT**

Although grand jury materials are presumptively secret, the Court may order their disclosure. *See* Fed. R. Crim. P. 6(e)(3)(E)(i) ("The court may authorize disclosure — at a time, in a manner, and subject to any other conditions that it directs — of a grand-jury matter: (i) preliminarily to or in connection with a judicial proceeding."). To secure the production of grand jury testimony (beyond ordinary pre-trial disclosure), the defense must make a particularized showing of need. *United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 443 (1983). In deciding such an application, the Court accounts for whether there are diminished reasons for secrecy in the circumstances. *See id.* at 442-43 (1983) (noting that a showing of "particularized need" requires that the party requesting disclosure show that the material sought is necessary to "avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed" (citation and internal quotation marks omitted)); *see also Douglas Oil Co. v. Petrol Stops Nw.*, 441 U.S. 211, 221 (1979). The Court retains discretion to review the materials *in camera* in the first instance, although it need not do so. *E.g.*, *United States v. Eldridge*, 2014 WL 257224 (W.D.N.Y. Jan. 23, 2014); *United States v. Johnson*, 1999 WL 378318 (E.D. La. June 10, 1999).

Applying those principles to these facts, the relevant grand jury testimony must be disclosed. The defense has made out a particular showing of need. The government has relied directly on this grand jury testimony to support imposition of a drastic release condition on Mr. Goldstein after its original theory for Mr. Goldstein's arrest collapsed. By including these allegations in public filings, the government has effectively accused Mr. Goldstein of witness

3

tampering, though it has not seen fit to charge him. Moreover, by specifically invoking "sworn testimony," it added considerable heft to its assertions. *See supra* at 2. The government obviously cannot rely on testimony and at the same time refuse to provide that exact evidence to the defense or even to the Court. Mr. Goldstein has no way to respond, and the Court has no way to assess the competing claims.

Although this alone is enough to meet the requirement for particularized need, the defense has also reasonably called into question the accuracy of the government's characterization of the testimony. As detailed in the defense's parallel briefing regarding the monitoring of his electronic devices, the government does not contest that its submissions relating to Mr. Goldstein's use of cryptocurrency were false or misleading in several important respects. Monitoring Appeal Opening Br. 10-22; Monitoring Appeal Reply Br. (ECF No. 88) at 4-9. Its representations regarding the witness's testimony are closely bound up with those indisputably untrue assertions. *See supra* at 1-2.

There are also substantial reasons to doubt the government's characterization of this evidence in particular. The allegation is implausible, *not least because of what it is missing*. The government conspicuously does not allege that Mr. Goldstein ever suggested to the witness — in even the most oblique fashion — that they not fully cooperate with the investigation. If the witness testified before the grand jury that Mr. Goldstein never made any such suggestion, that would be powerful evidence undercutting the government's position. Furthermore, there is an alternative, obvious explanation for the facts that the government recounts, presumably on the basis of this testimony. As the government explains, the witness was the one and only staff member who was familiar with the law firm's financial records. At the time the witness announced their intention to leave the firm, the firm and SCOTUSblog, a legal blog founded by

4

Mr. Goldstein, had received grand jury subpoenas requesting virtually every financial document in the possession of the blog and the firm. The witness's incoming replacement had none of the witness's institutional knowledge about the firm's or the blog's records. As *any* employer would do, Mr. Goldstein attempted to persuade the outgoing assistant to remain with the firm to continue that work. Keeping the individual with the firm and engaged in the effort to provide materials to the government for the investigation bears no relationship to an effort to discourage them from cooperating. If anything, it suggests the exact opposite. This sequence of events completely belies the government's absurd suggestion (Monitoring Appeal Opp. 17) that Mr. Goldstein had "no credible reason" to offer inducements such as cryptocurrency other than to obstruct the investigation.[1]

It also bears noting that the government elected not to bring a criminal charge on the basis of this allegation. While not dispositive, that decision reinforces the reasonable concern that the witness did not in fact provide testimony that could only be understood as an attempt to bribe her not to cooperate with the investigation.

The government also wildly exaggerates the evidence it cites. The government admits that it has no basis to suggest that by mentioning cryptocurrency, Mr. Goldstein was thereby offering a particular amount. Monitoring Appeal Opp. 17 n.9. But because Mr. Goldstein allegedly used the word "Bitcoin," the government asks the Court to *assume* that Mr. Goldstein implicitly proposed to give the witness "*a* Bitcoin," which could have been valued in that period at $40,000. *Id.* That is ridiculous. "Bitcoin" is a currency, like "dollars" or "euros." As explained in the supplemental declaration of defense cryptocurrency expert Jason Trager, referencing the

---

[1] Indeed, in the two months leading up to the witness's departure from the firm, it produced nearly 4,000 documents (comprising more than 20,000 pages) in response to grand jury subpoenas.

currency is not a suggestion of an amount, any more than one would assume that a reference to "dollars" meant $40,000. ECF No. 88-1, ¶¶ 24-26. In fact, in January 2021 — which the government identifies as within the relevant time period during which Mr. Goldstein is alleged to have offered the witness Bitcoin — the median value of a Bitcoin transaction ranged between approximately $550 and $864. *Id.* ¶ 26. The government has only suggested that it has evidence that Mr. Goldstein offered the witness $10,000 to remain with the firm, *see* Monitoring Appeal Opp. 17, which would have been perfectly appropriate for an experienced firm manager.

Given those well-founded doubts about the government's representations, it must produce the evidence that it cites as the basis for its claims. Ordinarily, in proceedings related to release conditions, the government may proceed by proffer. But where the defense calls the accuracy of the government's factual representations into question, the government must put forward the *actual evidence* on which it is relying: "[T]he court should insist on the production of [the] underlying evidence where [the] accuracy of [the] proffer is in question." *United States v. LaFontaine*, 210 F.3d 125, 132 (2d Cir. 2000) (discussing *United States v. Martir*, 782 F.2d 1141 (2d Cir. 1986)); *see also United States v. Acevedo-Ramos*, 755 F.2d 203, 207-08 (1st Cir. 1985) (Where the government seeks to proceed by proffer, "the magistrate or judge possesses adequate power to reconcile the competing demands of speed and of reliability, by selectively insisting upon the production of the underlying evidence or evidentiary sources *where their accuracy is in question*." (emphasis added)); *United States v. Sanders*, No. 19-CR-125-A, 2019 WL 4016171, at *2 (W.D.N.Y. Aug. 26, 2019) ("a proffer must be of evidence inherently reliable enough to merit consideration just as if the parties were to conduct an evidentiary hearing on the detention motion"); *United States v. Horton*, No. S1 16-CR-0212 (LAK), 2016 WL 6126669, at *8 (S.D.N.Y. Oct. 20, 2016) (stressing the court's "obligation of ensuring the

reliability of the government's information"). *See generally Acevedo-Ramos*, 755 F.2d 207-08 ("Through sensible exercise of this power of selection, the judicial officer can make meaningful defendant's right to cross-examine without unnecessarily transforming the bail hearing into a full-fledged trial or defendant's discovery expedition.").

Finally, in this context, the need for grand jury secrecy is almost non-existent. The government's briefing effectively already identifies (1) the witness, and (2) not merely the general substance of their testimony but also an array of accompanying details. Nonetheless keeping the testimony itself secret after the government relies on it could serve only two purposes: (1) to disadvantage the defense; and (2) to make the Court's determination of the facts less accurate. To the extent the Court believes there is a need for secrecy, it should order the materials produced *in camera*. If the government's characterization is in fact accurate, they need not be disclosed.

The government can of course easily minimize the burden on the Court resulting from its one-sided invocation of the relevant grand jury testimony. In response to this Motion, it can simply provide the relevant materials to the Court for *in camera* inspection without requiring a further Order. The Court then can make any appropriate decision regarding whether disclosure to the defense is nonetheless unwarranted.

## **CONCLUSION**

For the foregoing reasons, the Court should enter an Order directing the government to disclose all grand jury testimony relating to its claim that Mr. Goldstein "offered to pay a potential witness cryptocurrency" or, in the first instance, review that testimony *in camera*.[2]

---

[2] By reviewing the testimony *in camera*, the Court would also create a record that could assist the Court of Appeals in the event of an emergency interlocutory appeal on this question.

Respectfully submitted,

/s/ *Jonathan I. Kravis*
_____
Jonathan I. Kravis (*pro hac vice*)
Stephany Reaves (Bar No. 19658)
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue NW, Suite 500E
Washington, DC 20001
(202) 220-1100
Jonathan.Kravis@mto.com
Stephany.Reaves@mto.com

Adeel Mohammadi (*pro hac vice*)
MUNGER, TOLLES & OLSON LLP
350 S. Grand Avenue, 50th Floor
Los Angeles, CA 90071
(213) 683-9100
Adeel.Mohammadi@mto.com

*Attorneys for Defendant Thomas Goldstein*

Dated: March 10, 2025