IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| v. | * | **CRIMINAL NO. LKG-25-6** |
| | * | |
| **THOMAS C. GOLDSTEIN,** | * | |
| | * | |
| **Defendant** | * | |
| | * | |

*******

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S
EMERGENCY MOTION TO COMPEL GRAND JURY TESTIMONY**

The United States of America respectfully requests that the Court deny Defendant's Emergency Motion To Compel Production of Certain Grand Jury Testimony ("Emergency Motion"), ECF 88. First, the Court can properly consider information proffered by the Government about Defendant's offers of cryptocurrency to a witness in this case, and weigh that information along with the many other justifications for the computer-monitoring condition of release ("Monitoring Condition"). Thus, the Court need not review the witness's grand jury testimony—let alone disclose it to the Defendant. Second, even if disclosure were authorized in the Court's discretion, Defendant has not established the "particularized need" that would justify the extraordinary step of disclosing grand jury testimony. Grand jury testimony is presumptively secret for good reason: disclosing such testimony here would undermine the fair and orderly resolution of this case and, more broadly, have a chilling effect on future grand jury witnesses who could not trust that their testimony would stay secret.

Defendant has strikingly little need for disclosure here because the witness's testimony is not even necessary to a ruling on the Monitoring Condition, which is amply justified for all the other reasons described in the Government's response brief. Nonetheless, if the Court determines

that the grand jury testimony is necessary to the Court's determination of the Monitoring Condition, the appropriate recourse is for the Court to review it *in camera*. The Emergency Motion should otherwise be denied.

## **BACKGROUND**

On February 13, 2025, Chief Magistrate Judge Sullivan issued an amended order setting conditions of release for Defendant. ECF 62. Among the conditions of release was a requirement that Defendant refrain from use of electronic devices except as approved by Pretrial Services, ECF 62 at 3, and Pretrial Services subsequently approved Defendant's request to use a computer and a cell phone that Defendant chose. Judge Sullivan also ordered on February 13 that any approved electronic devices be subject to monitoring by Pretrial Services via specialized computer software. ECF 62 at 3. Judge Sullivan's order was based in part on Defendant's "extensive past use of cryptocurrency . . . which he might use to flee from prosecution in this case." ECF 64 at 6. Of particular relevance to the instant motion, Judge Sullivan found the Monitoring Condition necessary without specifically reaching the question of whether Defendant attempted to influence the witness with his undisputed offers of cryptocurrency and other things of value to the witness. *Id.* at 5–6.

Judge Sullivan and Pretrial Services Officer Smith also explained the nature of the Monitoring Condition, which is one of the standard options in the District of Maryland. *See* ECF 73 at 38–41 (Tr. of February 13, 2025 hearing); *e.g.*, Order Setting Conditions of Release, ECF 6 at 3. During the hearing, counsel for Defendant raised concerns that the Monitoring Condition could foreclose Defendant's use of a computer or the internet completely, restrict review of discovery, and disclose attorney client communications. *Id.* at 38–40. But Judge Sullivan and Pretrial Services Officer Smith confirmed that is not the case. *See* ECF 73 at 38–41. Specifically,

Judge Sullivan explained that the Monitoring Condition involved a review of the applications on Defendant's devices that would allow him to engage in cryptocurrency transactions, and keywords and algorithms that the vendor uses to monitor any potential cryptocurrency transactions. *Id.* at 38–39. Officer Smith confirmed that he reviews the monitoring equipment monthly and it shows what activity Defendant is conducting and applications Defendant attempts to access. *Id.* Officer Smith also confirmed that he would not be reviewing the contents of Defendant's emails, word documents, and discovery in connection with Defendant's preparation for this case, consistent with monitoring conditions placed on other defendants in this district. *Id.* at 40–41. Judge Sullivan summarized, "I don't believe that they're going to be as onerous as you are worried about. And I think that it's just another layer of -- given the allegations in the instant offense and the Defendant's historical use of cryptocurrency and layered with the court's concern that Mr. Goldstein's a serious risk of flight, I think it's a reasonable and not very restrictive condition. And if there's a problem, please bring it to my attention. We'll work our way through it." *Id.* at 41.

On February 27, Defendant appealed the Monitoring Condition to this Court. ECF 81. On March 6, the Government opposed Defendant's appeal by arguing that his use of and access to cryptocurrency—including as just one example Defendant's suspicious and repeated offers of cryptocurrency to a witness in the case after the investigation went overt—justified the Monitoring Condition. ECF 84. On March 10, Defendant filed this Emergency Motion To Compel Production of Certain Grand Jury Testimony (namely, the grand jury testimony relevant to his offers of cryptocurrency to the witness). ECF 88. On March 11, the Court ordered that the Government respond to the Emergency Motion by March 14. ECF 90.

3

**ARGUMENT**

**I. The Court Can Rely on Attorney Proffers**

Defendant concedes that, "[o]rdinarily, in proceedings related to release conditions, the government may proceed by proffer." ECF 88 at 8. That concession is unsurprising, as the Fourth Circuit has held that the Bail Reform Act "entitles the government to make evidentiary proffers during detention hearings." *United States v. Vane*, 117 F.4th 244, 252 (4th Cir. 2024). "These hearings, though they implicate a liberty interest, are not meant to be 'mini-trials,'" *id.* at 251, or "a discovery tool for the defendant," *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986). In this District, courts "routinely permit[] the government to proceed by proffer in such hearings, even though the Bail Reform Act does not expressly authorize the practice." *United States v. Cooper*, BEL-08-0239, 2008 WL 2331051, at *1 (D. Md. June 4, 2008), as amended (June 16, 2008); *see also United States v. White*, PWG-13-436, 2015 WL 2374229, *2 (D. Md., May 15, 2015) (rejecting argument that Government did not produce any evidence in Bail Reform Act hearing, explaining it has been the "consistent practice in this Court for many years" to proceed by attorney proffer).

That is precisely what happened here: in briefing on Defendant's detention and release conditions, the Government proffered to the Court certain facts concerning Defendant's repeated offers of cryptocurrency and other things of value to a witness who "was the one and only staff member . . . at Defendant's law firm . . . familiar with the law firm's financial records." *See* ECF 88 at 6. While the witness has explained that Defendant did not suggest that the witness not assist in the investigation, and the witness cannot testify as to Defendant's subjective intent, the facts demonstrate that Defendant made continued offers of cryptocurrency and things of value to the witness who had key information about Defendant's conduct after the investigation went overt.

4

Based on this evidence, the Government's position, as explained in its Opposition, is that there was no other credible reason for Defendant's actions other than to influence the witness regarding the ongoing criminal investigation, and that these offers of cryptocurrency, among other reasons, support the Monitoring Condition ordered by Judge Sullivan. While the Court has discretion to assign whatever weight it deems appropriate to the information provided by proffer from the Government or Defendant, that does not entitle Defendant to review or attack the witness's grand jury testimony at this stage of the case.

Nor has Defendant raised sufficient concern about the accuracy of the information proffered by the Government to warrant further examination of the witness's grand jury testimony. *See United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986) (holding district court did not "abuse[] his discretion in accepting the government's proffer" despite attacks on the credibility of a witness on whose testimony the government relied). To the contrary, Defendant does not appear to dispute the key facts supporting the Government's proffer, including that:

- the witness was an employee with intimate knowledge of Defendant's and his law firm's finances and income;

- the witness knew Defendant had "hired" a woman with whom he was in an intimate relationship, and caused her to be added to the law firm's payroll and health insurance coverage;

- the witness announced that the witness would be resigning the day after IRS-CI special agents visited the law firm's office to interview Defendant and to request documents;

- Defendant told the witness that the witness's resignation would look suspicious to federal investigators;

- Defendant repeatedly offered the witness things of value, including cryptocurrency, in the days and months after the witness announced the witness would be resigning; and

- Defendant's offers to the witness persisted even after it was clear that the witness was leaving the law firm (*e.g.*, because the witness's replacement had been hired and trained).

5

Despite conceding these key facts, Defendant suggests that he is at a disadvantage and the Government's proffer rests solely on the witness's testimony.  *See* Emergency Motion at 2, 7.  Not so.  This is not a situation in which the Defendant is in the dark about what happened.  This issue concerns *Defendant's* interactions with the witness, so Defendant can proffer whatever justifications he likes, as he already has.  Moreover, the Government's proffer is supported by the witness's contemporaneous text messages, which the Government already produced to Defendant.  These include text messages that show:

- Defendant said that that the witness quitting "would look suspicious to the IRS."  Ex. 1.
- On January 21, 2021, the witness texted that Defendant "keeps offering me money." "Bitcoin, student loan payments, a $10k bonus when a big case comes in, expensive headphones. Every time he sees me." "It's so so uncomfortable."  Ex. 2.

Defendant's access to these texts underscores how little he is disadvantaged in contesting the Monitoring Condition.

Instead of attacking the accuracy of the underlying evidence, Defendant disagrees with the Government's *interpretation* of that evidence.  Defendant argues that "*any* employer" would have done the same thing, and that "[k]eeping the individual with the firm and engaged in the effort to provide materials to the government for the investigation bears no relationship to an effort to discourage them from cooperating."  ECF 88 at 4 (emphasis in original).

Defendant's rationale does not hold water.  First, Defendant was not "*any* employer."  He was an employer who, as alleged in the Indictment, had diverted payments to and from his law firm to cover gambling debts.  *See, e.g.*, Indictment, ECF 1 ¶ 24.  Defendant was also an employer who "hired" and placed on the law firm's healthcare four women with whom he had or was pursuing personal relationships, when those women did little to no work.  *Id.* at ¶ 11–13.  The witness, as a Firm Manager, is someone who was involved with and had knowledge about the firm's finances and healthcare.

Second, Defendant's rationale cannot be squared with the timeline of Defendant's offers. On December 29, 2020, the law firm represented (through Defendant's current counsel) to the Government that it had produced all documents responsive to the subpoenas served on October 14, 2020.[1] *See* Ex. 3 at 2 ("The blog and the firm have now produced all responsive documents located after diligent searches of electronic and hard copy files."). Yet Defendant's offers to the witness persisted until late January, a month after Defendant's law firm stated that it finished responding to the subpoena and weeks after the witness's replacement had started at the firm. This reinforces that there was no ongoing need in late January 2021 for the witness to remain at the law firm—let alone for Defendant to offer the witness cryptocurrency or a $10,000 bonus.

Although the circumstances, timeline, and text messages belie Defendant's purported motivation, he has a right to argue that he did what "*any* employer" would have done—and to proffer information supporting that argument. *See Vane*, 117 F.4th at 251 (noting that "both parties" are allowed "to proffer information" in a Bail Reform Act dispute). But Defendant's mere disagreement with the Government's position does not warrant the production of presumptively secret grand jury materials under the rigorous "particularized need" standard, discussed below. Under these circumstances, the Court should not condone Defendant's attempts to convert the Bail Reform Act dispute into a mini-trial or a discovery tool. *See id.*; *Martir*, 782 F.2d at 1145.

## II. Defendant Improperly Invokes Fed. R. Crim. P. 6(e)(3)(E)(i) and Has Otherwise Not Made a Strong Showing of Particularized Need For The Grand Jury Testimony

Grand jury materials, including transcripts of witness testimony, are presumptively secret. *See* Fed. R. Crim. P. 6(e); *United States v. Silva*, 745 F.2d 840, 846 (4th Cir. 1984) ("While the

---

[1] The only subsequent production in response to those subpoenas was the production of three inadvertently omitted documents in April 2021. The Government eventually issued additional subpoenas to Defendant's law firm, but at the time of Defendant's continued offers to the witness in January 2021, the law firm had already represented that its productions were complete, as explained above.

aura shrouding grand jury proceedings has perhaps become less opaque over the years, it is indisputable that there is still a substantial interest in maintaining the secrecy of those proceedings.") Rule 6(e) contains some exceptions, and Defendant relies on Rule 6(e)(3)(E)(i) which provides, "The court may authorize disclosure — at a time, in a manner, and subject to any other conditions that it directs — of a grand-jury matter: (i) preliminarily to or in connection with a judicial proceeding."[2] ECF 88 at 3. Disclosure under Rule 6(e)(3)(E)(i) requires "a strong showing of particularized need." *United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 443 (1983). However, as explained below, Defendant cannot rely on Rule 6(e)(3)(E)(i) to compel grand jury testimony in this context, and even if he could, Defendant fails to make a strong showing of particularized need.

To begin, the Rule 6(e)(3)(E)(i) exception to grand jury secrecy for disclosure of material "preliminarily to or in connection with a judicial proceeding" "applies only to situations where the judicial proceeding for which disclosure of grand jury material is sought is a judicial proceeding *different from the criminal trial authorized by the grand jury's indictment*." *Nguyen*, 314 F. Supp. 2d at 615 (emphasis added). Therefore, the exception does not authorize Defendant's demand for

---

[2] Rule 6(e)(3)(E)(ii) authorizes disclosure "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." That provision is not at issue in the instant motion. But even if it were, under that provision Defendant fails to meet the "heavy burden of establishing that 'particularized and factually based grounds exist to support the proposition that irregularities in the grand jury proceedings may create a basis for dismissal of the indictment.'" *United States v. Jenkins*, No. CR SAG-23-0123, 2023 WL 4205840, at *1 (D. Md. June 27, 2023) (quoting *United States v. Loc Tien Nguyen*, 314 F. Supp. 2d 612, 616 (E.D. Va. 2004)). Relatedly, even if Defendant sought the grand jury testimony in an attempt to attack the sufficiency of the charges in the indictment, that effort would lack any legal support. *Kaley v. United States*, 571 U.S. 320, 328 (2014) (rejecting attack on sufficiency of indictment, reasoning: "The grand jury gets to say—without any review, oversight, or second-guessing—whether probable cause exists to think that a person committed a crime").

disclosure of grand jury testimony *in this case*. *See id.*; *see also United States v. Harris*, No. CRIM.A.5:07-CR-22, 2007 WL 1724298, at *5 (N.D.W. Va. June 14, 2007) ("Where a defendant seeks disclosure of testimony before the grand jury that indicted him, he must rely on the second exception in Rule 6(e)(3)(E)."); *United States v. Wemmering*, No. 5:04-CR-347-3F3, 2005 WL 8162295, at *6 & n.4 (E.D.N.C. Nov. 4, 2005) (concluding the "preliminarily to or in connection with a judicial proceeding" exception did not apply to defendant seeking grand jury transcripts in her own criminal case).

Moreover, even if the Rule 6(e)(3)(E)(i) exception to grand jury secrecy did apply in this context, Defendant falls well short of making the required strong showing of particularized need for several reasons.

*First*, Defendant is wrong that the Government's reliance on grand jury testimony to support its Bail Reform Act arguments justifies disclosure of the grand jury materials. *See* ECF 88 at 3-4. Most fundamentally, this argument fails because the Government has provided numerous bases—besides Defendant's offers to the witness—why the conditions of release ordered by Judge Sullivan are appropriate. *See generally* ECF 84. And the Court can also simply look to the undisputed facts and text messages described above when considering Defendant's offers of things of value, including cryptocurrency, to the witness. Moreover, Judge Sullivan's order is not even predicated on Defendant's offer of cryptocurrency to the witness. Accordingly, this Court can affirm the conditions of release even without reference to the Government's proffer of any grand jury testimony at issue in the Emergency Motion, and need not countenance the release of presumptively secret grand jury materials.

*Second*, as noted above and as Defendant concedes, the Government is entitled to proceed by proffer in the context of Bail Reform Act disputes. If it were true that *mere reliance* on grand

jury testimony to proffer information in this context were enough to require production of the underlying testimony, then defendants could pierce the veil of grand jury secrecy in nearly every case in this District. Of course, that would contravene the general rule that Bail Reform Act hearings are not intended to be mini-trials or discovery tools for defendants and completely upend the regular practice of this Court. Every defendant would purport to contest the veracity of ancillary grand jury evidence behind the proffered information and demand to review it—miring courts (like this one) in time-consuming litigation far removed from the core issues of detention or conditions of pretrial release.

*Third*, Defendant is incorrect that what he characterizes as misstatements by the Government require production of the grand jury testimony. *See* ECF 88 at 4–6. The Government denies that it misled the Court at any point in this case. Defendant first argues that alleged inaccuracies on the topic of cryptocurrency transactions, which are wholly distinct from Defendant's offers of things of value including cryptocurrency to the witness, warrant the production of the witness's grand jury testimony. The Government already has explained at length—including in its opposition to Defendant's pending appeal (ECF 84)—its position on the relevance of those cryptocurrency transactions to the Bail Reform Act and Defendant's conditions of release, and will not recount those arguments here. But even assuming Defendant were right that the Government made "indisputably untrue assertions" about certain of Defendant's cryptocurrency activity (ECF 88 at 6), which the Government did not, that does not open the door to production of grand jury testimony on the factually unrelated circumstances of his offers to the witness.

Defendant next asserts he has "reasonably called into question the accuracy of the government's characterization of the testimony" of the witness—but he has not. Instead, he merely

argues the Government's "allegation is implausible" because it "does not allege that [he] ever suggested to the witness . . . that they not fully cooperate in the investigation." ECF 88 at 4. As explained above, the witness has not stated that Defendant told the witness not to cooperate with the Government. But the absence of a specific request not to cooperate does little to undermine the strong inference that Defendant (a highly sophisticated attorney) was attempting influence the witness by offering the witness things of value well after the witness had announced that the witness would be resigning, and the witness's replacement was hired. Moreover, Defendant's argument is especially inexplicable because Defendant can *already proffer*, based on his own memory (and the absence of any claim to the contrary by the Government), that he never explicitly suggested the witness not cooperate with the investigation. He has not cast doubt on the witness's grand jury testimony and he does not even need that testimony to contest the alleged motive for his offers of cryptocurrency.

*Fourth*, Defendant fails to make a strong showing of particularized need to pierce grand jury secrecy in this context—an appeal of a single condition of pretrial *release* that Judge Sullivan explained was "reasonable and not very restrictive" and Pretrial Officer Smith explained simply involves periodic monitoring to ensure that Defendant is not engaging in cryptocurrency transactions. *See* ECF 73 at 38–41, *supra* at 2–3. As the Supreme Court observed in *Douglas Oil Company v. Petrol Stops Northwest*,

> "[I]f preindictment proceedings were made public, many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony. Moreover, witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as to inducements. There also would be the risk that those about to be indicted would flee, or would try to influence individual grand jurors to vote against indictment."

11

441 U.S. 211, 219 (1979) (quoted in *Silva*, 745 F.2d at 846). Although Defendant has already been indicted, these concerns directly apply here, particularly since the investigation is ongoing. If the Court accepted Defendant's position, then it would have a chilling effect on witnesses who may testify in a future grand jury proceeding or trial for this case, and it would send a clear message to counsel for those witnesses that they cannot assure their clients' testimony will remain secret before *Jencks* disclosures for witnesses who will testify at trial, which has yet to be scheduled.

More acutely, a major reason for grand jury secrecy is to prevent witness tampering. *See, e.g.*, *United States v. Sells Eng'g, Inc.*, 463 U.S. at 424 (1983); *In re Grand Jury Subpoena*, 920 F.2d 235, 242 n.8 (4th Cir. 1990). Indeed, the entire context of this dispute is Defendant offering things of value, including cryptocurrency, to a witness who was his personal assistant and Firm Manager. Even if Defendant knows that witness's identity, knowledge of the specifics of the witness's grand jury testimony could aid him in trying to further influence the witness or change the witness's testimony.

Moreover, the mere possibility of obtaining disclosure of beneficial testimony for a motion to appeal a single, frequently imposed, condition of pretrial release is even less compelling than other purported needs the Fourth Circuit has rejected. *See United States v. Chase*, 372 F.2d 453, 466 (4th Cir. 1967) (finding criminal defendant failed demonstrate a particular need for grand jury minutes because "the mere possibility that a witness's testimony before both grand juries differed, or the mere possibility that his testimony before a grand jury differed from his testimony at trial, would be insufficient reason to pierce the veil of secrecy which protects the proceedings of such a body").

In sum, even assuming Rule 6(e)(3)(E)(i) authorized disclosure in the Court's discretion, Defendant has not made a strong showing of particularized need for the grand jury testimony,

especially in light of the concrete risks that disclosure would pose to the resolution of this case and others in the District. The need for continuing grand jury secrecy far outweighs Defendant's purported need to explore possible additional evidence in order to challenge a single justification for a single condition of his pretrial release, particularly where Judge Sullivan's order was not predicated on the offers of things of value, including cryptocurrency, to the witness.

### III. *In Camera* Review Is Not Warranted

The Court may order submission *in camera* of grand jury testimony. However, for the reasons described above, the Government disagrees that such *in camera* review is warranted. *See, e.g.*, *United States v. Shane*, 584 F. Supp. 364, 367 (E.D. Pa. 1984) (noting that the court would not "undertake an extended *in camera* review of grand jury materials on the basis of mere unsupported pleadings"). Moreover, the other reasons described in the Government's Opposition to Defendant's Appeal, ECF 84, amply support the Monitoring Condition without the need to resolve this dispute about the offers of cryptocurrency to the witness. With respect to those offers, the Court also can consider the proffers by both the Government and Defendant and the contemporaneous text messages produced by the witness, without considering any proffered grand jury testimony. To the extent that the Court believes that the witness's grand jury testimony is dispositive to the Court's decision, the Government will of course comply with an order that the relevant grand jury testimony be submitted *in camera*.

## CONCLUSION

      For all the reasons stated above, the Government respectfully requests that the Court deny Defendant's Emergency Motion To Compel Production of Certain Grand Jury Testimony, ECF 88.

                                         Respectfully submitted,

                                         Kelly O. Hayes
                                         United States Attorney
                                         /s/_____
                                         Patrick D. Kibbe
                                         Assistant United States Attorney
                                         District of Maryland

                                         Stanley J. Okula, Jr.
                                         Senior Litigation Counsel
                                         Department of Justice—Tax Division

                                         Emerson Gordon-Marvin
                                         Hayter Whitman
                                         Trial Attorneys
                                         Department of Justice—Tax Division