IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | CRIMINAL NO. LKG-25-6 |
| | * | |
| THOMAS C. GOLDSTEIN, | * | |
| | * | |
| Defendant. | * | |
| | ******** | |

DEFENDANT THOMAS C. GOLDSTEIN'S
REPLY IN SUPPORT OF EMERGENCY MOTION TO COMPEL
<u>PRODUCTION OF CERTAIN GRAND JURY TESTIMONY</u>

**<u>TABLE OF CONTENTS</u>**

**<u>Page</u>**

INTRODUCTION ........................................................................................................1

ARGUMENT .............................................................................................................4

A.    THE GOVERNMENT INTENTIONALLY MISLED THE COURT. ..............................4

B.    THE GOVERNMENT'S FILINGS VIOLATE RULE 6(E). ...........................................9

C.    THE GOVERNMENT'S OPPOSITION RELIES ON ANOTHER FALSE
      ALLEGATION. ..................................................................................................10

D.    THE GOVERNMENT'S CONDUCT IS PART OF A BROADER PATTERN. .............12

CONCLUSION ........................................................................................................13

## INTRODUCTION

The government's opposition effectively admits that, once again, it seriously misled the Court. In a filing on the public docket, the government told the Magistrate Judge that defendant Thomas Goldstein should be detained pending trial in part because "sworn testimony" established that Mr. Goldstein used cryptocurrency to bribe a former firm office manager to not cooperate with this investigation. ECF No. 52, at 8. The government relied on this characterization of the office manager's grand jury testimony to argue that Mr. Goldstein should be detained because "recent cryptocurrency transactions may also be used to influence potential witnesses to his crimes." ECF No. 40, at 17. The government repeated this contention in its opposition to the defense appeal of the Monitoring Condition. ECF No. 84, at 15-18.

The defense's argument that the government must disclose this witness's testimony, at the very least *in camera*, was overwhelming.[1] The government could not plausibly rely on that testimony to oppose Mr. Goldstein's appeal while simultaneously keeping the actual testimony secret from even the Court. So, to get ahead of that inevitable disclosure, the government now admits the truth: The office manager's grand jury testimony actually says just the opposite of what the government had represented. The government confesses that the office manager "explained that Defendant did not suggest that the witness not assist in the investigation, and the witness cannot testify as to Defendant's subjective intent." ECF No. 91 ("Opp. Mot. Compel"),

---

[1]      It is well settled that where (as here) the contents of grand jury testimony are already public, the required showing of particularized need for disclosure is significantly lessened as well. *United States v. John Doe, Inc. I*, 481 U.S. 102, 112 (1987); *United States v. McGowan*, 423 F.2d 413, 418 (4th Cir. 1970). And it is inequitable for one side to be permitted to make affirmative use of a grand jury transcript while invoking grand jury secrecy to withhold the transcript from its adversary. *Cf. In re Grand Jury Proc. GJ-76-4 & GJ-75-3*, 800 F.2d 1293, 1305 n.16 (4th Cir. 1986).

at 4. In other words, the office manager's testimony is flatly inconsistent with the government's "proffer" of the testimony and the prosecution's allegation of obstruction.

The government's opposition also reveals the absurdity of its contention that obstruction was the only possible explanation for Mr. Goldstein's offer of cryptocurrency to the office manager. The government cites a text message in which the office manager says that Mr. Goldstein was concerned that the office manager's immediate departure would look suspicious to the government. Opp. Mot. Compel 6 (quoting ECF No. 94). In other words, it would look as if the manager and the firm had something to hide. In addition, the obvious prospect that the government might issue more subpoenas to the firm—which is what in fact occurred, *id.* at 7 n.1—was another reason to try to retain the office manager's institutional knowledge. The government does not dispute that offering cryptocurrency to retain the office manager to further assist the firm in gathering materials responsive to government subpoenas is the opposite of obstruction. The government's repeated assertion that the only possible inference from these facts is that Mr. Goldstein sought to obstruct the investigation is thus ridiculous—and its representation to the Court that the witness's grand jury testimony only permitted that inference is deeply misleading.

Not only does the government's disclosure of the witness's testimony demonstrate that its representations were false, it also effectively moots the defense motion to disclose the witness's grand jury transcript. The government has already revealed the substance of the witness's testimony. The precise words that the firm manager used to say that Mr. Goldstein never suggested that she not cooperate, and that she could not testify as to his intent, do not matter.

The government has largely mooted the appeal of the Monitoring Condition too. While the defense submits that no additional release condition is necessary or warranted on this record,

the government in substance defends only a narrow monitoring of Mr. Goldstein's actual use of cryptocurrency trading apps or websites (which Mr. Goldstein has no intention of doing anyway). So, to the extent it is inclined to leave *any* monitoring in place, even on the government's view the condition should be substantially narrowed to eliminate the broader monitoring that risks the disclosure of privileged communications.

However, the government's disclosure of the substance of the office manager's grand jury testimony reinforces the defense's repeated showing that the government has not been candid with the Court in its prior filings. As explained in the defense's Monitoring Condition appeal and reply, the government's filings were misleading on several other key points as well, and the government pointedly has made no meaningful attempt to defend them. And as discussed further below, this conduct is part of a broader pattern of false and misleading statements by the government in this investigation and prosecution, a pattern that will be the subject of two additional defense motions. As soon as the Court permits, the defense will file these motions, which are necessary to develop the facts that will determine which pre-trial motions the defense ultimately presents.

Mr. Goldstein's reputation was gravely injured by the government's false and misleading allegations in public filings that he used cryptocurrency accounts in violation of his release conditions, that he has access to millions of dollars in secret cryptocurrency accounts, and that he bribed a witness. And the government's description of a witness's grand jury transcript in public filings appears to be a plain violation of Rule 6(e). The defense respectfully suggests that the Court address at the March 25 hearing whether sanctions against the government are warranted—in the form of a rebuking the government on the record—for its lack of candor. *See United States v. Shaffer Equip. Co.*, 11 F.3d 450, 457 (4th Cir. 1993) ("Even the slightest

accommodation of deceit or a lack of candor in any material respect quickly erodes the validity

of the [judicial] process."); *United States v. Omni Int'l Corp.*, 634 F. Supp. 1414, 1423 (D. Md.

1986) (noting a "disheartening lack of candor in colloquies with and testimony before the Court"

by government attorneys); *see also United States v. Garrett*, 128 F.4th 583, 595 (4th Cir. 2025)

(noting that "abusive prosecutorial discovery tactics" which "amount to deceit or lack of candor"

are sufficient to "render a guilty plea involuntary").

## ARGUMENT

### A.    THE GOVERNMENT INTENTIONALLY MISLED THE COURT.

In its *ex parte* detention motion, the government alleged the following:

> In addition, shortly after Defendant became aware of the federal investigation, the
> Government understands that he offered things of value, including cryptocurrency, to a
> potential witness in the case who had intimate knowledge of his and his law firm's
> finances and income—and that there was *no other credible reason* for doing so *than to
> attempt to prevent the potential witness from assisting the investigation*.

ECF No. 40, at 17 (emphasis added).  The government concluded that "[t]his raises the serious

concern that Defendant's recent cryptocurrency transactions may also be used to influence

potential witnesses to his crimes." *Id.*

Days later, in its opposition to the defense's emergency motion for release, the

government expanded on this allegation, adding the critical claim that the witness's sworn grand

jury testimony would support only the conclusion that Mr. Goldstein's intent was to obstruct the

investigation:

> Beyond concealing his financial transactions, Defendant has also attempted to use
> cryptocurrency to influence a potential witness in response to the Government's
> investigation, as noted in the Government's initial request to detain him. Defendant knew
> about the Government's investigation since at least October 2020, when IRS-CI special
> agents visited the office of Defendant's law firm to interview him and request documents
> via a subpoena. Shortly after that visit, the Government understands that he offered things
> of value, including cryptocurrency, to a potential witness in the case who had intimate
> knowledge of his and his law firm's finances and income. The Government has collected
> as part of its investigation contemporaneous documents *and sworn testimony* concerning

those offers, and the evidence suggests Defendant had *no credible reason* to make the offers other than to attempt to prevent the potential witness from assisting in the investigation, or ensure that the potential witness would not divulge the full truth about Defendant's conduct.

ECF No. 52, at 8 (emphasis added).

At the conclusion of those proceedings, the Magistrate Judge ordered Mr. Goldstein released but *sua sponte* imposed the Monitoring Condition. ECF Nos. 62 & 64. Mr. Goldstein appealed that condition, ECF No. 81, and in its opposition the government reiterated and expanded even further on its allegation that Mr. Goldstein "offered to pay a potential witness cryptocurrency, under circumstances that strongly suggest he sought to obstruct the investigation," ECF No. 84, at 15. The government devoted over two pages of its opposition to a lengthy "proffer" of the witness's testimony on this subject, *id.* at 15-18, stressing that its version of the facts was a "very serious accusation," *id.* at 15 (quoting ECF No. 81, at 23).

In light of the serious nature of this (uncharged) accusation, the defense filed its motion requesting disclosure of the grand jury transcript under Federal Rule of Criminal Procedure 6(e). ECF No. 89. In its opposition to that motion, the government completely reversed course. It revealed for the first time that the witness's grand jury testimony is flatly inconsistent with the government's repeated public accusation that Mr. Goldstein attempted to "obstruct the investigation" by offering cryptocurrency to the witness. The government disclosed that "the witness has explained that Defendant *did not suggest that the witness not assist in the investigation, and the witness cannot testify as to Defendant's subjective intent*." Opp. Mot. Compel 4 (emphasis added).

This belated confession—made only when faced with the imminent prospect of being required to disclose the testimony—shows that the government's prior representations to the Court on this issue were at a minimum deeply misleading, and at worst intentionally false. On

three separate occasions, the government told the Court in public filings that Mr. Goldstein offered a witness cryptocurrency to obstruct the investigation. In one of those filings, the government told the Court that the witness's "sworn testimony" corroborated this allegation—that it left *no other plausible explanation*. In fact, we now know that the witness's grand jury testimony was squarely inconsistent with the government's allegations. The government did not acknowledge any of this until the defense motion for disclosure of the transcript forced the government to face the prospect that its "proffers" would be compared to the actual evidence.

Now that it has been forced to disclose the exculpatory witness testimony, the government reverses course and attempts to downplay the significance of its original accusation. After devoting more than two pages of its Monitoring Condition opposition to this topic, the government now says that the government has provided other "bases" to support the Monitoring Condition and therefore "this Court can affirm the conditions of release even without reference to the Government's proffer of any grand jury testimony at issue in the Emergency Motion." Opp. Mot. Compel 9.

This retreat is striking. In its filings before the Magistrate Judge and in its appeal opposition filed with this Court, the government repeatedly argued that Mr. Goldstein's attempt to "obstruct the investigation" using cryptocurrency warranted the Monitoring Condition. Indeed, the government's opposition agreed with the defense that this is a "very serious accusation." ECF No. 84, at 15 (quoting ECF No. 81, at 23). That the government now all but abandons this argument reveals how deeply misleading it was for the government to omit any mention of the witness's actual, exculpatory grand jury testimony from its prior filings. And given the government's new concession that the bribery allegation is not material to the Monitoring

6

Condition, it is difficult to imagine why the government would raise it at all except as an improper attempt to malign Mr. Goldstein on the public docket.

The government halfheartedly attempts to defend its conduct by suggesting that its prior filings simply proffered the "key facts," and allowed the parties to argue the significance of those facts to the Magistrate Judge and the Court. *See* Opp. Mot. Compel 5-6. That description of events would be more credible if the government's prior filings had disclosed the exculpatory grand jury testimony, which (obviously) only the government and not the defense knew. Thus, the government's assurance that "[t]his issue concerns *Defendant's* interactions with the witness, so Defendant can proffer whatever justifications he likes, as he already has," *id.* at 6, ignores the fact that until the defense filed its motion to compel production of the witness's grand jury transcript, the defense was not aware that the witness had offered testimony before the grand jury that was completely inconsistent with the government's representations to the Court.

The government's attempts to minimize the significance of the witness's testimony are thoroughly unpersuasive. Thus, the government says that "the absence of a specific request not to cooperate does little to undermine" the government's "strong inference" that Mr. Goldstein "was attempting to influence the witness." *Id.* at 11. In fact, the witness's testimony thoroughly undermines the government's so-called "strong inference," as made plain by the fact that the government is no longer asking the Court to rely on it. The "inference" that Mr. Goldstein was attempting to influence a witness to obstruct the investigation without saying or even suggesting to the witness that the witness do *anything* to interfere with the investigation is just implausible.

That is particularly the case because, contrary to the government's repeated protestations, Mr. Goldstein had a perfectly innocent and ordinary reason to offer the cryptocurrency: to pay a retention bonus to incentivize the employee to remain with the firm. If the witness had testified

the opposite—that Mr. Goldstein did suggest that the witness not assist in the investigation—the defense is quite sure that testimony would have featured prominently in the government's prior filings. Indeed, it appears that the grievous damage that the witness's testimony does to the government's "strong inference" is precisely the reason the government was not candid with the Magistrate Judge or the Court about this testimony in the first place.

The government's lack of candor on this issue is part of a broader pattern of misleading statements and omissions in the litigation over Mr. Goldstein's release conditions. On the day of Mr. Goldstein's arrest, the government successfully persuaded the Magistrate Judge to detain Mr. Goldstein without an evidentiary hearing and not to allow Mr. Goldstein even a few minutes to search his phone for messages showing that the government's allegations were false based on the representation that the government would bring any relevant evidence to the Court's attention. The government did not live up to that promise. As discussed in Mr. Goldstein's appeal motion and reply (ECF Nos. 81 & 88), the government:

- withheld from the Magistrate Judge the full set of messages between Mr. Goldstein and the Seller, which strongly undercut the government's theory that Mr. Goldstein owned the two cryptocurrency wallets in question;

- withheld from the Magistrate Judge the full transaction history of the 935B wallet showing that the recent transactions were consistent with a broader pattern of activity predating this case;

- withheld from the Magistrate Judge messages from Mr. Goldstein's phone establishing that he did not own the wallets in question until the defense threatened to bring them to the Court's attention, and even then withholding the defense explanation of the significance of the messages; and

- made a series of misleading statements to the Magistrate Judge about Mr. Goldstein's "use" of the wallets.

The government's recent filings make no meaningful attempt to defend this conduct, and its opposition to the defense's grand jury motion reveals that its obstruction allegations are just more of the same. This pattern of misleading statements in the government's release condition filings is not consistent with the government's duty of candor to this Court.

## B.   THE GOVERNMENT'S FILINGS VIOLATE RULE 6(E).

The meritless obstruction allegation also violates the grand jury secrecy provisions of Federal Rule of Criminal Procedure 6(e). Rule 6(e)(2)(B) provides that, subject to certain limited exceptions not applicable here, "an attorney for the government" must not "disclose a matter occurring before the grand jury."[2] Here, the government publicly disclosed the substance of a witness's grand jury testimony concerning Mr. Goldstein's offer of cryptocurrency in public filings related to Mr. Goldstein's release conditions, without this Court's permission – indeed, while strenuously arguing that the Court should never grant permission in these circumstances. The government's opposition to the defense's emergency motion for release referenced (and mischaracterized) the witness's "sworn testimony" on this issue. Its opposition to the defense motion seeking release of the transcript described that testimony in significant detail. Indeed, the government put the witness's name on the public docket through a notice of hearing, until the witness's counsel sought its urgent removal. *See* Exhibit A. The government's opposition

---

[2]    One of Rule 6(e)'s narrow exceptions to the rule of grand jury secrecy allows disclosure of grand jury material "to an attorney for the government for use in performing that attorney's duty." Fed. R. Crim. P. 6(e)(3)(A)(i). This provision has been interpreted by some courts to permit government attorneys to use grand jury material to prepare for trial. *See* Wright & Miller, 1 Fed. Prac. & Proc. Crim. § 108 (5th ed.). The defense is not aware of any authority to support the proposition that this provision allows the government to publicly disclose a witness's grand jury testimony in a filing concerning release conditions.

discusses at length the importance of the rule of grand jury secrecy in this context. Opp. Mot. Compel 11-13. Yet its own filings appear to have violated this rule.

### C. <u>THE GOVERNMENT'S OPPOSITION RELIES ON ANOTHER FALSE ALLEGATION.</u>

The government attempts to buttress its position by offering a theory as to why Mr. Goldstein would have wanted the firm manager not to cooperate with the investigation. It "proffers," that Mr. Goldstein "'hired' and placed on the law firm's healthcare four women with whom he had or was pursuing personal relationships, when those women did little to no work." Opp. Mot. Compel 6. The government alleges that Mr. Goldstein attempted to bribe the witness because, as firm office manager, the witness was "involved with and had knowledge about the firm's finances and healthcare." *Id*. In support, the government cites only the Indictment's allegation that these were "not bona fide employees," *see* ECF No. 1, ¶ 56(b), not actual evidence. The government's opposition seriously misrepresents the facts.

In fact, as the government well knows, three of the employees at issue *did perform significant work for the firm*. One of them (Employee 1) worked on a contract basis starting in December 2017, then full-time in February and March 2018. Employee 1 did extensive marketing and business development work arising from an important Supreme Court antitrust case. The work included identifying retail industries with large credit volumes, compiling a database of potential targets for firm outreach, researching the companies' general counsels, and preparing a marketing strategy. For this work, Employee 1 was paid a total of $7,312.50 by the firm in 2018. Documents showing Employee 1's work on these projects are attached as Exhibit B; the defense will present additional evidence of this employee's work in its forthcoming motions.

Another of the employees (Employee 2) worked for the firm from April 20 to July 13, 2018. Employee 2 was hired to finish Employee 1's work on the marketing project after Employee 1 left the firm for medical reasons. Employee 2 expanded on Employee 1's work, researching, collecting, and organizing materials on the general counsels of the targeted businesses, and creating materials for meetings with the targeted businesses. Employee 2's work concluded when the Supreme Court issued its decision in the antitrust case with an opinion that eliminated any potential follow-on litigation. Employee 2 left the firm shortly thereafter. Employee 2 received a total of $10,949.50 in income from the firm. Documents showing Employee 2's work on the project are attached as Exhibit C.

Another of the employees (Employee 3) worked part time from April 20 to August 31, 2018. Employee 3 worked on a major Supreme Court copyright case argued by Mr. Goldstein. Employee 3 compiled a comprehensive list of ongoing media coverage related to the case, as well as a database of interested reporters. Employee 3 also identified and subscribed to third-party services to locate contact information for the authors of the articles. Employee 3 left the firm when the project was finished. Employee 3 was paid a total of $8,388.90. Documents showing Employee 3's work on the project are attached as Exhibit D.

The fourth employee (Employee 4) was on the firm payroll for a total of five weeks, and received a total income of $4,320. Contemporaneous emails show that Employee 4 went to the emergency room two days after she was hired, and shortly thereafter she went on unpaid medical leave. When Employee 4 was removed from the payroll, the firm consulted with its benefits management company, which advised that the firm was permitted to keep Employee 4 on the firm's health insurance policy. *See* Exhibit E.

11

These records show that the government's assertion that Mr. Goldstein bribed the office manager not to tell the government about these employees (without ever saying or suggesting so, of course) is absurd. In a forthcoming filing, the defense will describe this evidence in detail and explain why it justifies disclosure of grand jury transcripts on this topic, including relevant witness testimony and the legal instructions to the grand jury on this unprecedented theory of criminal liability. For present purposes, the government's inclusion of this misleading allegation in its opposition, with no reference to the significant documentary evidence in its possession undermining this allegation, further supports the defense request for sanctions.

### D. <u>THE GOVERNMENT'S CONDUCT IS PART OF A BROADER PATTERN.</u>

The defense's serious concerns with the government's lack of candor are significantly reinforced by the government's admission that it made critical false statements in other filings and declarations submitted to the Court. As the defense will explain in a forthcoming pretrial motion, the government *has admitted* that the prosecution and the lead IRS investigator made flatly false statements to the Court as the centerpiece of applications to toll the statute of limitations under 18 U.S.C. § 3292. This pattern is troubling, and as the defense will argue in its forthcoming motions, it raises questions about the candor of the government's presentation of this case to the grand jury and whether the government's tolling applications bear the indicia of reliability required under Section 3292. Because these misrepresentations reinforce the defense's request for sanctions, we briefly summarize them here.

In this case, the government filed multiple requests to extend the statute of limitations for certain offenses under 18 U.S.C. § 3292. That statute permits the government to seek an *ex parte* order suspending the statute of limitations while a request for foreign government assistance with discovery is pending. As the courts have recognized, the government is required to submit a declaration or other evidence bearing indicia of reliability. *See United States v. Jenkins*, 633 F.3d

788, 798 (9th Cir. 2011) (citing *United States v. Trainor*, 376 F.3d 1325, 1331 (11th Cir. 2004)).

As relevant here, several of the government's applications asked the Court to toll the statute of limitations based on requests for records concerning ███████████████. The applications represented that Mr. Goldstein had told investigators that ████████████ ███████████████████████████████████████████ ███████████████. These representations were absolutely critical, because the government sought tolling on the ground that ████████████████████ ██████████. Subsequently, however, the government admitted that the representations were utterly false: ████████████████████████ ███████████████████████████████████. *See* Exhibit F 2 n.1 (government *ex parte* application ██████████████████ ███████████████████████████████████████████ ██████████████████).

These were not incidental errors. They went to the very essence of the Section 3292 applications. And the government was in possession of the documents and information showing that these allegations were false and misleading years before the applications were filed. The defense will explore these and other misrepresentations in the 3292 applications in its forthcoming motions. But because the government has already conceded that these statements in the 3292 applications were false, they should inform the Court's thinking now.

## CONCLUSION

The government's opposition makes clear that its prior representations to the Magistrate Judge and the Court about a supposed effort by Mr. Goldstein to obstruct the investigation were deeply misleading. In fact, the witness testified before the grand jury that Mr. Goldstein never suggested that the witness not assist in the investigation, a fact that the government disclosed

only when faced with the prospect of having to produce the transcript. Having now disclosed this fact about the actual content of the witness's grand jury testimony, the government effectively renders Mr. Goldstein's emergency motion to compel moot. Still, the government's "proffer" in its prior filings on this issue—like its "proffers" about the cryptocurrency wallets—have not been consistent with the duty of candor to the Court. Indeed, in this instance the government appears to have violated the grand jury secrecy provisions of Rule 6(e). The defense respectfully suggests that sanctions are warranted for this conduct.

Respectfully submitted,

/s/ *Jonathan I. Kravis*
_____

Jonathan I. Kravis (*pro hac vice*)
Stephany Reaves (Bar No. 19658)
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue NW, Suite 500E
Washington, DC 20001
(202) 220-1100
Jonathan.Kravis@mto.com
Stephany.Reaves@mto.com

Adeel Mohammadi (*pro hac vice*)
MUNGER, TOLLES & OLSON LLP
350 S. Grand Avenue, 50th Floor
Los Angeles, CA 90071
(213) 683-9100
Adeel.Mohammadi@mto.com

*Attorneys for Defendant Thomas Goldstein*

Dated: March 18, 2025