**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | \* |
| | \* |
| Plaintiff, | \* |
| | \* |
| v. | \* |
| | \*    **CRIMINAL NO. LKG-25-6** |
| **THOMAS C. GOLDSTEIN,** | \* |
| | \* |
| Defendant. | \* |
| | \* |

**DEFENDANT THOMAS C. GOLDSTEIN'S
MOTION TO DISMISS ALLEGATIONS
<u>FOR FAILURE TO ALLEGE AFFIRMATIVE ACT</u>**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION .................................................................................................................1

ARGUMENT.......................................................................................................................2

    1.    The Mischaracterized Transactions .......................................................................2

    2.    The Redirected Payments .......................................................................................5

## **TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*United States v. McGill*,
    964 F.2d 222 (3d Cir. 1992)..................................................................................2, 4, 5

*United States v. Norris*,
    719 F. Supp. 2d 557, 562 (E.D. Pa. 2010) ...........................................................................1

*United States v. Perraud*,
    672 F. Supp. 2d 1328, 1330 (S.D. Fla. 2009) .....................................................................1

*United States v. Romano*,
    938 F.2d 1569 (2d Cir. 1991)..........................................................................................2, 4

**FEDERAL STATUTES**

26 U.S.C. § 6041A(a) & (e)...............................................................................................5

26 U.S.C. § 7201 ................................................................................................................1

**FEDERAL REGULATIONS**

26 C.F.R. 1.6045-5(a)(1).....................................................................................................5

## **INTRODUCTION**

Counts One through Four of the Indictment charge Defendant Thomas C. Goldstein with tax evasion for tax years 2016, 2017, 2018, and 2021 in violation of 26 U.S.C. § 7201. Those charges require the government to prove at least one affirmative act of tax evasion in each tax year. However, two of the theories of tax evasion liability alleged in the Indictment do not meet the legal standard for an affirmative act of tax evasion.

The Indictment alleges that, out of the hundreds of payments made from the firm bank account over a four-year period, a handful were improperly characterized as business expenses rather than personal distributions to Mr. Goldstein. But the Indictment does not allege that Mr. Goldstein himself mischaracterized the transactions, or that he took any step to encourage someone else to do so. The Indictment thus alleges no affirmative act that would support a tax evasion theory of liability for the mischaracterized payments.

The Indictment also alleges that, on three occasions, Mr. Goldstein redirected firm income to his own bank account or to third parties to resolve a personal liability. But the third parties who made these payments were legally obligated to report the payments as income on tax forms submitted to the firm and to the IRS. The Indictment does not allege that Mr. Goldstein took any step to interfere with that reporting obligation. Here again, the Indictment alleges no affirmative act that would support a tax evasion theory of liability.

Because these theories of tax evasion are legally deficient, the government should be precluded from relying on them at trial and the allegations related to those theories should be struck from the Indictment. *See, e.g.*, *United States v. Perraud*, 672 F. Supp. 2d 1328, 1330 (S.D. Fla. 2009) (granting a motion to dismiss "part of" a charged count); *see also United States v. Norris*, 719 F. Supp. 2d 557, 562 (E.D. Pa. 2010) ("A district court may grant a pretrial motion

to dismiss an indictment, or a portion thereof, if the indictment's allegations do not suffice to charge an offense.").

## ARGUMENT

The elements of the crime of tax evasion are: "(1) a substantial tax debt; (2) willfulness; and (3) an affirmative act . . . with the intent to evade or defeat a tax or payment of it." *United States v. Romano*, 938 F.2d 1569, 1571 (2d Cir. 1991). An affirmative act is "anything done to mislead the government or conceal funds to avoid payment of an admitted and accurate deficiency." *United States v. McGill*, 964 F.2d 222, 230 (3d Cir. 1992). It is black letter law that "[o]missions . . . do not satisfy the requirements of [section] 7201." *Id.* at 233. Instead, "the Government must prove a specific act to mislead or conceal." *Id.*

Actions that do not mislead or conceal cannot be used to meet the affirmative act requirement. Thus, in *Romano*, the Second Circuit reversed the defendant's conviction for tax evasion based on the government's failure to prove an affirmative act of evasion. In rejecting the government's argument that the defendant's transportation of currency to Canada met the affirmative act requirement, the court explained that "transportation of currency out of the country, in and of itself, is not a prohibited activity," *Romano*, 938 F.2d at 1572, and therefore could not constitute an affirmative act of evasion, particularly in light of the fact that the defendant had no legal obligation to disclose the money to the IRS "at the time he was trying to transport the money," *id.* at 1573.

Here, the Indictment alleges two theories of tax evasion liability that do not meet this test.

1. <u>The Mischaracterized Transactions</u>

First, the Indictment alleges as an affirmative act of tax evasion that Mr. Goldstein "us[ed] funds and assets of G&R to pay personal gambling debts." ECF No. 1, Count One ¶

2

2(a); Count Two ¶ 2(a); Count Three ¶ 2(a); Count Four ¶ 2(a). In particular, the Indictment alleges that:

- In 2016, Mr. Goldstein caused the firm to make six payments totaling $1,171,600 to pay personal expenses. *Id.* ¶ 32.

- In 2017, Mr. Goldstein caused the firm to make a payment in the amount of $175,000 to pay a personal expense. *Id.* ¶ 46.

- In 2019, Mr. Goldstein caused the firm to make a payment in the amount of $170,000 to pay a personal expense. Id. ¶ 62.

The Indictment does not allege that the affirmative act of tax evasion consisted of Mr. Goldstein using firm funds to pay personal expenses. Nor could it. Mr. Goldstein was the sole owner of Goldstein & Russell ("G&R"), and the government has not contended that there was anything improper about the use of firm funds to pay his personal expenses.

Instead, the Indictment alleges that the affirmative act of tax evasion was the mischaracterization of these transactions as business expenses rather than personal payments. But the Indictment does not allege that Mr. Goldstein *himself* mischaracterized the transactions in the firm's financial records, tax returns, or anywhere else. Nor does the Indictment allege that he took any affirmative step to cause someone else to mischaracterize the transactions. The Indictment does not allege, for example, that Mr. Goldstein told an office manager or an accountant to characterize any of the payments at issue as a business expense. For several of the charged transactions, Mr. Goldstein did not even instruct the office manager to make the payment from the firm account. Rather, Mr. Goldstein simply told the office manager to make the payment and the office manager *assumed* that Mr. Goldstein intended the payment to come from the firm account.

Indeed, the Indictment does not allege a single instance in which Mr. Goldstein instructed an office manager or accountant to mischaracterize a personal expenditure as a business expense.

3

On the contrary, the evidence will show that Mr. Goldstein frequently specifically instructed the firm office managers to characterize personal expenditures as such, even when the correct characterization of the payment resulted in adverse tax consequences for him. That includes other payments to the counterparties who received the payments listed above that Mr. Goldstein instructed the office managers to characterize as personal expenditures. Out of that long history of correctly characterized personal payments, the government has cherrypicked a few clerical errors and charged them as a crime.

But without the allegation that Mr. Goldstein affirmatively instructed the office managers to mischaracterize the transactions, there is no "affirmative act" of tax evasion. The mere instruction to the office managers to pay a personal expense, or even to pay a personal expense from the firm account, "in and of itself, is not a prohibited activity." *Romano*, 938 F.2d at 1572. And the allegation that Mr. Goldstein did not specifically instruct the office managers to characterize the payments as personal expenses is merely an omission that cannot satisfy the affirmative act requirement. *McGill*, 964 F.2d at 230.

The only allegation related to this theory of liability that even remotely approaches an affirmative act is the allegation that Mr. Goldstein did not respond to an email from the firm office manager in December 2016 attaching a spreadsheet that included some of the mischaracterized payments. ECF No. 1, ¶ 32. As a factual matter, the government's contention that this allegation demonstrates Mr. Goldstein's knowledge of the mischaracterized payments is highly implausible. The defense is aware of no evidence that Mr. Goldstein actually reviewed this spreadsheet, and the likeliest inference is that he simply missed this email, which was sent over the Christmas holidays. But for purposes of this motion, Mr. Goldstein's receipt of this

4

email does not constitute an affirmative act for tax evasion purposes.  At worst, it is a mere omission.

    2.    <u>The Redirected Payments</u>

Second, the Indictment alleges as an affirmative act of tax evasion that on several occasions Mr. Goldstein "divert[ed] G&R fees" either "to his personal bank account" or "to a third party to pay personal gambling debts."  ECF No. 1, Count Two ¶ 2(b); *id.* Count Three ¶ 2(c); *id.* Count Four ¶ 2(b).  In particular, the Indictment alleges that:

- In 2017, Mr. Goldstein asked Law Firm 1 to send $250,000 in legal fees owed to G&R to his personal bank account.  *Id.* ¶ 42.

- In 2018, Mr. Goldstein asked Law Firm 2 to cancel a $125,000 debt that Mr. Goldstein owed to a member of Law Firm 2 in exchange for G&R cancelling $125,000 that Law Firm 2 owed G&R in legal fees.

- In 2021, Mr. Goldstein asked "Actor" to send $500,000 in legal fees owed to G&R to California Businessman 3 to pay a personal debt that Mr. Goldstein owed California Businessman 3.

But here again there is no affirmative act.  There is nothing improper about the request to send the funds to a destination other than the firm's bank account.  And the allegation that Mr. Goldstein gave those instructions with the intent to evade taxes is legally incoherent.  The third parties that made the payments were required by law to file a Form 1099-NEC with G&R and with the IRS reporting the full amount that the third parties paid G&R, regardless of where the funds were sent.  IRS regulations provide (with exceptions not applicable here) that a business that "makes payments aggregating $600 or more during a calendar year to an attorney in connection with legal services . . . must file an information return for such payments." 26 C.F.R. 1.6045-5(a)(1). The payor must then "furnish to the attorney a written statement of the information required to be shown on the return." *Id.* -5(a)(3); *see also* 26 U.S.C. § 6041A(a) & (e) (statutory authority); IRS Instructions for Form 1099-NEC, IRS (Apr. 2025),

5

https://www.irs.gov/instructions/i1099mec ("File Form 1099-NEC, Nonemployee Compensation, for each person in the course of your business to whom you have paid the following during the year. At least $600 in: . . . Payments to an attorney."). The Indictment itself concedes that submitting the form is legally required. ECF No. 1, ¶ 23 ("A form 1099 was an IRS form that listed how much nonemployee compensation a taxpayer was paid during the tax year by a third party, such as a business or a person. Nonemployee compensation, generally above a threshold amount, . . . was required to be reported on Form 1099 . . . .").

The Indictment does not allege that Mr. Goldstein took any affirmative step to interfere with this reporting obligation. There is no allegation, for example, that Mr. Goldstein asked the third parties not to submit a Form 1099-NEC, or that he told the office managers not to send those forms to the firm accountants.

Indeed, one of the third parties, Law Firm 1, *did* send G&R a Form 1099-NEC that appears to have included the legal fees paid to Mr. Goldstein's personal account, as required by law. This income was nevertheless not reported because the firm's outside accountants erroneously *ignored* this document and instead improperly relied entirely on the firm's bank statements to calculate income. The Indictment does not allege that Mr. Goldstein was aware of any of this.

Without an allegation that Mr. Goldstein affirmatively attempted to interfere with the Form 1099-NEC reporting process, there is no affirmative act that would support a charge of tax evasion on this theory.

## **CONCLUSION**

The crime of tax evasion requires proof of an affirmative act. The government's "mischaracterized transactions" and "redirected income" theories of tax evasion do not meet this requirement. Therefore, the government should not be permitted to rely on those theories at trial.

Respectfully submitted,

*/s/ Jonathan I. Kravis*
Jonathan I. Kravis (Bar No. 31556)
Stephany Reaves (Bar No. 19658)
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue NW, Suite 500E
Washington, DC 20001
(202) 220-1100
Jonathan.Kravis@mto.com
Stephany.Reaves@mto.com

Adeel Mohammadi (pro hac vice)
MUNGER, TOLLES & OLSON LLP
350 S. Grand Avenue, 50th Floor
Los Angeles, CA 90071
(213) 683-9100
Adeel.Mohammadi@mto.com

*Attorneys for Defendant Thomas Goldstein*

Dated: May 16, 2025