**Exhibit N**



U.S. Department of Justice

Tax Division
*Northern Criminal Enforcement Section*
*150 M St. N.E.*
*Washington, D.C. 20002*

DJ 5-35-12713
CMN 2020200389

May 16, 2025

**VIA EMAIL**

Jonathan Kravis
Munger, Tolles & Olson LLP
████████████████████████████
████████████
████████████████

      Re:    United States v. Thomas C. Goldstein (8:25-cr-0006-LKG)

Dear Counsel:

      We write in response to your May 12, 2025 letter, which requested information and posed questions concerning the Government's prior discovery disclosures and correspondence. Where possible, in a good faith effort to address your requests, we have provided additional information and answered your questions. For example, we are attaching to the cover email a table summarizing certain transactions referenced in your letter. Below, we will address your requests in turn.

      **1. Witness statements and grand jury materials**

      Your letter repeats prior requests that the Government produce "(1) grand jury testimony and exhibits; (2) notes of witness interviews; and (3) the IRS Special Agent Report, to the extent they include statements of any of the witnesses that you have already identified under *Brady*." (Pages 1-2.)

      As you know, pursuant to Rule 16, the Government has produced approximately 124,000 documents along with corresponding indices and metadata. Pursuant to *Brady*, the Government has disclosed potentially exculpatory information from prior statements given by 33 different potential witnesses, and the entirety of prior statements—including sworn testimony where available—for 5 additional potential witnesses. The Government has in good faith addressed Defendant's myriad requests for additional information and clarifications, including by explaining that the format of its *Brady* disclosures conforms with the "prevailing view" among federal courts. *See United States v. Berchtold*, No. 1:21-CR-39, 2024 WL 2834056, at *10-11 (W.D. Pa. June 3,

2024); *Rivera v. United States*, 494 F. Supp. 2d 383, 387 (E.D. Va. 2007). Further, the Government repeatedly has committed to making rolling, supplemental productions of materials covered by Rule 16 or *Brady*, and to produce *Giglio* and Jencks Act materials in accordance with applicable law, the Court's Pretrial Scheduling Order, and the typical practice in the District of Maryland. For example, the Government committed in its May 9, 2025 letter to produce the IRS-CI Special Agent Report if its author is a trial witness. In sum, the Government has satisfied and will continue to satisfy its discovery obligations.

The Government declines to breach grand jury secrecy or produce non-discoverable material at this time. As we have previously explained, your invocation of *Brady* to compel discovery productions is improper. *See, e.g.*, *United States v. Caro*, 597 F.3d 608, 619 (4th Cir. 2010) ("We have often noted that *Brady* requests cannot be used as discovery devices."); *United States v. Wolf*, 860 F.3d 175, 192–93 (4th Cir. 2017) (same); *United States v. Woods*, 515 F. App'x 222, 223 (4th Cir. 2013) (same).

In your letter. you stated that the defense is concerned that the conduct of the investigation prejudiced the grand jury and that the grand jury returned an indictment based on incorrect instructions to justify your request for the materials. That is sheer speculation of the type the Fourth Circuit has repeatedly rejected. *See, e.g.*, *Wolf*, 860 F.3d at 192–93 (rejecting attempt "to use *Brady* to engage in a post-trial fishing expedition for material evidence.); *Woods*, 515 F. App'x at 223 ("Woods can only speculate as to what the requested information might reveal and thus cannot satisfy *Brady*'s requirements that the information be favorable to him and material to his guilt or punishment."); *see also United States v. Ducore*, 309 F. Supp. 3d 436, 438 (E.D. Va. 2018) ("[T]he Fourth Circuit has held that where, as here, a defendant [']can only speculate as to what the requested information might reveal' she 'cannot satisfy *Brady*'s requirement of showing the requested evidence would be favorable to the accused.'") (quoting *Caro*, 597 F.3d at 615).

Moreover, the cases cited in your letter illustrate why your requests for grand jury materials are impermissibly overbroad and speculative. For example, your letter cites *United States v. Mahoney*, 495 F. Supp. 1270 (E.D. Pa. 1980), for the proposition that courts may "order[] disclosure [of grand jury materials] where the indictment may have been affected by possible misconduct or a misleading presentation." (Page 2.) However, in *Mahoney*, grand jury transcripts were disclosed by the court based on a specific question as to the accuracy of summaries provided by the prosecutor to a second grand jury, based on grand jury records the defendant had seen. *See Mahoney*, 495 F. Supp. at 1273–77. In a passage not cited by your letter, the court in *Mahoney* emphasized that "mere speculation that there was . . . prosecutorial abuse in the grand jury proceedings is not enough to justify disclosure," and "grand jury deliberation should not be opened solely for discovery purposes." *Id.* at 1273. Similarly, in *United States v. Stevens*, a "brief excerpt" from the grand jury proceedings was disclosed to the defendant after *in camera* review when a specific legal instruction had been identified as potentially erroneous. 771 F. Supp. 2d 556, 564-65 (D. Md. 2011). Your speculative requests fall outside of the established law in the Fourth Circuit and in the cases you cite.

Similarly, *United States v. King*, 628 F.3d 693 (4th Cir. 2011)—which you also invoke—shows precisely why you are not entitled to all testimony at this juncture. Notably, your letter omits language from *King* requiring that defendants "identify the requested confidential material **with some degree of specificity**," *id.* at 703 (quoting *United States v. Trevino*, 89 F.3d 187, 189

- 2 -

(4th Cir. 1996) (emphasis added)).  Without specifying any withheld potentially exculpatory material at all for many witnesses, you nonetheless seek disclosure *en masse* of *all* witness testimony and statements.  This does not meet the level of specificity required by *King*.  Moreover, the Government has already provided the substance of all *Brady* material and addressed your specific questions that went well beyond *Brady*, so nothing has been withheld that would merit *in camera* review (let alone production) under *King*.

Nor does your sweeping request meet the "particularized need" standard under Rule 6(e).  If it were true that criminal defendants could gain on-demand access to all prior statements by all potential witnesses—regardless of whether the statements are exculpatory or whether the witnesses will testify at trial—based on the speculative possibility that they could help attack an indictment, it would seriously undermine Rule 6(e) and the Jencks Act.[1]  It also would upend long-accepted practices for criminal discovery across the country, including in the District of Maryland.

Although you are correct that "the defense has no power to compel these potential witnesses' testimony prior to trial" (page 1), the Government understands that Defendant has paid legal fees for many potential witnesses and may have entered joint-defense agreements with certain potential witnesses.  With that context, it strains credulity to suggest that Defendant and his counsel are ignorant of what those potential witnesses have told the Government or the grand jury.  Indeed, Defendant was able to recite in a pretrial motion the exact date on which a potential witness produced documents to the Government.  *See* ECF 116 at 17 n.5.  Moreover, the defense has access to Defendant, the approximately 124,000 documents along with corresponding indices and metadata that have been produced, potentially exculpatory information from prior statements given by 33 different potential witnesses, and the entirety of prior statements—including sworn testimony where available—for 5 additional potential witnesses.  Therefore, even putting aside Defendant's inability to subpoena potential witnesses before trial, he has ample opportunity to understand the facts of the case and to prepare his defense.

2. **Statute of limitations**

Your letter requests that the Government "produce its calculation of the applicable statute of limitations for the 2016 charges."  (Page 2.)  It is an affirmative defense to argue that criminal charges are untimely and barred by the statute of limitations.  *See Handy v. United States*, No. CIV. AW-09-2011, 2010 WL 3086350, at *2 (D. Md. Aug. 6, 2010) (arguments based on 18 U.S.C. § 3282(a) are affirmative defenses); *United States v. Levine*, 249 F. Supp. 3d 732, 738 (S.D.N.Y. 2017) (analyzing arguments based on 26 U.S.C. § 6531 as affirmative defenses).  Therefore, "the Government need not have alleged in the Indictment facts that would defeat an affirmative defense based on the statute of limitations."  *Levine*, 249 F. Supp. 3d at 738 (denying motion to dismiss based on § 6531 where Government "assert[ed] that it w[ould] prove at trial that

---

[1] The request for disclosure of all prior witness statements regardless of whether they will testify at trial contradicts the plain language of the Jencks Act, which makes clear that disclosure is required only for trial witnesses, and cases interpreting the Jencks Act, which explain that the law's purpose "is to make any existing prior statement of a government witness ***concerning matters covered by direct examination*** equally available to the defense and the prosecution," *see United States v. Snow*, 537 F.2d 1166, 1168 (4th Cir. 1976) (emphasis added); *see id.* (holding "[t]he statement of one grand jury witness . . . was clearly not within the scope of the Jencks Act since [they] did not testify at [the] trial").

[defendant] was out of the country" for enough time to "render the charge timely"); *see United States v. Sisson*, 399 U.S. 267, 287 (1970) ("It has never been thought that an indictment, in order to be sufficient, need anticipate affirmative defenses."). Relatedly, "a pre-trial motion to dismiss [based on the statute of limitations] is premature if the indictment is facially sufficient and the defendant's argument in favor of dismissal requires a determination of factual issues." *United States v. Kogan*, 283 F. Supp. 3d 127, 134 (S.D.N.Y. 2017). Such a defense "must be asserted [at] the trial by the defendant in criminal cases." *United States v. Matzkin*, 14 F.3d 1014, 1017 (4th Cir. 1994) (quoting *Biddinger v. Commissioner of Police*, 245 U.S. 128, 135 (1917)). If or when the defense is asserted at trial, the Government will present to the jury its calculations—based on evidence already disclosed to Defendant—establishing that the charges are timely.

Nonetheless, as part of our continued good faith effort to respond to your inquiries, the Government can confirm that the charges related to the 2016 tax year are timely. As we previously have informed you, there are two types of tolling that render the charges timely.

First, the statute of limitations for criminal tax charges is tolled while the Defendant is outside the United States. 26 U.S.C. § 6531 ("The time during which the person committing any of the various offenses arising under the internal revenue laws is outside the United States . . . shall not be taken as any part of the time limited by law for the commencement of such proceedings."). Defendant has spent hundreds of days outside the United States since the applicable statutes of limitations began to run in 2017. Pursuant to Rule 16, the Government has produced extensive documentation, including travel records, customs entry and exit records, bank and credit card records, and communications substantiating the time Defendant spent outside the United States. The Government also has produced information from the Federal Aviation Administration summarizing Defendant's international travel since 2017, including the dates and (where available) the times when Defendant left or entered United States airspace. *See* PROD-USA-0344277. Defendant's out-of-country travel tolled the statute of limitations for his 2016 tax offenses through and beyond April 5, 2024.

Second, the statute of limitations is tolled while official requests for foreign assistance are pending. 18 U.S.C. § 3292(b) ("[A] period of suspension under this section shall begin on the date on which the official request is made and end on the date on which the foreign court or authority takes final action on the request"). On April 5, 2024, the Government transmitted an official request for assistance to Montenegro, and subsequently sought and received an order from the Court tolling the statute of limitations while that request was pending. *See* PROD-USA-0341409 (5/7/2024 Tolling Order). The Government received a response from Montenegro on June 17, 2024, but it was materially incomplete in multiple ways. *See* PROD-USA-0341414 at -415-16 (7/22/2024 *Ex Parte* Application to Extend). On July 19, 2024, the Government transmitted to Montenegro a written communication explaining the deficiencies in its initial response. *See id.* at -417. The Government subsequently sought and received an order from the Court confirming that Montenegro had not taken "final action" on the April 5, 2024 request, and extending the suspension of the statute of limitations until such action was taken. *See* PROD-USA-0341448 (7/23/2024 Tolling Order). Montenegro did not respond to the July 19, 2024 communication until March 5,

2025—more than a month after the Indictment was returned on January 16, 2025.[2] *See* 3/14/2025 Letter from DOJ to Defense at 2. Therefore, the Government's official requests for assistance to Montenegro tolled the statutes of limitation from April 5, 2024, through the date of the Indictment (at the earliest).[3]

### 3. Poker transactions

Your letter requests that the Government "identify the *net* transactions . . . compris[ing] Mr. Goldstein's gambling income for 2016, 2019, and 2020." (Page 2 (emphasis in original).) Regarding 2019 and 2020, the Indictment does not allege that Defendant was a net gambling winner in those years; the Indictment merely alleges that Defendant willfully failed to report his gross gambling winnings in those years. *See* ECF 1 ¶¶ 67, 72.

Regarding 2016, the Indictment alleges that Defendant's gambling winnings exceeded $17.5 million. *See id.* ¶ 36. The summary table disclosed by the Government on May 8, 2025 listed specific financial transactions underlying many of those 2016 winnings (including payments Defendant made to third parties who staked or "had a piece" of Defendant in games he won). In response to your instant request concerning Defendant's net winnings in 2016, Defendant lost approximately $12 million playing poker that year, and accordingly the Government will prove at trial that Defendant's net gambling winnings for 2016 was more than $5 million.

Ultimately, however, the Government's burden is to prove that Defendant's 2016 tax return was materially false, and/or that it gave rise to a substantial tax due and owing. The Government is not required to prove—nor must the Indictment state—the precise amount of income that Defendant failed to report. *See United States v. Davis*, 369 F. App'x 456, 458 (4th Cir. 2010) ("Because the Government was not required to allege or prove the precise amount of additional tax due and owing at trial . . . we find that an exact amount was not required to be set forth in the indictment.") (internal citation omitted); *United States v. Tarwater*, 308 F.3d 494, 504 (6th Cir. 2002) ("Section 7206 is a perjury statute that criminalizes lying on any document filed with the IRS. It does not require the prosecution to prove the existence of a tax deficiency, exact amounts of unreported receipts or income, or an intent to evade taxes."). Therefore, the Government's additional, voluntary disclosures of amounts that Defendant won or lost in 2016 (whether in this letter or the May 8, 2025 letter and attachment) are made out of an abundance of caution and as part of our continued good faith efforts to respond to your requests. The Government's disclosure of this information is not a bill of particulars pursuant to Federal Rule of Criminal Procedure 7(f), and should not be construed as such.

---

[2] The Government's position is that Montenegro's March 5, 2025 response is insufficient and therefore Montenegro still has not taken "final action" on the official requests for assistance.

[3] Although not necessary to establish the timeliness of the 2016 charges, the Government's official requests for assistance to China and Hong Kong likewise tolled the statute of limitations from May 21, 2024 (when the requests were transmitted) through September 23, 2024 (when China's response was received) and January 21, 2025 (when Hong Kong's response was received). *See* PROD-USA-0341367 (8/5/2024 Tolling Order); 3/14/2025 Letter from DOJ to Defense at 2.

### 4. Wire information

Your letter requests details concerning certain wire transfers referenced in paragraph 31 of the Indictment. (Page 2.) Although the Government is not obligated to provide a response to this request—including because bank records concerning those wire transfers already were produced by the Government pursuant to Rule 16—we are disclosing as an attachment to the cover email a table (titled "2025.05.16 - Firm Wires Disclosure") summarizing the relevant transactions.

### 5. Firm employees

Your letter requests that the Government clarify certain allegations concerning G&R's payments to or on behalf of women with whom Defendant was having or pursuing intimate relations. (Page 3.) As noted above regarding your request for Defendant's net gambling winnings in 2016, the Government will not be required at trial to prove—nor must the Indictment state—the precise amount of income that Defendant or G&R failed to report in 2018 as a result of improperly deducting such payments as business expenses. *See Davis*, 369 F. App'x at 458; *Tarwater*, 308 F.3d at 504. Instead, the Government is required only to prove that by deducting the payments, Defendant's and G&R's tax returns were materially false and/or gave rise to a substantial tax due and owing. The Government will carry that burden at trial. The Government has complied with its discovery obligations under Rule 16 and *Brady* to provide you information and evidence regarding these allegations.

### 6. Limitations in the Government's productions

Your letter requests that the Government "clarify whether there are any materials the defense has requested that are in the government's possession, but that the government refuses to produce under the theory that it is not obligated to do so." (Page 3.) You specifically seek identification of additional, undisclosed documents responsive to your prior requests for "documents concerning particular allegations" and "all applications (including supporting affidavits) and Orders to any tribunal sought or obtained by the government related to the investigation of Mr. Goldstein."

Regarding the former, the Government is unaware of additional, undisclosed documents responsive to the bullets comprising that request. *See* 2/17/2025 Letter from Defense to DOJ at 7-10.

Regarding the latter, the Government can confirm that it made sealed, *ex parte* applications to the Court on two additional occasions. First, the Government applied for and received an order pursuant to 18 U.S.C. § 2703(d) for email header data from GRF, and produced the responsive information to Defendant in February 2025. Second, the Government applied for and received authorization under 28 U.S.C. § 1783 to serve a subpoena on a United States resident located abroad—that is, in Mexico. The Government understands that Defendant was made aware of that subpoena shortly after it was served on the potential witness. The Government has not produced these sealed applications or the corresponding orders because doing so is not required by Rule 16 or *Brady*. Moreover, Defendant did not have, and does not have today, standing to oppose such applications, which were properly made *ex parte*.

Regarding both requests, to the extent that witness statements are responsive, potentially exculpatory statements have been disclosed pursuant to *Brady*. Otherwise, the Government stands by its commitment to produce the entirety of prior statements by trial witnesses pursuant to the Jencks Act and in accordance with the Court's Pretrial Scheduling Order.

**7. "Tactical Advantage"**

Your letter alleges that the Government is "attempt[ting] to maintain a tactical advantage" through its approach to disclosure of materials pursuant to *Giglio* and the Jencks Act. We respectfully disagree. The Government will disclose such materials in accordance with applicable law, the Court's Pretrial Scheduling Order, and the typical practice in the District of Maryland. The Government will continue to abide by its discovery obligations, and to respond in good faith to Defendant's requests for clarifications (as we have done here by voluntarily disclosing additional information).

*   *   *

Please do not hesitate to contact us if you have any questions.

Very truly yours,

/s/ *Stanley J. Okula, Jr.*
Stanley J. Okula, Jr.
Senior Litigation Counsel
Department of Justice—Tax Division

Emerson Gordon-Marvin
Hayter Whitman
Trial Attorneys
Department of Justice—Tax Division

Patrick D. Kibbe
Assistant United States Attorney
District of Maryland