# Exhibit 3A



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | |
|---|---|
| IN RE POSSIBLE VIOLATIONS OF<br>18 U.S.C. §§ 371, 1001, 1014, 1343, 1347;<br>26 U.S.C. §§ 7201, 7203, 7206, 7212; 31<br>U.S.C. §§ 5314, 5322 | Misc. No. _24-mc-239_<br><br>FILED EX PARTE & UNDER SEAL<br><br>USDC- GREENBELT<br>'24 JUL 26 PM12:18 |

### *EX PARTE* APPLICATION TO EXTEND THE
### SUSPENSION OF THE STATUTES OF LIMITATIONS

This Court previously granted the government's *ex parte* application, under 18 U.S.C. § 3292, to suspend the running of the statutes of limitations for offenses arising out of the grand jury's investigation of Thomas Che Goldstein ("Goldstein"). Ex. A (May 7, 2024 Order). That application was based on an official request to Montenegro (the "Official Request"), transmitted on April 5, 2024, for assistance in obtaining bank records of a Malaysian national who had transferred millions of dollars to Goldstein between 2016 and 2018. Although the government has since received a response from Montenegro, the response is materially incomplete and has required further discussions with Montenegro about supplementing the incomplete response. Accordingly, pursuant to this application and the facts set forth in the accompanying Declaration of IRS-CI Special Agent Andrew Accardi (attached as Ex. C), the government respectfully requests that the Court extend the suspension of the statutes of limitations until a complete response is received.

### Background

The underlying investigation, and the bases for and specifics of the Official Request to Montenegro, were explained in the government's initial application and supporting exhibits, *see* Ex. B (May 6, 2024, Submission). That background is expressly incorporated here by reference.

In short, the investigation revealed that Goldstein failed to report as income most[1] of the funds he received from ▓ and failed to report to the IRS the existence of the foreign bank accounts into which the funds were transferred. The Official Request sought records from ▓ accounts at the Montenegro-based Universal Capital Bank AD ("UCB") to further corroborate the extent and nature of the transferred funds, and whether they should have been reported as income. Specifically, the Official Request asked Montenegro to cause UCB to produce "complete copies of records relating to all UCB accounts opened and controlled by ▓." The Official Request further asked that records should include, but not be limited to, various categories of information. These specific categories included, for example, "account statements," records of "all items deposited," "instructions relating to the receipt or transfer of any funds in or out of the account," and "records of wire transfers," including all instructions and authorizations.

On June 17, 2024, the government received a response from Montenegro. The responsive production included documents related to UCB accounts controlled by ▓ including bank statements, wire transfer records, and bank account opening documents and signature cards.

The response, however, was materially incomplete in multiple ways. *First*, the responsive production indicated the existence of at least one other UCB account controlled by ▓ for which no records were produced. That is, documents produced from one of ▓ UCB accounts appear

---

[1] Further review of evidence has shown the government's prior submission, Ex. B, contained three inaccuracies. *First*, the prior application stated that Goldstein told IRS-CI agents that two sets of UCB transfers from ▓ in 2016 and 2018, for a total of over $2 million—were loans. However, Goldstein told agents that the 2018 UCB transfer from ▓ and the more than $950,000 in cash that he received from ▓ that year were loans. Goldstein did not claim that the 2016 UCB transfers were loans. *Second*, the declaration attached to the prior application stated that Goldstein did not report the 2016 or 2018 sets of UCB transfers to the IRS as income. However, further investigation has shown that of the approximately $1,000,000 that Goldstein received from the 2016 set of UCB transfers, he reported as income the $885,000 that he wired to his law firm's U.S. bank account. These corrections do not change the fact that Goldstein failed to report as income roughly $2 million that he received from ▓ either via UCB transfers or cash—during the period under investigation. And these corrections do not change the fact that Goldstein failed to report as income the remainder of the 2016 UCB transfers that he kept at UCB and did not wire to his law firm's bank account. *Third*, the prior declaration also referenced an amicus brief filed by Goldstein's law firm in the United States Supreme Court, but that brief was filed in the United States Court of Appeals for the Fifth Circuit.

to show funds transferred from it to another of ▮ UCB accounts, and yet the other documents produced contain no corresponding record of receipt in another ▮ UCB account. This suggests that Montenegro did not produce information for the account that received the internal UCB transfer, and thus that Montenegro did not produce information for *all* of ▮ UCB bank accounts, as requested. *Second*, Montenegro did not produce information sufficient to determine the meaning of various codes and abbreviations that appear throughout the records that were produced. This undermines the government's ability to review the information produced and demonstrates that Montenegro did not produce complete record related to ▮s accounts because the information that Montenegro did produce is partially in code but Montenegro did not produce the internal UCB manuals or keys that explain that code even though these also constitute "records relating to" ▮ accounts. *Third*, Montenegro did not produce wire transfer requests or invoices related to wire transfers, despite that the prosecution team understands from prior official requests[2] and responsive productions from other sources that UCB often required such documents, and the Official Request specifically asked for all instructions, authorizations, documentation regarding wire transfers. *Fourth*, many of the internal transfers between UCB accounts shown in the records produced by Montenegro were labelled (for example, as loans or gifts), but Montenegro did not produce any of the underlying documentation or communications that led to the labelling of the internal transfers. Thus, Montenegro did not provide a complete response to the government's Official Request for instructions relating to the receipt or transfer of any funds in or out of the account.

---

[2] This understanding is based on documents Montenegro produced in response to an earlier official request, transmitted in or about September 2023, seeking UCB records for accounts controlled by Goldstein.

3

A written communication explaining the above-described deficiencies in Montenegro's initial response and requesting the missing documents was transmitted to Montenegrin officials on July 19, 2024.

Argument

Title 18, United States Code, Section 3292(a)(1) provides:

> Upon application of the United States, filed before return of an indictment, indicating that evidence of an offense is in a foreign country, the district court before which a grand jury is impaneled to investigate the offense shall suspend the running of the statute of limitations for the offense if the court finds by a preponderance of the evidence that an official request has been made for such evidence and that it reasonably appears, or reasonably appeared at the time the request was made, that such evidence is, or was, in such foreign country.

The "period of suspension . . . shall begin on the date on which the official request is made and end on the date on which the foreign court or authority takes final action on the request." 18 U.S.C. § 3292(b). "Final action" does not occur until the foreign country provides an "up or down" response to "each of the items" contained in the official request. *See United States v. Bischel*, 61 F.3d 1429, 1434 (9th Cir. 1995); *United States v. Ratti*, 365 F. Supp. 2d 649, 659-60 (D. Md. 2005) (agreeing with the Ninth Circuit's standard in *Bischel*). In other words, "final action" occurs "when a foreign court or authority provides a dispositive response to each of the items listed in the government's official request." *United States v. Torres*, 318 F.3d 1058, 1065 (11th Cir. 2003). When the government believes that the official response from a foreign government has been nonresponsive or incomplete, the preferred practice is "to request an extension of the suspension period" so that the "district court [can] consider whether a new or supplemental request to the foreign government for additional information is appropriate or whether the original response is truly complete." *Id.*

4

Here, as explained above and in the attached declaration (Ex. C), Montenegro's response to the government's Official Request is lacking in multiple respects. Most notably, the response indicates the existence of at least one additional UCB account controlled by ▇ for which records were not produced. There are also additional categories of documents—e.g., wire transfer requests and invoices—that the prosecution team understands are retained by UCB but were not produced in response to the Official Request. More broadly, there are codes and abbreviations throughout the production that are not defined and that preclude a comprehensive understanding of the records.

Altogether, these gaps have undermined the government's ability to fully investigate the extent and nature of funds transferred from ▇ to Goldstein. The missing information matters, too. For example, if there is another account of ▇ at UCB, records for the account could show additional transfers to or from institutions (e.g., law firms) or individuals (e.g., poker players) that owed Goldstein money and for whom ▇ acted as an intermediary in receiving that money and then transferring it to Goldstein. This would bear on the extent of Goldstein's income and reporting obligations. Similarly, if there is another account of ▇ at UCB, records from that account could reflect other transactions between ▇ and debtors of his or other poker players with whom ▇ exchanged funds, and those transactions would illuminate how ▇ typically transacted with these people—thereby substantiating or undermining Goldstein's claims about the reason for ▇ payments to him. Further, it is possible that there are unproduced records that are exculpatory as to Goldstein, such as documents substantiating that ▇ transfers to Goldstein are loans, which would not need to be reported as income. Regardless of whether the unproduced information supports charging Goldstein or counsels against doing so, the government and grand jury have an interest in gaining a full understanding of ▇ accounts at UCB—which was the point of the Official Request.

5

This incomplete production from Montenegro does not qualify as a "final action" for purposes of 28 U.S.C. § 3292. Without supplementing the production, Montenegro has not provided a "dispositive" "up or down" response to "each of the items" contained in the Official Request. *See Bischel*, 61 F.3d at 1434; *Torres*, 318 F.3d at 1065. In this situation, it is appropriate for the government "to request an extension of the suspension period" so that the "district court [can] consider whether a new or supplemental request to the foreign government for additional information is appropriate or whether the original response is truly complete." *Id.* Here, the government submits that the original request is *not* truly complete, and that the suspension period therefore should be extended. Of course, the government is hopeful that continued consultation with Montenegro will lead to a comprehensive supplemental response that will lay these issues to rest. But until then, under 28 U.S.C. § 3292 and legal authorities interpreting it, the statutes of limitations for offenses arising out of the grand jury's investigation of Goldstein should continue to be suspended.

Respectfully submitted,

Erek L. Barron
United States Attorney

Dated: July 22, 2024

*Patrick D. Kibbe*  Digitally signed by PATRICK KIBBE
Date: 2024.07.22 13:34:17 -04'00'

Patrick D. Kibbe
Assistant United States Attorney
District of Maryland

Stanley J. Okula, Jr.
Senior Litigation Counsel

Hayter Whitman
Emerson Gordon-Marvin
Trial Attorneys
U.S. Department of Justice, Tax Division
950 Pennsylvania Avenue NW
Washington, D.C. 20530
Hayter.Whitman@usdoj.gov
Emerson.Gordon-Marvin@usdoj.gov

I hereby attest and certify on 7/26/24 that the foregoing document is a full, true and correct copy of the original on file in my office and in my legal custody.
CATHERINE M. STAVLAS
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
By _____ Deputy

6