IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **v.** | * | **CRIMINAL NO. LKG-25-6** |
| | * | |
| **THOMAS C. GOLDSTEIN,** | * | |
| | * | |
| **Defendant.** | * | |
| | ******** | |

**DEFENDANT THOMAS C. GOLDSTEIN'S**
**RESPONSE TO THE GOVERNMENT'S MOTION FOR *FARETTA* HEARING**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ...................................................................................................................1

RELEVANT FACTUAL AND PROCEDURAL BACKGROUND .............................................1

ARGUMENT ........................................................................................................................2

     A.    This Court Previously Permitted Hybrid Representation in
           Indistinguishable Circumstances. ...........................................................................3

     B.    The Court Has Discretion To Permit Hybrid Representation, Including For
           Motions Hearings Before The Court........................................................................4

     C.    No Other Legal Principle Precludes Hybrid Representation For The
           Motions Hearings In This Case................................................................................7

     D.    No Practical Considerations Weigh Against Allowing Mr. Goldstein To
           Participate In The Motions Hearings. ....................................................................10

     E.    There Is No Support For The Government's Contention That Mr.
           Goldstein Must Waive His Right To Counsel In Its Entirety If He
           Participates In Oral Argument ...............................................................................11

CONCLUSION ....................................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Gomez v. Schneiter*,
  2005 WL 2250837 (W.D. Wis. Sept. 15, 2005) .......................................................9

*McKaskle v. Wiggins*,
  465 U.S. 168 (1984).................................................................................................5

*NAACP v. Bureau of the Census*,
  945 F.3d 183 (4th Cir. 2019) ..................................................................................4

*United States v. Crouch*,
  758 F. App'x 654 (10th Cir. 2018) ..........................................................................4

*United States v. Lang*,
  527 F.2d 1264 (4th Cir. 1975) .................................................................................8

*United States v. Middleton*,
  2020 WL 2473692 (D. Kan. May 13, 2020)..........................................................6, 7

*United States v. Porter*,
  2022 WL 1547751 (E.D. Mich. May 16, 2022)........................................................6

*United States v. Ramos*,
  21 F.3d 426 (4th Cir. 1994) (table opinion).........................................................5, 9

*United States v. Stile*,
  2013 WL 6389592 (D. Me. Dec. 6, 2013) ...............................................................7

*United States v. West*,
  877 F.2d 281 (4th Cir. 1989) ..................................................................................8

**CONSTITUTIONAL PROVISIONS**

Sixth Amendment ..................................................................................................7, 13

**INTRODUCTION**

Next month, the Court will hold oral argument on the defense's motions to dismiss. Defendant Thomas C. Goldstein was deeply involved in preparing some of those motions. Mr. Goldstein is, by definition, very familiar with the facts of his own case. Mr. Goldstein is also an experienced attorney. He argued, for example, nearly fifty cases before the Supreme Court of the United States over the course of roughly a quarter century. It is fair to say that he is respected as an oral advocate.

The defense believes that it may be most effective for Mr. Goldstein, and helpful to the Court, for Mr. Goldstein to personally present argument on two of the pending motions. Granting this request is within the Court's discretion, and the Government's arguments to the contrary are legally, factually, and practically wrong.

**RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

Before Mr. Goldstein's trial counsel entered an appearance, Mr. Goldstein represented himself. The Magistrate Judge permitted him to do so after conducting a detailed *Faretta* inquiry on the record. *See* ECF No. 43 (*Faretta* order); Feb. 10, 2025 Tr. 7:6-14:6. The Magistrate Judge concluded that Mr. Goldstein had made a knowing waiver of his right to counsel and was capable of representing himself in pre-trial proceedings. *See* Feb. 10, 2025 Tr. 14:7-15:3. The Government agreed with those findings. *Id.* at 15:15-18.

When Mr. Goldstein's trial counsel later entered an appearance, the Magistrate Judge forbade Mr. Goldstein from participating in the case in any respect as his own attorney. *See* Feb. 13, 2025 Tr. 3:8-17. Mr. Goldstein disagreed with that ruling and had requested that this Court grant him leave to participate in oral argument at a Section 3148 detention hearing. *See* ECF No. 44 at 2 n.2 ("If the Court orders a Section 3148 hearing, Mr. Goldstein requests the opportunity to represent himself on a hybrid basis."). At the first hearing before this Court, this Court specifically

1

"invite[d] Mr. Goldstein to be sworn in at the appropriate time in case he wishes to address the Court." *See* Feb. 14, 2025 Tr. 6:8-9. Although Mr. Goldstein did not then avail himself of the opportunity to address the Court directly, on his own behalf, the Court concluded that he was "welcome to do so." *See* Feb. 14, 2025 Tr. 6:8-10.

Mr. Goldstein has now made an indistinguishable request. He has asked the Court to exercise its discretion to allow him to participate in the oral arguments on the pending motions to dismiss. *See, e.g.*, ECF No. 144 at 1-2; ECF No. 149 at 12. The defense broadly made that request for permission with respect to the motions, but the defense is currently considering only the possibility that Mr. Goldstein would argue (1) the motion to invalidate certain orders suspending the statute of limitations (ECF No. 116), which the government combined in its response with the motion to dismiss as barred by the statute of limitations (ECF No. 121); and (2) the motion to dismiss for failure to allege an affirmative action (ECF No. 120). Mr. Goldstein would not participate in the evidentiary hearings requested by the defense. *See* ECF No. 116 at 2 (motion to invalidate certain orders suspending the statute of limitations); ECF No. 119 at 1 (motion to suppress).

## **ARGUMENT**

Although denominated a request for a *Faretta* hearing, the Government's Motion (ECF No. 158) actually argues almost entirely that the Court should categorically forbid Mr. Goldstein from participating in oral argument on the motions pending before the Court. Alternatively, the Government takes the opposite position. It contends that the Court should allow *only* Mr. Goldstein to argue and should categorically forbid his retained counsel (who played the principal role in preparing most of the motions) from participating. Those contentions lack merit.

**A.    This Court Previously Permitted Hybrid Representation in Indistinguishable Circumstances.**

Start with common sense. Mr. Goldstein is best suited to aid the Court in the oral argument addressing the motions with which he is most familiar. He was deeply involved in preparing those motions, and is a skilled advocate. That also is the most efficient approach, given the other motions his retained counsel has filed and are preparing to address. By contrast, Mr. Goldstein would be less well suited to argue the majority of the motions, and is certainly not asking to participate in any examination in an evidentiary hearing.

The Government nonetheless argues that the Magistrate Judge already held that Mr. Goldstein could not engage in hybrid representation, and that he did not file a separate appeal isolating this as a legal issue. Motion at 1. But the Government does not explain why that would be relevant, if it were true. No estoppel or law of the case would prevent this Court from considering the issue now.

But in any event, the Government is wrong. The Magistrate Judge acknowledged that hybrid representation is "a legal issue that can be raised and adjudicated with Judge Griggsby." *See* Feb. 10, 2025 Tr. 16:12-13. And this Court promptly took a different position from Judge Sullivan as to whether Mr. Goldstein would be allowed to speak for himself.  Whereas the Magistrate Judge, again *sua sponte*, ruled that Mr. Goldstein "won't be in a capacity of being an advocate for himself," Feb. 13, 2025 Tr. 3:13-14, the next day *this* Court invited Mr. Goldstein to address the Court directly. *See supra* at 1-2. The Government's assertion that "Goldstein misleads the Court in his replies, suggesting that the Court previously permitted" him to participate, Motion at 3, not only misstates the facts but doubles down with the false accusation that the defense has been inaccurate.  Whether or not it was phrased as hybrid representation, this Court has already

concluded that Mr. Goldstein would not be prohibited from addressing the Court; and instead was "welcome to do so." *See* Feb. 14, 2025 Tr. 6:8-10.

Relatedly, the Government asserts that "this Court has consistently . . . *not* allowed hybrid representation" in this matter. Motion at 3. But as just discussed, the opposite is true. The Government provides record citations that supposedly support its claim without explaining any of them. Each simply cites to the Magistrate Judge's ruling, which was made *sua sponte*, never briefed, and necessarily rejected by this Court's subsequent invitation to Mr. Goldstein to address the Court directly. *See* Feb. 10, 2025 Tr. 15:15-16:11 (citation to the Magistrate Judge's conclusions about hybrid representation, without case law or argument); ECF No. 43 at 2 (citation to the Magistrate Judge's *Faretta* order, again without case law or argument on hybrid representation); ECF No. 64 n.3 (citation to the Magistrate Judge's release order, which noted that district courts are not *required* to permit hybrid representation and that the Magistrate Judge would not allow it).

### B.     The Court Has Discretion To Permit Hybrid Representation, Including For Motions Hearings Before The Court.

The Government next asserts that there is a categorical rule that "hybrid representation is disallowed in this District." Motion at 2. Accepting that representation would be reversible error. *See NAACP v. Bureau of the Census*, 945 F.3d 183, 193 (4th Cir. 2019) ("[A] district court necessarily abuses its discretion when its ruling is based on an erroneous view of the law[.]") (citation and quotation marks omitted); *United States v. Crouch*, 758 F. App'x 654, 655-56 (10th Cir. 2018) ("District courts abuse their discretion if they rely on a mistaken belief that hybrid representation is never allowed."). Unsurprisingly, the Government cites literally *nothing* in support of its sweeping claim; the Motion just rests on a bald assertion. Then the Government

abandons that exact claim two pages later, without acknowledging the contradiction. *See* Motion at 4 ("Whether to preclude hybrid representation is within this Court's discretion . . . .").

The Government is confusing the principle that a defendant "does not have [a] *right* to 'hybrid representation'" (Motion at 3, emphasis added) with the much broader and incorrect claim that hybrid representation is forbidden in all circumstances. In fact, hybrid representation is freely permitted, in the Court's discretion. *See, e.g.*, *United States v. Ramos*, 21 F.3d 426 at *2 (4th Cir. 1994) (table opinion) ("As many courts have noted, a trial judge's decision to permit 'hybrid' representation or a co-counsel structure is well within the district court's discretion, and a court is free to permit or deny such representation in accordance with the individual circumstances of the case."). As just discussed, the Government itself eventually admits that is the rule. Indeed, the Court has the discretion to affirmatively require hybrid representation at trial, over the Defendant's own objection. *See, e.g.*, *McKaskle v. Wiggins*, 465 U.S. 168, 184 (1984).

Alternatively, the Government invokes the general practice in this District to hold that non-attorney litigants who have received appointed counsel may not simultaneously represent themselves at trial. Motion at 3. But the Government then wildly overgeneralizes from cases applying that practice, asserting that they go much further and categorically forbid any form of hybrid representation in any context. No surprise, none of those rulings says any such thing. Instead, all of them involve the distinct context of a non-attorney defendant seeking to co-represent himself in trial proceedings. *See* Motion at 4 (citing cases relating to trial representation). And the Government's brief constantly cites concerns relating to trial participation by *pro se* non-attorney litigants. *See, e.g.*, *id.* at 7 (concluding with this exact argument).

Disfavoring hybrid representation at trial is a sensible exercise of the Court's discretion. And when the Court is exercising its discretion, the facts matter. The Government proceeds on the

assumption that Mr. Goldstein's presentation of oral argument on an already-briefed question of law in which he participated heavily in the researching and drafting raises the identical issues as an ordinary *pro se* litigant's cross-examination of the prosecution's trial witnesses. That is obviously not so. Here, Mr. Goldstein is not seeking to participate as counsel in the trial, which is radically more complicated and which could in theory raise the prospect of jury confusion. But for oral argument on motions before solely the Court, those concerns are not applicable. Nor is Mr. Goldstein seeking to conduct any examination in an evidentiary hearing. Further, unlike almost all *pro se* litigants, Mr. Goldstein is an experienced attorney. His skills directly involve presenting oral argument on legal questions, which is the only posture in which he now seeks to participate.

The Government's contrary position rests on the bald, unexplained assertion that Mr. Goldstein "likely will further demand the right to [participate] . . . at trial." Motion at 2 n.2. But Mr. Goldstein has not "demand[ed]" or asserted a "right" to anything. The defense contends, sensibly, that Mr. Goldstein can help the Court's assessment of motions that he helped prepare, regarding facts he knows well, using his skills as a lawyer.

Even more important, Mr. Goldstein has never suggested that he would seek to participate in the trial. The Government's contrary claim is just made up. (It could easily have asked the defense, but chose fiction instead.) The defense currently plans not to make such a request. If that changed, Mr. Goldstein would make that request of the Court in advance, which would raise an entirely separate set of issues that would be directly relevant to the Court's exercise of its discretion. The Court has the wide discretion to permit Mr. Goldstein to participate in oral argument without suggesting that as a result he may participate as counsel in the trial. *E.g.*, *United States v. Porter*, 2022 WL 1547751 (E.D. Mich. May 16, 2022) (authorizing hybrid representation regarding presentation of four pretrial motions, but not trial); *United States v. Middleton*, 2020 WL

2473692, at *1 n.2 (D. Kan. May 13, 2020) ("Exercising its discretion, the court elects to accept Ms. Middleton's *pro se* motion in this instance and allow hybrid representation for purposes of this motion only."); *United States v. Stile*, 2013 WL 6389592, at *1 (D. Me. Dec. 6, 2013) ("For this limited purpose only, the Court allowed Mr. Stile to proceed with hybrid representation: addressing his pending pro se motions while retaining Mr. Maselli as defense counsel.").

Mr. Goldstein's request also does not present the other principal concern that arises with hybrid representation: that the *pro se* litigant will contradict his counsel, including by pursuing a position with which counsel disagrees. Mr. Goldstein seeks to present oral argument on matters with which he is fully aligned with counsel, and which the defense has already presented in briefs.

## C.    No Other Legal Principle Precludes Hybrid Representation For The Motions Hearings In This Case.

The Government next invokes an irrelevant principle of Sixth Amendment law. It notes that if Mr. Goldstein had invoked a Sixth Amendment right to proceed *pro se*, he could not then also have asserted a constitutional right to appointed counsel or to "any particular 'intermediate accommodation' between th[ose] two options." Motion at 4. Put another way, a criminal defendant does not have the constitutional right *both* to proceed *pro se* and to receive appointed counsel. But that says nothing about the request now before the Court, in which Mr. Goldstein is not invoking *either* right. He is simply trying to help the Court by arguing things he knows well. The Court is free to grant that request in the sensible exercise of its discretion.

Next, the Government asserts that in every instance "a defendant must demonstrate a 'special need' to act as co-counsel." Motion at 4. Here, the special need is that Mr. Goldstein was principally responsible for these specific motions. But in any event, the Government misstates the law. The Fourth Circuit has held that a defendant has the *right* to participate as co-counsel only upon a showing of a special need. In other words, an "abuse of discretion" in denying a defendant's

request to participate occurs only upon a showing of a special need. *See United States v. West*, 877 F.2d 281, 288, 293 (4th Cir. 1989) ("Since Thomas made no showing of some special need to appear as co-counsel, we find no error in the district court's denial of his motion to participate in closing arguments.") (citing *United States v. Lang*, 527 F.2d 1264, 1265 (4th Cir. 1975). "Absent some indication of special need, it is not error to deny such a motion." *Lang*, 527 F.2d at 1265 (collecting cases). No Fourth Circuit decision supports the Government's much broader claim that the defendant's participation is *forbidden*—*i.e.*, that the Court has no discretion—absent a showing of a "special need." Cases applying the "special need" standard moreover overwhelmingly involve requests by the defendant to participate in the trial itself.

In the middle of arguing that hybrid representation is forbidden, the Government finally interjects—albeit very briefly—that before appearing *pro se* Mr. Goldstein must first waive his right to appointed counsel under *Faretta*. Motion at 4. But that already happened. *See supra* at 1. At the Government's request, the Magistrate Judge conducted a thorough inquiry and found the *Faretta* requirements satisfied. *See* Feb. 10, 2025 Tr. 7:6-14:6. On the record, the Government agreed that the inquiry, Mr. Goldstein's statements, and the Magistrate Judge's findings were all adequate. *See id.* at 14:7-15:3; 15:15-18. And the Magistrate Judge followed up with a written order memorializing the inquiry and his findings. ECF No. 43. The Government does not acknowledge that *any* of that already occurred. Nor does it say anything that suggests there was any gap or inadequacy in that prior process and findings. So the Government has left the Court with no way to evaluate (or even understand) its unexplained insistence on yet another *Faretta* hearing. Mr. Goldstein does not object to this Court doing the same thing all over, but there is no reason in law, logic, or the procedural posture of the case that it has to do so.

The Government next asserts that the Court should deny Mr. Goldstein's request to participate because the Government has argued that some of the motions to dismiss present some arguments that "are improper and premature attacks on the sufficiency of evidence or disagreements with the facts alleged in the indictment." Motion at 6. In other words, the Government asserts that because it contends that some arguments in the briefs (which of course were filed by Mr. Goldstein's retained counsel) are premature, Mr. Goldstein should not personally present oral argument on any of them. That is a *non sequitur*; on its face, it says nothing about whether Mr. Goldstein's skills as an advocate and familiarity with the issues will aid the Court. The Government's argument makes as much sense as the Court holding the reverse: that because the defense contends that the Government's briefs incorrectly assert that certain issues should be decided only at trial, the Government's lawyers should all be forbidden from participating in the oral argument at all. Which is to say, it makes no sense at all.

The Government nonetheless contends that "there is a substantial risk that [Mr. Goldstein] will make statements about the evidence and allegations that can be used against him at trial, such that he could later claim, in the context of direct appeals or *habeas corpus* proceedings, that his retained counsel was ineffective." Motion at 6. This is just the impermissible, back-handed argument that *Faretta* is wrongly decided, so this Court should underrule the Supreme Court's decision by rejecting it. It is *always* true that *pro se* litigants can say things that in certain circumstances could be used against them. That is a principal point of *Faretta*, and the knowing waiver that it requires. *Cf. Gomez v. Schneiter*, 2005 WL 2250837, at *8 (W.D. Wis. Sept. 15, 2005) (denying ineffective assistance of counsel claim where *pro se* litigant chose to brief and argue motion, without participation by counsel); *Ramos*, 21 F.3d at *2 (denying claim that the

district court abused discretion by allowing a defendant, after a knowing waiver, to participate as hybrid counsel in his own defense).

If the prospect that the Government raises was sufficient to prohibit hybrid representation, then hybrid representation would be forbidden outright. But the Government admits that is not so. If anything, Mr. Goldstein as an attorney would naturally be *most* aware of the implications of his participation, and therefore allowing him to present argument would be *least* likely to create appellate issues. The only real risk of appellate issue arising would be if the Court were to do what the Government requests: deny the motions to dismiss while forbidding Mr. Goldstein from participating in the oral argument without a substantial justification.

**D.    No Practical Considerations Weigh Against Allowing Mr. Goldstein To Participate In The Motions Hearings.**

The Government next maintains that Mr. Goldstein will do a bad job. Motion at 6-7. That is counterintuitive, and the Government notably ignores the most relevant fact: Mr. Goldstein's experience as an advocate. It instead asserts that Mr. Goldstein supposedly "now seeks to argue eight separate dispositive motions spread across fifteen different defense briefs (that he did not write), where his command of the myriad legal issues presented may be weak (particularly given that he appears to lack prior experience with many of them), and where the experience that Goldstein does have overwhelmingly falls in appellate advocacy." *Id.* The defense agrees with the Government's point that Mr. Goldstein is unfamiliar with the details of an array of legal issues— most importantly, technical tax issues—raised by the case.[1] But Mr. Goldstein has no intention of

---

[1] The Government thus notably stresses that the case raises many issues relating to tax law with which Mr. Goldstein is not familiar. Regardless of whether Mr. Goldstein has educated himself for the purpose of his defense in this case, the Government's admission will matter if the Government later conveniently tries to reverse itself and argue at trial that Mr. Goldstein's experience as an attorney made him uniquely familiar with those legal rules at the time of the alleged conduct.

arguing those points. He does not intend to argue all the motions, and he never indicated otherwise. The defense simply sought to preserve the opportunity for Mr. Goldstein to argue if it later concluded that would best aid the Court. (Yet again, if it mattered, the Government of course could have asked.)

The defense currently contemplates that Mr. Goldstein would only participate with respect to the two motions that he was deeply involved in preparing. *See supra* at 1-2. The Government has thus also made up the further claim that he did not write anything. No response is required to the Government's further contention that because Mr. Goldstein only developed his skills by presenting legal argument dozens of times to the Supreme Court and numerous other courts, he is incompetent to present argument on legal motions in this Court.

### E.    There Is No Support For The Government's Contention That Mr. Goldstein Must Waive His Right To Counsel In Its Entirety If He Participates In Oral Argument

Finally, the Government asserts that if the Court permits Mr. Goldstein to represent himself at the oral argument, "the Court need not—and *should not*—permit retained counsel to be heard during argument on his pretrial motions." Motion at 8. The Government cites no authority for this proposition either. It also makes one's head spin, because it contradicts all the Government's other arguments. Until that late, passing, conclusory sentence, the Government had argued that *only* retained counsel was competent to assist the Court. Just a few paragraphs earlier, the Government had specifically described the prospect of Mr. Goldstein arguing all of the motions—including those he had not prepared—as so utterly unhelpful to the Court that it would obviously be rejected out of hand.

Now suddenly, the Government reverses itself without explanation. The best guess is that the Government is implicitly relying on the claim—which it previously had abandoned (*see supra* at 4-5) but now seems to resuscitate—that hybrid representation is categorically forbidden, rather

11

than permitted as an exercise of the Court's discretion. The Government then seemingly stretches that (admittedly wrong) description of the legal rule even further, to require that if Mr. Goldstein personally participates at all, then his lawyers are forbidden from playing any role. (At some point, the Court should be alarmed by the fact that the Government's Motion depends almost entirely on invented facts, false accusations of dishonesty, inverted legal rules, outright contradictions, and unexplained reversals of itself.)

There is a reason that the Government neither explains its position nor provides any citation in support of it. The argument actually just illustrates once more that there is no such *per se* rule against hybrid representation, because it would be so senseless. It would turn the Court's judgment that Mr. Goldstein can assist in the consideration of two motions into a mandate that the Court spite itself—precluding the Court from hearing from the retained attorneys who are best able to aid the Court's consideration of the other motions, as well as in the evidentiary hearing.

The Government eventually acknowledges Mr. Goldstein's skills as an advocate, but attempts to turn them on their head. In its view, only bad *pro se* litigants should represent themselves. (That is actually the argument.) It contends that "[t]he dangers of hybrid representation are further heightened by generally skillful defendants and attorneys, as here." Motion at 7. But it has no explanation for how or why that could be true in general or would be true here in particular. Courts have obviously not held that the more skilled a lawyer is, the less likely it is that he should be permitted to participate in the presentation of his own defense. That would make no sense. (Would it be more useful to the Court for Mr. Goldstein to participate if he was a bad advocate? Of course not.) Instead, courts have warned against "skillful" efforts to *manipulate* the right to *pro se* representation by either the defendant or his counsel. *See id.* (citing cases). That is not occurring here.

By contrast, Mr. Goldstein's representation is in fact being "skillfully manipulated"—by the Government. In this Motion, the Government seeks to disadvantage Mr. Goldstein by either (1) burdening his defense with having retained counsel present arguments that he would otherwise handle himself, or (2) depriving him of any representation by retained counsel in any of the oral arguments or evidentiary hearing. Separately, the Government opposes Mr. Goldstein being able to sell his home to raise the funds he needs to pay retained counsel, in violation of the most basic precedents governing the Sixth Amendment right to counsel. (This is the subject of a separate forthcoming motion.)

This is part of a pattern. Previously, when Mr. Goldstein was proceeding *pro se*, the Government secured his arrest without the evidentiary hearing required for the revocation of supervised release. The Government promised the Magistrate Judge that it would receive and act on any evidence supporting his innocence. But when Mr. Goldstein's counsel from the investigation promptly provided both that evidence and a detailed explanation of the evidence's relevance, the Government initially refused to do anything at all—insisting that Mr. Goldstein personally file a motion for a hearing, *pro se* from isolation in a maximum security detention facility. The Government knew that inevitably would take days, while Mr. Goldstein sat unjustly jailed in the meantime. *See generally* ECF No. 80 (appeal of amended order setting conditions of release).

After enormous protest, the Government sent the documents (but not the critical explanation) to the Magistrate Judge. It did so not only secretly and *ex parte* rather than on the record, but without even notifying Mr. Goldstein, his investigation counsel, or anyone else of what it had (and had not) done, so that Mr. Goldstein could respond. The Magistrate Judge had no context to understand the documents, because the Government made a conscious but inexplicable

decision to withhold the essential explanation of what the documents meant. So the Magistrate Judge unsurprisingly did nothing. (In stating that the Government had acted in good faith, the Magistrate Judge was unaware that this (and other) information had been withheld.) Mr. Goldstein then remained unjustifiably jailed for three days until an evidentiary hearing occurred, because of the Government's skillful maneuvering, after which he was finally released. *See generally id.* at 3-8.

<strong><u>CONCLUSION</u></strong>

The Court should exercise its discretion to grant Mr. Goldstein's straightforward request to participate in the oral arguments on the motions to dismiss, and reject the Government's strategic attempts to manipulate his representation.

/s/ Jonathan I. Kravis
Jonathan I. Kravis (Bar No. 31556)
Stephany Reaves (State Bar No. 19658)
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue NW, Suite 500 E
Washington, D.C. 20001
(202) 220-1100
Jonathan.Kravis@mto.com
Stephany.Reaves@mto.com

Adeel Mohammadi *(pro hac vice)*
MUNGER, TOLLES & OLSON LLP
350 S. Grand Avenue, 50th Floor
Los Angeles, CA 90071
(213) 683-9100
Adeel.Mohammadi@mto.com

*Attorneys for Defendant Thomas Goldstein*

Dated: August 18, 2025