```
 1              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND
 2                      SOUTHERN DIVISION

    _____
 3                                  )
    UNITED STATES OF AMERICA        )
 4                                  )
         v.                         )  Case No. 8:25-cr-00006-LKG-1
 5                                  )
    THOMAS C. GOLDSTEIN,            )
 6                                  )
                    Defendant.      )
 7  _____)

 8                              Greenbelt, Maryland
                                March 25, 2025
 9                              2:33 p.m.

10
                            MOTIONS HEARING
11
              BEFORE THE HONORABLE LYDIA KAY GRIGGSBY
12                  United States District Judge

13
                       A P P E A R A N C E S
14
    ON BEHALF OF THE GOVERNMENT:
15
         UNITED STATES ATTORNEY'S OFFICE
16       6406 Ivy Lane, Suite 800
         Greenbelt, Maryland  20770
17       BY:  PATRICK DAVID KIBBE, ASSISTANT U.S. ATTORNEY
              (410) 212-4237
18            patrick.kibbe@usdoj.gov

19                         (Continued)

20

21

22

23
                       PATRICIA KLEPP, RMR
24                Federal Official Court Reporter
                  6500 Cherrywood Lane, Suite 200
25                  Greenbelt, Maryland  20770
```

```
 1              A P P E A R A N C E S (Cont'd)

 2    ON BEHALF OF THE GOVERNMENT: (Cont'd)

 3         U.S. DEPARTMENT OF JUSTICE, Tax Division
           Northern Criminal Enforcement Section
 4         150 M Street, N.E.
           Washington, D.C.  20002
 5         BY:  STANLEY J. OKULA, JR., SENIOR LITIGATION COUNSEL
                Room 2.142
 6              (202) 514-2839
                stan.j.okula@usdoj.gov
 7         BY:  HAYTER WHITMAN, TRIAL ATTORNEY
                (202) 227-0683
 8              hayter.whitman@usdoj.gov

 9    ON BEHALF OF THE DEFENDANT:

10         MUNGER, TOLLES & OLSON LLP
           601 Massachusetts Avenue, N.W., Suite 500 E
11         Washington, D.C.  20001
           BY:  JONATHAN I. KRAVIS, ESQUIRE
12              (202) 220-1130
                jonathan.kravis@mto.com
13         BY:  STEPHANY REAVES COUPER, ESQUIRE
                (202) 220-1126
14              stephany.reaves@mto.com

15         MUNGER, TOLLES & OLSON LLP
           350 SOUTH GRAND AVENUE, 50th FLOOR
16         Los Angeles, California  90071
           (213) 683-9543
17         BY:  ADEEL MOHAMMADI, ESQUIRE
                (213) 683-9543
18              adeel.mohammadi@mto.com

19    ALSO PRESENT:

20         THOMAS C. GOLDSTEIN
           S.A. ANDREW ACCARDI - IRS-CI
21         USPO ADAM SMITH

22

23

24

25
```

***COMPUTER-AIDED TRANSCRIPT OF STENOTYPE NOTES***

```
 1                    P R O C E E D I N G S
 2        (Call to order of the Court.)
 3              THE COURTROOM DEPUTY:  All rise.
 4        The United States District Court for the District of
 5   Maryland is now in session, the Honorable Lydia Kay Griggsby
 6   presiding.
 7              THE COURT:  Good afternoon, everyone.  If you could
 8   please be seated for just a moment, I'll go over the Court's
 9   masking policy for the benefit of those who may have not
10   appeared before me before.
11              For Counsel and Mr. Goldstein, if you're fully
12   vaccinated and comfortable doing so, you're welcome to lower
13   your mask during today's hearing.  The Court meets that
14   criteria, so I'm going to lower my mask so you can hear me a
15   little bit more clearly.
16              With that, I'm going to invite the United States of
17   America to please call the case, and then we will proceed.
18              MR. KIBBE:  Calling the case United States v. Thomas
19   Goldstein, Criminal Action No. LKG-25-6.
20              Good afternoon, Your Honor, Assistant United States
21   Attorney Patrick Kibbe on behalf of the government.  I'm joined
22   by my colleagues from the DOJ Tax Division, Senior Litigation
23   Counsel Stanley Okula and Hayter Whitman, Trial Attorney.  Also
24   at counsel table is IRS-CI Special Agent Andrew Accardi.
25              We're here for the purpose of a hearing on a couple
```

```
 1    different matters, Your Honor, as the Court knows, including an
 2    appeal of conditions of release, a motion to call up grand jury
 3    testimony, a status hearing, so to speak, on the schedule in
 4    this case.
 5              THE COURT:  Thank you so much.  Welcome, AUSA Kibbe,
 6    and to your cocounsel, and the special agent.
 7              Counsel for the defendant and Mr. Goldstein.
 8    Good afternoon.
 9              MR. KRAVIS:  Good afternoon, Your Honor.  My name is
10    Jonathan Kravis, and it is my honor to represent the defendant,
11    Thomas Goldstein.  I am joined at counsel table today by
12    Stephany Reaves and Adeel Mohammadi from Munger, Tolles & Olson.
13              And for the record, Mr. Goldstein is present today,
14    and he is seated to my right.
15              THE COURT:  Good afternoon, Counsel and Mr. Goldstein.
16    Welcome to you.
17              I also have someone joining us from Pretrial.
18              Would you introduce yourself, please, for the record.
19              THE PROBATION OFFICER:  Yes, Your Honor.  Good
20    afternoon.
21              Adam Smith on behalf of Pretrial Services.
22              THE COURT:  Good afternoon, Mr. Smith.  Thank you for
23    being here, and I may consult you as we proceed with today's
24    hearing.
25              Well, as AUSA Kibbe mentioned, we have a couple of
```

1    items on our agenda today.  Two are two pending motions from the

2    defendant related to one of the conditions imposed by the Court

3    of his release pending trial.  We also have a broader issue of

4    scheduling in this case that I would like to talk with the

5    parties about at least to get us through a plan for pretrial

6    motions so we can address those things expeditiously but also in

7    an orderly manner and allow everyone sufficient time to brief

8    the Court on those issues.

9            I'm going to take just a moment to walk through some

10   of the background that brings us here.  As I believe I mentioned

11   last time when we were together, a lot has happened in this case

12   already, and so I'm going to just walk through some of the most

13   recent procedural history to make sure the Court understands it

14   and also just to lay a record as to what we'll be discussing

15   today.

16           Back on January 16th of 2025, the federal grand jury

17   sitting in the District of Maryland returned a 22-count

18   indictment charging the defendant, Thomas C. Goldstein, with

19   several counts of tax evasion in violation of Title 26,

20   United States Code, Section 7201; several counts of aiding and

21   assisting the preparation of false and fraudulent tax returns in

22   violation of Title 26, U.S. Code, Section 7206; several counts

23   of willful failure to pay taxes in violation of Title 26,

24   U.S. Code, Section 7203; and several counts of false statements

25   on a loan application in violation of Title 18, United States

1  Code, Section 1014.

2          On January 27th of 2025, Mr. Goldstein had his initial

3  appearance and arraignment before the Court.  At that time, he

4  pled not guilty to all charges brought in the case.  The Court

5  also ordered him released subject to certain conditions of his

6  release.

7          Thereafter on February 9th of this year, the

8  government filed an ex parte motion to revoke Mr. Goldstein's

9  release.  There was a hearing and briefing related to that, and

10  Mr. Goldstein was ordered detained by the Court on February 10th

11  of 2025.

12          Shortly thereafter, on February 11th of 2025, the

13  Defendant filed an emergency motion seeking to revoke the

14  Court's detention order.  There was subsequent briefing on that

15  motion, and a hearing was held on February 13th of 2025.  And at

16  that time, the Court did revoke its detention order and ordered

17  Mr. Goldstein released subject to certain conditions.

18          Relevant to today's proceeding, one condition required

19  that Mr. Goldstein participate in a computer and internet

20  monitoring program which allows the installation of monitoring

21  software and hardware at Mr. Goldstein's expense and permits

22  random, unannounced examination of computer systems,

23  internet-capable devices, and similar electronic devices under

24  the defendant's control, which I'll refer to broadly as a

25  monitoring condition.

1          On February 27th of this year, Mr. Goldstein filed an

2   appeal, challenging that particular condition.   The government

3   responded to that appeal on March 6th.   On March 11th of 2025,

4   Mr. Goldstein filed a reply brief, and the Defendant also filed

5   an emergency motion to compel the production of certain grand

6   jury testimony pursuant to Rule 6(e).   The government has also

7   responded in opposition to that motion, including filing a

8   sur-reply on March 21st of 2025.

9          Related to that motion is the issue of certain

10  grand jury testimony which the Defendant is requesting to

11  review.   The Court did grant a motion from the government to

12  provide that information in camera to Chambers, and that was

13  provided to the Court yesterday, on March 24th, 2025.   And I

14  have reviewed that testimony in preparation for today's hearing.

15         I believe that generally summarizes where we're at.

16  I'll let Counsel -- if they want to address any corrections in a

17  moment, I'll give you a chance to do that.

18         And so, again, the primary issue before the Court

19  today is the monitoring condition and whether or not the Court

20  is going to sustain that condition or revoke that condition in

21  connection with Mr. Goldstein's pretrial release.   I highlight

22  that because we are not entertaining any discussion of detention

23  today, and I think -- some of the things I'm going to say in a

24  moment, I think that point is very important.

25         Because the issue is pretty, I think, narrow in terms

```
 1    of the Court's review of the monitoring condition, I have a few
 2    preliminary thoughts after reading very carefully the parties'
 3    papers.  We've been together before.  This is, of course, a
 4    de novo review, but I am familiar with much that has gone on in
 5    this case.
 6            And I'll say a couple things.  There are two
 7    allegations that the government I believe has raised.  I think
 8    they were raised initially in connection with an effort to have
 9    Mr. Goldstein detained related to alleged use of certain wallets
10    that were not disclosed by Mr. Goldstein, allegedly, to Pretrial
11    and also allegations related to witness tampering, and I know
12    Mr. Goldstein has very strong views about those allegations and
13    disputes them.
14            I'm going to say quite candidly, Counsel, I've looked
15    at the record; neither of those issues are going to be material
16    to the Court's consideration of the question before it today,
17    which is whether or not I'm going to continue to impose the
18    monitoring condition, and we're going to hear argument about
19    that in a moment.
20            If you want to talk about these other issues, I'm not
21    going to cut you off, but frankly, Mr. Goldstein and your
22    counsel, for purposes of this hearing, it's not going to be
23    material to my consideration.  And I'm willing to accept your
24    version of the facts for the purposes of this hearing; it's just
25    not going to inform my decision.
```

1      I'm not suggesting that there aren't issues to talk

2  about going forward with regards to those matters, but there's a

3  very narrow issue before the Court on that issue.  We may have

4  some other issues later on where issues about those matters may

5  be important for the Court to consider, and I will give all

6  parties full opportunity to be heard, but I really don't think

7  they really have any bearing on the monitoring condition.  And I

8  would like to at least resolve that issue today if we could, and

9  we'll figure out how we go forward.

10     I just say that as an opening observation.  I'm not

11 going to cut people off, but I do think these other issues,

12 while very important, a more fulsome record might be helpful.

13 And I just don't think that we should be in a position of

14 forcing people to defend or even prove those issues right now.

15 That's just my view.

16     I am bound by the Bail Reform Act, and there are

17 several factors, as you know, in that statute that the Court

18 considers in assessing whether or not to impose conditions of

19 release and what those conditions should be.  And so I will be

20 focusing on those factors today and invite Counsel to talk about

21 those factors in presenting their arguments for or against the

22 particular condition.

23     I'm also pleased that Pretrial is here, and I may have

24 some questions just to better understand the monitoring

25 condition, and perhaps Counsel may have as well.

1          And so I will give you a chance, of course, to address

2   the Court and just walk through the technology, and how it's

3   being used, and of course, any recommendations you have about

4   whether it is appropriate in this case.

5          So with that, I believe the first motion is the motion

6   appealing the monitoring condition.

7          Mr. Kravis, I think it's appropriate for you to go

8   first, since you are appealing that, and so you're welcome to

9   join the podium.  And once you conclude, I'll invite the

10  government to come forward.

11         You may begin whenever you're ready.

12         MR. KRAVIS:  Thank you, Your Honor.

13         As the Court noted, one of the motions that brings us

14  here today is the defense appeal of the Magistrate Judge's

15  imposition of the monitoring condition.

16         I appreciate the Court's comments a moment ago that it

17  will not consider the allegation that the government has raised

18  several times now that Mr. Goldstein used cryptocurrency to

19  attempt to obstruct the investigation or tamper with a witness.

20  Obviously, if the Court has any questions about that issue, I'm

21  more than happy to address them.

22         I do want to note that in the defense reply on the

23  emergency motion to compel production of the grand jury

24  transcript, we did note that we believe that a sanction is

25  warranted here, based on what I think are just inaccurate

1    representations by the government about the content of that

2    grand jury testimony.  And I would like the opportunity to

3    address that briefly, but because the Court --

4         THE COURT:  Before you do that, let me just say, I

5    understand that; we will entertain that at the appropriate time.

6    I don't think it's appropriate in the context of this monitoring

7    condition, but I'll give you time to do that.

8         I would like to really just hear you on this --

9         MR. KRAVIS:  Yes, yes.

10        THE COURT:  -- so we can try to resolve that and

11   understand what Mr. Goldstein's concerns are.

12        MR. KRAVIS:  Yes, Your Honor, and I did intend to

13   address the monitoring condition first.

14        The Magistrate Judge, as the Court noted in its

15   recitation of the history of this case, imposed the monitoring

16   condition sua sponte after granting the defense's motion to

17   release Mr. Goldstein.  That happened on February the 13th.

18        I think that history is important, because it's

19   important to note that the government at no point in this case

20   ever suggested that the monitoring condition or anything akin to

21   the monitoring condition was appropriate.  They didn't suggest

22   that at the defendant's initial appearance, and they didn't

23   suggest that during or at the conclusion of the argument on the

24   defendant's release motion.

25        And so while the government now says that the

1    monitoring condition is the least restrictive condition or set

2    of conditions necessary to reasonably assure Mr. Goldstein's

3    appearance, which is, after all, the proper standard under the

4    Bail Reform Act, that was never an argument that the government

5    made to the Court at any time before the Magistrate Judge,

6    sua sponte, imposed the monitoring condition.

7         THE COURT:  Well, the Court's decision to impose the

8    condition is not -- it's not required that someone propose it.

9         MR. KRAVIS:  If --

10        THE COURT:  I understand your point, but you're not

11   saying the Magistrate Judge was required to only consider what

12   the government recommended.

13        MR. KRAVIS:  No, I am not saying that the

14   Magistrate Judge lacked the authority to sua sponte impose the

15   condition or that it was somehow improper for the Court to do

16   so, although obviously, we disagree with that decision; I'm just

17   making the observation that before these proceedings, the

18   government never suggested that the monitoring condition or

19   anything like it was reasonably necessary here.  The

20   Magistrate Judge's decision to impose the monitoring condition,

21   sua sponte, was really, in our view, based on two things.

22        One was the Magistrate Judge's conclusion that it was

23   more likely than not that Mr. Goldstein owned two cryptocurrency

24   wallets that the government had brought to the

25   Magistrate Judge's attention in its ex parte detention motion.

1  The parties in these proceedings have referred to those as the

2  935B and the 54E3 wallets.  I think the evidence pretty clearly

3  shows that Mr. Goldstein does not own those wallets.

4        THE COURT:  Well, as I said earlier, I'm not going to

5  entertain that issue for purposes of this condition, so can you

6  talk to me about why -- we'll just say we're not going deal with

7  Mr. Goldstein allegedly owning those wallets; I'm not going to

8  consider that.

9        So let's just talk about the case and the factors, and

10  so my que- -- you know, the reason for these conditions is to

11  make sure your client shows up --

12        MR. KRAVIS:  Right.

13        THE COURT:  -- and continues to do so.  He has been

14  here all along thus far, I will note, and I will seek to

15  mitigate any danger that the Court determines he may pose to an

16  individual or to the community at large.

17        In our last hearing together, the Court shared

18  concerns about substantial risk of flight, and I still have

19  those concerns.  I think that is a legitimate concern in this

20  case and one of the things that the Court considers in imposing

21  pretrial release conditions.

22        The concerns the Court raised previously, which I

23  think are also relevant here, are things I think are undisputed:

24  Your client's extensive history of foreign travel; your client's

25  involvement with online poker activities, nationally and

1   internationally as the Court understands it; your client's

2   relationships with individuals that are overseas and individuals

3   that, as the Court understands it, have needs that might

4   potentially provide some type of resource for your client; your

5   client's engagement in crypto transactions.

6        I'm not talking about particular wallets, but the

7   general fact that your client has engaged in cryptocurrency

8   transactions I think is undisputed, and of significant amounts,

9   from his poker winnings; I think that was something that has

10  been acknowledged in this case.

11       So those are the facts that at least I am thinking

12  through and looking at what are the appropriate conditions to

13  impose to ensure Mr. Goldstein's reasonable appearance as we go

14  forward.

15       I think there's also a fair concern in light of the

16  allegations in the indictment about danger posed by conduct that

17  might involve trying to conceal cryptocurrency or trying to

18  conceal resources from the government in connection with taxes,

19  so there's a little bit of that.  But the main issue I think is

20  really the extensive connections your client has and just the

21  history of your client as a sophisticated individual who has

22  traveled extensively.  So the Court is looking at what is the

23  proper package --

24       MR. KRAVIS:  Right.

25       THE COURT:  -- to mitigate that.

1      So why isn't the monitoring condition part of that

2  package?

3          MR. KRAVIS:  It -- well, I think I -- I just want to

4  pick up where Your Honor finished, part of the package.

5          Mr. Goldstein is subject to a host of other release

6  conditions, and I think all of those conditions more than

7  adequately address -- I'll say adequately address the concerns

8  that the Court has raised.  For example, Mr. Goldstein's travel

9  is restricted to the DMV area without the prior permission of

10 Pretrial Services.  He surrendered his passport.  He's not

11 allowed to open any additional bank accounts or other accounts.

12 He's not allowed to engage in any transfers of money without the

13 approval of Pretrial Services.

14         The Magistrate Judge, at the time he imposed the

15 monitoring condition, also, sua sponte, imposed other conditions

16 on Mr. Goldstein that we're not challenging here, that

17 Mr. Goldstein not engage in any cryptocurrency transactions,

18 that he disclose all of his financial accounts and assets to

19 Pretrial Services, which he has done.  Mr. Goldstein, as a

20 condition his release, is prohibited from gambling.  There is

21 also the security bond that was placed on the Hawthorne Street

22 property, which we will, at a future date, I am confident, be

23 discussing again.

24         All of those conditions -- and we're not challenging

25 any of those conditions here today.  All of those conditions go

```
 1    to the concerns that the Court was addressing a moment ago, and

 2    all of those conditions, with the exception of the few that the

 3    Magistrate Judge recently imposed, those were all imposed at

 4    Mr. Goldstein's initial appearance.  In addition, there's an

 5    extensive no-contact list.  There's numerous witnesses that

 6    Mr. Goldstein is not allowed to -- is not allowed to be in touch

 7    with.  This is an extensive network of release conditions.

 8         The reason that I mention the two wallets, the

 9    935B wallet and the 54E3 wallet -- and I hear the Court saying

10    that it won't factor ownership of those wallets into its

11    consideration today, but the government's allegation that

12    Mr. Goldstein owned those wallets was the only thing that

13    changed since the time of the initial appearance when all of

14    these conditions were imposed, everything that the government

15    asked for.  At that time, the government never asked for

16    monitoring of Mr. Goldstein's electronics devices.

17         Nothing has changed in between the initial appearance

18    and today, save for the allegation -- I believe the now

19    discredited allegation regarding these two specific wallets.

20         I will add that the -- with respect to the issue of

21    cryptocurrency transactions specifically, the Magistrate Judge

22    did impose a specific condition that relates directly to a

23    prohibition on Mr. Goldstein's use of cryptocurrency.  We're not

24    challenging -- we are not challenging that here today, and if

25    the Court were inclined to conclude that on top of all of those
```

1   other release conditions that I've just been talking about, that

2   some additional condition were appropriate, we believe that the

3   monitoring should be limited to cryptocurrency apps and websites

4   that involve the use of cryptocurrency.

5            Again, we don't think that that is necessary in light

6   of all of the other release conditions that Mr. Goldstein is

7   subject to, we believe those adequately address the concerns

8   that the Court has identified, but if the Court is inclined to

9   go a step further, we think that more limited monitoring is

10  appropriate here and removes the concerns about disclosure of

11  privileged or confidential communications, particularly those

12  that relate to Mr. Goldstein's communications with me and his

13  other lawyers about the specific allegations in this case,

14  because there are allegations that relate directly to

15  cryptocurrency, and those will be the subject of written

16  communications, privileged communications, between Mr. Goldstein

17  and his counsel.

18            THE COURT:  And let me just follow that for -- a

19  little bit further.  I'm taking a look, again, at the conditions

20  imposed in this case, and -- you mentioned a couple of the other

21  ones, again, the not opening a new bank account, but I want to

22  focus on two:  Do not engage in any type of gambling, including

23  poker of any type and by any means in person or online; and

24  also, comply with professional -- I'm sorry, there's another one

25  that deals with not engaging in cryptocurrency transactions.

1          MR. KRAVIS:  Right.

2          THE COURT:  And what I want to talk about is, you

3    know, at least as I read the conditions, the monitoring kind of

4    goes with the others; I mean, the way for the Court to ensure

5    that your client is not doing online poker gambling or engaging

6    in crypto transactions would come from the monitoring, which

7    again, is focusing really on that, not on these other things.

8    And so your second -- I know it's a fallback position, not your

9    original position, but your fallback position somewhat gets at

10   that concern.

11         I think -- they go together, and so in order to

12   enforce the conditions that the defense itself is not

13   challenging, the question of the Court is how to make sure those

14   things happen, and so the monitoring is one way to ensure that.

15         What are your thoughts?

16         MR. KRAVIS:  Right, I hear the -- I hear that;

17   however, I would -- I think I would respectfully disagree with

18   the Court's suggestion that it is necessary as a condition of

19   release to impose a means of monitoring compliance with release

20   conditions.

21         I think -- in my experience, it is common practice for

22   courts to impose release conditions that are not specifically

23   being, like, monitored by Pretrial Services, conditions related

24   to, you know, opening of financial accounts, or transfers of

25   money, or prohibitions on other activity.

1          Just to give an example, in this case, at the time of

2     Mr. Goldstein's initial appearance, the Court noted, the

3     Magistrate Judge imposed the prohibition on gambling by

4     Mr. Goldstein, including online gambling.

5          Of course, at the time, and even as we sit here today,

6     that release condition was not accompanied by any, like, further

7     release condition to allow Pretrial Services to monitor

8     compliance.  I think it is -- often, it is a common practice to

9     impose release conditions that are not specifically being

10    monitored through electronic devices by Pretrial Services.  And

11    I don't think there has been any change in the factual record

12    since the time of Mr. Goldstein's initial appearance that

13    warrants the imposition of an additional release condition for

14    Pretrial Services to verify compliance with these things.

15          I think, as a general matter, imposing the

16    condition -- the release condition is sufficient, and then,

17    of course, if Pretrial has evidence that Mr. Goldstein is not

18    complying with the condition, then there may arise questions

19    about whether there is some more restrictive condition or some

20    form of monitoring that is appropriate.

21          But I think it is fairly common for the Court to

22    impose release conditions without also imposing a further

23    condition that involves monitoring to ensure compliance.

24          I'm not sure if that answers the Court's question.

25          THE COURT:  It does; it's helpful from your

1    perspective.  Thank you.

2            MR. KRAVIS:  The final point I wanted to make on the

3    monitoring condition -- and then, of course, I'm happy to

4    address any further questions that the Court might have or any

5    of the other topics that the -- that are on the agenda for

6    today.

7            The final point I want to make about the monitoring

8    condition is that while the government in its filings

9    characterizes the monitoring condition as a routine condition of

10   release, I think the fact of the matter is that particularly

11   under the facts and circumstances of this case, it is a fairly

12   drastic -- it is a fairly drastic condition of release.

13           It is not detention, obviously, to be sure, and I

14   appreciate the Court saying that was not on the -- on the table

15   for today, but the other cases cited by the government in its

16   filing all involve cases where the defendants are alleged to

17   have used cryptocurrency to further the underlying criminal

18   conduct, a fraud scheme, for example, or an international

19   money laundering -- an international money laundering ring,

20   something like that.  That is not the allegation in this case.

21           The specific allegation in the indictment that relates

22   to cryptocurrency is Mr. Goldstein's failure to check a box on a

23   form a few years ago on his tax returns that said he held

24   cryptocurrency accounts.  We will have more to say on the merits

25   of that allegation as we get closer to the trial, to be sure.

1    The point I wanted to make here is that even if you just look at

2    the allegations in the indictment, the allegations regarding the

3    use of cryptocurrency are far, far more limited, and tangential,

4    and attenuated than the cases that the government cites.  And in

5    light of that attenuation, the condition of monitoring

6    Mr. Goldstein's electronic devices is a fairly drastic -- is a

7    fairly drastic remedy.

8            Mr. Goldstein and I have discussed with Pretrial

9    Services how this would work, and we have been advised that this

10   will involve the disclosure of privileged communications between

11   Mr. Goldstein and his counsel.

12           THE COURT:  Well, is Mr. Goldstein currently under the

13   monitoring; is it going on right now?

14           MR. KRAVIS:  It is, Your Honor, yes.

15           THE COURT:  And so you've had a chance to experience

16   what that's like?

17           MR. KRAVIS:  Mr. Goldstein has.

18           THE COURT:  All right.

19           MR. KRAVIS:  I don't see it on my end, but we have --

20   Mr. Goldstein and I have had conversations with Pretrial

21   Services to understand how this is going to work, and my

22   understanding is that privileged communications that use the

23   word "cryptocurrency," like all of the filings that bring us

24   here today and any future communications between counsel and

25   Mr. Goldstein about the allegations in the indictment concerning

 1    cryptocurrency, would be subject to monitoring by

 2    Pretrial Services.

 3            THE COURT:  Well -- and I just want to push back a

 4    bit, because that assumes that counsel, aware of the monitoring,

 5    and Mr. Goldstein, aware of the monitoring, elects to

 6    communicate in that way.  I just wanted -- because it's not that

 7    the purpose of the monitoring is to monitor communication with

 8    counsel.  I don't think there's a right -- a constitutional

 9    concern or even a legal concern necessarily with the monitoring

10    because Mr. Goldstein has chosen to communicate with his

11    attorney that way.

12            So I hear you saying that it's going to pick up the

13    word, but I don't think that necessarily is a reason to say the

14    monitoring condition is not appropriate, but let me hear your

15    view.

16            MR. KRAVIS:  Well, Your Honor, I don't mean to suggest

17    that that's the intent or purpose of the condition; it's --

18    certainly, it's an incidental -- it's an unintended consequence

19    or effect, but I think I would respectfully disagree with the

20    Court's characterization that, you know, Mr. Goldstein is just

21    choosing to communicate with his counsel in this way and

22    therefore kind of assumes the risk of the disclosure of

23    privileged communications because he knows he's under the

24    monitoring condition.

25            I think it is just a sort of fact of the practice of

1   law in this day and age that we exchange electronic drafts back

2   and forth.  This is how lawyers communicate with their clients

3   and how they share drafts with their clients and so on, and it

4   is a fairly drastic consequence, unintended to be sure but

5   nevertheless a consequence of the monitoring condition that

6   those privileged communications would be disclosed.

7          Now, I'm not saying that the monitoring condition is

8   per se unconstitutional.  That's not the point I'm making here;

9   the point I'm making here is that those unintended effects do

10  have to be factored into the calculation.

11         The Bail Reform Act does speak to the least

12  restrictive conditions of release that will reasonably assure

13  the defendant's appearance, and when we're talking about what is

14  more and less restrictive, this is the kind of thing we're

15  talking about, is how burdensome the imposition is on the

16  defendant.

17         And I would submit here that given the stark

18  attenuation between the cryptocurrency and the actual

19  allegations of criminal conduct in the indictment --

20  distinguishing it from the cases the Government cites -- in

21  light of the fact that the Government's effort to establish

22  something about these other wallets just hasn't panned out --

23  we're act- -- we're not talking about it today -- and in light

24  of the fact that there are all of these other release

25  conditions -- and that was -- the Court determined that that was

1    sufficient -- the Magistrate Judge determined, that was

2    sufficient at the time of Mr. Goldstein's initial appearance,

3    and that -- we submit that that decision was correct.

4            In light of all of those things, it just cannot be

5    said that the monitoring condition is the least restrictive

6    condition that will reasonably assure Mr. Goldstein's appearance

7    under the Bail Reform Act.

8            THE COURT:  Thank you very much, Mr. Kravis; that was

9    a helpful conversation.

10           I'm going to invite AUSA Kibbe to share the

11   government's point of view, and I'm also going to invite

12   Pretrial, after that, just to walk through what's actually

13   happening and make sure we're all on the same page about how the

14   conditions are currently working.

15           MR. KRAVIS:  Thank you, Your Honor.

16           THE COURT:  Thank you very much.

17           AUSA Kibbe.

18           MR. KIBBE:  Thank you, Your Honor.

19           What I'd like to do, Your Honor, is start with that

20   point about how the actual monitoring condition works, and this

21   is my understanding from speaking with Pretrial Services in this

22   case and others.

23           If the Court would prefer just to go straight to

24   Officer Smith, that's okay with me too, but I think it's

25   important for the context and the standard under the Bail Reform

1    Act of the least restrictive conditions, and I'd like to address

2    the factors under the Bail Reform Act with -- regarding the

3    monitoring condition in this case and the government's position.

4              In Defendant's reply to the emergency motion to

5    compel, Defendant said that this appeal was largely moot,

6    because, they said, the Government was just focused on

7    cryptocurrency websites and apps.  That's not quite right,

8    Your Honor, because that's not how the monitoring condition

9    works, but it's also not far off.

10             And so I think it's important to look at what's

11   actually the sliver of disagreement here on the monitoring

12   condition.  So the monitoring condition, as I understand it, is

13   not Pretrial Services looking at every email, every message, to

14   see if there's anything going on, every web search, every --

15   it's not that at all; there's a software that has keyword hits.

16   And it's not even all things that the software's looking for.

17   Because this is a financial crime, there's a financial profile

18   that this software is using, so it's only looking at things that

19   would flag under that financial crimes profile, which

20   undisputedly, is what this case is about.

21             So there's the financial crimes profile and the

22   monitoring condition, and it will flag certain key words that

23   are used, cryptocurrency, Bitcoin.  I don't have an exhaustive

24   list here, but those are the types of things that it would flag,

25   and it flags them either as, you know, a red flag, or a high

1  flag, or a medium flag, as I understand it.

2          Then Pretrial Services does a periodic review of those

3  flags, so they're only looking at the things that hit on the

4  financial -- on the financial key words that are part of the

5  program, and then that's -- that's Officer Smith doing that,

6  it's not the government doing that, and he can see, oh, that's

7  an email with counsel, move on, that's an email with counsel,

8  move on, and it's the Court -- it's Pretrial Services that is

9  doing go that review, not the government.

10          So what we're actually talking about here in terms of

11  monitoring condition is limited to that financial piece, is

12  limited to that cryptocurrency piece, and Pretrial Services is

13  not reviewing, you know, the full content of any privileged

14  communications.  Instead, it's just checking to make sure that

15  when those hits are flagged on the software, that there's

16  nothing else more serious going on.

17          And with respect to limiting just to websites and

18  apps, well, that's not sufficient, because we see from the

19  undisputed record in this case that cryptocurrency transactions

20  can also be done through messaging.  In fact, that's the bulk of

21  the disputed messages, you know, between -- that the parties are

22  talking about, where Mr. Goldstein, undisputedly, is in contact

23  with others about the transfer of cryptocurrency, and just

24  because of the electronic nature of cryptocurrency, that's one

25  way that it can be done.  So it's not sufficient just to say

1    websites or apps, that -- you know, a fuller -- a broader

2    picture is needed, but it's still limited to that financial

3    piece.

4            So why is that, what I've just described, which is

5    what I understand the conditions are, one of the least

6    restrictive conditions of release?  And it goes to what

7    Your Honor was asking about earlier, that that condition is

8    appropriate to ensure compliance with the other conditions.

9            So there are the other restrictions on travel,

10   restrictions on transfers of cryptocurrency, restrictions on

11   opening financial accounts.  This monitoring condition, in the

12   way that I have described it, ensures compliance with those

13   things.  And why is that appropriate?  Under the Bail Reform Act

14   factors.  And as the Court knows, those are the factors that the

15   Court needs to decide to determine whether the condition is

16   appropriate or not.

17           And the first is the nature and circumstances of the

18   offense.  As the Court has noted, this -- the nature and

19   circumstances of the offense are serious in this case,

20   twenty-two counts of tax crimes and false statements to mortgage

21   lenders.  There's allegations of significant international

22   travel and contacts.  Mr. Goldstein is specifically charged with

23   not disclosing cryptocurrency on -- transactions on his tax

24   forms, and to be clear, this was not just checking a box; this

25   was writing in "No" to the answer of whether there had been any

1    transactions, when in fact, there had been dozens and dozens, up

2    to approximately $10 million in value over the tax years 2020,

3    2021.

4         And so that amount of money, that amount of

5    cryptocurrency is part of the fabric of this case, and it's also

6    what distinguishes it from many other cases in this district,

7    where it's much lower amounts of money, it's much less amounts

8    of international contacts and travel, such that the monitoring

9    conditions are appropriate to ensure compliance with the other

10   conditions.

11        Staying on the nature and circumstances of the

12   offense, part of the core allegations here is that Mr. Goldstein

13   concealed his income from the IRS, and he -- part of the

14   allegations are also that he owes significant amounts of private

15   money to other individuals.

16        So when you look at those things, compliance with the

17   monitoring conditions is important to ensure that there --

18   there's transparency here about the conditions of release as it

19   relates to Mr. Goldstein's finances, and this goes -- I'm

20   skipping ahead, then, to the fourth condition -- or the fourth

21   factor, which is the danger to any individual or community, and

22   that's the economic danger here, that -- the government has

23   alleged and the grand jury has found that Mr. Goldstein owes

24   millions of dollars to the government.

25        And so if -- if there was an ability to transfer

1    cryptocurrency, as has been done through the -- you know, the

2    history and circumstances of this case, that could -- that could

3    severely damage and impact the community, because that's the

4    core allegations of the harm here, and not only the government,

5    through taxes to fund all the public programs that the

6    government does, but individuals, private individuals, who are

7    owed millions of dollars in this case.

8           The other Bail Reform Act factors, as the Court knows,

9    are the weight of the evidence, the history and characteristics

10   of the individual.

11          The weight of the evidence, the parties have disputed

12   certain facts and disputed the inferences to have been made from

13   those facts.  Even setting aside those disagreements, which the

14   Court said that you -- that you don't want to get into today,

15   Your Honor, and we respect that -- the weight of the evidence in

16   the indictment is strong.

17          It's supported by years-long investigation, dozens and

18   dozens of witnesses, we've produced over 100,000 documents in

19   discovery, and the weight of the evidence in this case is strong

20   to support the charges in the indictment.  And the weight of the

21   evidence is also strong even if you're just taking a look at

22   this narrow, undisputed question of have there been millions of

23   dollars of cryptocurrency transactions that are not disputed,

24   and the answer is yes.

25          And so when you're thinking about the monitoring

1    condition, the weight of the evidence is absolutely unrefuted on

2    that -- on that latter point, and that's important when

3    fashioning the conditions of release here.

4            For history and characteristics, as the Court

5    previously found, "the defendant's personal history and

6    characteristics also include that he has also indicated that

7    he's a significant risk of flight."  That has not changed since

8    the Court's last order, and the government submits that remains

9    to be the case.

10            And so I'll pause there, having gone through the

11    Bail Reform Act factors, and see if the Court has any questions

12    for me.

13            THE COURT:  Well, I guess, my only question -- and

14    I've listened carefully and also read the papers -- how -- just

15    in a sentence or two, again, how does the particular

16    condition -- the monitoring condition, from the government's

17    point of view, mitigate the twin concerns -- you've said it, but

18    I want to just kind of get you to say it succinctly -- the twin

19    concerns of reasonable assurance, of appearance, and mitigating

20    any danger in this case -- I think it's an economic danger, this

21    is not a violent crime situation, so an economic danger to the

22    public or particular individuals?

23            MR. KIBBE:  Thank you, Your Honor.

24            So on the first, on risk of flight, how would an

25    individual flee from this district, in any case?  It's if they

1    have contacts, out of state or internationally, and it's if they

2    have the means to evade detection and to flee, and in this case,

3    there are significant, significant -- perhaps more than any

4    other that I am aware of in -- currently in this district, on

5    both those factors.

6            As included in the indictment and as proper before the

7    Court, this case involves significant international travel,

8    significant international gambling, significant international

9    contacts, and on the amounts of money and the use of, as,

10   I think, also undisputed, concierge luxury services, private

11   jets, things of that nature, things that would help somebody

12   evade appearance in this district are all present in this case.

13           So the monitoring condition ensures that there's not

14   going to be outflows of cryptocurrency or other unauthorized

15   financial transactions that could assist with the risk of

16   flight, given, though -- given the amounts of money and given

17   the significant international ties and contacts in this case.

18           On danger to community, the government alleges that

19   Defendant owes millions of dollars to the government and

20   millions of dollars to private individuals.  It's undisputed in

21   this case that Mr. Goldstein has transferred large amounts of

22   money in financial transactions, including cryptocurrency

23   transactions, and has done so through messaging.  And so the

24   monitoring condition ensures that other assets are not

25   dissipated, which would harm the community, which would harm

 1    particular individuals who are owed money during the pendency of

 2    this case.

 3            THE COURT:  Thank you very much, AUSA Kibbe.

 4            I do want to give Pretrial a chance to just walk the

 5    Court through the monitoring system and how it works, and then,

 6    of course, to address anything you want to address in terms of

 7    the appropriateness of the condition.

 8            THE PROBATION OFFICER:  Thank you, Your Honor.

 9            So to start off with how the monitoring works,

10    Mr. Kibbe kind of explained it correctly.  The Defendant is

11    subject to a financial profile through the monitoring software.

12    The software is implemented on his cell phone and on his

13    desktop, and as the AUSA had noted, if anything that the

14    defendant is partaking in on his iPhone or his desktop, such as,

15    like, any website that he would reference, any keystrokes that

16    he would put in, any text messaging, certain words within a

17    text message, anything that is flagged that coincides with that

18    financial profile from his activities on his desktop or his

19    iPhone would send a flag, and the flags are either a medium or a

20    high.

21            When then I go in to review any flags within the

22    system, I can go and specifically look at what was flagged, and

23    I think that's kind of where it comes into the concern about

24    there is a possibility, although I have not to date seen any

25    correspondence between him and his attorney; in other cases, I

1    have.

2            The best example I can give to the Court now by way of

3    illustration, if the Court's interested, is a sex offender case.

4    If there's correspondence going on between an attorney and a

5    client and the word "porn" may show up in a correspondence

6    between the attorney and the client, that's something that would

7    flag in a profile for a sex offender.

8            THE COURT:  And so when you say, you see it, so the

9    flag comes in, and then what do you -- you go back and, what,

10   pull up the document; what are you looking at?

11           THE PROBATION OFFICER:  What I can do, I would take a

12   screenshot, and then I can pull up that screenshot and say, oh,

13   okay, that is an email that's between -- and you can see who the

14   email's between, and then I just move on.

15           THE COURT:  So you're looking to see what the nature

16   of the -- what prompted the flag; was it an email, was it a, you

17   know, download of a video?

18           THE PROBATION OFFICER:  Correct, that's correct,

19   Your Honor.

20           THE COURT:  All right.

21           THE PROBATION OFFICER:  Looking to see if he's

22   accessing websites, what the conversations may be that he's

23   having, and if it's a text message, if it's an email.  It

24   basically gives some context to the word that was flagged.

25           THE COURT:  And are you the only person -- if you're

1    the agent on this matter, are you the only person that does that

2    review, or is it shared with someone else?

3         PROSPECTIVE JUROR:  My supervisor would be the only

4    other individual that I can think of that would possibly,

5    because supervisors do review our work, and they do occasionally

6    go through and also look at the monitoring.  That is the only

7    other individual that I would believe have access to it.

8         THE COURT:  Okay.  But you're not communicating that

9    to the parties in the case?

10        THE PROBATION OFFICER:  No, Your Honor.  The only

11   information that would get reported out would be if there is a

12   violation, perhaps, that was flagged in the monitoring software;

13   for instance, if -- and again, I'm just putting hypotheticals

14   out there -- if he was attempting to access a cryptocurrency

15   website, or if he was attempting to transfer cryptocurrency.

16        Those are hypotheticals, but those are some of the

17   examples that I can bring to mind that would perhaps warrant us

18   to disclose something like that, because it would go against the

19   release order imposed by the Court.

20        THE COURT:  And in terms of the -- again, the types of

21   things being monitored now, that would be -- it could be an

22   email, it could be a text message, it could be downloading a

23   video, it could be using some type of an app; it's pretty much

24   any type of electronic internet-based communication?  Is that

25   correct?

```
 1              THE PROBATION OFFICER:  That's -- that's correct.
 2   Even keystrokes, Your Honor.
 3              THE COURT:  Even --
 4              THE PROBATION OFFICER:  Even, like, keystrokes.
 5              So if -- let's hypothetically say the Defendant were
 6   to type in "cryptocurrency," that is something that could be
 7   flagged, and then it will say "keystrokes," and then you can go
 8   look at -- okay, you see he was typing "cryptocurrency;" what
 9   was he going and looking at, was he researching cryptocurrency,
10   was he trying to access an app, things of that nature.
11              THE COURT:  And one of the proposals that's been
12   presented today might be narrowing the types of, I guess,
13   communications or electronic services that you're monitoring, to
14   limit them to particular acts related to cryptocurrency or
15   things of that nature; is that even something that's possible
16   with this system?
17              THE PROBATION OFFICER:  Your Honor, I wouldn't be able
18   to -- I don't know at this juncture; I don't know if that is a
19   possible -- I would hate to tell the Court that it isn't when it
20   is, but at this juncture, I don't know.
21              THE COURT:  And so you've never had an experience
22   doing something like that?
23              THE PROBATION OFFICER:  I have not, no, Your Honor.
24   Typically, it's just a designated profile for -- per case.
25              THE COURT:  And do you want to address anything else
```

1    more broadly in terms of the condition imposed in this case and

2    your role as the Pretrial Services agent?

3            THE PROBATION OFFICER:  So I will say that I've had

4    the opportunity to at least review a month's worth of monitoring

5    in this case, to which I'll say there's been no indication that

6    there's been any sort of violation to the conditions that were

7    imposed by Judge Sullivan.  I think the Court kind of nailed it

8    from the get-go, that it is a condition that's put in place to

9    accompany and assure the compliance of additional conditions.

10           Aside from just meeting with the Defendant monthly and

11   reminding him of his conditions of release, the monitoring

12   condition allows us to corroborate that compliance for the Court

13   and the parties, so in that respect, I do feel as though it is

14   appropriate, given the other conditions that are outlined by

15   Judge Sullivan and the Court.

16           THE COURT:  Thank you very much.  Anything else you

17   want to share with the Court?

18           THE PROBATION OFFICER:  No, Your Honor.

19           THE COURT:  And I guess the only other thing, an

20   observation -- I'm going to give counsel a chance to be heard

21   again.  I know we're not getting into it, but there are -- there

22   have been concerns raised in this case about whether or not

23   Mr. Goldstein engaged in certain online activity.  As it seems

24   to me, this is a way to protect Mr. Goldstein as well as anyone

25   else to those types of allegations, because there's a way to,

1    obviously, get the facts, quickly.  Just a thought.

2          I'm going to give Mr. Kravis a chance -- if you want

3    to say anything further to the Court, you're welcome to do so.

4    AUSA Kibbe, I'll give you the same chance, and then I'll rule.

5          MR. KIBBE:  I do.  Thank you, Your Honor.  I'd just

6    like to make a few, quick points about the sort of operation of

7    the monitoring condition that we've been talking about here for

8    the last few minutes.

9          The first is, as I understand the explanation provided

10   by Pretrial Services, the condition is actually broader than

11   I think the parties had perhaps understood when submitting the

12   briefs to the Court.

13         We've been talking today about cryptocurrency and have

14   used the term "cryptocurrency" or a related term like "Bitcoin,"

15   because it's those allegations that ended up bringing us here

16   today, but as I understand the operation of the monitoring

17   condition as explained by Pretrial, there's actually a broader

18   set of financial terms that are not specific necessarily to

19   cryptocurrency that would trigger the monitoring condition.

20   That makes it even broader than what we had previously, I think,

21   understood when we had filed the appeal, and I think that

22   relates to the issue that we were discussing earlier about how

23   restrictive the release condition is.

24         The second thing that I think I heard from Pretrial

25   here is that Pretrial Services is reviewing the content of

1   communications and documents to decide whether there is

2   something in there that needs to be reported to the government.

3          Now, I appreciate the --

4          THE COURT:  To the Court, to the Court.

5          MR. KRAVIS:  To the -- yes, to the Court.

6          THE COURT:  The Court --

7          MR. KRAVIS:  Yes, Your Honor.

8          THE COURT:  -- not the government, as the party in the

9   case.

10         MR. KRAVIS:  Well -- okay, I -- okay.

11         THE COURT:  That's what I heard Pretrial --

12  Pretrial Services is part of the Court, and so anything they

13  would be reporting back will be reported to the Court.  There

14  might be an opportunity, if something is raised, for the parties

15  to address it, but there's no reporting to the government, the

16  United States of America, to your opponent in the case, from

17  what they're doing.

18         MR. KRAVIS:  I was just pausing there because I wasn't

19  sure if Pretrial would send a notice of violation to the

20  U.S. Attorney's Office, for example, before the defense, but it

21  sounds like the answer to that is no, so --

22         THE COURT:  And I'll let Pretrial address that in a

23  moment, but I think also, more broadly, the monitoring doesn't

24  necessarily trigger a notice.  So I think the more routine

25  monitoring is just -- okay, I'll let them -- I'll let them

1     speak, as I don't know.

2            MR. KRAVIS:  Right, right, right, I understand that

3     point; the point I was making was just that -- that as I heard

4     the explanation from Pretrial, this monitoring condition

5     necessarily involves Pretrial monitoring, the content of

6     Mr. Goldstein's communications, to determine whether there is

7     something that needs to be reported to the Court and that these

8     could include communications -- privileged communications not

9     only with -- with us, with Mr. Goldstein's counsel, but also

10    with clients and potential clients.

11           And that brings me to the third point I wanted to make

12    here, which is -- I don't think this has really been discussed

13    yet before the Court today, but one other aspect of the

14    monitoring condition is, Mr. Goldstein is warned approximately

15    50 times a day that he has to advise third parties that his

16    electronic communications are being monitored, and that has

17    inhibited Mr. Goldstein's ability to try to continue to earn a

18    living while he's on release.

19           Without getting into sort of the content of privileged

20    communications, I can represent to the Court that there has been

21    at least one occasion when Mr. Goldstein has lost the

22    opportunity to work for a potential client because he was

23    required to advise the client that his communications would be

24    monitored by -- by Pretrial Services.

25           Again, I'm not saying that this means that the

1  monitoring condition is, like, necessarily unconstitutional or

2  per se unwarranted, but I do think that this is relevant to the

3  restrictiveness of the condition, which is the requirement under

4  the -- under the Bail -- under the Bail Reform Act.

5      The last point I wanted to make here -- I'm obviously

6  happy to answer any further questions the Court has on the

7  monitoring condition -- is -- it goes to the exchange that the

8  Court just had with Pretrial about the ability to adopt the --

9  sort of what the Court described a moment ago as the fallback

10 position that the defense had articulated, which is to limit the

11 monitoring to, for example, the use of cryptocurrency apps or

12 cryptocurrency websites.

13     The point I just wanted to make here is, regardless of

14 the capabilities of the software, I believe that the Court would

15 have the authority to direct Pretrial to limit its review of any

16 flagged material to the use of apps or to the use of websites,

17 irrespective of how the software itself can be -- can be

18 tailored.

19     I say that because I do think that this -- if the

20 Court is inclined to impose any further condition, that less

21 restrictive condition is the appropriate one -- is the

22 appropriate one here, in light of the fact that, you know,

23 everything my colleague on the other side talked about in his

24 last colloquy with the Court, all of that is stuff that the

25 government knew at the time the indictment was returned and at

1    the time of the initial appearance.  There was not a word spoken

2    at that time about a -- about a monitoring condition.

3        In light of all of that, if the Court is inclined to

4    impose a further restriction here, we do believe that it should

5    be the more limited one.  That would be a less restrictive

6    condition, and I don't think the government has explained why

7    only the more restrictive version is reasonably necessary to

8    assure Mr. Goldstein's appearance, which is the standard under

9    the Act.

10        THE COURT:  Thank you very much, Mr. Kravis.

11        MR. KRAVIS:  Thank you, Your Honor.

12        THE COURT:  That's very helpful.

13        AUSA Kibbe, anything else you would want to say?

14        MR. KIBBE:  Thank you, Your Honor.

15        Three things, Your Honor.

16        First is to counsel's first point on the financial

17    profile and that it's broader than -- it may be broader than

18    cryptocurrency, and to the extent that's the case -- and I

19    believe that it may be, because as I've understood it, it's a

20    financial crimes profile that's set up -- it is absolutely

21    appropriate in this case, because that's the entire context of

22    the case.

23        The entire context of the case is not just focused

24    solely on cryptocurrency; it's on hiding millions of dollars

25    from the government and the IRS -- not limited to

1    cryptocurrency, that's just one form of it -- and the conditions

2    are not just to not engage in cryptocurrency transactions, they

3    also include no opening of financial accounts without

4    Pretrial Services.

5         So to the extent it is broader than just

6    cryptocurrency, that's absolutely appropriate, given all of the

7    conditions of the release and all of the conditions to the --

8    and all of the context of the case which the Court should

9    consider under the Bail Reform Act factors.

10        Second, Counsel mentioned Mr. Goldstein's work as an

11   attorney as an additional point about potentially privileged

12   communications.  The government understands that Mr. Goldstein

13   previously told Pretrial Services that he was no longer doing

14   legal consulting work.  The government also understands that

15   Mr. Goldstein's Maryland bar status is inactive.  So if there's

16   more that Counsel wants to proffer about that, you know, perhaps

17   they may, but those are the facts that the government is aware

18   of right now.

19        The third point is, what about limiting it just to

20   cryptocurrency apps or websites?  And the reason why that is not

21   the most appropriate least restrictive condition is because that

22   is plainly not the only way that cryptocurrency transfers can

23   happen, as shown by the undisputed evidence in this case, that

24   in fact, hundreds of thousands of dollars, at a minimum, have

25   been transferred just based on directions and messages that they

1  be transferred, and so limiting it just to apps does not ensure

2  compliance with the conditions of release.

3          Thank you, Your Honor.

4          THE COURT:  Thank you very much, AUSA Kibbe.

5          Anything else Pretrial wants to say about the

6  monitoring condition?

7          THE PROBATION OFFICER:  The only thing that I would

8  add, Your Honor, is relative to defense counsel's concern that

9  we would share information.

10          If there would be any sort of violation that would

11  occur because of the monitoring, we would complete a notice of

12  apparent violation, we would outline what the alleged violation

13  was, and we would submit it to the Court and the parties;

14  however, the evidence that we would have relative to that

15  violation wouldn't be shared with the parties absent further

16  record -- or further approval of the Court.  So that would be

17  routine by our office; it would just be the allegations of what

18  we allegedly uncovered with the investigation.

19          THE COURT:  Thank you very much; that's helpful.

20          Well, Counsel, thank you very much for the helpful

21  discussion this afternoon, also for the high quality of your

22  written submissions on this issue.

23          As is my practice, I'm going to rule on the motion

24  appealing the monitoring condition.  I will follow this up with

25  a written opinion, so I'm going to move pretty quickly just so

1    you know where the Court comes out and generally the reasons for

2    that.  And then, I'd like us to turn to any other issues in the

3    schedule about how we're going to proceed.

4           Again, pending before the Court are really two motions

5    that are related for purposes of my ruling right now.  One is

6    the defendant's motion appealing the order to set a condition

7    that his communications be monitored in connection with this

8    matter, and also related to that, there was an emergency motion

9    seeking the disclosure of certain grand jury testimony related

10   to that appeal.

11          As the Court's already indicated, I'm not going to

12   consider issues related to the grand jury testimony in the

13   context of this motion, and so I'm going to deny the 6(e) motion

14   for that reason.  We may talk about those issues later on in a

15   different context.

16          On the issue of the monitoring condition, as the

17   parties are aware, under 18 U.S.C., Section 3145, if someone is

18   ordered released by a Magistrate Judge, the person can file a

19   motion to amend the conditions of release, and the Court must

20   consider that motion promptly.

21          My duty is to review the matter de novo, and so while

22   I have reviewed the extensive record in this case, I look at

23   these issues fresh in connection with today's hearing, and

24   again, I'm focusing on whether or not any conditions of release

25   will reasonably assure the appearance of the defendant and,

1    of course, mitigate any concerns about danger to the community.

2          There are four key factors that the Court considers

3    under the Bail Reform Act, under this circumstance, including

4    the nature and circumstances of the offenses charged in the

5    matter, the weight of the evidence against the defendant, the

6    defendant's history and characteristics, and the nature and

7    seriousness of any danger that may be posed by that person to an

8    individual or to the community, and as we've discussed today,

9    I'm also looking for the least restrictive condition or

10   conditions to ensure that those two concerns are adequately

11   addressed.

12         In this case, Mr. Goldstein is challenging a condition

13   called the computer and internet monitoring condition.  That

14   will allow the installation of a monitoring software and

15   hardware on his internet-capable devices, which he will be

16   paying for.  This allows random, unannounced examinations of his

17   computer systems and other internet-capable devices, and again,

18   the focus here is on potential financial crimes, to include

19   matters involving cryptocurrency.

20         As I indicated at the beginning of today's hearing,

21   for the purposes of resolving this motion, the Court is not

22   going to consider concerns about Mr. Goldstein's alleged

23   involvement in transactions during the course of his pretrial

24   release connected with the 935B and 54E3 wallets.  I'm also not

25   going to consider concerns that have been raised about alleged

1    witness tampering.

2            Turning to the nature and circumstances of the

3    offense, I've said before, these are serious offenses, here.  We

4    have a 22-count indictment, charging very serious crimes:  Tax

5    evasion, aiding and assisting in the preparation of false and

6    fraudulent tax returns, willful failure to pay taxes, and false

7    statements on a loan application.  Mr. Goldstein is, of course,

8    presumed innocent of all those charges.  These are serious

9    offenses, they involve serious alleged financial crimes, and it

10   must inform the Court's consideration of the conditions of his

11   pretrial release.

12           Also noteworthy is that these offenses typically

13   involve conduct involving attempting to conceal or to hide

14   information, financial information, and so the concerns about

15   misleading or concealing information from the government, which

16   is an element in all these offenses, is also something that the

17   Court takes into account in connection with this case.  And in

18   particular, these charges involve Mr. Goldstein's use in

19   transactions involving cryptocurrency.

20           And so that is also critical to the Court's

21   assessment, and I will note that in order to engage in those

22   types of transactions, you've got to be able to connect to the

23   internet, which I think is particularly relevant here.

24           Turning to the weight of the evidence, I think the

25   parties agree, there's a lot of evidence that the government has

1    said it's going to rely upon to support the charges in the case.

2    Again, Mr. Goldstein is presumed innocent, but that evidence

3    includes contemporaneous communications by Mr. Goldstein,

4    information about particular loans that the government alleges

5    were not disclosed to mortgage lenders, other bank and wire

6    records, gambling-related information associated with

7    Mr. Goldstein, tax and accounting records, and other information

8    reflecting Mr. Goldstein's financial and spending habits over

9    the relevant period of time.

10           Again, a lot of this evidence is connected to

11   cryptocurrency wallets hosted on Coinbase and binance.com,

12   again, bringing us back to the general concerns that the Court

13   has tried to address through the conditions at issue here.  As

14   the Court has also indicated and I believe was undisputed,

15   Mr. Goldstein has a long history of international travel.  He

16   has significant contacts with individuals who are overseas,

17   including individuals with means and wealth, that might allow

18   the resources to allow him to flee.

19           Again, he's engaged in cryptocurrency transactions

20   involving many of these individuals and related to his online

21   poker activities, which, I believe he also has acknowledged,

22   involved, over a period of time, millions of dollars in

23   connection with those activities.

24           And lastly, as to danger to the community, there is a

25   concern here about potential economic danger related to

1    Mr. Goldstein's activities and the allegations in this case that

2    he has concealed resources in connection with his taxes and may

3    owe the United States and other individuals monies in connection

4    with that.

5            Lastly, on the issue of least restrictive means, as I

6    mentioned at the beginning of the hearing, we're not talking

7    about detention, here; we're solely talking about a monitoring

8    condition.  And the concerns raised are important, but also, I

9    think the Court needs to look at that in the context of our

10   hearing today.  The monitoring condition, again, as the Court

11   reads it, is an essential tool to ensure compliance with other

12   conditions that have been imposed by the Court and are not

13   challenged today, to ensure that Mr. Goldstein is not engaging

14   in online poker activities or engaging in cryptocurrency

15   transactions as he awaits trial in this matter.

16           I understand and appreciate the concerns raised by

17   defense counsel, particularly related to communications between

18   counsel and client and Mr. Goldstein's potential work-related

19   activities, and while I understand those concerns, I think the

20   monitoring conditions are the least restrictive means for

21   accomplishing the goals that the Court has, which is to ensure

22   Mr. Goldstein's reasonable appearance and to mitigate any danger

23   to the community.  And I don't think that the concerns raised by

24   the defense really outweigh those in a way where I think the

25   Court should either eliminate this condition or modify it in a

1    way that would perhaps address the points raised by defense

2    counsel.

3              So I'm going to deny the motion and sustain the

4    condition as imposed by the Magistrate Judge in this matter for

5    these reasons.

6              Again, we will have many opportunities to come

7    together as this case moves forward, and I'm certainly happy to

8    talk with counsel about these issues as we go forward in terms

9    of how they are impacting Mr. Goldstein and also what we're

10   hearing.  And I'm pleased to hear, so far, we don't have any

11   concerns.

12             And so for those reasons, again, the Court will deny

13   the motion, the appeal.  I will sustain the condition.

14             Relatedly, I'm going to also deny the motion for

15   emergency relief and grand jury testimony within the context of

16   the motion to challenge the conditions of Mr. Goldstein's

17   pretrial release.

18             This will be followed up by a written ruling and order

19   of the Court, which the parties will have shortly, which will

20   then fully set forth the Court's analysis.

21             At this time, are there any initial questions about

22   the Court's ruling from the perspective of the defense?

23             MR. KRAVIS:  No.  Thank you, Your Honor.

24             THE COURT:  Any initial concerns from the government?

25             MR. KIBBE:  No, Your Honor.  Thank you.

1             THE COURT:  Any questions from Pretrial?

2             THE PROBATION OFFICER:  No, Your Honor.

3             THE COURT:  All right.  So we will continue as

4    planned.

5             We have a number of other issues in this case,

6    Counsel.  I think the pressing one is to get a schedule, at

7    least for our next steps.  I want to throw out a couple of

8    things.

9             Typically, we would have had an initial scheduling

10   conference in this case.  We had some issues with regards to

11   Mr. Goldstein's representation at the beginning of the case, and

12   we kind of started at a different place here.  Usually, at that

13   conference, the Court would toss out potential trial dates and

14   see if we're ready set the case for trial, and then we would

15   work on a schedule for the steps to get us there.

16            I guess, my first question -- are we ready to set a

17   trial date in this case and work backwards from there is my

18   first question.  If the answer to that is yes, I have some dates

19   to throw out; if the answer is no, then, at a minimum, I think

20   we need to set some dates for pretrial motions and a pretrial

21   motion hearing.

22            What's the thought of the government about setting a

23   trial date?

24            MR. KIBBE:  Yes, Your Honor, we're prepared to do

25   that.  I think that would be helpful, to set out the full

 1   schedule, an orderly schedule in this case.

 2             THE COURT:  Okay.  Let's hear from Mr. Kravis.

 3             MR. KRAVIS:  I believe the answer is yes, Your Honor.

 4   I do want to offer just a couple of thoughts --

 5             THE COURT:  Can you speak right into the microphone on

 6   the podium, just so we can hear you?

 7             MR. KRAVIS:  I'm sorry.  Yeah.  I believe the answer

 8   from our side is yes, Your Honor.  I do -- I did want to offer a

 9   few qualifications there.

10             THE COURT:  Mm-hmm.

11             MR. KRAVIS:  The first is that the government has just

12   begun a Brady production to the defense, and depending on how

13   that production goes and what is and is not in it, we may have a

14   discovery motion to file there.

15             In addition, as we noted in the joint pretrial status

16   report, we do have one motion that we would like to file very

17   soon, at the Court's earliest convenience.

18             With those two caveats in mind, I believe we agree

19   that it would be appropriate to set a trial date.

20             THE COURT:  Okay.  Well, I'm prepared to toss out some

21   dates, and as you can imagine, the Court's calendar is full, so

22   I'm sure we'll have enough time to address those motions before

23   we're able to set the case for trial.

24             Right now -- and again, we can go back and look at the

25   calendar if this doesn't work, but I definitely could set the

1  trial in this case in October for jury selection and trial.  If

2  that's too far out, then we'll have to go back to our calendar

3  and look at earlier dates.

4          I can tell you generally, my calendar through the

5  summer is already booked, so we're probably looking at the fall,

6  but I do have availability right now to set jury selection for

7  October 14, 2025 and then go ahead and set the trial to begin on

8  October 15, 2025, which would gives us time to deal with

9  pretrial motions.

10          Thoughts?

11          MR. KRAVIS:  I apologize, Your Honor; I have another

12  trial scheduled in the Eastern District of Virginia for the

13  first week in October, and so I'm not going to be available to

14  try the case in October.

15          THE COURT:  All right.  Let's hear from the

16  government.

17          MR. KIBBE:  October -- excuse me, Your Honor.  October

18  would work for the government.  We'd just ask that -- inquire

19  how many weeks the Court has open at that time, just to ensure

20  that we --

21          THE COURT:  I would be wide open.  That's why I went

22  with October, because I would be able to set as much time as we

23  need.

24          If we're not going to be able to do that week, I'm

25  going to have to go back, and we're going to have to find some

1  additional dates to offer to counsel.  We thought this would be

2  far enough out that we wouldn't have an issue.

3          Generally speaking, my calendar in the fall is open

4  right now, so we can probably find a date either later in

5  October or November, but I don't want to promise and get myself

6  into trouble.

7          But why don't we talk about what we need to do to get

8  ready; we might be able to set some dates for that, assuming

9  we're going to do trial in November of 2025, just so we can have

10 a plan to move forward.

11         Any thoughts about that?

12         MR. KIBBE:  Thank you, Your Honor; that works for the

13 government.

14         THE COURT:  All right.

15         MR. KRAVIS:  Yes, Your Honor, we're prepared to

16 continue to set a schedule now as we work --

17         THE COURT:  Okay.

18         MR. KRAVIS:  -- towards identifying a trial date.

19         THE COURT:  So I'm going to do two things.  I'm going

20 to ask my law clerk to go get my JA to give me some dates in

21 November, and hopefully, I can get them to you before --

22 shortly, but let's assume we're going to proceed to trial in

23 November.

24         I think we have a good idea of what that looks like,

25 and we can come up with some dates to get us ready.  And then,

 1    we can fill in with the trial date.  And again, my fall calendar

 2    is pretty open, so I'm open, and we can set the trial for the

 3    amount of time that we need.

 4              Mr. Kravis?

 5              MR. KRAVIS:  Your Honor, I was just going to say, with

 6    respect to scheduling in November, I do have a matter that I

 7    need to consult with one of my colleagues at the firm on in

 8    terms of the scheduling there.

 9              I'm happy to set a tentative trial date now, and I can

10    advise the Court by the end of the week whether the date will

11    work or not; I just wanted to offer that.

12              THE COURT:  All right.  Well, let's just see how far

13    we can get.

14              So we're going to assume right now we're going to go

15    to trial in November, and we'll piggyback a date shortly.  We're

16    now at the end of March, so we have, I think, a good period of

17    time to get ready.

18              I think the next step here, Counsel, is probably to

19    get our pretrial motions in.  I'd like to do that in an orderly

20    fashion so we're not just filing motions and having multiple

21    hearings as much as possible.  So I'd like to hear from each

22    side what you're envisioning in terms of motions, and then we

23    can figure out a schedule.

24              Let me see if the Government has anything first, and

25    then, we'll go to the defense.  I know you have several.

1          MR. KIBBE:  No, Your Honor, we're not planning,

2     currently, any pretrial motions; maybe motions in limine, but

3     that would be a separate issue.

4          THE COURT:  Okay.

5          MR. KIBBE:  We have, as Counsel noted --

6          THE COURT:  Can you -- do you mind coming to the

7     podium?  I know you're tall, but we can't hear you if you're not

8     directly on the mic.

9          MR. KIBBE:  Of course, Your Honor, thank you.

10         As Counsel noted -- excuse me -- we have been starting

11    to make Brady productions.  Any potentially Brady material, the

12    government has corresponded with defense counsel on this point.

13    It certainly is something that we fully intend to keep doing and

14    make early disclosures of any potentially Brady material.

15         There's a significant amount of material in this case,

16    and we had previously represented to Counsel we'd be trying to

17    do that by the beginning of April.  We have now spent the last

18    two weeks doing that, then also focused on the briefing that the

19    Court ordered, and -- as a consequence of the emergency motion,

20    which we were not previously aware of.

21         And so we would ask for a few more weeks to complete

22    that, to the extent that impacts the schedule on pretrial

23    motions, and hopefully, that wouldn't if trial is in November.

24         THE COURT:  Okay.  So you probably need a few more

25    weeks for those exchanges, for Counsel to review that, because

1    that may inform the defense in terms of its motions.

2            Similarly, Mr. Kravis, are we thinking late April or

3    early May when you'd be prepared to file your motions?  What are

4    your thoughts?

5            MR. KRAVIS:  Well, Your Honor, these are our thoughts.

6            We had one motion that we would like to file at the

7    Court's earliest convenience -- we could be prepared to file it

8    this week -- that we view as antecedent to our full set of

9    pretrial motions to dismiss.  That is a motion requesting an

10   evidentiary hearing on specifically the 3292 applications, the

11   applications that the government filed during the investigation

12   to toll the statute of limitations.

13           We view that as an antecedent motion here because

14   I believe that the Court's ruling on that motion and any

15   evidentiary hearing on that motion would inform the pretrial

16   motions that the defense would file, including, possibly,

17   depending on the ruling, a motion to dismiss certain of the

18   charges on statute of limitations grounds.

19           I think that if we're looking -- we're talking about a

20   trial date in November, there would be plenty of time for us to

21   file that motion, allow the Court to consider it, and then, once

22   the Court has ruled on that motion, if the Court grants it, once

23   we've had an evidentiary hearing, for us to file a full set of

24   pretrial motions promptly after that.

25           THE COURT:  Well, let me hear from the government.  I

1    hear your point, and I understand the recommendation to kind of

2    bifurcate the process.

3              Let me hear from the government.

4              And I'll just say, I'm not objecting to it, but I

5    mean, my goal is to try to get this case on track so we can

6    really use our time efficiently, and that's the only concern I

7    have.

8              Mr. Kibbe?

9              MR. KIBBE:  Thank you, Your Honor.

10             The government's view is that one comprehensive

11   pretrial motions deadline would be appropriate.  We haven't seen

12   defense's motion, but as it's been described, it sounds sort of

13   like a Franks motion, where they'd be challenging -- requesting

14   a hearing on a 3292 application instead of a search warrant in

15   the Franks context.

16             The government's experience in this Court is, those

17   are typically done in pretrial -- as part of the comprehensive

18   set of pretrial motions, so it wouldn't be antecedent, you know,

19   to anything else.  And to the extent there is a motion on a

20   3292 application, and an evidentiary hearing, and a finding, and

21   that finding then somehow knocks out, you know, a count,

22   for example -- I think possibly the counts at issue are the 2016

23   tax year -- that can all be done as part of that motion.

24             I mean, typically, when we have pretrial motions, if

25   there's a motion to suppress, for example, and the evidence is

1    suppressed, we don't need then a separate whole set of motions

2    to see if there's going to be a dismissal.

3              THE COURT:  Okay.

4              MR. KIBBE:  So the question is, kind of, what's the

5    one set of comprehensive motions.

6              THE COURT:  All right.  And of course, I haven't seen

7    the defense's motion.

8              My inclination would be to set a date for the motions,

9    and if it turns out that we need to do something in terms of

10   addressing something quickly, I can do that, we have time.  But

11   I'm also concerned if we do it the bifurcated way and that's not

12   the case, we kind of delay things a little bit.  Let's just get

13   the motions in, and we'll see where we are, and if the Court --

14   the Court's happy to have the hearing, if we need to have a

15   hearing, and if we need to adjust the schedule once we have the

16   papers, we've got time to do that.

17             But I'd like to set a schedule for the motions, brief

18   them up, we'll set a hearing date, and then, I will see -- once

19   I see the papers, we can talk further about proceeding forward.

20             Mr. Kravis, I think you wanted to say something.

21             MR. KRAVIS:  Yes.  That's acceptable to the defense.

22   We may -- we expect that we may file the 3292 motion early, like

23   in advance of the deadline, if that's all right with the Court.

24             THE COURT:  You can do it on or before.

25             MR. KRAVIS:  Thank you, Your Honor.

1          THE COURT:  Okay.  So let's talk about a date for

2    getting the defense's pretrial motions in, because that's going

3    kick off our schedule, and then we'll -- we'll just schedule

4    from there.

5          Go ahead.

6          And let's give them a little white noise, if you want

7    to -- are you ready?  Okay.

8          MR. KRAVIS:  Yes, Your Honor.

9          We would propose May 16th as the deadline for filing

10   pretrial motions.  The Court's -- as we just discussed a moment

11   ago, I expect the defense may file one or more of the motions

12   early.

13          I also want to just sort of add the caveat that I

14   mentioned at the beginning, which is that based on the timing of

15   the government's production of Brady material, we will -- if --

16   I guess, what I'm saying is, if the production extends further

17   out such that we need more time to file an additional motion

18   based on --

19          THE COURT:  You can let us know --

20          MR. KRAVIS:  Right.

21          THE COURT:  -- and we will -- that's good cause.  That

22   will be fine.

23          Hopefully, the date, I think, is good; it should allow

24   for the productions based on what I've heard so far.

25          MR. KRAVIS:  Right.

```
 1              THE COURT:  Any objection to May 16 for the defense's
 2   motion, Mr. Kibbe?
 3              MR. KIBBE:  No, Your Honor.
 4              THE COURT:  And in light of that, when would you be
 5   able to respond?
 6              MR. KIBBE:  Could the government then have until --
 7   let me look at the calendar -- June 18th?
 8              THE COURT:  June 18th.  So that's a little over
 9   30 days.
10              Mr. Kravis, what about your reply briefs?
11              MR. KRAVIS:  We would request two weeks for the reply.
12              THE COURT:  So that would -- can you give me a date?
13   I apologize; I don't have a calendar in front of me.  It looks
14   like it's the 29th, but ...
15              MR. KRAVIS:  I think it's -- two weeks would bring us
16   to July 2nd.
17              THE COURT:  I'm sorry?
18              MR. KRAVIS:  I'm sorry.  Two weeks, I think, would
19   bring us to July 2nd.
20              THE COURT:  July the 2nd, thank you.
21              All right.  Let me just review these dates with
22   counsel to make sure we're all comfortable.
23              The plaintiff's pretrial motions, May 16; government's
24   response and opposition thereto, June 18; reply briefs,
25   July 2nd, 2025.
```

1          Is that acceptable to the government?

2          MR. KIBBE:  Yes, Your Honor.

3          THE COURT:  Is that acceptable to the defense?

4          MR. KRAVIS:  Yes.  Thank you, Your Honor.

5          THE COURT:  All right.  And I will set a hearing date

6    a little closer to the time in consultation with the parties,

7    probably sometime in July.  If that's going to involve the

8    evidentiary hearing, you know, we'll talk and sort that out, but

9    we'll make sure there's sufficient time to address that.

10         The next step would be the Court ruling on those

11   motions.  Typically, I do it at the hearing, so we'll assume

12   we'll have those motions wrapped up sometime in July, and then,

13   we would turn to motions in limine practice.  I would like to

14   entertain some dates for that a little closer to trial.  Let me

15   show you what I've got in terms of potential trial dates, and

16   maybe that can inform us.

17         In November, we can set the trial for jury selection

18   on November 3rd, 2025, and so that would get us a couple weeks

19   ahead of Thanksgiving.  I would have that month to try the case

20   in November.

21         The other option puts us in December, December 1 for

22   jury selection with trial starting the 2nd, again, giving us a

23   few weeks before Christmas.

24         Either of those dates would work for the Court.  Let

25   me know where the parties are.

```
 1              (Conference among counsel.)
 2              THE COURT:  And I apologize, counsel.  I just now
 3    understand, the November dates are not going to work for the
 4    Court, unfortunately.  I know Mr. Kravis may have an issue too,
 5    so now I'm going to offer again.
 6              I've got, really, January 12th, 2026, trying a case
 7    beginning on January 13th.  December 1st might still work; there
 8    could be a problem.  So January 12th, 2026, January 13th for
 9    jury trial beginning.  That's not an issue for the December
10    dates.
11              Do you all need some more time to confer?
12              MR. KRAVIS:  Your Honor, we could -- we can make
13    either the December or January trial date work on our end.
14              THE COURT:  AUSA Kibbe, let me know when you're ready.
15              MR. KIBBE:  The January date would work for the
16    government, Your Honor.
17              THE COURT:  That's -- so let's do January 12th, 2026,
18    that works for the Court as well.  And I am certain that we have
19    as much time as we need that far out, but I think that will give
20    us plenty of time to get ready.
21              So we're going to do jury selection on January 12th,
22    2026.  That will be here in Greenbelt.  We'll start the trial as
23    soon as we pick the jury on or about the 13th of January 2026.
24    I'm going to already put in the calendar our final pretrial
25    conference, which will be in the 2026 calendar, so I can give
```

1    you that date.  Friday, January 9th, 2026, at 2:00 p.m.

2          And then, working backwards from there would be our

3    schedule for motions in limine practice, and so that gives us a

4    little bit more time.  I want to suggest a date for motions

5    in limine.  I'm thinking probably sometime later in 2025, closer

6    to trial.

7          Mr. Kravis.

8          MR. KRAVIS:  Your Honor, we were prepared to suggest

9    early December, like December 1st, for motions in limine.

10          Looking at the calendar, we thought that would give

11   the Court and the parties enough time to litigate the motions

12   in limine before the Christmas holiday so that folks could have

13   a chance in early January to prepare for the trial based on the

14   procedural motions.

15          THE COURT:  Okay.  Well, we'll have to have them in

16   probably a little bit earlier than the beginning of December so

17   the Court could resolve the motion.  So I think -- and I'll hear

18   from AUSA Kibbe.

19          If we're going to have the final pretrial hearing on

20   the 9th, the Court would arguably, if we have time, have a

21   hearing on motions in limine.  That would usually be, you know,

22   early December at the latest so the parties are aware of how to

23   deal with the evidence before trial, and that would require the

24   papers coming in, you know, October, November.  Otherwise, it

25   just gets you-all so close to trial, and that may not be

1    constructive, to get rulings from the Court, you know, on the

2    eve of trial that will impact how you want to present your

3    evidence.

4              AUSA Kibbe.

5              MR. KIBBE:  Thank you, Your Honor.  And maybe an

6    approach, then, is if we set a motions in limine hearing in

7    December, we work backwards from that, and just however long --

8              THE COURT:  Yeah, I think we want to have that

9    hearing -- and I think I have a trial during that time, but we

10   want to have that hearing early December or end of November.

11        (Discussion off the record.)

12             THE COURT:  Okay.  So right now, the Court could do

13   this hearing on either Friday the 5th or Friday the 12th.  I

14   don't sit for trial on those dates.  That would be an option for

15   the hearing, and that would require the papers be coming in, you

16   know, no later than the middle of November, keeping in mind the

17   holiday so we have time to resolve it.

18             MR. KRAVIS:  That's fine for the defense.

19             THE COURT:  All right.

20             MR. KIBBE:  Yes, Your Honor, that works.

21             THE COURT:  So I'm going to set the hearing for

22   December 12th, which is a Friday, and we'll do that in

23   Greenbelt, and working backwards from there, I really would like

24   to have the papers in to the Court -- and I'm also factoring in

25   Thanksgiving -- you know, preferably, prior to Thanksgiving, and

1    then you all are done as well, and that gives the Court time to

2    go through the paperwork.

3         So if we could come up with a schedule to get

4    everything in by the -- you know, the week before Thanksgiving,

5    I think that will work well for everybody and also give the

6    parties a nice break.

7         And I'll just start throwing out dates, and you can

8    modify.  I think we're probably looking at something with the

9    hearing in December.  The opening papers probably need to come

10   in sometime in October?

11        MR. KRAVIS:  Yes, Your Honor.  I was just looking at

12   the calendar.  I think if the Court set the motions for -- the

13   motions deadline for October 24th, and oppositions by

14   November 14th, and replies by November 21st, that would complete

15   the briefing by -- before Thanksgiving and give the Court time

16   before the hearing.

17        THE COURT:  Let me see what the government thinks.

18        MR. KIBBE:  That works for the government.

19        I might suggest, Your Honor, since we have all this

20   time between July and October, just to build in a little bit

21   more time in that briefing schedule, so -- but that schedule's

22   fine, but we can, you know, just have the brief due a little bit

23   earlier and then build in a little bit more time between each

24   step to make sure everything's addressed.

25        THE COURT:  Well, it's on or before, so you're more

1    than welcome to file early, if you want to.

2              Are you okay with October 24?

3              MR. KIBBE:  Yes, Your Honor.

4              THE COURT:  All right.  So we're going to set the

5    motions in limine.  October 24 for the motions, responses in

6    opposition thereto November 14, reply briefs November 21.

7              We'll hold the hearing on those motions on

8    December 12th, 2025.  I'll just set it right now for 10:30 a.m.,

9    but we'll circle back to the parties closer to time, and then we

10   will have completed all of our work, other than the work to

11   actually prepare the pretrial filings, which would be your jury

12   instructions, voir dire questions, and verdict form, and that

13   typically comes in right before trial.

14             We're having our pretrial -- final pretrial status on

15   the 9th, so I usually like to get those in about a week before

16   so the Court can review them and send its comments.  And then we

17   can try to finalize at least the voir dire questions at the

18   final pretrial conference on, again, January 9th.

19             So I will propose a week ahead. I know with the

20   holiday, that gets us, like, when we're coming out, but either

21   we could do it -- have it come in on the 5th of January, or we

22   can do it before the holiday.

23             Any preference there?

24             MR. KIBBE:  Your Honor, the government would propose

25   December 22nd.

1          THE COURT:  December 22nd?

2          Defense have any objection?

3          MR. KRAVIS:  No objection, Your Honor.

4          THE COURT:  That works for the Court, gives us more

5    time, so we'll do that on December 22nd, 2025.

6          Again, those are the proposed voir dire questions,

7    picking a jury, the verdict form and jury instructions.  And the

8    Court invites counsel to, you know, meet and confer on those

9    things, we'll work through any differences, but the more you all

10   can meet and confer, the more productive I think it will be for

11   us at that final pretrial conference on the 9th.

12         So I think we have a schedule, counsel.  I'm just

13   going to walk through it one more time, and then we'll enter it

14   in the case.

15         For pretrial motions, all from the Plaintiff, May 16;

16   opening motions, responses in opposition thereto, June 18; reply

17   briefs, July 2nd.  The Court will then set a hearing sometime in

18   July, to be determined.  We'll have motions in limine practice

19   in the fall, October 24 for motions in limine; responses in

20   opposition thereto, November 14; reply briefs, November 21st.

21         Then we'll have a hearing date set for December 12th,

22   2025, at 10:30 a.m. here in Greenbelt on the motions in limine.

23   We'll then proceed to get ready for trial, with jury

24   instructions, voir dire questions, and verdict form due to the

25   Court by December 22nd prior to the Christmas holiday.

 1              We'll come back after the holiday and have our final

 2    pretrial status conference on January 9th, 2026 at 2:00 p.m.,

 3    also here in Greenbelt.  And we'll pick the jury on

 4    January 12th, 2026 at 9:30 a.m., and once we complete picking

 5    the jury, we'll proceed to trial.  And the Court's calendar is

 6    open.

 7              We'll talk more about the length of trial, but right

 8    now, I'm going to go ahead and block the following three weeks,

 9    just to give us time, and hopefully, we can resolve the matter

10    at that point.

11              Any objections to the proposed schedule at this point

12    from either side?

13              MR. KIBBE:  No, Your Honor.

14              MR. KRAVIS:  No objection, Your Honor.

15              I did want to note for the Court that the defense does

16    plan to file a renewed motion on the Hawthorne property --

17              THE COURT:  Right.

18              MR. KRAVIS:  -- and we will file that on or before the

19    May 16th deadline --

20              THE COURT:  That's perfect.

21              MR. KRAVIS:  -- for pretrial motions.

22              THE COURT:  That's perfect.

23              MR. KRAVIS:  Thank you, Your Honor.

24              THE COURT:  Thank you.

25              All right.  So the Court will prepare to enter this

1  order once we adjourn for the day.  You'll also see an order

2  disposing of the two motions we addressed today.  A memorandum

3  opinion will be issued probably tomorrow, given the hour.  That

4  will also be on the docket.

5          Is there anything else that we need to address this

6  afternoon from the perspective of the United States?

7          MR. KIBBE:  Your Honor, one matter was -- is the

8  speedy trial clock.  Having Your Honor ruled on the motions

9  today, we'll be submitting another speedy trial motion.  We'll

10 confer with counsel on that, but it will be made in view of the

11 dates that we just set with the Court.

12         THE COURT:  Okay.  Thank you very much.

13         Anything on that, Mr. Kravis?

14         MR. KRAVIS:  We'll be happy to look at the

15 government's submission on speedy trial when we receive it.

16         THE COURT:  Okay.

17         MR. KRAVIS:  The only other thing we had, Your Honor,

18 is, we would ask that the denial of the motion to compel

19 production of the grand jury transcript be without prejudice.

20 We may have grounds to renew that motion at some later point.

21         THE COURT:  Unrelated to the motion we talked about

22 today?

23         MR. KRAVIS:  Yes, Your Honor.

24         THE COURT:  Okay.  I think that's probably

25 appropriate, and I'm not ruling on the motion.

1          AUSA Kibbe?

2          MR. KIBBE:  I'm not sure I understand counsel's

3     request.  I mean, I think if they're making a different motion

4     for a different reason, then perhaps that's different than

5     what's been put before the Court.

6          THE COURT:  Well, I mean, it's denied for purposes of

7     the monitoring condition.  As I indicated earlier, if the

8     defense wants to raise this issue again, you're welcome to do

9     so, and I don't take a position on it.

10          So I think that's the way I'll craft the order.  I

11     don't think that precludes the defense from raising any of the

12     issues that I said I'm not going to reach today or the

13     government raising those issues as we go forward.

14          MR. KRAVIS:  That was our request.  Thank you,

15     Your Honor.

16          THE COURT:  Okay.  I think that that's fine.  I'm fine

17     with that.

18          Anything else from either party?

19          MR. KRAVIS:  No.  Thank you, Your Honor.

20          MR. KIBBE:  No, Your Honor.  Thank you.

21          THE COURT:  Anything from Pretrial before we break?

22          THE PROBATION OFFICER:  No, Your Honor.

23          THE COURT:  Anything from my Courtroom Deputy?

24          THE COURTROOM DEPUTY:  No, ma'am.

25          THE COURT:  All right.  Well, Counsel, thank you so

1    much for your time today and the helpful discussion.  As I

2    indicated, you'll see the orders we've discussed on the docket

3    shortly, and I look forward to seeing the parties and counsel at

4    a later date.

5                We can stand adjourned.

6                THE COURTROOM DEPUTY:  All rise.

7                This Honorable Court now stands adjourned.  Thank you.

8          (The proceedings were adjourned at 4:02 p.m.)

9                          *      *      *

1             CERTIFICATE OF OFFICIAL REPORTER

2      I, Patricia Klepp, Registered Merit Reporter, in and for

3  the United States District Court for the District of Maryland,

4  do hereby certify, pursuant to 28 U.S.C. § 753, that the

5  foregoing is a true and correct transcript of the

6  stenographically-reported proceedings held in the above-entitled

7  matter and the transcript page format is in conformance with the

8  regulations of the Judicial Conference of the United States.

9                 Dated this 22nd day of September, 2025.

10

11

12                _____/s/_____
                   PATRICIA KLEPP, RMR
13                 Official Court Reporter

14

15

16

17

18

19

20

21

22

23

24

25

MR. KIBBE: [27] 3/68
24/18 30/23 37/5
41/14 49/25 50/24
52/17 53/12 55/1 55/5
55/9 57/9 58/4 60/3
60/6 61/2 62/15 64/5
64/20 65/18 66/3
66/24 68/13 69/7 70/2
70/20

MR. KRAVIS: [55] 4/9
10/12 11/9 11/12 12/9
12/13 13/12 14/24
15/3 18/1 18/16 20/2
21/14 21/17 21/19
22/16 24/15 38/5 38/7
38/10 38/18 39/2
41/11 49/23 51/3 51/7
51/11 52/11 53/15
53/18 54/5 56/5 58/21
58/25 59/8 59/20
59/25 60/11 60/15
60/18 61/4 62/12 63/8
64/18 65/11 67/3
68/23 69/14 69/17
69/23 70/14 70/19

PROSPECTIVE
JUROR: [1] 34/3

THE COURT: [100]
THE COURTROOM
DEPUTY: [3] 3/3
70/24 71/6
THE PROBATION
OFFICER: [15] 4/19
32/8 33/11 33/18
33/21 34/10 35/1 35/4
35/17 35/23 36/3
36/18 43/7 50/2 70/22

$
$10 [1] 28/2
$10 million [1] 28/2

/
/s [1] 72/11

0
0683 [1] 2/7

1
100,000 [1] 29/18
1014 [1] 6/1
10:30 [1] 66/8
10:30 a.m [1] 67/22
10th [1] 6/10
1126 [1] 2/13
1130 [1] 2/12
11th [2] 6/12 7/3
12th [9] 62/6 62/8
62/17 62/21 64/13
64/22 66/8 67/21 68/4
13th [5] 6/15 11/17
62/7 62/8 62/23
14 [3] 52/7 66/6 67/20
14th [1] 65/14
15 [1] 52/8

150 [1] 2/4
1600 [3] 1/60/23
67/15
16th [3] 5/16 59/9
68/19
18 [3] 5/25 60/24
67/16
18 U.S.C [1] 44/17
18th [2] 60/7 60/8
1st [2] 62/7 63/9

2
2.142 [1] 2/5
200 [1] 1/24
20001 [1] 2/11
20002 [1] 2/4
2016 [1] 57/22
202 [4] 2/6 2/7 2/12
2/13
2020 [1] 28/2
2021 [1] 28/3
2025 [19] 1/8 5/16 6/2
6/11 6/12 6/15 7/3 7/8
7/13 52/7 52/8 53/9
60/25 61/18 63/5 66/8
67/5 67/22 72/9
2026 [9] 62/6 62/8
62/17 62/22 62/23
62/25 63/1 68/2 68/4
20770 [2] 1/16 1/25
21 [1] 66/6
212-4237 [1] 1/17
213 [2] 2/16 2/17
21st [3] 7/8 65/14
67/20
22-count [2] 5/17 46/4
220-1126 [1] 2/13
220-1130 [1] 2/12
227-0683 [1] 2/7
22nd [5] 66/25 67/1
67/5 67/25 72/9
24 [3] 66/2 66/5 67/19
24th [2] 7/13 65/13
25 [1] 1/8
26 [3] 5/19 5/22 5/23
27th [2] 6/2 7/1
28 [1] 74/4
2839 [1] 2/6
29th [1] 60/14
2:00 p.m [2] 63/1 68/2
2:33 [1] 1/9
2nd [6] 60/16 60/19
60/20 60/25 61/22
67/17

3
30 days [1] 60/9
3145 [1] 44/17
3292 [2] 57/14 58/22
3292 application [1]
57/20
3292 applications [1]
56/10
350 [1] 2/15
3rd [1] 61/18

4
4 [1] 1/17
4237 [1] 1/17
4:02 [1] 71/8

5
50 times [1] 39/15
500 [1] 2/10
50th [1] 2/15
514-2839 [1] 2/6
54E3 [3] 13/2 16/9
45/24
5th [2] 64/13 66/21

6
601 [1] 2/10
6406 [1] 1/16
6500 [1] 1/24
683-9543 [2] 2/16 2/17
6th [1] 7/3

7
7201 [1] 5/20
7203 [1] 5/24
7206 [1] 5/22
753 [1] 74/4

8
800 [1] 1/16
8:25-cr-00006-LKG-1
[1] 1/4

9
90071 [1] 2/16
935B [2] 3/19 45/24
935B wallet [1] 16/9
9543 [2] 2/16 2/17
9:30 a.m [1] 68/4
9th [7] 6/7 63/1 63/20
66/15 66/18 67/11
68/2

A
a.m [3] 66/8 67/22
68/4
ability [3] 28/25 39/17
40/8
able [7] 35/17 46/22
51/23 52/22 52/24
53/8 60/5
about [72] 5/5 8/12
8/18 8/20 9/2 9/4 9/20
10/3 10/20 11/1 13/6
13/9 13/18 14/6 14/16
17/1 17/10 17/13 18/2
19/19 20/7 21/25
23/13 23/15 23/22
23/23 24/13 24/20
25/20 26/10 26/22
26/23 27/7 28/18
29/25 32/23 36/22
37/6 37/7 37/13 37/22
40/8 40/23 41/2 41/2
42/11 42/16 42/19
43/5 44/3 44/14 45/1
45/22 45/25 46/14
47/4 47/25 48/7 48/7

49/8 49/21 50/22 53/7
58/22 59/8 59/9
59/1 60/10 62/23
66/15 68/7 69/21
above [1] 72/6
above-entitled [1]
72/6
absent [1] 43/15
absolutely [3] 30/1
41/20 42/6
ACCARDI [2] 2/20
3/24
accept [1] 8/23
acceptable [1] 58/21
61/1 61/3
access [3] 34/7 34/14
35/10
accessing [1] 33/22
accompanied [1] 19/6
accompany [1] 36/9
accomplishing [1]
48/21
account [2] 17/21
46/17
accounting [1] 47/7
accounts [7] 15/11
15/11 15/18 18/24
20/24 27/11 42/3
acknowledged [2]
14/10 47/21
act [14] 9/16 12/4
23/11 23/23 24/7 25/1
25/2 27/13 29/8 30/11
40/4 41/9 42/9 45/3
Action [1] 3/19
activities [7] 13/25
32/18 47/21 47/23
48/1 48/14 48/19
activity [2] 18/25
36/23
acts [1] 35/14
actual [2] 23/18 24/20
actually [6] 24/12
25/11 26/10 37/10
37/17 66/11
ADAM [2] 2/21 4/21
add [3] 16/20 43/8
59/13
addition [2] 16/4
51/15
additional [7] 15/11
17/2 19/13 36/9 42/11
53/1 59/17
address [21] 5/6 7/16
10/1 10/21 11/3 11/13
15/7 15/7 17/7 20/4
25/1 32/6 32/6 35/25
38/15 38/22 47/13
49/1 51/22 61/9 69/5
addressed [3] 45/11
65/24 69/2
addressing [2] 16/1
58/10
ADEEL [2] 2/17 4/12
adeel.mohammadi [1]
2/18
adequately [4] 15/7

15/7 17/7 45/10
adjourn [1] 69/1
adjourned [3] 71/5
71/7 71/8
adjust [1] 58/15
adopt [1] 40/8
advance [1] 58/23
advise [3] 39/15 39/23
54/10
advised [1] 21/9
after [6] 8/2 11/16
12/3 24/12 56/24 68/1
afternoon [3] 3/7 3/20
4/8 4/9 4/15 4/20 4/22
43/21 69/6
again [28] 7/18 15/23
17/5 17/19 17/21 18/7
30/15 34/13 34/20
36/21 39/25 44/4
44/24 45/17 47/2
47/10 47/12 47/19
48/10 49/6 49/12
51/24 54/1 61/22 62/5
66/18 67/6 70/8
against [2] 9/21 34/18
45/5
age [1] 23/1
agenda [2] 5/1 20/5
agent [4] 3/24 4/6
34/1 36/2
Agent Andrew [1]
3/24
ago [5] 10/16 16/1
20/23 40/9 59/11
agree [2] 46/25 51/18
ahead [6] 28/20 52/7
59/5 61/19 66/19 68/8
aiding [2] 5/20 46/5
akin [1] 11/20
all [54] 3/3 6/4 9/5
12/3 13/14 15/6 15/18
15/24 15/25 16/2 16/3
16/13 16/25 17/6
20/16 21/9 21/23
23/24 24/4 24/13
25/15 25/16 29/5
31/12 33/20 40/24
41/3 42/6 42/7 42/8
46/8 46/16 50/3 52/15
53/14 54/12 57/23
58/6 58/23 60/21
60/22 61/5 62/11
63/25 64/19 65/1
65/19 66/4 66/10 67/9
67/15 68/25 70/25
71/6
All right [3] 50/3
52/15 64/19
allegation [7] 10/17
16/11 16/18 16/19
20/20 20/21 20/25
allegations [18] 8/7
8/11 8/12 14/16 17/13
17/14 21/2 21/2 21/25
23/19 27/21 28/12
28/14 29/4 36/25
37/15 43/17 48/1

## A

**alleged [4]** 3/15 25/16 28/23 43/12 45/22 45/25 46/9
**allegedly [3]** 8/10 13/7 43/18
**alleges [2]** 31/18 47/4
**allow [7]** 5/7 19/7 45/14 47/17 47/18 56/21 59/23
**allowed [4]** 15/11 15/12 16/6 16/6
**allows [3]** 6/20 36/12 45/16
**along [1]** 13/14
**already [4]** 5/12 44/11 52/5 62/24
**also [52]** 2/19 3/23 4/17 5/3 5/6 5/14 6/5 7/4 7/6 8/11 9/23 13/23 14/15 15/15 15/21 17/24 19/22 24/11 25/9 26/20 28/5 28/14 29/21 30/6 30/6 38/23 39/9 42/3 42/14 43/21 44/8 45/9 45/24 46/12 46/16 46/20 47/14 47/21 48/8 49/9 49/14 55/18 58/11 59/13 64/24 65/5 68/3 69/1 69/4
**although [2]** 12/16 32/24
**am [8]** 4/11 8/4 9/16 12/13 14/11 15/22 31/4 62/18
**amend [1]** 44/19
**AMERICA [3]** 1/3 3/17 38/16
**among [1]** 62/1
**amount [4]** 28/4 28/4 54/3 55/15
**amounts [7]** 14/8 28/7 28/7 28/14 31/9 31/16 31/21
**analysis [1]** 49/20
**ANDREW [2]** 2/20 3/24
**Angeles [1]** 2/16
**another [3]** 17/24 52/11 69/9
**answer [8]** 27/25 29/24 38/21 40/6 50/18 50/19 51/3 51/7
**answers [1]** 19/24
**antecedent [3]** 56/8 56/13 57/18
**any [57]** 7/16 7/22 9/7 10/3 10/20 12/5 13/15 15/11 15/12 15/17 15/25 17/22 17/23 17/23 19/6 19/11 20/4 20/4 21/24 26/13 27/25 28/21 30/11 30/20 30/25 31/3 32/15 32/15 32/16 32/21 32/24 34/24 35/6 40/6 40/15 40/20 43/10 44/2 44/24 45/1 45/7 48/22 49/10 49/21 49/24 50/1 53/11 55/2 55/11 55/14 56/14 60/1 66/23 67/2 67/9 68/11 70/11
**anyone [1]** 36/24
**anything [19]** 11/20 12/19 25/14 32/6 32/13 32/17 35/25 36/16 37/3 38/12 41/13 43/5 54/24 57/19 69/5 69/13 70/18 70/21 70/23
**apologize [3]** 52/11 60/13 62/2
**app [2]** 34/23 35/10
**apparent [1]** 43/12
**appeal [8]** 4/2 7/2 7/3 10/14 25/5 37/21 44/10 49/13
**appealing [4]** 10/6 10/8 43/24 44/6
**appearance [18]** 6/3 11/22 12/3 14/13 16/4 16/13 16/17 19/2 19/12 23/13 24/2 26/30/19 31/12 41/1 41/8 44/25 48/22
**appeared [1]** 3/10
**application [4]** 5/25 46/7 57/14 57/20
**applications [2]** 56/10 56/11
**appreciate [4]** 10/16 20/14 38/3 48/16
**approach [1]** 64/6
**appropriate [23]** 10/4 10/7 11/5 11/6 11/21 14/12 17/2 17/10 19/20 22/14 27/8 27/13 27/16 28/9 36/14 40/21 40/22 41/21 42/6 42/21 51/19 57/11 69/25
**appropriateness [1]** 32/7
**approval [2]** 15/13 43/16
**approximately [2]** 28/2 39/14
**apps [8]** 17/3 25/7 26/18 27/1 40/11 40/16 42/20 43/1
**April [2]** 55/17 56/2
**are [81]**
**area [1]** 15/9
**aren't [1]** 9/1
**arguably [1]** 63/20
**argument [3]** 8/18 11/23 12/4
**arguments [1]** 9/21
**arise [1]** 19/18
**arraignment [1]** 6/3

32/21 32/24 34/24
35/6 40/6 40/15 40/20
43/10 44/2 44/24 45/1
45/7 48/22 49/10
49/21 49/24 50/1
53/11 55/2 55/11
55/14 56/14 60/1
66/23 67/2 67/9 68/11
70/11
**anyone [1]** 36/24
**anything [19]** 11/20
12/19 25/14 32/6
32/13 32/17 35/25
36/16 37/3 38/12
41/13 43/5 54/24
57/19 69/5 69/13
70/18 70/21 70/23
**apologize [3]** 52/11
60/13 62/2
**app [2]** 34/23 35/10
**apparent [1]** 43/12
**appeal [8]** 4/2 7/2 7/3
10/14 25/5 37/21
44/10 49/13
**appealing [4]** 10/6
10/8 43/24 44/6
**appearance [18]** 6/3
11/22 12/3 14/13 16/4
16/13 16/17 19/2
19/12 23/13 24/2 26/
30/19 31/12 41/1 41/8
44/25 48/22
**appeared [1]** 3/10
**application [4]** 5/25
46/7 57/14 57/20
**applications [2]** 56/10
56/11
**appreciate [4]** 10/16
20/14 38/3 48/16
**approach [1]** 64/6
**appropriate [23]** 10/4
10/7 11/5 11/6 11/21
14/12 17/2 17/10
19/20 22/14 27/8 27/8
27/13 27/16 28/9
36/14 40/21 40/22
41/21 42/6 42/21
51/19 57/11 69/25
**appropriateness [1]**
32/7
**approval [2]** 15/13
43/16
**approximately [2]**
28/2 39/14
**apps [8]** 17/3 25/7
26/18 27/1 40/11
40/16 42/20 43/1
**April [2]** 55/17 56/2
**are [81]**
**area [1]** 15/9
**aren't [1]** 9/1
**arguably [1]** 63/20
**argument [3]** 8/18
11/23 12/4
**arguments [1]** 9/21
**arise [1]** 19/18
**arraignment [1]** 6/3

**articulated [1]** 40/10
**as [84]**
**as well [3]** 9/25 62/18 65/1
**aside [2]** 29/13 36/10
**ask [4]** 52/18 53/20 55/21 69/18
**asked [2]** 16/15 16/15
**asking [1]** 27/7
**aspect [1]** 39/13
**assessing [1]** 9/18
**assessment [2]** 46/21 46/5
**assets [2]** 15/18 31/24
**assist [1]** 31/15
**ASSISTANT [2]** 1/17 3/20
**assisting [2]** 5/21 46/5
**associated [1]** 47/6
**assume [3]** 53/22 54/14 61/11
**assumes [2]** 22/4 22/22
**assuming [1]** 53/8
**assurance [1]** 9/16
**assure [6]** 12/2 23/12 24/6 36/9 41/8 44/25
**attempt [1]** 10/19
**attempting [3]** 34/14 34/15 46/13
**attention [1]** 12/25
**attenuated [1]** 21/4
**attenuation [2]** 21/5 23/18
**attorney [9]** 1/17 2/7 3/21 3/23 22/11 32/25 33/4 33/6 42/11
**ATTORNEY'S [2]** 1/15 38/20
**AUSA [13]** 4/5 4/25 24/10 24/17 32/3 32/13 37/4 41/13 43/4 62/14 63/18 64/4 70/1
**AUSA Kibbe [9]** 4/5 4/25 24/10 32/3 37/4 41/13 63/18 64/4 70/1
**authority [2]** 12/14 40/15
**availability [1]** 52/6
**available [1]** 52/3
**Avenue [2]** 2/10 2/15
**awaits [1]** 48/15
**aware [2]** 24/4 22/5 31/4 42/17 44/17 55/20 63/22

## B

**back [11]** 5/16 22/3 23/1 33/9 38/13 47/12 51/24 52/2 52/25 66/9 68/1
**background [1]** 5/10
**backwards [4]** 50/17 63/2 64/7 64/23
**Bail [13]** 9/16 12/4 23/11 24/7 24/25 25/2 27/11 29/8 30/11 40/4

40/4 42/9 45/3
**Bail Reform [21]** 24/25 25/2 27/13 29/8 30/11 40/4 42/9
**bank [3]** 15/11 17/21 47/5
**bar [1]** 42/15
**based [8]** 10/25 12/21 34/24 42/25 59/14 59/18 59/24 63/13
**basically [1]** 33/24
**be [99]**
**be in [1]** 62/25
**bearing [1]** 9/7
**because [30]** 7/22 7/25 11/3 11/18 17/14 22/4 22/6 22/10 22/23 25/6 25/8 25/17 26/18 26/24 29/3 34/5 34/18 36/25 37/15 38/18 39/22 40/19 41/19 41/21 42/21 43/11 52/22 55/25 56/13 59/2
**been [25]** 8/3 13/13 14/10 17/1 19/11 21/9 27/25 28/1 29/1 29/12 29/22 35/11 36/5 36/6 36/22 37/7 37/13 39/12 39/20 42/25 45/25 48/12 55/10 57/12 70/5
**before [32]** 1/11 3/10 3/10 6/3 7/18 8/3 8/16 9/3 11/4 12/5 12/17 31/6 38/20 39/13 44/4 46/3 51/22 53/21 58/24 61/23 63/12 63/23 65/4 65/15 65/16 65/25 66/15 66/22 68/18 70/5 70/21
**begin [2]** 10/11 52/7
**beginning [8]** 45/20 48/6 50/11 55/17 59/14 62/7 62/9 63/16
**begun [1]** 51/12
**behalf [5]** 1/14 2/2 2/9 3/21 4/21
**being [6]** 4/23 10/3 18/23 19/9 34/21 39/16
**believe [18]** 5/10 7/15 8/7 10/5 10/24 16/18 17/2 17/7 34/7 40/14 41/4 41/19 47/14 47/21 51/3 51/7 51/18 56/14
**benefit [1]** 3/9
**best [1]** 33/2
**better [1]** 9/24
**between [14]** 16/17 17/16 21/10 21/24 23/18 26/21 32/25 33/4 33/6 33/13 33/14 48/17 65/20 65/23
**bifurcate [1]** 57/2

**bifurcated [1]** 58/11
**binance.com [1]** 47/11
**bit [10]** 3/15 14/19 17/19 22/4 58/12 63/4 63/16 65/20 65/22 65/23
**Bitcoin [2]** 25/23 37/14
**block [1]** 68/8
**bond [1]** 15/21
**booked [1]** 52/5
**both [1]** 31/5
**bound [1]** 9/16
**box [2]** 20/22 27/24
**Brady [5]** 51/12 55/11 55/11 55/14 59/15
**break [2]** 65/6 70/21
**brief [4]** 5/7 7/4 58/17 65/22
**briefing [5]** 6/9 6/14 55/18 65/15 65/21
**briefly [1]** 11/3
**briefs [6]** 37/12 60/10 60/24 66/6 67/17 67/20
**bring [4]** 21/23 34/17 60/15 60/19
**bringing [1]** 37/15 47/12
**brings [3]** 5/10 10/13 39/11
**broader [8]** 5/3 27/1 37/10 37/17 37/20 41/17 41/17 42/5
**broadly [1]** 6/24 36/1 38/23
**brought [2]** 6/4 12/24
**build [2]** 65/20 65/23
**bulk [1]** 26/20
**burdensome [1]** 23/15

## C

**calculation [1]** 23/10
**calendar [13]** 51/21 51/25 52/2 52/4 53/3 54/1 60/7 60/13 62/24 62/25 63/10 65/12 68/5
**California [1]** 2/16
**call [3]** 3/2 3/17 4/2
**called [1]** 45/13
**Calling [1]** 3/18
**camera [1]** 7/12
**can [54]** 3/14 5/16 11/10 13/5 26/6 26/20 26/25 32/22 33/2 33/11 33/12 33/13 34/4 34/17 35/7 39/20 40/17 40/17 42/22 44/18 51/5 51/6 51/21 51/24 52/4 53/4 53/9 53/21 53/25 54/1 54/2 54/9 54/13 54/23 55/6 57/5 57/23 58/10 58/19 58/24 59/19

can... [13] 60/12 61/6
61/17 62/12 62/25
65/7 65/22 66/16
66/17 66/22 67/10
68/9 71/5
can't [1] 55/7
candidly [1] 8/14
cannot [1] 24/4
capabilities [1] 40/14
capable [3] 6/23 45/15
45/17
carefully [2] 8/2 30/14
case [72] 1/4 3/17
3/18 4/4 5/4 5/11 6/4
8/5 10/4 11/15 11/19
13/9 13/20 14/10
17/13 17/20 19/1
20/11 20/20 24/22
25/3 25/20 26/19
27/19 28/5 29/2 29/7
29/19 30/9 30/20
30/25 31/2 31/7 31/12
31/17 31/21 32/2 33/3
34/9 35/24 36/1 36/5
36/22 38/9 38/16
41/18 41/21 41/22
41/23 42/8 42/23
44/22 45/12 46/17
47/1 48/1 49/7 50/5
50/10 50/11 50/14
50/17 51/1 51/23 52/1
52/14 55/15 57/5
58/12 61/19 62/6
67/14
cases [6] 20/15 20/16
21/4 23/20 28/6 32/25
cause [1] 59/21
caveat [1] 59/13
caveats [1] 51/18
cell [1] 32/12
cell phone [1] 32/12
certain [12] 6/5 6/17
7/5 7/9 8/9 25/22
29/12 32/16 36/23
44/9 56/17 62/18
certainly [3] 22/18
49/7 55/13
CERTIFICATE [1]
71/10
certify [1] 72/4
challenge [1] 49/16
challenged [1] 48/13
challenging [8] 7/2
15/16 15/24 16/24
16/24 18/13 45/12
57/13
Chambers [1] 7/12
chance [8] 7/17 10/1
21/15 32/4 36/20 37/2
37/4 63/13
change [1] 19/11
changed [3] 16/13
16/17 30/7
characteristics [4]
29/9 30/4 30/6 45/6
characterization [1]
22/20

characterizes [1] 30/9
charged [2] 27/22
45/4
charges [6] 6/4 29/20
46/8 46/18 47/1 56/18
charging [2] 5/18 46/4
check [1] 20/22
checking [2] 26/14
27/24
Cherrywood [1] 1/24
choosing [1] 22/21
chosen [1] 22/10
Christmas [3] 61/23
63/12 67/25
CI [2] 2/20 3/24
circle [1] 66/9
circumstance [1] 45/3
circumstances [7]
20/11 27/17 27/19
28/11 29/2 45/4 46/2
cited [1] 20/15
cites [2] 21/4 23/20
clear [1] 27/24
clearly [2] 3/15 13/2
clerk [1] 53/20
client [11] 13/11 14/4
14/7 14/20 14/21 18/5
33/5 33/6 39/22 39/23
48/18
client's [4] 13/24
13/24 14/1 14/5
clients [4] 23/2 23/3
39/10 39/10
clock [1] 69/8
close [1] 63/25
closer [5] 20/25 61/6
61/14 63/5 66/9
cocounsel [1] 4/6
Code [4] 5/20 5/22
5/24 6/1
Coinbase [1] 47/11
coincides [1] 32/17
colleague [1] 40/23
colleagues [2] 3/22
54/7
colloquy [1] 40/24
come [8] 10/10 18/6
49/6 53/25 65/3 65/9
66/21 68/1
comes [4] 32/23 33/9
44/1 66/13
comfortable [2] 3/12
60/22
coming [4] 55/6 63/24
64/15 66/20
comments [2] 10/16
66/16
common [3] 18/21
19/8 19/21
communicate [4] 22/6
22/10 22/21 23/2
communicating [1]
34/8
communication [2]
22/7 34/24
communications [22]

17/11 17/12 17/16
21/19 21/22
21/24 22/23 23/6
26/14 35/13 38/1 39/6
39/8 39/8 39/16 39/20
39/23 42/12 44/7 47/3
48/17
community [9] 13/16
28/21 29/3 31/18
31/25 45/1 45/8 47/24
48/23
compel [4] 7/5 10/23
25/5 69/18
complete [4] 43/11
55/21 65/14 68/4
completed [1] 66/10
compliance [12]
18/19 19/8 19/14
19/23 27/8 27/12 28/9
28/16 36/9 36/12 43/2
48/11
comply [1] 17/24
complying [1] 19/18
comprehensive [3]
57/10 57/17 58/5
computer [6] 6/19
6/22 45/13 45/17
conceal [3] 14/17
14/18 46/13
concealed [2] 28/13
48/2
concealing [1] 46/15
concern [9] 13/19
14/15 18/10 22/9 22/9
32/23 43/8 47/25 57/6
concerned [1] 58/11
concerning [1] 21/25
concerns [23] 11/11
13/18 13/19 13/22
15/7 16/1 17/7 17/10
30/17 30/19 36/22
45/1 45/10 45/22
45/25 46/14 47/12
48/8 48/16 48/19
48/23 49/11 49/24
concierge [1] 31/10
conclude [2] 10/9
16/25
conclusion [2] 11/23
12/22
condition [101]
condition first [1]
11/13
conditions [57] 4/2
5/2 6/5 6/17 9/18 9/19
12/2 13/10 13/21
14/12 15/6 15/6 15/15
15/24 15/25 15/25
16/2 16/7 16/14 17/1
17/6 17/19 18/3 18/12
19/9 19/22 23/12
23/25 24/14 25/1 27/5
27/6 27/8 28/9 28/10
28/17 28/18 30/3 36/6
36/9 36/11 36/14 42/1
42/7 42/7 43/2 44/19

44/24 45/10 46/10
49/16
conduct [4] 14/16
20/18 23/19 46/13
confer [2] 62/11 67/8
67/10 69/10
conference [8] 50/10
50/13 62/1 62/25
66/18 67/11 68/2 72/8
confident [1] 15/22
confidential [1] 17/11
conformance [1] 72/7
connect [1] 46/22
connected [2] 45/24
47/10
connection [9] 7/21
8/8 14/18 44/7 44/23
46/17 47/23 48/2 48/3
connections [1] 14/20
consequence [4]
22/18 23/4 23/5 55/19
consider [10] 9/5
10/17 12/11 13/8 42/9
44/12 44/20 45/22
45/25 56/21
consideration [4]
8/16 8/23 16/11 46/10
considers [3] 9/18
13/20 45/2
constitutional [1]
22/8
constructive [1] 64/1
consult [2] 4/23 54/7
consultation [1] 61/6
consulting [1] 42/14
Cont'd [2] 2/1 2/2
contact [2] 16/5 26/22
contacts [6] 27/22
28/8 31/1 31/9 31/17
47/16
contemporaneous [1]
47/3
content [5] 11/1 26/13
37/25 39/5 39/19
context [11] 11/6
24/25 33/24 41/21
41/23 42/8 44/13
44/15 48/9 49/15
57/15
continue [4] 8/17
39/17 50/3 53/16
Continued [1] 1/19
continues [1] 13/13
control [1] 6/24
convenience [2]
51/17 56/7
conversation [1] 24/9
conversations [2]
21/20 33/22
core [2] 28/12 29/4
correct [6] 24/3 33/18
33/18 34/25 35/1 72/5
corrections [1] 7/16
correctly [1] 32/10
corresponded [1]
55/12

correspondence [3]
23/2 43/4 43/5
corroborate [1] 36/12
could [21] 3/7 9/8
29/2 29/2 31/15 34/21
34/22 34/22 34/23
35/6 39/8 51/25 56/7
60/6 62/8 62/12 63/12
63/17 64/12 65/3
66/21
counsel [45] 2/5 3/11
3/23 3/24 4/7 4/11
4/15 7/16 8/14 8/22
9/20 9/25 17/17 21/11
21/24 22/4 22/8 22/21
26/7 26/7 36/20 39/9
42/10 42/16 43/20
48/17 48/18 49/2 49/8
50/6 53/1 54/18 55/5
55/10 55/12 55/16
55/25 60/22 62/1 62/2
67/8 67/12 69/10
70/25 71/3
counsel's [3] 41/16
43/8 70/2
count [5] 5/17 46/4
57/21
counts [6] 5/19 5/20
5/22 5/24 27/20 57/22
COUPER [1] 2/13
couple [7] 3/25 4/25
8/6 17/20 50/7 51/4
61/18
course [12] 8/3 10/1
10/3 19/5 19/17 20/3
32/6 45/1 45/23 46/7
55/9 58/6
COURT [136]
Court's [23] 3/8 6/14
8/1 8/16 10/16 12/7
18/18 19/24 22/20
30/8 33/3 44/11 46/10
46/20 49/20 49/22
51/17 51/21 56/7
56/14 58/14 59/10
68/5
Courtroom [1] 70/23
courts [1] 18/22
cr [1] 1/4
craft [1] 70/10
crime [2] 25/17 30/21
crimes [7] 25/19
25/21 27/20 41/20
45/18 46/4 46/9
criminal [4] 2/3 3/19
20/17 23/19
criteria [1] 3/14
critical [1] 46/20
crypto [2] 14/5 18/6
cryptocurrency [54]
10/18 12/23 14/7
14/17 15/17 16/21
16/23 17/3 17/4 17/15
17/25 20/17 20/22
20/24 21/3 21/23 22/1
23/18 25/7 25/23
26/12 26/19 26/23

**C**

cryptocurrency [31]
26/24 27/10 27/23
28/5 29/1 29/23 31/14
31/22 34/14 34/15
35/6 35/8 35/9 35/14
37/13 37/14 37/19
40/11 40/12 41/18
41/24 42/1 42/2 42/6
42/20 42/22 45/19
46/19 47/11 47/19
48/14
currently [4] 21/12
24/14 31/4 55/2
cut [2] 8/21 9/11

**D**

D.C [2] 2/4 2/11
damage [1] 29/3
danger [13] 13/15
14/16 28/21 28/22
30/20 30/20 30/21
31/18 45/1 45/7 47/24
47/25 48/22
date [24] 15/22 32/24
50/17 50/23 51/19
53/4 53/18 54/1 54/9
54/10 54/15 56/20
58/8 58/18 59/1 59/23
60/12 61/5 62/13
62/15 63/1 63/4 67/21
71/4
Dated [1] 72/9
dates [18] 50/13 50/18
50/20 51/21 52/3 53/1
53/8 53/20 53/25
60/21 61/14 61/15
61/24 62/3 62/10
64/14 65/7 69/11
DAVID [1] 1/17
day [4] 23/1 39/15
69/1 72/9
days [1] 60/9
de [2] 8/4 44/21
de novo [2] 8/4 44/21
deadline [5] 57/11
58/23 59/9 65/13
68/19
deal [3] 13/6 52/8
63/23
deals [1] 17/25
December [19] 61/21
61/21 62/1 62/9 62/13
63/9 63/9 63/16 63/22
64/7 64/10 64/22 65/9
66/8 66/25 67/1 67/5
67/21 67/25
December 1 [1] 61/21
December 12th [2]
66/8 67/21
December 1st [2]
62/7 63/9
December 22nd [4]
66/25 67/1 67/5 67/25
decide [2] 27/15 38/1
decision [5] 8/25 12/7
12/16 12/20 24/3

defend [1] 9/14
defendant [18] 1/10 3/14 4/1
4/7 4/10 5/2 5/18 6/13
7/4 7/10 23/16 25/5
31/19 32/10 32/14
35/5 36/10 44/25 45/5
defendant's [8] 6/24
11/22 11/24 23/13
25/4 30/5 44/6 45/6
defendants [1] 20/16
defense [23] 10/14
10/22 18/12 38/20
40/10 43/8 48/17
48/24 49/1 49/22
51/12 54/25 55/12
56/1 56/16 58/21
59/11 61/3 64/18 67/2
68/15 70/8 70/11
defense's [5] 11/16
57/12 58/7 59/2 60/1
definitely [1] 51/25
delay [1] 58/12
denial [1] 69/18
denied [1] 70/6
deny [4] 44/13 49/3
49/12 49/14
DEPARTMENT [1] 2/3
depending [2] 51/12
56/17
Deputy [1] 70/23
described [4] 27/4
27/12 40/9 57/12
designated [1] 35/24
desktop [3] 32/13
32/14 32/18
detained [2] 6/10 8/9
detection [1] 31/2
detention [6] 6/14
6/16 7/22 12/25 20/13
48/7
determine [2] 27/15
39/6
determined [3] 23/25
24/1 67/18
determines [1] 13/15
devices [7] 6/23 6/23
16/16 19/10 21/6
45/15 45/17
did [7] 6/16 7/11 10/24
11/12 16/22 51/8
68/15
didn't [2] 11/21 11/22
differences [1] 67/9
different [6] 4/1 44/15
50/12 70/3 70/4 70/4
dire [4] 66/12 66/17
67/6 67/24
direct [1] 40/15
directions [1] 42/25
directly [3] 16/22
17/14 55/8
disagree [3] 12/16
18/17 22/19
disagreement [1]
25/11
disagreements [1]
29/13

disclose [2] 15/18
11/6 17/5 19/11 21/19
disclosed [3] 1/11 24/11
23/6 47/5
disclosing [1] 27/23
disclosure [4] 17/10
21/10 22/22 44/9
disclosures [1] 55/14
discovery [2] 29/19
51/14
discredited [1] 16/19
discussed [5] 21/8
39/12 45/8 59/10 71/2
discussing [3] 5/14
15/23 37/22
discussion [4] 7/22
43/21 64/11 71/1
dismiss [2] 56/9 56/17
dismissal [1] 58/2
disposing [1] 69/2
disputed [2] 26/21
29/11 29/12 29/23
disputes [1] 8/13
dissipated [1] 31/25
distinguishes [1] 28/6
distinguishing [1]
23/20
district [13] 1/1 1/1
1/12 3/4 3/4 5/17 28/6
30/25 31/4 31/12
52/12 72/3 72/3
DIVISION [1] 1/2 2/3
3/22
DMV [1] 15/9
do [51] 7/17 9/11
10/22 11/4 11/7 12/15
13/13 17/22 23/9
24/19 32/4 33/9 33/11
34/5 34/5 35/25 36/13
37/3 37/5 40/2 40/19
41/4 50/24 51/4 51/8
51/16 52/6 52/24 53/7
53/9 53/19 54/6 54/19
55/6 55/17 58/9 58/10
58/11 58/16 58/24
61/11 62/11 62/17
62/21 64/12 64/22
66/21 66/22 67/5 70/8
72/4
docket [2] 69/4 71/2
document [1] 33/10
documents [2] 29/18
38/1
does [9] 13/3 19/25
23/11 26/2 29/6 30/15
34/1 43/1 68/15
doesn't [2] 38/23
51/25
doing [10] 3/12 18/5
26/5 26/6 26/9 35/22
38/17 42/13 55/13
55/18
DOJ [1] 3/22
dollars [8] 28/24 29/7
29/23 31/19 31/20
41/24 42/24 47/22
don't [26] 9/6 9/13

11/6 17/5 19/11 21/19
23/22 23 22/6
25/23 29/14 35/18
35/18 35/20 39/1
39/12 41/6 48/23
49/10 53/5 53/7 58/1
60/13 64/14 70/9
70/11
done [8] 15/19 26/20
26/25 29/1 31/23
57/17 57/23 65/1
download [1] 33/17
downloading [1]
34/22
dozens [4] 28/1 28/1
29/17 29/18
drafts [2] 23/1 23/3
drastic [5] 20/12
20/12 21/6 21/7 23/4
due [2] 65/22 67/24
during [6] 3/13 11/23
32/1 45/23 56/11 64/9
duty [1] 44/21

**E**

each [2] 54/21 65/23
earlier [7] 13/4 27/7
37/22 52/3 63/16
65/23 70/7
earliest [2] 51/17 56/7
early [9] 55/14 56/3
58/22 59/12 63/9
63/13 63/22 64/10
66/1
earn [1] 39/17
Eastern [1] 52/12
economic [4] 28/22
30/20 30/21 47/25
effect [2] 22/19
effects [1] 23/9
efficiently [1] 57/6
effort [2] 8/8 23/21
either [10] 25/25
32/19 48/25 53/4
61/24 62/13 64/13
66/20 68/12 70/18
electronic [8] 6/23
19/10 21/6 23/1 26/24
34/24 35/13 39/16
electronics [1] 16/16
elects [1] 22/5
element [1] 46/16
eliminate [1] 48/25
else [10] 26/16 34/2
35/25 36/16 36/25
41/13 43/5 57/19 69/5
70/18
email [7] 25/13 26/7
26/7 33/13 33/16
33/23 34/22
email's [1] 33/14
emergency [7] 6/13
7/5 10/23 25/4 44/8
49/15 55/19
end [5] 21/19 54/10
54/16 62/13 64/10
ended [1] 37/15

11/6 17/5 19/11 21/19
29/6 22/15 22/6
25/23 29/14 35/18
enforce [1] 18/12
Enforcement [1] 2/3
engage [5] 15/12
15/17 17/22 42/2
46/21
engaged [3] 14/7
36/23 47/19
engagement [1] 14/5
engaging [4] 17/25
18/5 48/13 48/14
enough [1] 51/22 53/2
63/11
ensure [13] 14/13
18/4 18/14 19/23 27/8
28/9 28/17 43/1 45/10
48/11 48/13 48/21
52/19
ensures [3] 27/12
31/13 31/24
enter [2] 67/13 68/25
entertain [1] 11/5 13/5
61/14
entertaining [1] 7/22
entire [2] 41/21 41/23
entitled [1] 72/6
envisioning [1] 54/22
ESQUIRE [3] 2/11
2/13 2/17
essential [1] 48/11
establish [1] 23/21
evade [2] 31/2 31/12
evasion [2] 5/19 46/5
eve [1] 64/2
even [12] 9/14 19/5
21/1 22/9 25/16 29/13
29/21 35/2 35/3 35/4
35/15 37/20
ever [1] 11/20
every [4] 25/13 25/13
25/14 25/14
everybody [1] 65/5
everyone [3] 3/7 5/7
40/23 65/4
everything [3] 16/14
40/23 65/4
everything's [1] 65/24
evidence [18] 13/2
19/17 29/9 29/11
29/15 29/19 29/21
30/1 42/23 43/14 45/5
46/24 46/25 47/2
47/10 57/25 63/23
64/3
evidentiary [5] 56/10
56/15 56/23 57/20
61/8
ex [2] 6/8 12/25
examination [1] 6/22
examinations [1]
45/16
example [8] 15/8 19/1
20/18 33/2 38/20
40/11 57/22 57/25
examples [1] 34/17
exception [1] 16/2
exchange [2] 23/1
40/7
exchanges [1] 55/25

**E**

excuse [2] 52/15
55/10
exhaustive [1] 25/23
expect [2] 58/22 59/11
expeditiously [1] 5/6
expense [1] 6/21
experience [4] 18/21
21/15 35/21 57/16
explained [1] 32/10
37/17 41/6
explanation [2] 37/9
39/4
extends [1] 59/16
extensive [5] 13/24
14/20 16/5 16/7 44/22
extensively [1] 14/22
extent [4] 41/18 42/5
55/22 57/19

**F**

fabric [1] 28/5
fact [9] 14/7 20/10
22/25 23/21 23/24
26/20 28/1 40/22
42/24
factor [2] 16/10 28/21
factored [1] 32/4
factoring [1] 64/24
factors [12] 9/17 9/20
9/21 13/9 25/2 27/14
27/14 29/8 30/11 31/5
42/9 45/2
facts [7] 8/24 14/11
20/11 29/12 29/13
37/1 42/17
factual [1] 19/11
failure [1] 5/23 20/22
46/6
fair [1] 14/15
fairly [6] 19/21 20/11
20/12 21/6 21/7 23/4
fall [4] 52/5 53/3 54/1
67/19
fallback [3] 18/8 18/9
40/9
false [5] 5/21 5/24
27/20 46/5 46/6
familiar [1] 8/4
far [10] 13/14 21/3
21/3 25/9 49/10 52/2
53/2 54/12 59/24
62/19
fashion [1] 54/20
fashioning [1] 30/3
February [6] 6/7 6/10
6/12 6/15 7/1 11/17
February 10th [1]
6/10
February 11th [1]
6/12
February 13th [1]
6/15
February 27th [1] 7/1
February 9th [1] 6/7
federal [2] 1/24 5/16
feel [1] 36/13

few [9] 8/1 16/2 20/23
00/00 47/8 55/23
55/24 61/23
figure [2] 9/9 54/23
file [15] 44/18 51/14
51/16 56/3 56/6 56/7
56/16 56/21 56/23
58/22 59/11 59/17
66/1 68/16 68/18
filed [7] 6/8 6/13 7/1
7/4 7/4 37/21 56/11
filing [4] 7/7 20/16
54/20 59/9
filings [3] 20/8 21/23
66/11
fill [1] 54/1
final [8] 20/2 20/7
62/24 63/19 66/14
66/18 67/11 68/1
finalize [1] 66/17
finances [1] 28/19
financial [23] 15/18
18/24 25/17 25/17
25/19 25/21 26/4 26/4
26/11 27/2 27/11
31/15 31/22 32/11
32/18 37/18 41/16
41/20 42/3 45/18 46/9
46/14 47/8
find [2] 52/25 53/4
finding [2] 57/20
57/21
fine [5] 59/22 64/18
65/22 70/16 70/16
finished [1] 15/4
firm [1] 54/7
first [13] 10/5 10/8
11/13 27/17 30/24
37/9 41/16 41/16
50/16 50/18 51/11
52/13 54/24
flag [10] 25/19 25/22
25/24 25/25 26/1 26/1
32/19 33/7 33/9 33/16
flagged [7] 26/15
32/17 32/22 33/24
34/12 35/7 40/16
flags [4] 25/25 26/3
32/19 32/21
flee [3] 30/25 31/2
47/18
flight [4] 13/18 30/7
30/24 31/16
FLOOR [1] 2/15
focus [2] 17/22 45/18
focused [3] 25/6
41/23 55/18
focusing [3] 9/20 18/7
44/24
folks [1] 63/12
follow [2] 17/18 43/24
followed [1] 49/18
following [1] 68/8
forcing [1] 9/14
foregoing [1] 72/5
foreign [1] 13/24
form [6] 19/20 20/23

42/1 66/12 67/7 67/24
68/17 72/7
forms [1] 27/24
forth [2] 23/2 49/20
forward [10] 9/2 9/9
10/10 14/14 49/7 49/8
53/10 58/19 70/13
71/3
found [2] 28/23 30/5
four [1] 45/2
fourth [2] 28/20 28/20
frankly [1] 8/3
Franks [2] 57/13
57/15
fraud [1] 20/18
fraudulent [2] 5/21
46/6
fresh [1] 44/23
Friday [4] 63/1 64/13
64/13 64/22
front [1] 60/13
full [6] 9/6 26/13 50/25
51/21 56/8 56/23
fuller [1] 27/1
fully [3] 3/11 49/20
55/13
fulsome [1] 9/12
fund [1] 29/5
further [14] 17/9
17/19 19/6 19/24 20/4
20/17 37/3 40/6 40/20
41/4 43/15 43/16
58/19 59/16
future [2] 15/22 21/24

**G**

gambling [7] 15/20
17/22 18/5 19/3 19/4
31/8 47/6
gambling-related [1]
47/6
general [3] 14/7 19/15
47/12
generally [4] 7/15
44/1 52/4 53/3
get [25] 5/5 20/25
29/14 30/18 34/11
36/8 37/1 50/6 50/15
53/5 53/7 53/20 53/21
53/25 54/13 54/17
54/19 57/5 58/12
61/18 62/20 64/1 65/3
66/15 67/23
get-go [1] 36/8
gets [3] 18/9 63/25
66/20
getting [3] 36/21
39/19 59/2
give [19] 7/17 9/5 10/1
11/7 19/1 32/4 33/2
36/20 37/2 37/4 53/20
59/6 60/12 62/19
62/25 63/10 65/5
65/15 68/9
given [7] 23/17 31/16
31/16 31/16 36/14
42/6 69/3

gives [5] 33/24 52/8
66/3 67/4
giving [1] 61/22
go [28] 3/8 9/9 10/7
14/13 15/25 17/9
18/11 24/23 26/9
32/21 32/22 33/9 34/6
34/18 35/7 36/8 49/8
51/24 52/2 52/7 52/25
53/20 54/14 54/25
59/5 65/2 68/8 70/13
goal [1] 57/5
goals [1] 48/21
goes [5] 18/4 27/6
28/19 40/7 51/13
going [64] 3/14 3/16
5/9 5/12 7/20 7/23
8/14 8/15 8/17 8/18
8/21 8/22 8/25 9/2
9/11 13/4 13/6 13/7
21/13 21/21 22/12
24/10 24/11 25/14
26/16 31/14 33/4 35/9
36/20 37/2 43/23
43/25 44/3 44/11
44/13 45/22 45/25
47/1 49/3 49/14 52/13
52/24 52/25 52/25
53/9 53/19 53/19
53/22 54/5 54/14
54/14 58/2 59/2 61/7
62/3 62/5 62/21 62/24
63/19 64/21 66/4
67/13 68/8 70/12
GOLDSTEIN [61] 1/5
2/20 3/11 3/19 4/7
4/11 4/13 4/15 5/18
6/2 6/10 6/17 6/19 7/1
7/4 8/9 8/10 8/12 8/21
10/18 11/17 12/23
13/3 13/7 15/5 15/16
15/17 15/19 16/6
16/12 17/6 17/16 19/4
19/17 21/8 21/11
21/12 21/17 21/20
21/25 22/5 22/10
22/20 26/22 27/22
28/12 28/23 31/21
36/23 36/24 39/14
39/21 42/12 45/12
46/7 47/2 47/3 47/7
47/15 48/13 49/9
Goldstein's [32] 6/8
6/21 7/21 11/11 12/2
14/13 15/8 16/4 16/16
16/23 17/12 19/2
19/12 20/22 21/6 24/2
24/6 28/19 38/6 39/9
39/17 41/8 42/10
42/15 45/22 46/18
47/8 48/1 48/18 48/22
49/16 50/11
gone [2] 8/4 30/10
good [11] 3/7 3/20 4/8
4/9 4/15 4/19 4/22
53/24 54/16 59/21
59/23

Good afternoon [5]
3/7 4/8 4/9 4/15
3/20
got [4] 46/22 58/16
61/15 62/6
government [64] 1/14
2/2 3/21 6/8 7/2 7/6
7/11 8/7 10/10 10/17
11/1 11/19 11/25 12/4
14/18 16/14 16/15
20/8 20/15 21/4 23/20
25/6 26/6 26/9 28/22
28/24 29/4 29/6 30/8
38/15 40/25 41/6
41/25 42/12 42/14
42/17 46/15 46/25
47/4 49/24 50/22
51/11 52/16 52/18
53/13 54/24 55/12
56/11 56/25 57/3 60/6
61/1 62/16 65/17
65/18 66/24 70/13
government's [10]
16/11 23/21 24/11
25/3 30/16 57/10
57/16 59/15 60/23
69/15
grand [12] 2/15 4/2
5/16 7/5 7/10 10/23
11/2 28/23 44/9 44/12
49/15 69/19
grand jury [8] 5/16
7/10 11/2 28/23 44/9
44/12 49/15 69/19
grant [1] 7/11
granting [1] 11/16
grants [1] 56/22
Greenbelt [7] 1/8 1/16
1/25 62/22 64/23
67/22 68/3
GRIGGSBY [2] 1/11
3/5
grounds [2] 56/18
69/20
guess [5] 30/13 35/12
36/19 50/16 59/16
guilty [1] 6/4

**H**

habits [1] 47/8
had [20] 6/2 12/24
21/15 21/20 27/25
28/1 32/13 35/21 36/3
37/11 37/20 37/21
40/8 40/10 50/9 50/10
55/16 56/6 56/23
69/17
happen [2] 18/14
42/23
happened [2] 5/11
11/17
happening [1] 24/13
happy [7] 10/21 20/3
40/6 49/7 54/9 58/14
69/14
hardware [2] 6/21

**H**

**hardware** [1] 45/13

**harm** [3] 29/4 31/25 31/25

**has** [50] 5/11 7/6 8/4 8/7 8/12 10/17 10/20 13/13 14/7 14/9 14/20 14/21 15/8 15/19 16/17 17/8 19/11 19/17 21/17 22/10 25/15 27/18 28/22 28/23 29/1 30/6 30/7 30/11 31/21 31/23 39/12 39/15 39/16 39/20 39/21 40/6 41/6 46/25 47/13 47/14 47/15 47/16 47/21 48/2 48/21 51/11 52/19 54/24 55/12 56/22

**hasn't** [1] 23/22

**hate** [1] 35/19

**have** [99]

**haven't** [2] 57/11 58/6

**having** [5] 30/10 33/23 54/20 66/14 69/8

**Hawthorne** [2] 15/21 68/16

**HAYTER** [2] 2/7 3/23

**hayter.whitman** [1] 2/8

**he** [30] 4/14 6/3 13/13 13/15 15/10 15/14 15/18 15/19 20/23 22/23 26/6 28/13 28/14 30/6 32/15 32/16 34/14 34/15 35/8 35/9 35/9 35/10 39/15 39/22 42/13 45/15 47/15 47/21 48/2 48/15

**he's** [8] 15/10 15/12 22/23 30/7 33/21 33/22 39/18 47/19

**hear** [18] 3/14 8/18 11/8 16/9 18/16 18/16 22/12 22/14 49/10 51/2 51/6 52/15 54/21 55/7 56/25 57/1 57/3 63/17

**heard** [6] 9/6 36/20 37/24 38/11 39/3 59/24

**hearing** [41] 1/10 3/13 3/25 4/3 4/24 6/9 6/15 7/14 8/22 8/24 13/17 44/23 45/20 48/6 48/10 49/10 50/20 56/10 56/15 56/23 57/14 57/20 58/14 58/15 58/18 61/5 61/8 61/11 63/19 63/21 64/6 64/9 64/10 64/13 64/15 64/21 65/9 65/16 66/7 67/17 67/21

**hearings** [1] 54/21

**help** [1] 31/11

**helpful** [8] 9/12 19/25 24/9 41/12 43/19 43/20 50/25 71/1

**here** [47] 3/25 4/23 5/10 9/23 10/14 10/25 12/19 13/14 13/23 15/16 15/25 16/24 17/10 19/5 21/1 21/24 23/8 23/9 23/17 25/11 25/24 26/10 28/12 28/18 28/22 29/4 30/3 37/7 37/15 37/25 39/12 40/5 40/13 40/22 41/4 45/18 46/3 46/23 47/13 47/25 48/7 50/12 54/18 56/13 62/22 67/22 68/3

**hereby** [1] 72/4

**hide** [1] 46/13

**hiding** [1] 41/24

**high** [3] 25/25 32/20 43/21

**highlight** [1] 7/21

**him** [4] 6/5 32/25 36/11 47/18

**his** [34] 5/3 6/2 6/5 14/9 15/10 15/18 15/20 17/12 17/17 20/23 21/11 22/10 22/21 27/23 28/13 32/12 32/12 32/14 32/14 32/18 32/18 32/18 32/25 36/11 39/15 39/23 40/23 44/7 45/15 45/16 45/23 46/10 47/20 48/2

**history** [11] 5/13 11/15 11/18 13/24 14/21 29/2 29/9 30/4 30/5 45/6 47/15

**hit** [1] 26/3

**hits** [2] 25/15 26/15

**hmm** [1] 51/10

**hold** [1] 66/7

**holiday** [6] 63/12 64/17 66/20 66/22 67/25 68/1

**honor** [72] 3/20 4/1 4/9 4/10 4/19 10/12 11/12 15/4 21/14 22/16 24/15 24/18 24/19 25/8 27/7 29/15 30/23 32/8 33/19 34/10 35/2 35/17 35/23 36/18 37/5 38/7 41/11 41/14 41/15 43/3 43/8 49/23 49/25 50/2 50/24 51/3 51/8 52/11 52/17 53/12 53/15 54/5 55/1 55/9 55/17 57/9 58/25 59/8

60/3 61/2 61/4 62/12 62/16 63/6 64/5 64/20 65/11 65/19 66/3 66/24 67/3 68/13 68/14 68/23 69/7 69/8 69/17 69/23 70/15 70/19 70/20 70/22

**HONORABLE** [3] 1/11 3/5 71/7

**hopefully** [4] 53/21 55/23 59/23 68/9

**host** [1] 15/5

**hosted** [1] 47/11

**hour** [1] 69/3

**how** [25] 9/9 10/2 18/13 21/9 21/21 23/2 23/3 23/15 24/13 24/20 25/8 30/14 30/15 30/24 32/5 32/9 37/22 40/17 44/3 49/9 51/12 52/19 54/12 63/22 64/2

**however** [3] 18/17 43/14 64/7

**hundreds** [1] 42/24

**hypothetically** [1] 35/5

**hypotheticals** [2] 34/13 34/16

**I**

**I believe** [2] 51/18 56/14

**I think** [40] 7/23 7/24 7/25 10/7 10/25 11/18 13/2 13/19 14/8 14/9 14/15 15/6 18/11 18/17 19/8 19/15 19/21 20/10 22/19 24/24 31/10 32/23 37/11 37/20 37/21 37/24 48/19 48/24 50/6 56/19 57/22 58/20 60/15 60/18 63/17 65/8 65/12 67/12 70/3 70/16

**I'd** [7] 24/19 25/1 37/5 44/2 54/19 54/21 58/17

**I'll** [20] 3/8 6/24 7/16 7/17 8/6 10/9 11/7 15/7 30/10 36/5 37/4 37/4 38/22 38/25 38/25 57/4 63/17 65/7 66/8 70/10

**I'm** [69] 3/14 3/16 3/21 5/9 5/12 7/23 8/14 8/17 8/20 8/23 9/1 9/10 9/23 10/20 12/16 13/4 13/7 14/6 17/19 17/24 19/24 20/3 23/7 23/8 23/9 24/10 24/11 28/19 34/13 36/20 37/2 39/25 40/5 43/23 43/25 44/11 44/13 44/24 45/9 45/24 49/3 49/7 49/10 49/14 51/7

51/20 51/22 52/13 52/25 53/19 53/25 54/2 54/9 57/4 58/11 59/16 60/17 60/18 62/5 62/24 63/5 64/21 64/24 67/12 68/8 69/25 70/2 70/12 70/16

**I've** [10] 8/14 17/1 27/4 30/14 36/3 41/19 46/3 59/24 61/15 62/6

**idea** [1] 53/24

**identified** [1] 17/8

**identifying** [1] 53/18

**illustration** [1] 33/3

**imagine** [1] 51/21

**impact** [2] 29/3 64/2

**impacting** [1] 49/9

**impacts** [1] 55/22

**implemented** [1] 32/12

**important** [10] 7/24 9/5 9/12 11/18 11/19 24/25 25/10 28/17 30/2 48/8

**impose** [13] 8/17 9/18 12/7 12/14 12/20 14/13 16/22 18/19 18/22 19/9 19/22 40/20 41/4

**imposed** [15] 5/2 11/15 12/6 15/14 15/15 16/3 16/3 16/14 17/20 19/3 34/19 36/1 36/7 48/12 49/4

**imposing** [3] 13/20 19/15 19/22

**imposition** [3] 10/15 19/13 23/15

**improper** [1] 12/15

**inaccurate** [1] 10/25

**inactive** [1] 42/15

**incidental** [1] 22/18

**inclination** [1] 58/8

**inclined** [4] 16/25 17/8 40/20 41/3

**include** [4] 30/6 39/8 42/3 45/18

**included** [1] 31/6

**includes** [1] 47/3

**including** [8] 4/1 7/7 17/22 19/4 31/22 45/3 47/17 56/16

**income** [1] 28/13

**indicated** [6] 30/6 44/11 45/20 47/14 70/7 71/2

**indication** [1] 36/5

**indictment** [11] 5/18 14/16 20/21 21/2 21/25 23/19 29/16 29/20 31/6 40/25 46/4

**individual** [8] 13/16 14/21 28/21 29/10 30/25 34/4 34/7 45/8

**individuals** [12] 14/2 14/2 28/15 29/6 29/6

30/22 31/20 32/1 47/16 47/17 47/20 48/3

**inferences** [1] 29/12

**inform** [5] 8/25 46/10 56/1 56/15 61/16

**information** [9] 7/12 34/11 43/9 46/14 46/14 46/15 47/4 47/6 47/7

**inhibited** [1] 39/17

**initial** [12] 6/2 11/22 16/4 16/13 16/17 19/2 19/12 24/2 41/1 49/21 49/24 50/9

**initially** [1] 8/8

**innocent** [2] 46/8 47/2

**inquire** [1] 52/18

**installation** [2] 6/20 45/14

**instance** [1] 34/13

**instead** [2] 26/14 57/14

**instructions** [3] 66/12 67/7 67/24

**intend** [2] 11/12 55/13

**intent** [1] 22/17

**interested** [1] 33/3

**international** [9] 20/18 20/19 27/21 28/8 31/7 31/8 31/8 31/17 47/15

**internationally** [2] 14/1 31/1

**internet** [7] 6/19 6/23 32/24 45/13 45/15 45/17 46/23

**internet-based** [1] 34/24

**internet-capable** [3] 6/23 45/15 45/17

**introduce** [1] 4/18

**investigation** [4] 10/19 29/17 43/18 56/11

**invite** [5] 3/16 9/20 10/9 24/10 24/11

**invites** [1] 67/8

**involve** [8] 14/17 17/4 20/16 21/10 46/9 46/13 46/18 61/7

**involved** [1] 47/22

**involvement** [2] 13/25 45/23

**involves** [3] 19/23 31/7 39/5

**involving** [4] 45/19 46/13 46/19 47/22

**iPhone** [2] 32/14 32/19

**irrespective** [1] 40/17

**IRS** [4] 2/20 3/24 28/13 41/25

**IRS-CI** [2] 2/20 3/24

**is** [225]

**isn't** [2] 15/1 35/19

**issue** [22] 5/3 7/9 7/18

**I**

**issue...** [19] 7/25 9/1
9/3 9/8 10/20 13/5
14/19 16/20 37/22
43/22 44/16 47/13
48/5 53/2 55/3 57/22
62/4 62/9 70/8
**issued [1]** 69/3
**issues [17]** 5/8 8/15
8/20 9/1 9/4 9/4 9/11
9/14 44/2 44/12 44/14
44/23 49/8 50/5 50/10
70/12 70/13
**it [109]**
**it's [48]** 8/22 8/24 10/2
10/7 11/6 11/18 12/8
18/8 19/25 22/6 22/12
22/17 22/18 22/18
24/24 25/9 25/10
26/6 26/8 26/8 26/14
26/25 27/2 28/5 28/7
28/7 29/17 30/20
30/25 31/1 31/20
33/23 33/23 34/23
35/24 37/15 41/17
41/19 41/24 47/1
57/12 60/14 60/15
65/25 70/6
**items [1]** 5/1
**its [9]** 6/16 11/14
12/25 16/10 20/8
20/15 40/15 56/1
66/16
**itself [2]** 18/12 40/17
**Ivy [1]** 1/16

**J**

**JA [1]** 53/20
**January [17]** 5/16 6/2
62/6 62/7 62/8 62/8
62/13 62/15 62/17
62/21 62/23 63/1
63/13 66/18 66/21
68/2 68/4
**January 12th [5]** 62/6
62/8 62/17 62/21 68/4
**January 13th [2]** 62/7
62/8
**January 16th [1]** 5/16
**January 27th [1]** 6/2
**January 9th [3]** 63/1
66/18 68/2
**jets [1]** 31/11
**join [1]** 10/9
**joined [2]** 3/21 4/11
**joining [1]** 4/17
**joint [1]** 51/15
**JONATHAN [2]** 2/11
4/10
**jonathan.kravis [1]**
2/12
**JR [1]** 2/5
**Judge [14]** 1/12 11/14
12/5 12/11 12/14
15/14 16/3 16/21 19/3
24/1 36/7 36/15 44/18

49/4

**Judge Sullivan [2]**
36/7 36/15
**Judge's [4]** 10/14
12/20 12/22 12/25
**Judicial [1]** 72/8
**July [9]** 60/16 60/19
60/20 60/25 61/7
61/12 65/20 67/17
67/18
**July 2nd [4]** 60/16
60/19 60/25 67/17
**juncture [2]** 35/18
35/20
**June [4]** 60/7 60/8
60/24 67/16
**June 18 [2]** 60/24
67/16
**June 18th [2]** 60/7
60/8
**jury [24]** 4/2 5/16 7/6
7/10 10/23 11/2 28/23
44/9 44/12 45/19 52/1
52/6 61/17 61/22 62/9
62/21 62/23 66/11
67/7 67/7 67/23 68/3
68/5 69/19
**just [88]**
**JUSTICE [1]** 2/3

**K**

**KAY [2]** 1/11 3/5
**keep [1]** 55/13
**keeping [1]** 64/16
**key [3]** 25/22 26/4
45/2
**keystrokes [4]** 32/15
35/2 35/4 35/7
**keyword [1]** 25/15
**KIBBE [17]** 1/17 3/21
4/5 4/25 24/10 24/17
32/3 32/10 37/4 41/13
43/4 57/8 60/2 62/14
63/18 64/4 70/1
**kick [1]** 59/3
**kind [11]** 18/3 22/22
23/14 30/18 32/10
32/23 36/7 50/12 57/1
58/4 58/12
**KLEPP [3]** 1/23 72/2
72/12
**knew [1]** 40/25
**knocks [1]** 57/21
**know [39]** 8/11 9/17
13/10 18/3 18/8 18/24
22/20 25/25 26/13
26/21 27/1 29/1 33/17
35/18 35/18 35/20
36/21 39/1 40/22
42/16 44/1 54/25 55/7
57/18 57/21 59/19
61/8 61/25 62/4 62/14
63/21 63/24 64/1
64/16 64/25 65/4
65/22 66/19 67/8
**knows [4]** 4/1 22/23
27/14 29/8

**KRAVIS [14]** 2/11 4/10
4/20 4/18 7/2 41/16
51/2 54/4 56/2 58/20
60/10 62/4 63/7 69/13

**L**

**lacked [1]** 12/14
**Lane [2]** 1/16 1/24
**large [2]** 13/16 31/21
**largely [1]** 25/5
**last [7]** 5/11 13/17
30/8 37/8 40/5 40/24
55/17
**lastly [2]** 47/24 48/5
**late [1]** 56/2
**later [7]** 9/4 44/14
53/4 63/5 64/16 69/20
71/4
**latest [1]** 63/22
**latter [1]** 30/2
**laundering [2]** 20/19
20/19
**law [2]** 23/1 53/20
**lawyers [2]** 17/13 23/2
**lay [1]** 5/14
**least [17]** 5/5 9/8 12/1
14/11 18/3 23/11 24/5
25/1 27/5 36/4 39/21
42/21 45/9 48/5 48/20
50/7 66/17
**legal [2]** 22/9 42/14
**legitimate [1]** 13/19
**lenders [2]** 27/21 47/5
**length [1]** 68/7
**less [4]** 23/14 28/7
40/20 41/5
**let [17]** 7/16 11/4
17/18 22/14 38/22
38/25 38/25 54/24
56/25 57/3 59/19 60/7
60/21 61/14 61/24
62/14 65/17
**let's [10]** 13/9 35/5
51/2 52/15 53/22
54/12 58/12 59/1 59/6
62/17
**light [9]** 14/15 17/5
21/5 23/21 23/23 24/4
40/22 41/3 60/4
**like [35]** 5/4 9/8 11/2
11/8 12/19 18/23 19/6
20/20 21/16 21/23
34/18 35/4 35/22 37/6
37/14 38/21 40/1 44/2
51/16 53/24 54/19
54/21 56/6 57/13
58/17 58/22 60/14
61/13 63/9 64/23
66/15 66/20
**likely [1]** 12/23
**limine [12]** 55/2 61/13
63/3 63/5 63/9 63/12
63/21 64/6 66/5 67/18
67/19 67/22
**limit [3]** 35/14 40/10
40/15

**limitations [2]** 56/12
66/23
**limited [8]** 17/3 17/9
21/3 26/11 26/12 27/2
41/5 41/25
**limiting [3]** 26/17
42/19 43/1
**list [2]** 16/5 25/24
**listened [1]** 30/14
**litigate [1]** 63/11
**LITIGATION [2]** 2/5
3/22
**little [13]** 3/15 14/19
17/19 58/12 59/6 60/8
61/6 61/14 63/4 63/16
65/20 65/22 65/23
**living [1]** 39/18
**LKG [2]** 1/4 3/19
**LKG-25-6 [1]** 3/19
**LLP [2]** 2/10 2/15
**loan [2]** 5/25 46/7
**loans [1]** 47/4
**long [3]** 29/17 47/15
64/7
**longer [1]** 42/13
**look [15]** 17/19 21/1
25/10 28/16 29/21
32/22 34/6 35/8 44/22
48/9 51/24 52/3 60/7
69/14 71/3
**looked [1]** 8/14
**looking [16]** 14/12
14/22 25/13 25/16
25/18 26/3 33/10
33/15 33/21 35/9 45/9
52/5 56/19 63/10 65/8
65/11
**looks [2]** 53/24 60/13
**Los [1]** 2/16
**lost [1]** 39/21
**lot [3]** 5/11 46/25
47/10
**lower [3]** 3/12 3/14
28/7
**luxury [1]** 31/10
**LYDIA [2]** 1/11 3/5

**M**

**ma'am [1]** 70/24
**made [2]** 12/5 29/12
69/10
**Magistrate [15]** 10/14
11/14 12/5 12/11
12/14 12/20 12/22
12/25 15/14 16/3
16/21 19/3 24/1 44/18
49/4
**Magistrate Judge [8]**
12/14 15/14 16/3
16/21 19/3 24/1 44/18
49/4
**Magistrate Judge's
[3]** 12/20 12/22 12/25
**main [1]** 14/19
**make [18]** 5/13 13/11
18/13 20/2 20/7 21/1
24/13 26/14 37/6

39/11 40/5 40/13
40/18 55/14 60/22
61/9 62/12 65/24
**makes [1]** 37/20
**making [5]** 12/17 23/8
23/9 39/3 70/3
**manner [1]** 5/7
**many [4]** 28/6 47/20
49/6 52/19
**March [6]** 1/8 7/3 7/3
7/8 7/13 54/16
**March 11th [1]** 7/3
**March 21st [1]** 7/8
**March 24th [1]** 7/13
**March 6th [1]** 7/3
**MARYLAND [8]** 1/1
1/8 1/16 1/25 3/5 5/17
42/15 72/3
**mask [2]** 3/13 3/14
**masking [1]** 3/9
**Massachusetts [1]**
2/10
**material [7]** 8/15 8/23
40/16 55/11 55/14
55/15 59/15
**matter [12]** 19/15
20/10 34/1 44/8 44/21
45/5 48/15 49/4 54/6
68/9 69/7 72/7
**matters [4]** 4/1 9/2 9/4
45/19
**may [31]** 3/9 4/23 9/3
9/4 9/23 9/25 10/11
13/15 19/18 33/5
33/22 41/17 41/19
42/17 44/14 45/7 48/2
51/13 56/1 56/3 58/22
58/22 59/9 59/11 60/1
60/23 62/4 63/25
67/15 68/19 69/20
**May 16 [3]** 60/1 60/23
67/15
**May 16th [2]** 59/9
68/19
**maybe [3]** 55/2 61/16
64/5
**me [25]** 3/10 3/14 11/4
13/6 17/12 17/18
22/14 24/24 30/12
36/24 39/11 52/17
53/20 54/24 55/10
56/25 57/3 60/7 60/12
60/13 60/21 61/14
61/25 62/14 65/17
**mean [6]** 18/4 22/16
57/5 57/24 70/3 70/6
**means [7]** 17/23 18/19
31/2 39/25 47/17 48/5
48/20
**medium [2]** 26/1
32/19
**meet [2]** 67/8 67/10
**meeting [1]** 36/10
**meets [1]** 3/13
**memorandum [1]**
69/2
**mention [1]** 16/8

**M**

mentioned [6] 2/25
5/10 17/20 42/10 48/6
59/14
**Merit [1]** 72/2
**merits [1]** 20/24
**message [4]** 25/13
32/17 33/23 34/22
**messages [2]** 26/21
42/25
**messaging [3]** 26/20
31/23 32/16
**mic [1]** 55/8
**microphone [1]** 51/5
**middle [1]** 64/16
**might [10]** 9/12 14/3
14/17 20/4 35/12
38/14 47/17 53/8 62/7
65/19
**million [1]** 28/2
**millions [7]** 28/24
29/7 29/22 31/19
31/20 41/24 47/22
**mind [4]** 34/17 51/18
55/6 64/16
**minimum [2]** 42/24
50/19
**minutes [1]** 37/8
**misleading [1]** 46/15
**mitigate [5]** 13/15
14/25 30/17 45/1
48/22
**mitigating [1]** 30/19
**Mm [1]** 51/10
**Mm-hmm [1]** 51/10
**modify [2]** 48/25 65/8
**MOHAMMADI [2]** 2/17
4/12
**moment [10]** 3/8 5/9
7/17 7/24 8/19 10/16
16/1 38/23 40/9 59/10
**money [11]** 15/12
18/25 20/19 20/19
28/4 28/7 28/15 31/9
31/16 31/22 32/1
**money laundering [1]**
20/19
**monies [1]** 48/3
**monitor [2]** 19/7 22/7
**monitored [6]** 18/23
19/10 34/21 39/16
39/24 44/7
**monitoring [89]**
**month [1]** 61/19
**month's [1]** 36/4
**monthly [1]** 36/10
**moot [1]** 25/5
**more [32]** 3/15 9/12
10/21 12/23 15/6 17/9
19/19 20/24 21/3
23/14 26/16 31/3 36/1
38/23 38/24 41/5 41/7
42/16 55/21 55/24
59/11 59/17 62/11
63/4 65/21 65/23
65/25 67/4 67/9 67/10
67/13 68/7

**mortgage [2]** 27/20
**most [2]** 5/12 42/21
**motion [56]** 4/2 6/8
6/13 6/15 7/5 7/7 7/9
7/11 10/5 10/5 10/23
11/16 11/24 12/25
25/4 43/23 44/6 44/8
44/13 44/13 44/19
44/20 45/21 49/3
49/13 49/14 49/16
50/21 51/14 51/16
55/19 56/6 56/9 56/13
56/14 56/15 56/17
56/21 56/22 57/12
57/13 57/19 57/23
57/25 58/7 58/22
59/17 60/2 63/17
68/16 69/9 69/18
69/20 69/21 69/25
70/3
**motions [54]** 1/10 5/1
5/6 10/13 44/4 50/20
51/22 52/9 54/19
54/20 54/22 55/2 55/2
55/23 56/1 56/3 56/9
56/16 56/24 57/11
57/18 57/24 58/1 58/5
58/8 58/13 58/17 59/2
59/10 59/11 60/23
61/11 61/12 61/13
63/3 63/4 63/9 63/11
63/14 63/21 64/6
65/12 65/13 66/5 66/5
66/7 67/15 67/16
67/18 67/19 67/22
68/21 69/2 69/8
**move [5]** 26/7 26/8
33/14 43/25 53/10
**moves [1]** 49/7
**Mr. [104]**
**Mr. Goldstein [56]**
3/11 4/7 4/13 4/15 6/2
6/10 6/17 6/19 7/1 7/4
8/9 8/10 8/12 8/21
10/18 11/17 12/23
13/3 13/7 15/5 15/16
15/17 15/19 16/6
16/12 17/6 17/16 19/4
19/17 21/8 21/11
21/12 21/17 21/20
21/25 22/5 22/10
22/20 26/22 27/22
28/12 28/23 31/21
36/23 36/24 39/14
39/21 42/12 45/12
46/7 47/2 47/3 47/7
47/15 48/13 49/9
**Mr. Goldstein's [32]**
6/8 6/21 7/21 11/11
12/2 14/13 15/8 16/4
16/16 16/23 17/12
19/2 19/12 20/22 21/6
24/2 24/6 28/19 39/6
39/9 39/17 41/8 42/10
42/15 45/22 46/18
47/8 48/1 48/18 48/22

49/16 50/11
**Mr. Kibbey [3]** 32/10
57/8 60/2
**Mr. Kravis [12]** 10/7
24/8 37/2 41/10 51/2
54/4 56/2 58/20 60/10
62/4 63/7 69/13
**Mr. Smith [1]** 4/22
**mto.com [3]** 2/12 2/14
2/18
**much [18]** 4/5 8/4
24/8 24/16 28/7 28/7
32/3 34/23 36/16
41/10 43/4 43/19
43/20 52/22 54/21
62/19 69/12 71/1
**multiple [1]** 54/20
**MUNGER [3]** 2/10
2/15 4/12
**must [2]** 44/19 46/10
**my [30]** 3/14 3/22 4/9
4/10 4/14 8/23 8/25
9/15 13/10 18/21
21/19 21/21 24/21
30/13 34/3 40/23
43/23 44/5 44/21
50/16 50/17 52/4 53/3
53/20 53/20 54/1 54/7
57/5 58/8 70/23
**myself [1]** 53/5

**N**

**N.E [1]** 2/4
**N.W [1]** 2/10
**nailed [1]** 36/7
**name [1]** 4/9
**narrow [3]** 7/25 9/3
29/22
**narrowing [1]** 35/12
**nationally [1]** 13/25
**nature [11]** 26/24
27/17 27/18 28/11
31/11 33/15 35/10
35/15 45/4 45/6 46/2
**necessarily [6]** 22/9
22/13 37/18 38/24
39/5 40/1
**necessary [5]** 12/2
12/19 17/5 18/18 41/7
**need [15]** 50/20 52/23
53/7 54/3 54/7 55/24
58/1 58/9 58/14 58/15
59/17 62/11 62/19
65/9 69/5
**needed [1]** 27/12
**needs [5]** 14/3 27/15
38/2 39/7 48/9
**neither [1]** 8/15
**network [1]** 16/7
**never [4]** 12/4 12/18
16/15 35/21
**nevertheless [1]** 23/5
**new [1]** 17/21
**next [3]** 50/7 54/18
61/10
**nice [1]** 65/6
**no [28]** 1/4 3/19 11/19

12/13 16/5 27/25
34/20 35/23 35/25
36/18 38/15 38/21
42/3 42/13 49/23
49/25 50/2 50/19 55/1
60/3 64/16 67/3 68/13
68/14 70/19 70/20
70/22 70/24
**no-contact [1]** 16/5
**noise [1]** 59/6
**Northern [1]** 2/3
**not [113]**
**note [6]** 10/22 10/24
11/19 13/14 46/21
68/15
**noted [8]** 10/13 11/14
19/2 27/18 32/13
51/15 55/5 55/10
**noteworthy [1]** 46/12
**nothing [2]** 16/17
26/16
**notice [3]** 38/19 38/24
43/11
**November [21]** 53/5
53/9 53/21 53/23 54/6
54/15 55/23 56/20
61/17 61/18 61/20
62/3 63/24 64/10
64/16 65/14 65/14
66/6 66/6 67/20 67/20
**November 14 [2]** 66/6
67/20
**November 14th [1]**
65/14
**November 21 [1]** 66/6
**November 21st [2]**
65/14 67/20
**November 3rd [1]**
61/18
**novo [2]** 8/4 44/21
**now [26]** 3/5 9/14
10/18 11/25 16/18
21/13 23/7 33/2 34/21
38/3 42/18 44/5 51/24
52/6 53/4 53/16 54/9
54/14 54/16 55/17
62/2 62/5 64/12 66/8
68/8 71/7
**number [1]** 50/5
**numerous [1]** 16/5

**O**

**objecting [1]** 57/4
**objection [4]** 60/1
67/2 67/3 68/14
**objections [1]** 68/11
**observation [3]** 9/10
12/17 36/20
**obstruct [1]** 10/19
**obviously [5]** 10/20
12/16 20/13 37/1 40/5
**occasion [1]** 39/21
**occasionally [1]** 34/5
**occur [1]** 43/11
**October [16]** 52/1
52/7 52/8 52/13 52/14
52/7 52/8 52/13 52/14

53/5 63/24 65/10
65/10 65/20 66/2 66/5
67/19
**October 14 [1]** 52/7
**October 15 [1]** 52/8
**October 24 [1]** 66/2
66/5 67/19
**October 24th [1]**
65/13
**off [6]** 8/21 9/11 25/9
32/9 59/3 64/11
**offender [2]** 33/3 33/7
**offense [2]** 27/18
27/19 28/12 46/3
**offenses [5]** 45/4 46/3
46/9 46/12 46/16
**offer [5]** 51/4 51/8
53/1 54/11 62/5
**office [3]** 1/15 38/20
43/17
**Officer [2]** 24/24 26/5
**Officer Smith [2]**
24/24 26/5
**Official [3]** 1/24 72/1
72/12
**often [1]** 19/8
**oh [2]** 26/6 33/12
**okay [22]** 24/24 33/13
34/8 35/8 38/10 38/10
38/25 51/2 51/20
53/17 55/4 55/24 58/3
59/1 59/7 63/15 64/12
69/24 70/16
**OKULA [2]** 2/5 3/23
**OLSON [3]** 2/10 2/15
4/12
**once [7]** 10/9 56/21
56/22 58/15 58/18
68/4 69/1
**one [26]** 5/2 6/18
10/13 12/22 13/20
17/24 18/14 26/24
27/5 35/11 39/13
39/21 40/21 40/22
41/5 42/1 44/5 50/6
58/5 59/11 67/13 69/7
**ones [1]** 17/21
**online [7]** 13/25 17/23
18/5 19/4 36/23 47/20
48/14
**only [18]** 12/11 16/12
25/18 26/3 29/4 30/13
33/25 34/1 34/3 34/6
34/10 36/19 39/9 41/7
42/22 43/7 57/6 69/17
**open [7]** 15/11 52/19
52/21 53/3 54/2 54/2
68/6
**opening [7]** 9/10
17/21 18/24 27/11
42/3 65/9 67/16
**operation [2]** 37/6
37/16
**opinion [2]** 43/25 69/3
**opponent [1]** 38/16

**O**

opportunities [1] 54/6
opportunity [5] 9/6
11/2 36/4 38/14 39/22
opposition [7] 7/7
60/24 66/6 67/16
67/20
oppositions [1] 65/13
option [2] 61/21 64/14
order [12] 3/2 6/14
6/16 18/11 30/8 34/19
44/6 46/21 49/18 69/1
69/1 70/10
ordered [5] 6/5 6/10
6/16 44/18 55/19
orderly [3] 5/7 51/1
54/19
orders [1] 71/2
original [1] 18/9
other [42] 8/20 9/4
9/11 15/5 15/11 15/15
17/1 17/6 17/13 17/20
18/7 18/25 20/5 20/15
23/22 23/24 27/8 27/9
28/6 28/9 28/15 29/8
31/4 31/14 31/24
32/25 34/4 34/7 36/14
36/19 39/13 40/23
44/2 45/17 47/5 47/7
48/3 48/11 50/5 61/21
66/10 69/17
others [3] 18/4 24/22
26/23
Otherwise [1] 63/24
our [21] 5/1 12/21
13/17 34/5 43/17 48/9
50/7 51/8 52/2 54/19
56/5 56/8 57/6 59/3
62/13 62/24 63/2
66/10 66/14 68/1
70/14
outflows [1] 31/14
outline [1] 43/12
outlined [1] 36/14
outweigh [1] 48/24
over [6] 3/8 28/2
29/18 47/8 47/22 60/8
overseas [2] 14/2
47/16
owe [1] 48/3
owed [2] 29/7 32/1
owes [3] 28/14 28/23
31/19
own [1] 13/3
owned [2] 12/23
16/12
ownership [1] 16/10
owning [1] 13/7

**P**

p.m [4] 1/9 63/1 68/3
71/8
package [3] 14/23
15/2 15/4
page [2] 24/13 72/7
panned [1] 23/22
papers [8] 8/3 30/14
58/16 58/19 63/24
64/15 64/24 65/9
paperwork [1] 65/2
part [9] 15/1 15/4 26/4
28/5 28/12 28/13
38/12 57/17 57/23
partaking [1] 32/14
parte [2] 6/8 12/25
participate [1] 6/19
particular [9] 7/2 9/22
14/6 30/15 30/22 32/1
35/14 46/18 47/4
particularly [4] 17/11
20/10 46/23 48/17
parties [22] 5/5 9/6
13/1 26/21 29/11 34/9
36/13 37/11 38/14
39/15 43/13 43/15
44/17 46/25 49/19
61/6 61/25 63/11
63/22 65/6 66/9 71/3
parties' [1] 8/2
party [2] 38/8 70/18
passport [1] 15/10
PATRICIA [3] 1/23
72/2 72/12
PATRICK [2] 1/17
3/21
patrick.kibbe [1] 1/18
pause [1] 30/10
pausing [1] 38/18
pay [2] 5/23 46/6
paying [1] 45/16
pendency [1] 32/1
pending [3] 5/1 5/3
44/4
people [2] 9/11 9/14
per [3] 23/8 35/24
40/2
per se [2] 23/8 40/2
perfect [2] 68/20
68/22
perhaps [8] 9/25 31/3
34/12 34/17 37/11
42/16 49/1 70/4
period [3] 47/9 47/22
54/16
periodic [1] 26/2
permission [1] 15/9
permits [1] 6/21
person [5] 17/23
33/25 34/1 44/18 45/7
personal [1] 30/5
perspective [2] 20/1
49/22 69/6
phone [1] 32/12
pick [4] 15/4 22/12
62/23 68/3
picking [2] 67/7 68/4

**P** (cont.)

picture [1] 27/2
piece [3] 26/11 26/12
27/3
piggyback [1] 54/15
place [2] 36/8 50/12
placed [1] 15/21
plainly [1] 42/22
Plaintiff [1] 67/15
plaintiff's [1] 60/23
plan [3] 5/5 53/10
68/16
planned [1] 50/4
planning [1] 55/1
please [3] 3/8 3/17
4/18
pleased [2] 9/23 49/10
pled [1] 6/4
plenty [2] 56/20 62/20
podium [3] 10/9 51/6
55/7
point [25] 7/24 11/19
12/10 20/2 20/7 21/1
23/8 23/9 24/11 24/20
30/2 30/17 39/3 39/3
39/11 40/5 40/13
41/16 42/11 42/19
55/12 57/1 68/10
68/11 69/20
points [2] 37/6 49/1
poker [6] 13/25 14/9
17/23 18/5 47/21
48/14
policy [1] 3/9
porn [1] 33/5
pose [1] 13/15
posed [2] 14/16 45/7
position [7] 9/13 18/8
18/9 18/9 25/3 40/10
70/9
possibility [1] 32/24
possible [3] 35/15
35/19 54/21
possibly [3] 34/4
56/16 57/22
potential [7] 39/10
39/22 45/18 47/25
48/18 50/13 61/15
potentially [4] 14/4
42/11 55/11 55/14
practice [1] 18/21
19/8 22/25 43/23
61/13 63/3 67/18
precludes [1] 70/11
prefer [1] 24/23
preferably [1] 64/25
preference [1] 66/23
prejudice [1] 69/19
preliminary [1] 4/3
preparation [3] 5/21
7/14 46/5
prepare [3] 63/13
66/11 68/25
prepared [6] 50/24
51/20 53/15 56/3 56/7
63/8
present [4] 2/19 4/13
31/12 64/2

**P** (cont.)

presented [1] 35/12
presenting [1] 9/25
presiding [1] 3/6
pressing [1] 50/6
presumed [2] 46/8
47/2
pretrial [74]
Pretrial Services [10]
22/2 24/21 25/13
26/12 36/2 37/25
38/12 39/24 42/4
42/13
pretty [5] 7/25 13/2
34/23 43/25 54/2
previously [6] 13/22
30/5 37/20 42/13
55/16 55/20
primary [1] 7/18
prior [3] 15/9 64/25
67/25
private [4] 28/14 29/6
31/10 31/20
privileged [10] 17/11
17/16 21/10 21/22
22/23 23/6 26/13 39/8
39/19 42/11
probably [11] 52/5
53/4 54/18 55/24 61/7
63/5 63/16 65/8 65/9
69/3 69/24
problem [1] 62/8
procedural [2] 5/13
63/14
proceed [6] 3/17 4/23
44/3 53/22 67/23 68/5
proceeding [2] 6/18
58/19
proceedings [4] 12/17
13/1 71/6 72/6
process [1] 57/2
produced [2] 29/18
production [7] 7/5
10/23 51/12 51/13
59/15 59/16 69/19
productions [2] 55/11
59/24
productive [1] 67/10
professional [1] 17/24
proffer [2] 42/16
profile [9] 25/17 25/19
25/21 32/11 32/18
33/7 35/24 41/17
41/20
program [2] 6/20 26/5
programs [1] 29/5
prohibited [1] 15/20
prohibition [2] 16/23
19/3
prohibitions [1] 18/25
promise [1] 53/5
prompted [1] 33/16
promptly [2] 44/20
56/24
proper [3] 12/3 14/23
31/6
property [2] 15/22

**P** (cont.) / **Q** / **R**

proposals [1] 35/11
propose [4] 12/8 59/9
66/19 66/24
proposed [2] 67/6
68/11
protect [1] 36/24
prove [1] 9/14
provide [2] 7/12 14/4
provided [2] 7/13 37/9
public [2] 29/5 30/22
pull [2] 33/10 33/12
purpose [3] 3/25 22/7
22/17
purposes [6] 8/22
8/24 13/5 44/5 45/21
70/6
pursuant [2] 7/6 72/4
push [1] 22/3
put [4] 32/16 36/8
62/24 70/5
puts [1] 61/21
putting [1] 34/13

**Q**

qualifications [1] 51/9
quality [1] 43/21
que [1] 13/10
question [8] 8/16
18/13 19/24 29/22
30/13 50/16 50/18
58/4
questions [12] 9/24
10/20 19/18 20/4
30/11 40/6 49/21 50/1
66/12 66/17 67/6
67/24
quick [1] 37/6
quickly [3] 37/1 43/25
58/10
quite [2] 8/14 25/7

**R**

raise [1] 70/8
raised [12] 8/7 8/8
10/17 13/22 15/8
36/22 38/14 45/25
48/8 48/16 48/23 49/1
raising [2] 70/11
70/13
random [2] 6/22 45/16
reach [1] 70/12
read [2] 18/3 30/14
reading [1] 8/2
reads [1] 48/11
ready [10] 10/11
50/14 50/16 53/8
53/25 54/17 59/7
62/14 62/20 67/23
really [12] 9/6 9/7 11/8
12/21 14/20 18/7
39/12 44/4 48/24 57/6
62/6 64/23
reason [6] 13/10 16/8
22/13 42/20 44/14
70/4
reasonable [3] 14/13
30/19 48/22

**R**

reasonably [6] 5/2
12/19 23/12 24/6 41/7
44/25
reasons [3] 44/1 49/5
49/12
REAVES [2] 2/13 4/12
receive [1] 69/15
recent [1] 5/13
recently [1] 16/3
recitation [1] 11/15
recommendation [1]
57/1
recommendations [1]
10/3
recommended [1]
12/12
record [10] 4/13 4/18
5/14 8/15 9/12 19/11
26/19 43/16 44/22
64/11
records [2] 47/6 47/7
red [1] 25/25
refer [1] 6/24
reference [1] 32/15
referred [1] 13/1
reflecting [1] 47/8
Reform [12] 9/16 12/4
23/11 24/7 24/25 25/2
27/13 29/8 30/11 40/4
42/9 45/3
regarding [3] 16/19
21/2 25/2
regardless [1] 40/13
regards [2] 9/2 50/10
Registered [1] 72/2
regulations [1] 72/8
relate [2] 17/12 17/14
related [17] 5/2 6/9
7/9 8/9 8/11 18/23
35/14 37/14 44/5 44/8
44/9 44/12 47/6 47/20
47/25 48/17 48/18
Relatedly [1] 49/14
relates [4] 16/22
20/21 28/19 37/22
relationships [1] 14/2
relative [2] 43/8 43/14
release [41] 4/2 5/3
6/6 6/9 7/21 9/19
11/17 11/24 13/21
15/5 15/20 16/7 17/1
17/6 18/19 18/19
18/22 19/6 19/7 19/9
19/13 19/16 19/22
20/10 20/12 23/12
23/24 27/6 28/18 30/3
34/19 36/11 37/23
39/18 42/7 43/2 44/19
44/24 45/24 46/11
49/17
released [3] 6/5 6/17
44/18
relevant [5] 6/18
13/23 40/2 46/23 47/9
relief [1] 49/15
rely [1] 47/1

remains [1] 30/8
remedy [1] 31/7
reminding [1] 36/11
removes [1] 17/10
renew [1] 69/20
renewed [1] 68/16
replies [1] 65/14
reply [10] 7/4 7/8
10/22 25/4 60/10
60/11 60/24 66/6
67/16 67/20
report [1] 51/16
reported [5] 34/11
38/2 38/13 39/7 72/6
Reporter [4] 1/24 72/1
72/2 72/12
reporting [2] 38/13
38/15
represent [2] 4/10
39/20
representation [1]
50/11
representations [1]
11/1
represented [1] 55/16
request [3] 60/11 70/3
70/14
requesting [3] 7/10
56/9 57/13
require [2] 63/23
64/15
required [4] 6/18 12/8
12/11 39/23
requirement [1] 40/3
researching [1] 35/9
resolve [5] 9/8 11/10
63/17 64/17 68/9
resolving [1] 45/21
resource [1] 14/4
resources [3] 14/18
47/18 48/2
respect [5] 16/20
26/17 29/15 36/13
54/6
respectfully [2] 18/17
22/19
respond [1] 60/5
responded [2] 7/3 7/7
response [1] 60/24
responses [3] 66/5
67/16 67/19
restricted [1] 15/9
restriction [1] 41/4
restrictions [3] 27/9
27/10 27/10
restrictive [15] 12/1
19/19 23/12 23/14
24/5 25/1 27/6 37/23
40/21 41/5 41/7 42/21
45/9 48/5 48/20
restrictiveness [1]
40/3
returned [2] 5/17
40/25
returns [3] 5/21 20/23
46/6
review [14] 7/11 8/1

8/4 26/2 26/9 32/21
24/3 44/5 36/4 40/15
44/21 55/25 60/21
66/16
reviewed [2] 7/14
44/22
reviewing [2] 26/13
37/25
revoke [4] 6/8 6/13
6/16 7/20
right [40] 4/14 9/14
13/12 14/24 18/1
18/16 21/13 21/18
22/8 25/7 33/20 39/2
39/2 39/2 42/18 44/5
50/3 51/5 51/24 52/6
52/15 53/4 53/14
54/12 54/14 58/6
58/23 59/20 59/25
60/21 61/5 64/12
64/19 66/4 66/8 66/13
68/7 68/17 68/25
70/25
ring [1] 20/19
rise [2] 3/3 71/6
risk [5] 13/18 22/22
30/7 30/24 31/15
RMR [2] 1/23 72/12
role [1] 36/2
Room [1] 2/5
routine [3] 20/9 38/24
43/17
rule [3] 7/6 37/4 43/23
Rule 6 [1] 7/6
ruled [2] 56/22 69/8
ruling [7] 44/5 49/18
49/22 56/14 56/17
61/10 69/25
rulings [1] 64/1

**S**

S.A [1] 2/20
said [10] 13/4 20/23
24/5 25/5 25/6 29/14
30/17 46/3 47/1 70/12
same [2] 24/13 37/4
sanction [1] 10/24
save [1] 16/18
say [24] 7/23 8/6 8/14
9/10 11/4 13/6 15/7
20/24 22/13 26/25
30/18 33/8 33/12 35/5
35/7 36/3 36/5 37/3
40/19 41/13 43/5 54/5
57/4 58/20
saying [8] 12/11 12/13
16/9 20/14 22/12 23/7
39/25 59/16
says [1] 11/25
schedule [18] 4/3
44/3 50/6 50/15 51/1
51/1 53/16 54/23
55/22 58/15 58/17
59/3 59/3 63/3 65/3
65/21 67/12 68/11
schedule's [1] 65/21
scheduled [2] 52/12

scheduling [4] 5/4
50/9 54/8
scheme [1] 20/18
screenshot [2] 33/12
33/12
se [2] 23/8 40/2
search [2] 25/14
57/14
search warrant [1]
57/14
seated [2] 3/8 4/14
second [3] 18/8 37/24
42/10
Section [6] 2/3 5/20
5/22 5/24 6/1 44/17
Section 1014 [1] 6/1
Section 3145 [1]
44/17
Section 7201 [1] 5/20
Section 7203 [1] 5/22
Section 7206 [1] 5/22
security [1] 15/21
see [20] 21/19 25/14
26/6 26/18 30/11 33/8
33/13 33/15 33/21
35/8 50/14 54/12
54/24 58/2 58/13
58/18 58/19 65/17
69/1 71/2
seeing [1] 71/3
seek [1] 13/14
seeking [2] 6/13 44/9
seems [1] 36/23
seen [3] 32/24 57/11
58/6
selection [5] 52/1
52/6 61/17 61/22
62/21
send [3] 32/19 38/19
66/16
SENIOR [2] 2/5 3/22
sentence [1] 30/15
separate [2] 55/3 58/1
September [1] 72/9
serious [6] 26/16
27/19 46/3 46/4 46/8
46/9
seriousness [1] 45/7
services [25] 4/21
15/10 15/13 15/19
18/23 19/7 19/10
19/14 21/9 21/21 22/2
24/21 25/13 26/8
26/12 31/10 35/13
36/2 37/10 37/25
38/12 39/24 42/4
42/13
session [1] 3/5
set [37] 12/1 37/18
41/20 44/6 49/20
50/14 50/16 50/20
50/25 51/19 51/23
51/25 52/6 52/7 52/22
53/8 53/16 54/2 54/9
56/8 56/23 57/18 58/1
58/5 58/8 58/17 58/18
61/5 61/17 64/6 64/21

65/12 66/4 66/8 67/17
68/9 69/4 69/11
setting [2] 29/13
50/22
several [7] 5/19 5/20
5/22 5/24 9/17 10/18
54/25
severely [1] 29/3
sex [2] 33/3 33/7
share [4] 23/3 24/10
36/17 43/9
shared [3] 13/17 34/2
43/15
shortly [5] 6/12 49/19
53/22 54/15 71/3
should [7] 9/13 9/19
17/3 41/4 42/8 48/25
59/23
show [2] 33/5 61/15
shown [1] 42/23
shows [4] 13/3 13/11
side [4] 40/23 51/8
54/22 68/12
significant [12] 14/8
27/21 28/14 30/7 31/3
31/3 31/7 31/8 31/8
31/17 47/16 55/15
similar [1] 6/23
Similarly [1] 56/2
since [5] 10/8 16/13
19/12 30/7 65/19
sit [2] 19/5 64/14
sitting [1] 5/17
situation [1] 30/21
skipping [1] 28/20
sliver [1] 25/11
SMITH [5] 2/21 4/21
4/22 24/24 26/5
so [124]
software [10] 6/21
25/15 25/18 26/15
32/11 32/12 34/12
40/14 40/17 45/14
software's [1] 25/16
solely [2] 41/24 48/7
some [23] 5/9 5/12
7/23 9/4 9/24 14/4
17/2 19/19 19/19
33/24 34/16 34/23
50/10 50/18 50/20
51/20 52/25 53/8
53/20 53/25 61/14
62/11 69/20
somebody [1] 31/11
somehow [2] 12/15
57/21
someone [4] 4/17
12/8 34/2 44/17
something [17] 14/9
20/20 23/22 33/6
34/18 35/6 35/15
35/22 38/2 38/14 39/7
46/16 55/13 58/9
58/10 58/20 65/8
sometime [5] 61/7
61/12 63/5 65/10
67/17

**S**

somewhat [1] 35/7
soon [2] 51/17 62/23
sophisticated [1] 14/21
sorry [4] 17/24 51/7 60/17 60/18
sort [9] 22/25 36/6 37/6 39/19 40/9 43/10 57/12 59/13 61/8
sort of [1] 36/6
sounds [2] 38/21 57/12
SOUTH [1] 2/15
SOUTHERN [1] 1/2
speak [4] 4/3 23/11 39/1 51/5
speaking [2] 24/21 53/3
special [2] 3/24 4/6
specific [5] 16/19 16/22 17/13 20/21 37/18
specifically [6] 16/21 18/22 19/9 27/22 32/22 56/10
speedy [3] 69/8 69/9 69/15
spending [1] 47/8
spent [1] 55/17
spoken [1] 41/1
sponte [5] 11/16 12/6 12/14 12/21 15/15
stan.j.okula [1] 2/6
stand [1] 71/5
standard [3] 12/3 24/25 41/8
stands [1] 71/7
STANLEY [2] 2/5 3/23
stark [1] 23/17
start [4] 24/19 32/9 62/22 65/7
started [1] 50/12
starting [2] 55/10 61/22
state [1] 31/1
statements [3] 5/24 27/20 46/7
STATES [15] 1/1 1/3 1/12 1/15 3/4 3/16 3/18 3/20 5/20 5/25 38/16 48/3 69/6 72/3 72/8
status [5] 4/3 42/15 51/15 66/14 68/2
statute [3] 9/17 56/12 56/18
Staying [1] 28/11
stenographically [1] 72/6
stenographically-repo rted [1] 72/6
step [4] 17/9 54/18 61/10 65/24
STEPHANY [2] 2/13 4/12
stephany.reaves [1]

2/14
steps [2] 50/15 50/15
still [3] 13/18 27/2 62/7
straight [1] 24/23
Street [2] 2/4 15/21
strong [4] 8/12 29/16 29/19 29/21
stuff [1] 40/24
sua [5] 11/16 12/6 12/14 12/21 15/15
sua sponte [4] 11/16 12/6 12/14 15/15
subject [7] 6/5 6/17 15/5 17/7 17/15 22/1 32/11
submission [1] 69/15
submissions [1] 43/22
submit [3] 23/17 24/3 43/13
submits [1] 30/8
submitting [2] 37/11 69/9
subsequent [1] 6/14
substantial [1] 13/18
succinctly [1] 30/18
such [3] 28/8 32/14 59/17
sufficient [7] 5/7 9/16 24/1 24/2 26/18 26/25 61/9
suggest [6] 11/21 11/23 22/16 63/4 63/8 65/19
suggested [2] 11/20 12/18
suggesting [1] 9/1
suggestion [1] 18/18
Suite [3] 1/16 1/24 2/10
Sullivan [2] 36/7 36/15
summarizes [1] 7/15
summer [1] 52/5
supervisor [1] 34/3
supervisors [1] 34/5
support [2] 29/20 47/1
supported [1] 29/17
suppress [1] 57/25
suppressed [1] 58/1
sur [1] 7/8
sur-reply [1] 7/8
sure [15] 5/13 13/11 18/13 19/24 20/13 20/25 23/4 24/13 26/14 38/19 51/22 60/22 61/9 65/24 70/2
surrendered [1] 15/10
sustain [3] 7/20 49/3 49/13
system [3] 32/5 32/22 35/16
systems [2] 6/22 45/17

**T**

table [1] 3/24 4/1
20/14
tailored [1] 40/18
take [3] 5/9 33/11 70/9
takes [1] 46/17
taking [2] 17/19 29/21
talk [14] 5/4 8/20 9/1 9/20 13/6 13/9 18/2 44/14 49/8 53/7 58/19 59/1 61/8 68/7
talked [2] 40/23 69/21
talking [12] 14/6 17/1 23/13 23/15 23/23 26/10 26/22 37/7 37/13 48/6 48/7 56/19
tall [1] 55/7
tamper [1] 10/19
tampering [2] 8/11 46/1
tangential [1] 21/3
tax [12] 2/3 3/22 5/19 5/21 20/23 27/20 27/23 28/2 46/4 46/6 47/7 57/23
Tax Division [1] 3/22
taxes [5] 5/23 14/18 29/5 46/6 48/2
technology [1] 10/2
tell [2] 35/19 52/4
tentative [1] 54/9
term [2] 37/14 37/14
terms [12] 7/25 26/10 32/6 34/20 36/1 37/18 49/8 54/8 54/22 56/1 58/9 61/15
testimony [8] 4/3 7/6 7/10 7/14 11/2 44/9 44/12 49/15
text [4] 32/16 32/17 33/23 34/22
text message [3] 32/17 33/23 34/22
text messaging [1] 32/16
than [15] 10/21 12/23 15/6 21/4 31/3 37/10 37/20 41/17 41/17 42/5 63/16 64/16 66/1 66/10 70/4
thank [37] 4/5 4/22 10/12 20/1 24/8 24/15 24/16 24/18 30/23 32/3 32/8 36/16 37/5 41/10 41/11 41/14 43/3 43/4 43/19 43/20 49/23 49/25 53/12 55/9 57/9 58/25 60/20 61/4 64/5 68/23 68/24 69/12 70/14 70/19 70/20 70/25 71/7
thank you [19] 10/12 20/1 24/18 32/8 37/5 41/11 41/14 43/3 43/3 43/4 43/19 43/20 49/23 49/25 53/12 57/9 58/25 60/20 61/4 64/5 68/23 70/20 71/7
thereafter [2] 6/7 6/12
therefore [1] 22/22
thereto [4] 60/24 66/6 67/16 67/20
these [23] 8/20 9/11

Thanksgiving [5] 61/22 64/25 64/25 65/4 65/15
that [481]
that's [53] 9/15 21/16 22/17 23/8 24/24 25/7 25/8 26/5 26/5 26/6 26/7 26/18 26/20 26/24 28/22 29/3 30/2 32/23 33/6 33/13 33/18 35/1 35/1 35/11 35/15 36/8 38/11 41/12 41/18 41/20 41/21 42/1 42/6 43/19 52/2 52/21 57/6 58/11 58/21 58/23 59/2 59/21 60/8 61/7 62/9 62/17 64/18 68/20 68/22 69/24 70/4 70/10 70/16
their [3] 9/21 23/2 23/3
them [11] 8/13 10/21 25/25 35/14 38/25 38/25 53/21 58/18 59/6 63/15 66/16
then [43] 3/17 19/16 19/18 20/3 26/2 26/5 28/20 32/5 32/21 33/9 33/12 33/14 35/7 35/7 37/4 44/2 49/20 50/14 50/19 52/2 52/7 53/25 54/22 54/25 55/18 56/21 57/21 58/1 58/18 59/3 60/6 61/12 63/2 64/6 65/1 65/23 66/9 66/16 67/13 67/17 67/21 67/23 70/4
there [49] 6/9 6/14 8/6 9/1 9/16 15/20 17/14 19/11 19/18 19/19 23/24 27/9 27/25 28/1 28/17 28/25 29/22 30/10 31/3 32/24 34/11 34/14 36/21 36/21 38/1 38/2 38/13 38/18 39/6 39/20 41/1 43/10 44/8 45/2 47/24 49/21 50/15 50/17 51/9 51/14 54/8 56/20 57/19 59/4 62/7 63/2 64/23 66/23 69/15
there's [27] 9/2 14/15 14/19 16/4 16/5 17/24 22/8 25/14 25/15 25/17 25/21 26/15 27/21 28/18 31/13 33/4 36/5 36/6 36/25 37/17 38/15 42/15 46/25 55/15 57/25 58/2 61/9
though [2] 31/16 36/13
thought [4] 37/1 50/22 53/1 63/10
thoughts [7] 8/2 18/15 51/4 52/10 53/11 56/4 56/5
thousands [1] 42/24
three [2] 41/15 68/8
three weeks [1] 68/8
through [20] 5/5 5/9 5/12 10/2 14/12 19/10

12/17 13/1 13/10 13/11 14/16 16/19 18/7 19/14 23/22 23/24 39/7 44/23 46/3 46/8 46/12 46/16 46/18 47/20 49/5 49/8 56/5 60/21
they [17] 7/16 8/8 9/7 11/21 11/22 18/11 23/3 25/6 30/25 31/1 34/5 38/12 42/2 42/17 42/25 46/9 49/9
they'd [1] 57/13
they're [3] 26/3 38/17 70/3
thing [6] 16/12 23/14 36/19 37/24 43/7 69/17
things [26] 5/6 7/23 8/6 12/21 13/20 13/23 18/7 18/14 19/14 24/4 25/16 25/18 25/24 26/3 27/13 28/16 31/11 31/11 34/21 35/10 35/15 41/15 50/8 53/19 58/12 67/9
think [84]
thinking [4] 14/11 29/25 56/2 63/5
thinks [1] 65/17
third [3] 39/11 39/15 42/19
this [115]
THOMAS [5] 1/5 2/20 3/18 4/11 5/18
those [67] 3/9 5/6 5/8 8/12 8/15 9/2 9/4 9/14 9/19 9/20 9/21 13/1 13/3 13/7 13/19 14/11 15/6 15/24 15/25 15/25 16/2 16/3 16/10 16/12 16/25 17/7 17/11 17/15 18/13 23/6 23/9 24/4 25/24 26/2 26/15 27/12 27/14 28/16 29/13 29/13 31/5 34/16 34/16 36/25 37/15 42/17 44/14 45/10 46/8 46/21 47/23 48/19 48/24 49/12 51/18 51/22 55/25 57/16 61/10 61/12 61/24 64/14 66/7 66/15 67/6 67/8 70/13
through [20] 5/5 5/9 5/12 10/2 14/12 19/10

**T**

through [14] 25:12
26/20 29/1 29/5 30/10
31/23 32/5 32/11 34/6
47/13 52/4 65/2 67/9
67/13
throw [2] 50/7 50/19
throwing [1] 65/7
thus [1] 13/14
ties [1] 31/17
time [51] 5/7 5/11 6/3
6/16 11/5 11/7 12/5
15/14 16/13 16/15
19/1 19/5 19/12 24/2
40/25 41/1 41/2 47/9
47/22 49/21 51/22
52/8 52/19 52/22 54/3
54/17 56/20 57/6
58/10 58/16 59/17
61/6 61/9 62/11 62/19
62/20 63/4 63/11
63/20 64/9 64/17 65/1
65/15 65/20 65/21
65/23 66/9 67/5 67/13
68/9 71/1
times [2] 10/18 39/15
timing [1] 59/14
Title [4] 5/19 5/22 5/23
5/25
Title 18 [1] 5/25
today [32] 4/11 4/13
5/1 5/15 7/19 7/23
8/16 9/8 9/20 10/14
15/25 16/11 16/18
16/24 19/5 20/6 20/15
21/24 23/23 29/14
35/12 37/13 37/16
39/13 45/8 48/10
48/13 69/2 69/9 69/22
70/12 71/1
today's [6] 3/13 4/23
6/18 7/14 44/23 45/20
together [5] 5/11 8/3
13/17 18/11 49/7
told [1] 42/13
toll [1] 56/12
TOLLES [3] 2/10 2/15
4/12
tomorrow [1] 69/3
too [3] 24/24 52/2
62/4
tool [1] 48/11
top [1] 16/25
topics [1] 20/5
toss [2] 50/13 51/20
touch [1] 16/6
towards [1] 53/18
track [1] 57/5
transactions [19] 14/5
14/8 15/17 16/21
17/25 18/6 26/19
27/23 28/1 29/23
31/15 31/22 31/23
42/2 45/23 46/19
46/22 47/19 48/15
transcript [4] 10/24
69/19 72/5 72/7

transfer [3] 26/23
30/14
transferred [3] 31/21
42/25 43/1
transfers [4] 15/12
18/24 27/10 42/22
transparency [1]
28/18
travel [7] 13/24 15/8
27/9 27/22 28/8 31/7
47/15
traveled [1] 14/22
trial [45] 2/7 3/23 5/3
20/25 48/15 50/13
50/14 50/17 50/23
51/19 51/23 52/1 52/1
52/7 52/12 53/9 53/18
53/22 54/1 54/2 54/9
54/15 55/23 56/20
61/14 61/15 61/17
61/22 62/9 62/13
62/22 63/6 63/13
63/23 63/25 64/2 64/9
64/14 66/13 67/23
68/5 68/7 69/8 69/9
69/15
tried [1] 47/13
trigger [2] 37/19 38/24
trouble [1] 53/6
true [1] 72/5
try [6] 11/10 39/17
52/14 57/5 61/19
66/17
trying [5] 14/17 14/17
35/10 55/16 62/6
turn [2] 44/2 61/13
Turning [2] 46/2 46/24
turns [1] 58/9
twenty [1] 27/20
twenty-two [1] 27/20
twin [2] 30/17 30/18
two [19] 5/1 5/1 8/6
12/21 12/23 16/8
16/19 17/22 27/20
30/15 44/4 45/10
51/18 53/19 55/18
60/11 60/15 60/18
69/2
two weeks [4] 55/18
60/11 60/15 60/18
type [6] 14/4 17/22
17/23 34/23 34/24
35/6
types [5] 25/24 34/20
35/12 36/25 46/22
typically [7] 35/24
46/12 50/9 57/17
57/24 61/11 66/13
typing [1] 35/8

**U**

U.S [2] 1/17 2/3
U.S. [3] 5/22 5/24
38/20
U.S. Attorney's [1]
38/20
U.S. Code [2] 5/22

5/24
unannounced [2]
6/22 45/16
unauthorized [1]
31/14
unconstitutional [2]
23/8 40/1
uncovered [1] 43/18
under [18] 6/23 12/3
20/11 21/12 22/23
24/7 24/25 25/2 25/19
27/13 40/3 40/4 40/4
41/8 42/9 44/17 45/3
45/3
underlying [1] 20/17
understand [16] 9/24
11/5 11/11 12/10
21/21 25/12 26/1 27/5
37/9 37/16 39/2 48/16
48/19 57/1 62/3 70/2
understanding [2]
21/22 24/21
understands [5] 5/13
14/1 14/3 42/12 42/14
understood [3] 37/11
37/21 41/19
unemployed [8] 13/23
14/8 26/19 29/22
31/10 31/20 42/23
47/14
undisputedly [2]
25/20 26/22
unfortunately [1] 62/4
unintended [3] 22/18
23/4 23/9
UNITED [15] 1/1 1/3
1/12 1/15 3/4 3/16
3/18 3/20 5/20 5/25
38/16 48/3 69/6 72/3
72/8
United States [6] 3/18
3/20 5/20 5/25 48/3
69/6
unrefuted [1] 30/1
Unrelated [1] 69/21
until [1] 60/6
unwarranted [1] 40/2
up [16] 4/2 13/11 15/4
22/12 28/1 33/5 33/10
33/12 37/15 41/20
43/24 49/18 53/25
58/18 61/12 65/3
upon [1] 47/1
us [29] 4/17 5/5 5/10
10/13 21/23 34/17
36/12 37/15 39/9 44/2
47/12 50/15 52/8
53/25 56/20 56/23
59/19 60/15 60/19
61/16 61/18 61/21
61/22 62/20 63/3
66/20 67/4 67/11 68/9
usdoj.gov [3] 1/18 2/6
2/8
use [11] 8/9 16/23
17/4 21/3 21/22 31/9

40/11 40/16 40/16
used [5] 10/3 10/18
20/17 25/23 37/14
using [2] 25/18 34/23
USPO [1] 2/21
usually [3] 50/12
63/21 66/15

**V**

vaccinated [1] 3/12
value [1] 28/2
verdict [3] 66/12 67/7
67/24
verify [1] 19/14
version [2] 8/24 41/7
very [17] 7/24 8/2 8/12
9/3 9/12 24/8 24/16
32/3 36/16 41/10
41/12 43/4 43/19
43/20 46/4 51/16
69/12
video [2] 33/17 34/23
view [9] 9/15 12/21
22/15 24/11 30/17
56/8 56/13 57/10
69/10
views [1] 8/12
violation [11] 5/19
5/22 5/23 5/25 34/12
36/6 38/19 43/10
43/12 43/12 43/15
violent [1] 30/21
Virginia [1] 52/12
voir [4] 66/12 66/17
67/6 67/24
voir dire [4] 66/12
66/17 67/6 67/24

**W**

walk [6] 5/9 5/12 10/2
24/12 32/4 67/13
wallet [2] 16/9 16/9
wallets [13] 8/9 12/24
13/2 13/3 13/7 14/6
16/8 16/10 16/12
16/19 23/22 45/24
47/11
want [28] 7/16 8/20
10/22 15/3 17/21 18/2
20/7 22/3 29/14 30/18
32/4 32/6 35/25 36/17
37/2 41/13 50/7 51/4
51/8 53/5 59/6 59/13
63/4 64/2 64/8 64/10
66/1 68/15
wanted [8] 20/2 21/1
22/6 39/11 40/5 40/13
54/11 58/20
wants [3] 42/16 43/5
70/8
warned [1] 39/14
warrant [2] 34/17
57/14
warranted [1] 10/25
warrants [1] 19/13
was [55] 6/9 6/10 6/14

6/15 7/12 11/21 12/4
12/5 12/12 12/19
12/21 12/22 12/22
14/9 15/21 16/1 16/12
19/6 20/14 23/25
23/25 24/1 24/3 24/8
25/5 25/6 27/7 27/24
27/25 28/25 32/22
33/16 33/16 33/24
34/12 34/14 34/15
35/8 35/9 35/9 35/10
38/18 39/3 39/3 39/22
40/25 41/1 42/13
43/13 44/8 47/14 54/5
65/11 69/7 70/14
Washington [2] 2/4
2/11
wasn't [1] 38/18
way [15] 18/4 18/14
22/6 22/11 22/21
26/25 27/12 33/2
36/24 36/25 42/22
48/24 49/1 58/11
70/10
we [154]
we'd [2] 52/18 55/16
we'll [33] 5/14 9/9
13/6 51/22 52/2 54/15
54/25 58/13 58/18
59/3 59/3 61/8 61/9
61/11 61/12 62/22
63/15 64/22 66/7 66/9
67/5 67/9 67/13 67/18
67/21 67/23 68/1 68/3
68/5 68/7 69/9 69/9
69/14
we're [41] 3/25 7/15
8/18 13/6 15/16 15/24
16/23 23/13 23/14
23/23 23/23 24/13
26/10 36/21 44/3 48/6
48/7 49/9 50/14 50/24
51/23 52/5 52/24
52/25 53/9 53/15
53/22 54/14 54/14
54/15 54/20 55/1
56/19 56/19 60/22
62/21 63/19 65/8 66/4
66/14 66/20
we've [8] 8/3 29/18
37/7 37/13 45/8 56/23
58/16 71/2
wealth [1] 47/17
web [1] 25/14
website [2] 32/15
34/15
websites [8] 17/3 25/7
26/17 27/1 33/22
40/12 40/16 42/20
week [7] 52/13 52/24
54/10 56/8 65/4 66/15
66/19
weeks [10] 52/19
55/18 55/21 55/25
60/11 60/15 60/18
61/18 61/23 68/8
weight [8] 29/9 29/11

| W | white [1] 59/6 | Y |
|---|---|---|
| **weight...** | **WOODMAN [2]** 2/7 3/23 | **year [2]** 6/7 7/1 64/8 |

**W**

**weight... [8]** 29/15
29/19 29/20 30/1 45/5
46/24
**welcome [7]** 3/12 4/5
4/16 10/8 37/3 66/1
70/8
**well [24]** 4/25 9/25
12/7 13/4 15/3 21/12
22/3 22/16 26/18
30/13 36/24 38/10
43/20 51/20 54/12
56/5 56/25 62/18
63/15 65/1 65/5 65/25
70/6 70/25
**went [1]** 52/21
**were [14]** 5/11 8/8
8/10 16/3 16/14 16/25
17/2 35/5 36/6 37/22
47/5 55/20 63/8 71/8
**what [45]** 5/14 9/19
10/25 11/11 12/11
14/12 14/22 18/2
18/15 21/16 23/13
24/19 25/20 26/10
27/4 27/5 27/6 28/6
32/22 33/9 33/9 33/10
33/11 33/15 33/16
33/22 35/8 37/20
38/11 38/17 40/9
42/19 43/12 43/17
49/9 51/13 53/7 53/24
54/22 56/3 59/16
59/24 60/10 61/15
65/17
**what's [5]** 24/12 25/10
50/22 58/4 70/5
**when [20]** 5/11 16/13
23/13 26/15 28/1
28/16 29/25 30/2
32/21 33/8 35/19
37/11 37/21 39/21
56/3 57/24 60/4 62/14
66/20 69/15
**whenever [1]** 10/11
**where [12]** 7/15 9/4
15/4 20/16 26/22 28/7
32/23 44/1 48/24
57/13 58/13 61/25
**whether [12]** 7/19
8/17 9/18 10/4 19/19
27/15 27/25 36/22
38/1 39/6 44/24 54/10
**which [34]** 6/20 6/24
7/10 8/17 12/3 13/22
15/19 15/22 18/6
25/19 27/4 28/21
29/13 31/25 31/25
36/5 39/12 40/3 40/10
41/8 42/8 45/15 46/15
46/23 47/21 48/21
49/19 49/19 52/8
55/20 59/14 62/25
64/22 66/11
**while [6]** 9/12 11/25
20/8 39/18 44/21
48/19

**white [1]** 59/6
**WOODMAN [2]** 2/7 3/23
**who [6]** 3/9 14/21 29/6
32/1 33/13 47/16
**whole [1]** 58/1
**why [8]** 13/6 15/1 27/4
27/13 41/6 42/20
52/21 53/7
**wide [1]** 52/21
**will [51]** 3/17 9/5 9/19
10/1 10/17 11/5 13/14
13/14 15/22 16/20
17/15 20/24 21/10
23/12 24/6 25/22 35/7
36/3 38/13 43/24
44/25 45/14 45/15
46/21 49/6 49/12
49/13 49/18 49/19
49/19 50/3 54/10
58/18 59/15 59/21
59/22 61/5 62/19
62/22 62/25 64/2 65/5
66/10 66/19 67/10
67/17 68/18 68/25
69/3 69/4 69/10
**willful [2]** 5/23 46/6
**willing [1]** 8/23
**winnings [1]** 14/9
**wire [1]** 47/5
**within [3]** 32/16 32/21
49/15
**without [6]** 15/9 15/12
19/22 39/19 42/3
69/19
**witness [3]** 8/11 10/19
46/1
**witnesses [2]** 16/5
29/18
**won't [1]** 16/10
**word [5]** 21/23 22/13
33/5 33/24 41/1
**words [3]** 25/22 26/4
32/16
**work [23]** 21/9 21/21
34/5 39/22 42/10
42/14 48/18 50/15
50/17 51/25 52/18
53/16 54/11 61/24
62/3 62/7 62/13 62/15
64/7 65/5 66/10 66/10
67/9
**work-related [1]**
48/18
**working [3]** 24/14
63/2 64/23
**works [9]** 24/20 25/9
32/5 32/9 53/12 62/18
64/20 65/18 67/4
**worth [1]** 36/4
**would [96]**
**wouldn't [5]** 35/17
43/15 53/2 55/23
57/18
**wrapped [1]** 61/12
**writing [1]** 27/25
**written [4]** 17/15
43/22 43/25 49/18

**Y**

**year [2]** 6/7 7/1 64/8
**year [3]** 6/7 7/1 57/23
**years [3]** 20/23 28/2
29/17
**years-long [1]** 29/17
**yes [21]** 4/19 11/9
11/9 11/12 21/14
29/24 38/5 38/7 50/18
50/24 51/3 51/8 53/15
58/21 59/8 61/2 61/4
64/20 65/11 66/3
69/23
**yesterday [1]** 7/13
**yet [1]** 39/13
**you [130]**
**you all [2]** 65/1 67/9
**you know [18]** 9/17
13/10 18/24 22/20
26/13 26/21 27/1 29/1
40/22 42/16 44/1
57/21 61/8 63/24 64/1
64/25 65/22 67/8
**you'd [1]** 56/3
**you'll [2]** 69/1 71/2
**you're [18]** 3/11 3/12
10/8 10/11 12/10
29/21 29/25 33/15
33/25 34/8 35/13 37/3
54/22 55/7 55/7 62/14
65/25 70/8
**you've [4]** 21/15 30/17
35/21 46/22
**you-all [1]** 63/25
**your [102]**
**Your Honor [64]** 4/9
4/19 10/12 11/12
21/14 22/16 24/18
24/19 25/8 27/7 29/15
30/23 32/8 33/19
34/10 35/2 35/17
35/23 36/18 37/5
41/14 41/15 43/3 43/8
49/23 49/25 50/2
50/24 51/3 51/8 52/11
52/17 53/12 53/15
54/5 55/1 55/9 56/5
57/9 58/25 59/8 60/3
61/2 61/4 62/12 63/8
64/5 64/20 65/11
65/19 66/3 66/24 67/3
68/13 68/14 68/23
69/7 69/8 69/17 69/23
70/15 70/19 70/20
70/22
**yourself [1]** 4/18