IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO. LKG-25-6 |
| | * | |
| THOMAS C. GOLDSTEIN, | * | |
| | * | |
| Defendant | * | |
| | * | |
| ******* | | |

## GOVERNMENT'S MOTION IN LIMINE TO PRECLUDE IMPROPER ARGUMENTS

Defendants should not be permitted to encourage jury nullification, to raise criminal penalties with the jury, to misstate the law, or to otherwise mislead the jury with improper arguments that are likely to confuse or distract the jurors from the duties with which they are charged. The United States expects that Goldstein may attempt to make some or all these improper arguments at trial.

For example, based on his filings to date,[1] the government anticipates that Goldstein plans to argue to the jury at trial that, in April 2021, Goldstein used borrowed funds to pay off his then outstanding balances with the IRS for tax years 2016 and 2017, and, therefore, Goldstein cannot be held criminally culpable for his failures to *timely* pay his taxes. Goldstein may also falsely claim that the jury cannot find that he *willfully* evaded his tax obligations if Goldstein *eventually* paid his taxes (years after they were due). Such an argument is factually and legally incorrect, and—if permitted—it is likely to mislead or confuse the jury, encourage nullification, and prolong trial. The United States, therefore, asks the Court to preclude any arguments for jury nullification—including any

---

[1] *See, e.g.*, Dkt. 126 and 153.

argument that Goldstein's untimely payment of taxes owed defeats the willfulness element of the tax crimes charged.

The United States also asks the Court to preclude the defense from (i) referring to Goldstein's health (including any heretofore undisclosed mental disorders or disabilities), (ii) alluding to the possibility of administrative or civil remedies instead of criminal prosecution, (iii) soliciting improper evidence about Goldstein's character, unless that evidence complies with the requirements of Federal Rule of Evidence 405, and (iv) offering evidence or argument regarding the potential consequences or penalties upon conviction or his conviction's impact on Goldstein and his family.

Goldstein "does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Taylor v. Illinois*, 484 U.S. 400, 410 (1988). Likewise, a defendant's proposed evidence and argument should be excluded when it "would confuse the jury and misdirect the jury's focus from the issues properly before it." *United States v. Wellons*, 32 F.3d 117, 120 n.3 (4th Cir. 1994). The government respectfully submits that pre-trial rulings on the issues raised in this motion will expedite trial by making the presentation of evidence and argument more efficient, eliminating the need for argument or briefing on these issues mid-trial, and helping inform which jury instructions may be necessary.

## BACKGROUND

As alleged in the Superseding Indictment, Goldstein was the sole owner of a law firm, Goldstein & Russell, P.C., that specialized in appellate litigation. Dkt. 159, ¶ 2. When not practicing law, Goldstein was also a prolific gambler, playing in ultrahigh-stakes poker games in the United States and abroad, with the stakes of these games reaching millions—and occasionally tens of millions—of dollars. *Id.*, ¶ 6.

Goldstein filed false returns with the IRS for tax years 2016 through 2021 that either (i) falsely understated his total income—*i.e.*, taxable distributions from his firm, monies he received in conjunction with legal work, or unreported gambling winnings—or (ii) included false or inflated business deductions for his law firm. *Id.*, ¶¶24-87.

For tax years 2016, 2017, and 2019 through 2021, Goldstein filed tax returns with the IRS that acknowledged that he owed the United States hundreds of thousands—even millions—of dollars. *Id.*, ¶¶ 37, 50, 69, 74, and 86-87. However, the evidence at trial will show that Goldstein willfully chose to not pay the United States Treasury what he owed in taxes, instead spending hundreds of thousands of dollars each year on luxury items and travel for himself and his paramours or repaying gambling loans. *Id.*

The IRS-CI Special Agents interviewed Goldstein on October 14, 2020, at which time the agents advised Goldstein that he was the subject of a criminal investigation. Six months after his interview, in April 2021, Goldstein obtained funds from a litigation funding company that he used to pay his back taxes for tax years 2016, 2017, and 2019. *Id.*, ¶¶ 88, 97-98. Goldstein did not pay his taxes due and owing because of a sudden urge to "get right" with the IRS, but rather because Goldstein wanted to sell his home and he needed to clear the IRS's liens for tax years 2016 and 2017 before he could do so. *Id.*, ¶¶ 97-98. IRS records show that Goldstein also made additional untimely payments towards his outstanding taxes due and owing for tax year 2020 in December 2022—more than 20 months after those taxes were due. Goldstein has not filed a federal tax return with the IRS for tax years 2022 through 2024.

On August 7, 2025, a Greenbelt grand jury returned a 22-count Superseding Indictment, charging Goldstein with four counts of tax evasion, in violation of 26 U.S.C. § 7201 (Counts One through Four); ten counts of aiding and assisting the preparation of

3

false and fraudulent tax returns, in violation of 26 U.S.C. § 7206(2) (Counts Five through Fourteen); five counts of willful failure to pay taxes, in violation of 26 U.S.C. § 7203 (Counts Fifteen through Nineteen); and three counts of false statements on a loan application, in violation of 18 U.S.C. § 1014 (Counts Twenty through Twenty-two).

## **STANDARD OF REVIEW**

"The decision to admit evidence at trial is committed to the sound discretion of the district court and is subject to reversal only if the court abuses that discretion." *United States v. Jones*, 356 F.3d 529, 535 (4th Cir. 2004). Likewise, "the decision to exclude evidence because of possible prejudicial effect rests in the sound discretion of the trial court." *United States v. Schnabel*, 939 F.2d 197, 202 (4th Cir. 1991). Similarly, "[t]he presiding judge must be and is given great latitude in . . . ensur[ing] that argument does not stray unduly from the mark, or otherwise impede the fair and orderly conduct of the trial . . . [she] must have broad discretion." *Herring v. New York*, 422 U.S. 853, 862 (1975).

Evidence that is not relevant is generally not admissible, and evidence is relevant if it has any tendency to make the existence of any fact of consequence more or less probable than it would be without the evidence. Fed. R. Evid. 401 and 402. Relevant evidence may be excluded if its probative value is substantially outweighed by a danger of unfair prejudice, confusion, cumulativeness, misleading the jury, or wasting time. Fed. R. Evid. 403. Moreover, the Defendants have no right to present all evidence and raise all arguments that they want during their trial. In *United States v. Lightly*, 616 F.3d 321, 359 (4th Cir. 2010), the Fourth Circuit held that:

> Although a defendant has a constitutional right to
> present evidence in his favor, *United States v. Moussaoui*,
> 382 F.3d 453, 471 (4th Cir.2004), "a defendant's right to

4

> present a defense is not absolute: criminal defendants do not have a right to present evidence that the district court, in its discretion, deems irrelevant or immaterial." *United States v. Prince–Oyibo,* 320 F.3d 494, 501 (4th Cir.2003); *see also Crane,* 476 U.S. at 689–90, 106 S.Ct. 2142 (noting that the "Constitution leaves to the judges who must make these decisions wide latitude to exclude evidence that is repetitive …, only marginally relevant or poses an undue risk of harassment, prejudice, [or] confusion of the issues").

A judge's ability to conduct the trial and curtail the defendant's ability to present their case also includes the ability to restrict the scope of cross-examination. When a judge restricts cross-examination, "[t]he inquiry, then, is whether the trial court's restrictions impermissibly interfered with the Sixth Amendment right of the defendants or were otherwise so prejudicial as to result in an abuse of discretion." *United States v. Hawkins*, 661 F.2d 436, 444 (5th Cir. 1981).

## ARGUMENT

### I. The Court should preclude Goldstein from urging nullification based upon untimely payments of his outstanding taxes.

Goldstein is not permitted to seek nullification: he cannot ask the jury to reject evidence or ignore the law, or to otherwise excuse his conduct "because the result dictated by law is contrary to the jury's sense of justice, morality, or fairness." Jury Nullification, Black's Law Dictionary (10th ed. 2014). "Although a jury is entitled to acquit on any ground, a defendant is not entitled to inform the jury that it can acquit him on grounds other than facts in evidence, *i.e.* a jury has the power of nullification, but defense counsel is not entitled to urge the jury to exercise that power." *United States v. Muse*, 83 F.3d 672, 677 (4th Cir.); *see also, United States v. Tinker*, No. 96-4917, 1998 U.S. App. LEXIS 1233, at \*5 (4th Cir. Jan. 28, 1998). "Where the offered evidence has low probative value -- particularly where the evidence is a 'self-evident invitation to jury nullification[,]' -- it is

5

justifiably excluded." *United States v. Owens*, No. 5:23-cr-00145, 2025 U.S. Dist. LEXIS 166845, at *12 (S.D. W. Va. Aug. 27, 2025) (quoting *United States v. Peterson*, 945 F.3d 144, 157 (4th Cir. 2019)).

    A. <u>Untimely payment of taxes due and owing does not clear a defendant of criminal liability.</u>

The government expects to offer at trial evidence that Goldstein paid off his outstanding taxes for tax years 2016 and 2017 in April 2021—long after they were owed to the IRS—so that he could remove the liens that were preventing him from selling his house. However, Goldstein should not be permitted to argue to the jury that his untimely payment of his tax debts in April 2021 for prior years exculpates his willful failure to timely pay the amounts he owed at the time they were due. As explained in other briefs, the Internal Revenue Code requires timely payment of tax obligations. 26 U.S.C. § 6151(a); ("[W]hen a return of tax is required under this title or regulations, the person required to make such return . . . shall pay such tax at the time and place fixed for filing the return (*determined without regard to any extension of time for filing the return*)" (emphasis added)); 26 C.F.R. § 1.6081-4(c) ("An automatic extension of time for filing a return granted under paragraph a of this section will not extend the time for payment of any tax due on such return."). A defendant's willful failure to make timely payments of taxes owed is a crime, regardless of payments he makes to the IRS years later. *See Spies v. United States*, 317 U.S. 492, 496-97 (1943) (warning that there "are sanctions to assure punctual as well as faithful performance of these duties," including criminal sanctions for the "[w]illful failure to pay the tax when due."); *Sansone v. United States*, 380 U.S. 343, 354 (1965) ("[T]he intent to report the income and pay the tax sometime in the future does not vitiate the willfulness required by [26 U.S.C. § 7203]."); *see also id.* at 351 (stating

the § 7203 misdemeanor requires only "willfulness and the omission of the required act—here the payment of the tax when due"). Accordingly, Goldstein should not be allowed to argue that his late payment of his taxes means the jury cannot find him guilty for willful failure to pay taxes, in violation of 26 U.S.C. § 7203 (Counts Fifteen through Nineteen).

   B. <u>Subsequent payment of taxes due and owing—years later—is also irrelevant to Goldstein's willfulness when he committed the tax crimes charged.</u>

Like any other party, Goldstein is required to comply with the Federal Rules of Evidence, *see United States v. Lindo*, 18 F.3d 353, 356 (6th Cir. 1994) (holding the defendant bears the burden of demonstrating admissibility), and it is not a violation of Goldstein's rights to require such compliance. *United States v. Scheffer*, 523 U.S. 303, 308 (1998) (holding the rule precluding admission of polygraph evidence in court martial proceedings did not violate accused's right to present a defense). To be admissible, evidence must be relevant, and its probative value must not be substantially outweighed by the risk of unfair prejudice. Fed. R. Evid. 401, 402, 403. Where evidence is not relevant, unduly prejudicial, or violative of other evidentiary rules, it is properly excluded by the Court.

The United States anticipates that Goldstein may also attempt to recharacterize his untimely payment of taxes after April 2021 as evidence negating his willful failure to pay the taxes at the time they were owed. The Court should not countenance any such sophistry.

Whether evidence of a defendant's subsequent mental state—as demonstrated by a subsequent act—is "of any probative value in establishing his state of mind at the time of the alleged criminal acts" must be determined by the circumstances of the individual case. *United States v. Radtke*, 415 F.3d 826, 840 (8th Cir. 2005) (holding that the district

court did not abuse its discretion in excluding evidence that the defendant filed an amended tax return after being charged with willfully subscribing to a false tax return) (*citing United States v. Stoehr*, 196 F.2d 276, 282 (3d Cir. 1952); *United States v. Harvey*, 959 F.2d 1371, 1375-76 (7th Cir. 1992) (affirming exclusion of evidence not relevant to defendant's state of mind at the time of the charged offenses)); *see also United States v. Williamson*, 512 U.S. 594, 600 (1994) (noting that exculpatory statements about past events are precisely the sort "which people are most likely to make even when [it is] false"). In determining this issue, the Court should consider whether evidence concerning the subsequent act is of any probative value in establishing his state of mind at the time of the alleged criminal acts, and if so, whether the evidence "unduly entangle[s] the issues or confuse[s] the jury." *See Stoehr*, 196 F.2d at 282.

 Although the Court "has considerable discretion in admitting evidence of acts of subsequent conduct of a defendant offered to prove the absence of evil intent," *Radtke*, 415 F.3d at 840 (*citing United States v. Woosley*, 761 F.2d 445, 449 (8th Cir. 1985)), it long has been recognized that "an ever-present reason demanding latitude for [a court's] ruling on admissibility is that what takes place, particularly after the fact, *is often feigned and artificial*." *Id*. (emphasis added) (*citing Post v. United States*, 407 F.2d 319, 325 (D.C. Cir. 1968)). The Court can and should consider the fact that "self-serving exculpatory acts performed substantially after a defendant's wrongdoing is discovered are of minimal probative value as to his state of mind at the time of the alleged crime." *Radtke*, 415 F.3d at 840-41; *see also United States v. Johnson*, 893 F.2d 451, 454 (1st Cir. 1990); *United States v. Dyer*, 922 F.2d 105, 108 (2d Cir. 1990); *United States v. Tishberg*, 854 F.2d 1070, 1073 (7th Cir. 1988) (noting during a discussion of the sufficiency of the evidence that the defendant's amended return "may demonstrate a good faith effort to correct his

8

previous mistakes," but stating that it "does not . . . negate the import of his previous action.").

Where the subsequent conduct is not probative of the defendant's state of mind at the time of the criminal activity, evidence of the subsequent conduct is properly excluded. *See, e.g., United States v. McClain*, 934 F.2d 822, 834 (7th Cir. 1991) (finding no reason to disturb the district court's ruling that the defendant's 1985 tax return was not probative of the defendant's state of mind at the time he filed his 1984 tax return, given his indictment in the intervening year); *United States v. Ross*, 626 F.2d 77, 81 (9th Cir. 1980) (holding that the defendant's taxes were not relevant to the charge that he had willfully failed to file tax returns in previous years). The exclusion of such evidence by the district court is reviewed by the appellate court for abuse of discretion. *Jones*, 356 F.3d at 535.

Here, the defendant should not be permitted to argue that Goldstein's late payment of taxes due and owing—paid *years* after they were due and after the IRS informed Goldstein that he was under criminal investigation—is evidence that Goldstein did not willfully fail to pay those taxes *at the time they were due under the law*. *Sansone*, 380 U.S. at 354. What Goldstein thought about the importance of paying his taxes *after* he was interviewed by IRS Special Agents could not possibly have any bearing on what was in his mind when his obligation to pay his taxes arose under the law. Not only is any such argument irrelevant to Goldstein's mental state at the time he failed to pay his taxes,[2] but it is also likely to confuse the jury and invite nullification.

---

[2] Indeed, any evidence offered by Goldstein suggesting that he always intended on paying his back taxes *at some time in the future* concedes that Goldstein's failure to pay the taxes when they were due was willful.

9

**II.  The Court should exclude any evidence of a heretofore undisclosed mental disorder or disability, such as a gambling, drug, or alcohol addiction or *pseudologia fantastica*.**

Fed. R. Crim. P. 12.2(b) requires a defendant seeking to "introduce expert evidence relating to a mental disease or defect or any other mental condition of the defendant bearing on […] the issue of guilt" to provide notice to the Court and the government. Goldstein has not yet provided any notice regarding a mental disorder or disability that would bear on his criminal culpability. Without any such notice—and without the requisite mental examination—the Court should not permit Goldstein to offer at trial any evidence that attempts to explain his criminal conduct as a byproduct of compulsive gambling, addiction to narcotics or mind-altering drugs, or a pathological inability to tell the truth.

**III. The Court should prohibit Goldstein from arguing the government should have pursued administrative or civil remedies instead of criminal prosecution.**

It is no secret that the IRS can pursue civil and administrative remedies in the pursuit of tax enforcement. However, the fact that the United States deemed it appropriate to pursue Goldstein criminally was within its discretion. Goldstein should be precluded from making any argument that the United States should have or was required to pursue civil and/or administrative remedies. Argument or evidence that the government could have or should have resolved this case using administrative or civil remedies, rather than criminal prosecution, is improper argument for a jury. The existence of civil tax procedures and remedies, and the government's decision to use or forgo these procedures and remedies, is "irrelevant to the issue of criminal liability" and Goldstein should not be entitled to present such an argument to the jury or to obtain a

10

jury instruction so informing the jury. *See United States v. DeMuro*, 677 F.3d 550, 565 (3d Cir. 2012) (quoting *United States v. Buras*, 633 F.2d 1356, 1360 (9th Cir. 1980)).

Multiple other circuits have similarly held that the government is not required to pursue or complete civil administrative or judicial proceedings prior to instituting criminal tax proceedings. *See United States v. Ellett*, 527 F.3d 38, 40-41 (2d Cir. 2008) ("We join the First, Sixth, Seventh and Ninth Circuits in holding that due process does not require the government to adjudicate tax disputes civilly or administratively before proceeding to criminal prosecution for tax evasion.") (citing *United States v. Daniel*, 956 F.2d 540, 542 (6th Cir. 1992)), *United States v. Hogan*, 861 F.2d 312, 315-16 (1st Cir. 1988), *United States v. Dack*, 747 F.2d 1172, 1174-75 (7th Cir. 1984) (*per curiam*), and *United States v. Voorhies*, 658 F.2d 710, 715 (9th Cir. 1981)); *see also United States v. Burkhart*, 501 F.2d 994, 996 (6th Cir. 1974) ("The matter of civil liability is not an issue when a jury is determining a defendant's criminal liability for tax evasion."); *United States v. Merrick*, 464 F.2d 1087, 1093 (10th Cir. 1972) (affirming a district court's refusal to instruct the jury "that a civil case might be brought against the defendant to recover unpaid taxes, interest, and penalties" because there is "no relevance in such an instruction").

Argument that alternative civil procedures should have been required prior to a criminal prosecution is improper and would be an open invitation to the jury to nullify, a practice which has been repeatedly rejected in tax prosecutions. *United States v. Wiley*, 503 F.2d 106, 107 (8th Cir. 1974); *see also DeMuro*, 677 F.3d at 565 (district court properly excluded evidence of civil tax remedy because "it opened the door to nullification, by inviting the jury to reason that the IRS should have continued to pursue the matter civilly rather than criminally"); *United States v. Buras*, 633 F.2d 1356, 1360

(9th Cir. 1980) (explaining that the availability of civil remedies in a tax case "is irrelevant to the issue of criminal liability" and finding that a jury instruction regarding civil remedies "would serve only to confuse the jury"); *United States v. Burkhart*, 501 F.2d 993, 996 (6th Cir. 1974) ("The matter of civil liability is not an issue when a jury is determining a defendant's criminal liability for tax evasion."); *United States v. Merrick*, 464 F.2d 1087, 1093 (10th Cir. 1972) (finding "no relevance" in a jury instruction that a civil case might be brought against a defendant who was convicted of evasion under 26 U.S.C. § 7201). As such, the Court should preclude such improper arguments.

### IV. The Court should preclude Goldstein from offering character evidence except that permitted under Fed. R. Evid. 405.

Federal Rule of Evidence 405(a) provides:

When evidence of a person's character or character trait is admissible, it may be proved by testimony about the person's reputation or by testimony in the form of an opinion. On cross-examination of the character witness, the court may allow an inquiry into relevant specific instances of the person's conduct.

The Fourth Circuit has been clear that "evidence of specific good acts is *not* admissible [under] Fed. R. Evid. 405." *See United States v. Gravely*, 840 F.2d 1156 (4th Cir. 1988) (emphasis added). Rather, when character is not an essential element,[3] "proof of character is limited to general good character (reputation as a good person and law-

---

[3] The element of criminal intent does not put character in issue. *See United States v. Camejo*, 929 F.2d 610, 613 (11th Cir. 1991) (rejecting defendant's argument that "one of the essential elements of the offense charged was his mens rea during the time he was alleged to have agreed to join this conspiracy," and holding that "[e]vidence of good conduct is not admissible to negate criminal intent."). A holding to the contrary would allow specific conduct character evidence in nearly every case. See *United States v. Doyle*, 130 F.3d 523, 542 (2d Cir. 1997) (excluding the defendant's proffered character evidence in case of conspiracy to commit illegal exportation and holding that "if specific good deeds could be introduced to disprove knowledge or intention, which are elements of most crimes, the exception of Rule 405(b) would swallow the general rule of 405(a) that proof of specific acts is not allowed.").

abiding citizen)." *Id*. The Supreme Court explained that limiting character evidence to reputation testimony is "justified by over-whelming considerations of practical convenience in avoiding innumerable collateral issues which, if it were attempted to prove character by direct testimony, would complicate and confuse the trial, distract the minds of jurymen and befog the chief issues in the litigation." *Michelson v. United States*, 335 U.S. 469, 478 (1948). The Court explained further that:

> When the defendant elects to initiate a character inquiry . . . such a witness is not allowed to base his testimony on anything but hearsay. What commonly is called "character evidence" is only such when "character" is employed as a synonym for "reputation." The witness may not testify about defendant's specific acts or courses of conduct or his possession of a particular disposition or of benign mental and moral traits; nor can he testify that his own acquaintance, observation, and knowledge of defendant leads to his own independent opinion that defendant possesses a good general or specific character, inconsistent with commission of acts charged. The witness is, however, allowed to summarize what he has heard in the community, although much of it may have been said by persons less qualified to judge than himself. The evidence which the law permits is not as to the personality of defendant but only as to the shadow his daily life has cast in his neighborhood.

*Id*. at 477 (emphasis added). Thus, character evidence is limited to reputation to avoid "innumerable collateral issues . . . [that would] befog the chief issues in the litigation." *Id*. at 478. The rules regarding character evidence make it clear that certain lines of inquiry are not appropriate.

Here, the government is primarily concerned about two categories of improper character evidence being introduced at trial. First, evidence regarding specific instances in which Goldstein *complied* with the tax laws are not relevant to his willful failures to comply with the tax laws (*i.e.*, the crimes charged in the superseding indictment). *See United States v. Daulton*, 266 F. App'x 381, 387 (6th Cir. 2008) (finding harmless the district court's exclusion of evidence that the defendant, a tax return preparer, also prepared correct returns, because even if "it would have proved only that Daulton did not

13

always include false deductions on his clients' tax returns…[that] conclusion does not negate Daulton's guilt for the charged acts…."). Simply put, even if Goldstein timely filed and paid his taxes in prior tax years, his doing so only establishes Goldstein's knowledge of the tax laws (and, in turn, underscores Goldstein's later *willful* violation of those same laws).

The Court should also preclude Goldstein from submitting evidence or argument regarding (i) specific cases Goldstein has argued before the Supreme Court that are irrelevant to the charges here, (ii) specific instances of his involvement in pro bono work, or (iii) his charitable acts or contributions. These all fall squarely outside the bounds of Rule 405, and, therefore, the government respectfully requests that the Court appropriately limit any such defense character witness testimony.

Further, the government respectfully requests that Goldstein be required to instruct any character witnesses he intends to call that they are not permitted to volunteer information as to specific instances of good conduct (like those referenced above). Instead, their testimony should be limited to how the witness knows the defendant, whether the witness has an opinion about or is familiar with a defendant's reputation in the community for a relevant character trait (such as honesty), and what that opinion or reputation is.

These same rules certainly apply in equal force to the cross-examination of government witnesses. The government will likely call several of Goldstein's former employees to testify at trial. Although the government will likely elicit testimony about how these witnesses know the defendant, Goldstein cannot subvert the rules regarding character evidence by using a government witness instead of calling his own character witnesses. If Goldstein attempts to elicit character evidence via cross-examination of

14

government witnesses, he may only ask those witnesses about their opinion or knowledge of certain character traits. Goldstein cannot question those witnesses about specific instances of purported good conduct. Indeed, if Goldstein elicits any such opinion or reputation testimony, then the government is allowed to effectively impeach its own witnesses by inquiring about specific instances of bad character. *See, e.g., United States v. Johnson*, 79 F.4th 684, 702 (6th Cir. 2023) ("Johnson questions whether the government could 'cross-examine' its own witness on redirect with specific instances of Johnson's conduct without a court finding that the witness was adverse. It could. For purposes of the testimony about Johnson's character, the district court appropriately treated Gissentaner as effectively Johnson's witness"); *Virgin Islands v. Roldan*, 612 F.2d 775, 778 (3d Cir. 1979) (after the defendant questioned a government witness about the defendant's good character, concluding that "it was permissible for the government to put in evidence of [the defendant's] bad character through impeachment of [the witness's] good character assessment").

One way in which Goldstein may attempt to introduce such evidence is by cross-examining the government's witnesses regarding instances in which he spent G&R funds on personal expenses and adequately notified his employees and/or his tax preparers that the expenses were personal—not business expenses to be deducted. That would not only be improper character evidence, but it would also be irrelevant to the charges. The superseding indictment alleges that specific payments Goldstein made from the G&R bank account were personal (either for poker debts or to compensate his current or prospective mistresses) but that Goldstein willfully caused them to be deducted as business expenses, thereby fraudulently reducing G&R's and his own tax liability. It is *those payments* and *those deductions* that should be the subject of trial testimony, not

15

other payments that Goldstein accurately characterized. Unless Goldstein has evidence showing he correctly characterized personal expenses and those same expenses were later deducted as business expenses that are charged as criminal conduct in the Superseding Indictment, references to his good behavior on this issue is irrelevant and should be excluded. The government's concern is not hypothetical; Goldstein recently produced pursuant to Rule 16 a tranche of text messages in which he, among other things, notifies his employees or representatives that he spent funds from the G&R bank account on personal expenses. Permitting Goldstein to cross-examine witnesses about those irrelevant transactions and conversations—many of which took place *after* he knew he was under investigation—would unfairly prejudice the jury and waste everyone's time.

Given the relationships some government witnesses have with Goldstein (former employees, former paramours, *etc.*), the government is raising this issue to alert the Court of the possibility of attempts to illicit character evidence from these witnesses. It would be improper under Rule 405 for Goldstein to ask any character witnesses—including government witnesses on cross-examination—about specific instances of good conduct, such as charitable giving or pro bono work. Also, if Goldstein introduces opinion or reputation character evidence through government witnesses, the government must be permitted to use all the tools available via Rule 405 on redirect of those witnesses. *See Roldan*, 612 F.2d at 778 n.2 ("For the purpose of rebuttal of this evidence, therefore, the government's redirect examination was the functional equivalent of the 'cross-examination' referred to in Rule 405(a)").

V. **The Court should exclude any mention of punishment.**

The government also asks the Court to preclude Goldstein from drawing the jury's attention to the range of potential punishments that the defendant could face if convicted

of any of the counts of the Superseding Indictment. Juries are the finders of fact, and they are not permitted to consider punishment in any way. *See* 1 Modern Federal Jury Instructions-Criminal P 9.01 (Punishment) (2025); *see also* Maryland Criminal Jury Instructions and Commentary § 1.51. Goldstein should not be permitted to refer to the defendant's potential punishment, while examining witnesses or addressing the jury in opening statements and closing arguments. This includes not only his likely term of incarceration when convicted, but also the consequence a criminal conviction may have on his ability to practice law. Doing so invites the jury to consider just punishment for Goldstein when its only lawful charge will be to determine whether the United States met its burden of proof beyond a reasonable doubt.

## **CONCLUSION**

Based on the foregoing, the United States asks the Court to preclude the defense from (i) making any arguments for jury nullification—including any argument that Goldstein's untimely payment of taxes owed defeats the willfulness element of the tax crimes charged; (ii) referring to Goldstein's health (including any heretofore undisclosed mental disorders or disabilities), (iii) alluding to the possibility of administrative or civil remedies instead of criminal prosecution, (iv) soliciting improper evidence about Goldstein's character, unless that evidence complies with the requirements of Federal Rule of Evidence 405, (v) offering evidence or argument regarding the potential consequences or penalties upon conviction or his conviction's impact on Goldstein and his family.

Respectfully submitted,

KELLY O. HAYES
United States Attorney

/s/ Sean Beaty
Sean Beaty
Senior Litigation Counsel
Emerson Gordon-Marvin
Hayter Whitman
Trial Attorneys
Department of Justice—Tax Division

Adeyemi Adenrele
Assistant United States Attorney
District of Maryland