**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | **CRIMINAL NO. LKG-25-6** |
| | * | |
| **THOMAS C. GOLDSTEIN,** | * | |
| | * | |
| Defendant. | * | |
| | ******** | |

**DEFENDANT THOMAS C. GOLDSTEIN'S MOTION IN LIMINE TO LIMIT
PROPOSED EXPERT TESTIMONY OF COLLEEN RANAHAN**

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ...................................................................................................................1

BACKGROUND .....................................................................................................................2

ARGUMENT............................................................................................................................4

I.   AGENT RANAHAN'S DUAL ROLE WOULD UNFAIRLY PREJUDICE MR. GOLDSTEIN AND CONFUSE THE JURY. ...................................................................4

II.  AGENT RANAHAN'S PROPOSED TESTIMONY IS UNRELIABLE ..........................9

III. AGENT RANAHAN'S PROPOSED TESTIMONY REGARDING "ORDINARY AND NECESSARY" BUSINESS EXPENSES SHOULD BE EXCLUDED AS AN IMPROPER LEGAL CONCLUSION ..........................................10

CONCLUSION.......................................................................................................................14

i

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Adalman v. Baker, Watts & Co.*,
   807 F.2d 359 (4th Cir. 1986), abrogated on other grounds by *Pinter v. Dahl*,
   486 U.S. 622 (1988) ................................................................................................. 10, 12

*Metromont Corp. v. Allan Myers, L.P.*,
   No. CV DKC 18-3928, 2021 WL 3367772 (D. Md. Aug. 3, 2021) ..................................... 5

*Teague v. Bakker*,
   35 F.3d 978 (4th Cir. 1994) ...................................................................................... 10, 13

*United States v. Baker*,
   10 F.3d 1374 (9th Cir. 1993), as amended (Dec. 13, 1993) ............................................ 8

*United States v. Barile*,
   286 F.3d 749 (4th Cir. 2002) ......................................................................................... 11

*United States v. DiDomenico*,
   985 F.2d 1159 (2d Cir. 1993) .................................................................................. 11, 13

*United States v. Dukagjini*,
   326 F.3d 45 (2d Cir. 2003) ....................................................................................... 5, 6, 8

*United States v. Garcia*,
   752 F.3d 382 (4th Cir. 2014) ......................................................................................... 6, 7

*United States v. Honeywell Int'l Inc.*,
   337 F.R.D. 456 (D.D.C. 2020) ......................................................................................... 5

*United States v. Johnson*,
   54 F.3d 1150 (4th Cir. 1995) ........................................................................................ 6, 8

*United States v. McIver*,
   470 F.3d 550 (4th Cir. 2006) ......................................................................................... 11

*United States v. Mosby*,
   626 F. Supp. 3d 847 (D. Md. 2022) ............................................................................... 11

*United States v. Nordby*,
   225 F.3d 1053 (9th Cir. 2000) ......................................................................................... 8

*United States v. Perkins*,
   470 F.3d 150 (4th Cir. 2006) ......................................................................................... 13

*United States v. Warren*,
  No. 7:04-cr-00021, 2005 WL 1164195 (W.D. Va. May 17, 2005) ............................................6

**FEDERAL STATUTES**

26 U.S.C. § 7201 ...............................................................................................................................2

26 U.S.C. § 162 ...........................................................................................................................1, 11

26 U.S.C. § 501(c)(3) ...........................................................................................................4, 7, 10

**FEDERAL RULES**

Fed. R. Evid. 403 .............................................................................................................................5

Fed. R. Evid. 611(a) .....................................................................................................................5, 8

Fed. R. Evid. 615 .............................................................................................................................8

Fed. R. Evid. 704 ...........................................................................................................................10

Fed. R. Evid. 704(a) ......................................................................................................................11

Fed. R. Evid. 1006 ......................................................................................................................1, 5

## INTRODUCTION

According to its expert notice, the government intends to call Internal Revenue Service Revenue Agent Colleen Ranahan to testify on a range of topics as both an expert and summary witness. *See* Ex. A, Ranahan Expert Notice. As a summary witness, Agent Ranahan intends to testify about a wide variety of records gathered during the investigation, including Rule 1006 summaries, as well as fact witness testimony. *Id.* at 4-5. As an expert, Agent Ranahan intends to opine that certain expenditures were not "ordinary and necessary" business expenses under 26 U.S.C. § 162, and that tasks performed by a SCOTUSblog employee were "not permissible under the Internal Revenue Code." Ex. A, at 3-4. The government further proposes that Agent Ranahan be present in the courtroom for the entire trial. *Id.* at 6.

The Court should prohibit the government from using Agent Ranahan as both an expert witness and a summary witness. Agent Ranahan was not the lead case agent on this investigation; in fact, it appears from discovery as though she played no role in the investigation at all. Instead, the government's proposal to use Agent Ranahan as a summary and expert witness appears to be a calculated maneuver to avoid calling the *actual* case agent, Special Agent Andrew Accardi, whose credibility is open to serious questions.

The government should not be permitted to avoid calling Agent Accardi by using a single witness unconnected to the investigation as case agent, summary witness, and expert witness in a manner that prejudices Mr. Goldstein. As the courts have recognized, mixed expert and summary witness testimony in criminal cases presents a significant risk of juror confusion and prejudice to the defendant. And that risk is heightened where, as here, the expert and summary witness is *also* the case agent and plans to summarize and opine on testimony given by fact witnesses in the government's case.

1

Separately, Agent Ranahan's proposed exert testimony is inadmissible because it is unreliable. Even where an expert proposes to base their testimony on experience, rather than a scientific or technical methodology, "it still is a requirement that the expert opinion evidence be connected to existing data by something more than the 'it is so because I say it is so' of the expert." *Holesapple v. Barrett*, 5 F. App'x 177, 180 (4th Cir. 2001). Agent Ranahan's bare conclusions flunk this test.

And even if this Court does not exclude Agent Ranahan's testimony entirely, the Court should at least exclude any testimony that particular payments were not "ordinary and necessary" business expenses or that the SCOTUSblog employee's work was "not permissible under the Internal Revenue Code." These are legal conclusions applying a legal term of art, and expert testimony offering these opinions improperly invades the province of the Court and the jury. That risk is particularly acute here, where the government has failed to articulate a coherent legal standard to evaluate the key disputed expenses—the payments of salary and benefits to four firm employees—and so conclusory testimony by an IRS agent on the propriety of these payments would be especially prejudicial.

## BACKGROUND

<u>The Superseding Indictment</u>

The Superseding Indictment charges Mr. Goldstein with, among other things, four counts of tax evasion for the years 2016, 2017, 2018, and 2021 in violation of 26 U.S.C. § 7201. *See* ECF No. 159. For each of those tax years, the Superseding Indictment alleges multiple purported acts of evasion. Taken together, the Superseding Indictment charges every error on Mr. Goldstein's tax returns as federal tax evasion no matter how small, from the failure to report interest earned on a bank account to the deduction of under $40,000 in salary and benefits to four employees of Mr. Goldstein's law firm.

2

"Ordinary and Necessary" Business Expenses

As relevant here, the Superseding Indictment alleges that Mr. Goldstein committed willful tax evasion when his law firm deducted as business expenses the salary and benefits paid to four employees because, according to the government, those employees "performed little or no work." ECF No. 159 ¶ 56. It is undisputed that three of the employees did perform work for the firm, while the fourth employee went on unpaid medical leave shortly after starting at the firm. It is also undisputed that the total tax liability at issue is approximately $14,000.

In pretrial briefing, the government has struggled to explain the theory of criminal liability underlying these allegations. In places, the government says that the salary and benefits were not deductible as business expenses because the subjective purpose of the payments was "to provide for the financial needs" of the employees. ECF No. 135, at 20. Elsewhere, the government says that the salary and benefits were not deductible because (in the government's estimation) they were not "appropriate and helpful to the operation of" the firm. *Id.* at 21 (citation and internal quotation marks omitted). At one point, the government represented to defense counsel that *none* of the payments to the employees were deductible because, under yet another theory of liability, those individuals were "not bona fide employees." ECF No. 171, at 2 (quoting government email filed at ECF No. 178-1). Then in a recent filing, the government disavowed that representation without further explanation of its position. ECF No. 178. In its multiple filings and notices on this topic, the government still has not identified any criminal case applying, let alone upholding, *any* of the theories of liability it has articulated. Mr. Goldstein has moved to dismiss these allegations on due process grounds. *See* ECF Nos. 122, 192-1.

In support of this ill-defined theory, the government intends to call Agent Ranahan to testify that the salary and benefits paid to the employees "did not constitute 'ordinary and necessary' business expenses and could not be properly deducted as business expenses for G&R's Forms 1120-S." Ex. A, at 3. Agent Ranahan intends to offer similar testimony with respect to payments made from the firm bank account that were misclassified as business expenses rather than personal distributions to Mr. Goldstein. *Id.*

SCOTUSblog

According to the government's expert notice, Agent Ranahan also intends to testify that Mr. Goldstein's "use" of an employee of a blog founded by Mr. Goldstein "to run personal errands" was "not permissible under the Internal Revenue Code." Ex. A, at 4.

SCOTUSblog was founded by Mr. Goldstein and is the most successful legal blog of all time. During the relevant period, SCOTUSblog operated as a 501(c)(3) entity. In the course of the grand jury investigation, the government subpoenaed virtually every document imaginable from SCOTUSblog, including all corporate bookkeeping records, financial records, bank records, loan records, and employee records. Given that the Superseding Indictment contains no allegations or charges related to SCOTUSblog, Mr. Goldstein has separately moved to exclude testimony and evidence alleging that he improperly asked the SCOTUSblog employee to assist with personal tasks, as such evidence would be unduly prejudicial and confusing to the jury.

**ARGUMENT**

I.  **AGENT RANAHAN'S DUAL ROLE WOULD UNFAIRLY PREJUDICE MR. GOLDSTEIN AND CONFUSE THE JURY.**

Agent Ranahan should not be permitted to testify as both an expert and summary witness "after hearing the testimony of the witnesses and reviewing the admitted evidence." Ex. A, at 3. A law enforcement witness testifying as an expert and summarizing fact witness testimony and

4

other evidence unfairly bolsters the government's evidence and creates an unnecessary risk of jury confusion.[1]

The admissibility of summary witness testimony is governed by Federal Rules of Evidence 611(a) and 403. Rule 611(a) provides that the district court "should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to: (1) make those procedures effective for determining the truth; [and] (2) avoid wasting time," while Rule 403 allows the court to exclude relevant evidence if its probative value is substantially outweighed by "unfair prejudice, . . . misleading the jury, . . . or needlessly presenting cumulative evidence." Fed. R. Evid. 403, 611(a).

These rules prohibit the type of hybrid summary and expert testimony proposed by the government here. In *United States v. Dukagjini*, 326 F.3d 45 (2d Cir. 2003), for example, the court of appeals held that the district court erred in failing to limit the testimony of a case agent who testified as both an expert and summary witness. The appellate court explained that an expert witness bears "the aura of special reliability and trustworthiness surrounding expert testimony." *Id.* at 53 (citation modified). When that aura is conferred on an expert who also testifies as a summary witness, there is a risk that "the jury may infer that the agent's opinion about the criminal nature of the defendant's activity is based on knowledge of the defendant beyond the evidence at trial." *Id.* (citation and internal quotation marks omitted).

---

[1] For the avoidance of doubt, Mr. Goldstein does not concede that any of the topics identified in the government's disclosure are the proper subject of summary testimony, and Mr. Goldstein reserves all rights to object to Agent Ranahan's summary testimony at trial, including on the ground that it is impermissible expert testimony. *See, e.g. Metromont Corp. v. Allan Myers, L.P.*, No. CV DKC 18-3928, 2021 WL 3367772, at *19 (D. Md. Aug. 3, 2021) ("Rule 1006 summaries should not include witnesses' conclusions or opinions."); *United States v. Honeywell Int'l Inc.*, 337 F.R.D. 456, 459 (D.D.C. 2020) ("A summary witness is not an expert and is not permitted to express opinions or conclusions.").

Consequently, while courts allow summary witness testimony, prohibiting this same witness from acting as both expert and summary witness avoids jury confusion and ensures that the jury does not give undue weight to the witness's testimony. *See United States v. Johnson*, 54 F.3d 1150, 1162 (4th Cir. 1995) ("The dangers inherent in using a summary witness in a federal criminal prosecution to support the government's case-in-chief are plain and are only exacerbated in circumstances . . . where the witness [is] also testifying in the role of an expert."); *United States v. Warren*, No. 7:04-cr-00021, 2005 WL 1164195, at *6 (W.D. Va. May 17, 2005) (precluding summary witness from also testifying as a fact or expert witness). Particularly in the circumstances of this case, the prejudicial effect of allowing Agent Ranahan to testify as both a summary witness and an expert greatly outweighs the probative value of that testimony, for several reasons.

First, the government's proposed summary and expert witness is also a law enforcement agent—and if she is also the case agent for trial, her testimony is particularly unfairly prejudicial. As courts have recognized, the dangers associated with mixed fact and expert witness testimony are heightened when the witness is also the case agent "because such witnesses are introduced to the case primarily through an investigative lens, rather than a general methodological lens." *Dukagjini*, 326 F.3d at 55. Unlike neutral experts, case agents "who are called to testify about both their expert opinions and the facts of the case may easily elide these two aspects of their testimony." *Id.* at 55-56. For instance, in *United States v. Garcia*, 752 F.3d 382 (4th Cir. 2014), the Fourth Circuit vacated the defendant's conviction, in part, based on the "strong likelihood of jury confusion between [an FBI's agent's] testimony as an expert witness and as a fact witness" where the agent had "mov[ed] back and forth between expert and fact testimony" and at times

6

"substituted information gleaned from her participation in the investigation . . . for ostensible expertise." *Id.* at 389, 392-93.

The same risk of juror confusion—and resulting prejudice—is inherent in Agent Ranahan's proposed testimony, especially because the government plans to elicit her expert and summary testimony on the same subjects. As one example, the government states that Agent Ranahan may offer *expert* testimony on whether certain G&R deductions were in fact "misclassified personal payments," Ex. A, at 3, while offering *summary* testimony that calculates Mr. Goldstein's "income for tax years 2016 through 2021, based on records and testimony introduced at trial"—presumably, her *own* testimony—and on "her *training and experience* as a revenue agent," Ex. A, at 5 (emphasis added). As another example, the government proposes that Agent Ranahan testify in her capacity as an *expert* that Mr. Goldstein's "use of [a] SCOTUSblog employee for personal errands was not permissible under the Internal Revenue Code because it does not allow a 501(c)(3) entity to pay an employee to conduct personal errands for donors unrelated to the entity's charitable mission," *id.* at 4, while also testifying in her capacity as a *summary* witness about "how and when donations to 26 U.S.C. § 501(c)(3) charitable entities may be deducted, as well as the purposes for which such a charitable entity may be used, including the work its employees may be paid to conduct," *id.* at 5. And, again, the government states that even Agent Ranahan's *summary* testimony regarding 501(c)(3) organizations "will be based on her training and experience as a revenue agent." *Id.* Under these circumstances, it would be a herculean task for any jury to avoid "conflating [Agent Ranahan's] testimony as an expert and fact witness." *Garcia*, 752 F.3d at 392. The Court should not allow the government to bolster its case agent's testimony with the aura of being an expert.

7

Second, the government intends to have Agent Ranahan listen to the testimony of other fact witnesses during the trial and then offer both summary and expert testimony based on the fact witness testimony she has heard. This approach "lends to the credibility of earlier government witnesses and adds to any possible confusion that the jury might face in attempting to weigh the evidence presented." *Johnson*, 54 F.3d at 1162; *see also United States v. Baker*, 10 F.3d 1374, 1412 (9th Cir. 1993), *as amended* (Dec. 13, 1993), and *overruled on other grounds by United States v. Nordby*, 225 F.3d 1053 (9th Cir. 2000) (concluding that agent summary of oral testimony "should be admitted under Rule 611(a) only in exceptional cases" because "[p]ermitting an 'expert' witness to summarize testimonial evidence lends the witness' credibility to that evidence and may obscure the jury's original evaluation of the original witnesses' reliability"); *Dukagjini*, 326 F.3d at 55 (determining that the district court erred in allowing an expert to act at times as a summary witness in which "the effect was a bolstering of the testimony of the cooperating co-defendants and an impinging upon the exclusive function of the jury"). Expert and fact witnesses are not ordinarily allowed to view the testimony of all other witnesses during a trial, *see* Fed. R. Evid. 615, and if Agent Ranahan serves as an expert, she should be excluded from the courtroom as well.

The risk of prejudice to Mr. Goldstein is not only unacceptably high—it is also entirely unnecessary. Agent Ranahan was not the lead case agent on this investigation; that was Special Agent Accardi. And there are presumably plenty of other agents, including Agent Accardi, who could play the role of summary witness at trial. Indeed, the government's proposal to have Agent Ranahan wear all three hats—summary witness, expert witness, and case agent—appears to be a strategy to avoid calling the lead case agent from the investigation, Special Agent Accardi entirely. The government has admitted that declarations submitted to the Court by Agent

Accardi in support of applications to toll the applicable statute of limitations contained false statements. Agent Accardi will testify at an evidentiary hearing on that subject on November 6. The government should not be permitted to avoid calling Agent Accardi by using a single witness as case agent, summary witness, and expert witness in a manner that prejudices Mr. Goldstein. And Agent Ranahan certainly should not be permitted to testify as a summary witness using information that she learned through conversations with the actual case agent—Agent Accardi.

II.     **AGENT RANAHAN'S PROPOSED TESTIMONY IS UNRELIABLE**

Agent Ranahan's proposed expert testimony is inadmissible under Federal Rule of Evidence 702. As part of its "gatekeeping responsibility" under Rule 702, a court "must ensure that the proffered expert opinion is based on scientific, technical, or other specialized knowledge and not on belief or speculation." *McKiver v. Murphy-Brown, LLC*, 980 F.3d 937, 959 (4th Cir. 2020) (citation omitted). Thus, with respect to expert testimony "that is primarily experiential in nature" (like Agent Ranahan's), "the district court must … require [the] witness to 'explain how his experience leads to the conclusion reached, why his experience is a sufficient basis for the opinion, and how his experience is reliably applied to the facts.'" *United States v. Wilson*, 484 F.3d 267, 274 (4th Cir. 2007) (citation modified). In short, an expert may not simply ask the jury to "tak[e] the expert's word for it." *Mod. Remodeling, Inc. v. Tripod Holdings, LLC*, No. CV CCB-19-1397, 2021 WL 5234698, at *5 (D. Md. Nov. 9, 2021) (citation omitted).

Yet that is exactly what the government would ask Agent Ranahan to do. For example, the government's disclosure states that "Agent Ranahan will opine that [Mr. Goldstein's] payments through G&R for the payroll and health insurance premiums of women … who performed little to no work for G&R, did not qualify for health insurance under the terms of G&R's health insurance policy, and with whom [Mr. Goldstein] had or was pursuing intimate

9

personal relationships … did not constitute 'ordinary and necessary' business expenses." Ex. A, at 3.  But the government does not explain how Agent Ranahan's experience as an IRS agent reliably supports that conclusion; she claims no expertise in the business needs of law firms nor familiarity with the work of law firm employees.  The same is true for Agent Ranahan's opinion that Mr. Goldstein's "use of the SCOTUSblog employee for personal errands was not permissible under the Internal Revenue Code." Ex. A, at 4.  Other than Agent Ranahan's say so, the government offers no basis for Agent Ranahan's opinion; indeed, the government does not claim that Agent Ranahan has any experience with 501(c)(3) entities at all.  But "vague *ipse dixit* … cannot satisfy Rule 702." *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 289 (4th Cir. 2021).

### III. AGENT RANAHAN'S PROPOSED TESTIMONY REGARDING "ORDINARY AND NECESSARY" BUSINESS EXPENSES SHOULD BE EXCLUDED AS AN IMPROPER LEGAL CONCLUSION

If this Court determines that Agent Ranahan's proposed testimony is not inadmissible under Rule 702, then, at minimum, she should not be permitted to testify that particular expenditures were not "ordinary and necessary" business expenses or were otherwise "not permissible under the Internal Revenue Code." Ex. A, at 3-4.  Such opinions amount to impermissible legal conclusions on issues that are reserved for the jury.

It is black-letter law that "[e]xpert testimony as to the proper interpretation of applicable domestic law is inadmissible." *Teague v. Bakker*, 35 F.3d 978, 993 n.21 (4th Cir. 1994).  Courts therefore must exclude opinions that "would merely tell the jury what result to reach" or that are "phrased in terms of inadequately explored legal criteria." Fed. R. Evid. 704 advisory committee's note; *see Adalman v. Baker, Watts & Co.*, 807 F.2d 359, 366 (4th Cir. 1986), *abrogated on other grounds by Pinter v. Dahl*, 486 U.S. 622 (1988) (experts may not offer opinions "as to the meaning and applicability of the appropriate law").  The Fourth Circuit has

explained that "[t]he best way to determine whether opinion testimony contains legal conclusions, is to determine whether the terms used by the witness have a separate, distinct and specialized meaning in the law different from that present in the vernacular." *United States v. Barile*, 286 F.3d 749, 760 (4th Cir. 2002) (internal quotation marks and citation omitted). "For example, courts have held inadmissible testimony that a defendant's actions constituted 'extortion,' that a dog bite constituted 'deadly force,' that defendants held a 'fiduciary' relationship to plaintiffs, and that a product was 'unreasonably dangerous.'" *United States v. McIver*, 470 F.3d 550, 562 (4th Cir. 2006) (citations omitted).

Here, Agent Ranahan's proposed testimony that certain expenses were not "ordinary and necessary" invokes a term of art drawn directly from the Internal Revenue Code. Section 162 of the Internal Revenue Code provides that "[t]here shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." 26 U.S.C. § 162. Thus, the conclusion that an expenditure is "ordinary and necessary" is nothing more than a legal conclusion dressed up as expert opinion: By testifying that Mr. Goldstein's payments were not "ordinary and necessary" business expenses, Agent Ranahan would be directly applying the legal standard to the facts and telling the jury the bottom-line conclusion that the expenses were not legitimate deductions. That is patently impermissible. *See, e.g.*, *McIver*, 470 F.3d at 561-62 (although "Rule 704(a) allows the admission of expert testimony that 'embraces an ultimate issue to be decided by the trier of fact,'" "opinion testimony that states a legal standard or draws a legal conclusion by applying law to the facts is generally inadmissible"); *United States v. DiDomenico*, 985 F.2d 1159, 1165 (2d Cir. 1993) (an "expert cannot expressly 'state the inference,' but must leave the inference, however obvious, for the jury to draw"); *United States v. Mosby*, 626 F. Supp. 3d 847, 862 (D.

Md. 2022) (excluding expert testimony that would have "impermissibly" sought to opine on, *inter alia*, "the legal standards relevant to . . . Section 457(b) of the Internal Revenue Code, and how those legal standards should apply to the facts of this case").

Of course, the government is free to offer evidence, including expert testimony, on the *facts* that are relevant to the legal determination regarding whether certain deductions were for "ordinary and necessary" businesses expenses. But Agent Ranahan must not be permitted to usurp this court's responsibility to instruct the jury on the correct meaning of the law. "[U]nder our system it is the responsibility—and the duty—of the court to state to the jury the meaning and applicability of the appropriate law, leaving to the jury the task of determining the facts which may or may not bring the challenged conduct within the scope of the court's instruction as to the law." *Adalman*, 807 F.2d at 366. "Permitting [expert] testimony as to legal conclusions" presents an unacceptable risk that "jurors will turn to the expert, rather than to the judge, for guidance on the applicable law." *Id.* (citation and internal quotation marks omitted).

Agent Ranahan's proposed legal opinion testimony is *particularly* improper with respect to the salary and benefits paid to the firm employees. As set forth above and in the defense's motion to dismiss, *see* ECF Nos. 122, 192-1, the government has failed to articulate a coherent theory of criminal liability with respect to these payments, let alone legal authority upholding that theory of liability in the context of a criminal prosecution. Under these circumstances, testimony from Agent Ranahan that the salary and benefits paid to the employees were not "ordinary and necessary" business expenses under Section 162 amounts to an *ipse dixit* legal conclusion that invites the jury to substitute the agent's opinion rather than make its own determination in the face of confusion over the proper legal standard. *See Adalman*, 807 F.2d at

366 (cautioning that allowing experts to opine on legal conclusions creates a risk that "the jury judgment would be influenced, if not made, on the basis of expert witness testimony").

The same is true of Agent Ranahan's proposed testimony that Mr. Goldstein's use of a SCOTUSblog employee was unrelated to the organization's charitable mission. Ex. A, at 4. Just as with "ordinary and necessary," this testimony offers a naked legal conclusion: that Mr. Goldstein's use of a SCOTUSblog employee was, in the government's words, "not permissible under the Internal Revenue Code." *Id.* An expert may not opine that the defendant broke the law; that sort of finding is the sole province of the jury. *See Teague*, 35 F.3d at 993 n.21 (it "is the responsibility—and the duty—of the court to state to the jury the meaning and applicability of appropriate law, leaving to the jury the task of determining the facts which may or may not bring the challenged conduct within the scope of the court's instruction") (citation omitted); *DiDomenico*, 985 F.2d at 1165 (affirming the exclusion of an expert's testimony because the court viewed it "as stating the bottom-line inference, and leaving it to the jury merely to murmur, 'Amen'").

The Fourth Circuit's decision in *United States v. Perkins* is instructive. In *Perkins*, the court affirmed the district court's decision to admit testimony that an expert saw no "legitimate" law enforcement reason for certain conduct. 470 F.3d 150, 160 (4th Cir. 2006). In its analysis, the court acknowledged it was a "close question" whether the testimony merely embraced the ultimate issue of whether an officer's use of force was "objectively unreasonable" or whether it stated the legal conclusion. *Id.* at 159-60 (citation omitted). The court contrasted the use of the terms "legitimate" and "reasonable" with other terms like "discrimination," "negligence," and "fraud." *Id.* at 158-59 (citation omitted). According to the court, the terms "legitimate" and "reasonable" did not come with the "considerable legal baggage" associated with the other terms

13

and thus did not actually state a legal conclusion. *Id.* at 158-60. But here Agent Ranahan's proffered testimony falls on the other side of that line: saying an expense was not "ordinary and necessary" is the same as saying that it was not a legally deductible expense. And saying that the use of an employee was "not permissible under the Internal Revenue Code" is the same as saying it was illegal. These are not mere lay terms; rather, they carry "considerable legal baggage" and effectively tell the jury the conclusion it should make about whether Mr. Goldstein broke the law. *Id.* at 158. Accordingly, the Court should exclude any portion of Agent Ranahan's testimony that effectively applies legal terms of art to Mr. Goldstein's conduct and tells the jury the ultimate conclusion.

## **CONCLUSION**

For the reasons set forth herein, the Court should grant Mr. Goldstein's motion in limine and (1) preclude Agent Ranahan from testifying both as an expert witness and as a summary witness, and (2) exclude her expert testimony as unreliable or, in the alternative, preclude her from offering improper legal conclusions.

Dated: October 24, 2025

Respectfully submitted,

/s/ Jonathan Kravis
Jonathan I. Kravis (Bar No. 31556)
Stephany Reaves (Bar No. 19658)
Sarah E. Weiner (*pro hac vice*)
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue NW, Suite 500E
Washington, DC 20001
(202) 220-1100
Jonathan.Kravis@mto.com
Stephany.Reaves@mto.com
Sarah.Weiner@mto.com

Adeel Mohammadi (*pro hac vice*)
MUNGER, TOLLES & OLSON LLP
350 S. Grand Avenue, 50th Floor
Los Angeles, CA 90071
(213) 683-9100

Adeel.Mohammadi@mto.com

*Attorneys for Defendant Thomas Goldstein*

15