## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **CRIMINAL NO. LKG-25-0006** |
| **THOMAS C. GOLDSTEIN,** | |
| **Defendant.** | |

## GOVERNMENT'S MOTION TO EXCLUDE CERTAIN OPINIONS OF DEFENDANT'S EXPERT WITNESS, DAVID WILLIAMS

Defendant Thomas Goldstein has disclosed David Williams as an "expert in taxation reporting requirements and in financial and fraud investigations" for the upcoming trial on twenty-two counts of federal tax and fraud offenses. However, the Court should exclude almost all of Williams' proffered opinions because (1) Williams is not qualified to testify to the opinions and (2) his opinions are legally and/or factually irrelevant, not based in sufficient facts or data or a reliably applied methodology, and any probative value of the opinions is substantially outweighed by the factors in Federal Rule of Evidence 403. *See Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999) (noting that expert testimony has "the potential to be both powerful and quite misleading") (quotations and citations omitted). Many of Williams' opinions are Goldstein's thinly veiled attempts to distract from his own culpability and responsibility for the charged offenses and to point the finger at others (including his own employees, outside accountants, and even his former legal clients). Goldstein has not satisfied the burden of establishing that Williams' opinions are admissible, and myriad reasons counsel against admitting those opinions. The United States respectfully requests that the Court preclude Williams from offering testimony at trial on Topics 1-3 and 5-9 of his expert disclosure.

## **BACKGROUND**

On September 12, 2025, Goldstein served on the government an expert disclosure and curriculum vitae ("CV") for David Williams. Ex. 1 (Initial Disclosure and CV). Williams has been a senior managing director at FTI Consulting in its "risk and investigation practice" since 2018; was an IRS Criminal Investigation ("IRS-CI") special agent from 1998 to 2018; and was an IRS tax attorney from 1995 to 1998. Ex. 1 at 4. The disclosure states that Goldstein "may call David Williams as an expert in taxation reporting requirements and in financial and fraud investigations." Ex. 1 at 1. According to the disclosure, Williams' opinions will be based on "his education, training, and extensive experience in forensic accounting, taxation, and financial and fraud investigations," "general accounting principles and industry practice," and his review of allegations and "relevant discovery." Ex. 1 at 1-2. The disclosure listed ten topics on which Williams might testify but did not disclose his *opinions* on those topics. *See* Ex. 1 at 2.

On October 10, 2025, after the government asked Goldstein to disclose Williams' opinions, Goldstein served an amended expert disclosure. Ex. 2 (Amended Disclosure). It was largely consistent with the initial disclosure except that it included (1) nine topics of anticipated testimony instead of ten, (2) a summary of the opinions Williams would provide at trial, and (3) a preview that Goldstein may also use Williams as a summary witness. Ex. 2 at 2-4. The amended disclosure did not contain a CV, so references in this brief to Williams' CV will cite to his initial disclosure. See Ex. 1 at 4-5.

Williams' CV makes clear there are limits to his expertise and ability to offer helpful and admissible testimony in this case. Williams is not and has never been a certified public accountant ("CPA"), nor has he been a tax preparer, or an IRS revenue agent. Williams does not appear to have any personal experience conducting taxpayer audits. Williams is not a small business owner

and has never been one. Williams does not have any degrees in accounting; he has an undergraduate degree in Russian and Russian Area Studies, and a law degree.[1] Although the CV references some experience in tax investigations and prosecutions during his time as an IRS-CI special agent, Williams appears to have focused primarily on complex international investigations related to money laundering, terrorism, intelligence, and fraud. *See* Ex. 1 at 4. Williams' disclosures and CV do not mention any investigations into attorneys who, like Goldstein, used their law firm to commit tax evasion and other crimes.

## LEGAL STANDARD

The proponent of expert testimony "bears the burden of establishing its admissibility." *Morris v. Biomet, Inc.*, 491 F. Supp. 3d 87, 97 (D. Md. 2020). Federal Rule of Evidence 702 provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education, may testify in the form of an opinion or otherwise, if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Rule 702 requires district courts to perform a critical "gatekeeping" function concerning the admissibility of expert scientific evidence. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 588 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1998). It is the trial court's responsibility to "'ensur[e] that an expert's testimony both rests on a *reliable* foundation and is

---

[1] On the other hand, the government plans to call as a witness IRS Revenue Agent Colleen Ranahan, who has earned multiple degrees in accounting, has extensive personal experience auditing taxpayers (including individuals such as Goldstein and small corporations such as Goldstein's law firm), and teaches and trains on these topics.

*relevant* to the task at hand.'" *Nease v. Ford Motor Co.*, 848 F.3d 219, 229 (4th Cir. 2017) (quoting *Daubert*, 509 U.S. at 597).

Under *Daubert*, the Rule 702 evidentiary analysis focuses on two components: reliability and relevance. *See Daubert*, 509 U.S. at 595-96. First, the "reliability" component requires this Court to "ensure that the proffered expert opinion is 'based on scientific, technical, or other specialized knowledge and not on belief or speculation, and inferences must be derived using scientific or other valid methods.'" *Nease*, 848 F.3d at 229 (emphasis omitted) (quoting *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999)). Second, the "relevance" component requires that the proposed testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 591 (quoting Fed. R. Evid. 702). "Simply put, if an opinion is not relevant to a fact at issue, *Daubert* requires that it be excluded." *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 281 (4th Cir. 2021).

Courts in the Fourth Circuit evaluate various factors "in assessing the relevancy and reliability of expert testimony: (1) whether the particular scientific theory can be (and has been) tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the technique has achieved general acceptance in the relevant scientific or expert community." *United States v. Crisp*, 324 F.3d 261, 265-66 (4th Cir. 2003) (quoting *Daubert*, 509 U.S. at 593-94) (quotations omitted). These factors, however, are not a "definitive or exhaustive list." *Id.* at 266.

Applying these rules and principles, there are a few categories of testimony (relevant to this motion) that generally will not be admissible if offered by expert witnesses. For example, "opinion testimony that states a legal standard or draws a legal conclusion by applying law to the

facts is generally inadmissible." *United States v. McIver*, 470 F.3d 550, 562 (4th Cir. 2006). "And so, expert witnesses may not testify about the proper interpretation of applicable domestic law." *United States v. Mosby*, 626 F. Supp. 3d 847, 857 (D. Md. 2022), *aff'd*, 143 F.4th 264 (4th Cir. 2025). "Rather, it is the responsibility—and the duty—of the court to state to the jury the meaning and applicability of the appropriate law, leaving to the jury the task of determining the facts which may or may not bring the challenged conduct within the scope of the court's instruction as to the law." *Id.* at 857 (quotations and citation omitted).

Experts may not state any opinion "about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense." Fed. R. Evid. 704(b); *Mosby*, 626 F. Supp. at 857. "[E]xpert testimony regarding a defendant's subjective intent in pursuing a particular activity, or expert testimony that a defendant had an *actual* thought or intent, is prohibited." *Mosby*, 626 F. Supp. at 857 (quotations and citation omitted) (emphasis in original). "Those matters are for the trier of fact alone." Fed. R. Evid. 704(b).

Experts may testify about "industry standards" only if they explain "what the standards are." *Robles v. United States*, No. 2:19CV111, 2020 WL 8254267, at *3 (E.D. Va. Oct. 15, 2020) (affirming magistrate judge's exclusion of expert testimony on industry standards). Otherwise, the trial court "cannot know that [the expert] 'reliably applied the principles and methods to the facts of the case,' because it is unclear what standard is being applied to the facts." *Id.* (quoting Fed. R. Evid. 702). "The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'" Fed. R. Evid. 702 Advisory Committee's Note; *Robles*, 2020 WL 8254267, at *3.

Finally, as with all other evidence, expert testimony may be excluded "if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *See* Fed. R. Evid.

403; *Mosby*, 626 F. Supp. at 860. As the Supreme Court noted in *Daubert*, "[e]xpert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses." 509 U.S. at 595 (quoting Judge Jack Weinstein, *Rule 702 of the Federal Rules of Evidence Is Sound; It Should Not Be Amended*, 138 F.R.D. 631, 632 (1991)).

## <u>ARGUMENT</u>

The vast majority of opinions offered by Goldstein's expert witness, David Williams, are inadmissible and should be excluded.

## I.    Topic #1 – G&R Bookkeeping

The first topic from Williams' expert disclosure reads:

> The Superseding Indictment alleges that G&R "did not employ[] an in-house accountant or bookkeeper," but rather employed "firm manager[s]" with "no formal accounting or bookkeeping experience." Mr. Williams will testify that, in his experience, the accounting and bookkeeping practices, records, and procedures of G&R were not uncommon for a small business, which may not have in-house accounting or financial professionals and instead outsource financial accounting to third parties.

Ex. 2 at 2. This opinion is inadmissible and should be excluded for multiple reasons.

First, Williams is not qualified to testify about whether the accounting and bookkeeping practices of Goldstein's law firm, Goldstein & Russell, P.C. ("G&R"), were "common for a small business." *See* Fed. R. Evid 702. Williams is not a CPA and has no degrees in accounting. Williams is not a small business owner and has never been one. There is one reference to small businesses in Williams' CV and it dates back to three decades ago when, as part of his work as a tax attorney at the IRS, Williams "[a]dvised IRS revenue agents, collection officers and criminal investigators conducting tax enforcement of individuals, small businesses," and other types of entities. Ex. 1 at

4. There is no indication that Williams was involved in investigating small businesses during his two decades as an IRS-CI special agent, nor any indication that he has formally or informally studied the practices of small businesses. Further, Goldstein has disclosed Mr. Wiliams as "an expert in taxation reporting requirements and in financial and fraud investigations," Ex. 2 at 1, not as an expert in small businesses or how they operate.

Second, this opinion will not "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). The Superseding Indictment contains allegations about Goldstein's willful violations of federal tax and fraud statutes. Relatedly, the Superseding Indictment explains how Goldstein used his law firm, G&R, to enable his violations of federal law and to fund his high-stakes poker activities. *See, e.g.*, Dkt. 159, ¶ 24. For example, the Superseding Indictment alleges that rather than employing an in-house accountant or bookkeeper, Goldstein delegated record-keeping functions to a "firm manager"—typically a recent college graduate without formal accounting or bookkeeping experience—who Goldstein also tasked with various personal errands (such as dry cleaning and servicing vehicles). Dkt. 159, ¶ 4. The government anticipates at trial there will be evidence that multiple people suggested to Goldstein—who had hiring and firing power at G&R—that he should hire more experienced individuals to handle the finances of G&R, but that Goldstein never did. These allegations concern a specific law firm, specific individuals, and specific facts, events, and communications.

On the other hand, Williams' opinion that G&R's practices and procedures "were not uncommon for a small business" is so general that it will not help the jury understand the evidence or decide any relevant fact. That is, even if the jury credits this opinion, it would not affect the analysis of whether the specific allegations against Goldstein (including allegations about G&R and its employees) warrant conviction. In *Mosby*, this Court rightly precluded a defense expert

from offering "testimony about the mortgage lending industry[] in general" because it was "difficult to comprehend" how it "could have any bearing" on "whether [Mosby] committed perjury and/or made false statements on her mortgage loan applications." 626 F. Supp. 3d at 860. Here, Williams' proffered opinion is arguably *less* relevant because it will not even be limited to one industry but rather to small businesses generally. Therefore, it should be excluded.

Third, the opinion is not "based on sufficient facts or data." Fed. R. Evid. 702(b). Williams' expert disclosure does not list *any* facts or data providing the basis for this opinion. The disclosure states that Williams will base his opinions on:

> his review of the Indictment and the Superseding Indictment; his review of relevant discovery including but not limited to tax returns, tax records, accounting records, bank statements, and documents and communications related to the transactions identified in the Superseding Indictment; and general accounting principles and industry practice.

Ex. 2 at 2. But the Superseding Indictment and discovery in this case concern Goldstein's criminal conduct and his use of G&R to enable that conduct—they do not concern the practices of other unidentified small businesses. Williams has not cited any research corroborating his opinions comparing G&R to other small businesses. It is unclear what if any facts or data Williams relied on for this opinion, and therefore it should be excluded.

Fourth, the opinion is not the "product of reliable principles and methods" that were "reliabl[y] appli[ed] . . . to the facts of the case." Fed. R. Evid. 702(c)-(d). Williams has identified no principles or methods by which he was able to ascertain that G&R's practices were "not uncommon for a small business." Ex. 2 at 2. The opinions therefore violate *Daubert*'s requirement that expert testimony "must be derived using scientific or other valid methods." *See Nease*, 848 F.3d at 229 (quotation and citation omitted). Relatedly, given his failure to disclosure any principles or methods, Williams has not identified how any such principles or methods were

"reliably applied" "to the facts of the case." Fed. R. Evid. 702(d). Goldstein has therefore failed to satisfy the various factors that courts in the Fourth Circuit evaluate to assess the admissibility of expert testimony. *See Crisp*, 324 F.3d at 265-66 (considering "(1) whether the particular scientific theory can be (and has been) tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the technique has achieved general acceptance in the relevant scientific or expert community"). The opinion should be excluded because Goldstein has not shown it is reliable.

Fifth, the opinion's probative value (if any) is substantially outweighed by multiple factors referenced in Rule 403. The opinion may unfairly prejudice the government, mislead the jury, and confuse the issues by suggesting that Goldstein is not guilty because he and/or his law firm G&R followed practices and procedures that were "not uncommon for a small business." Ex. 2 at 2. The real question, however, is whether Goldstein is guilty of the charged offenses in the Superseding Indictment—regardless of whether his law firm was similar to how other small businesses operated. The opinion also will unduly delay the trial and waste time because it is cumulative of what fact witnesses (including Goldstein's law firm colleagues that spoke with him about this issue) can and likely will testify to: that Goldstein *could have* employed in-house accountants or finance people, that others suggested he do so, and that he chose not to. Admitting the opinion would require the government to cross-examine Williams on the lack of facts, data, principles, and methods underlying the testimony—and its irrelevance—and that would only waste more time.

In sum, Goldstein has not carried his burden to establish the admissibility of expert testimony on Topic 1.

II.    **Topic #2 – Personal Payments**

The second topic from Williams' expert disclosure reads:

> The Superseding Indictment alleges that Mr. Goldstein made some personal payments from G&R bank accounts. Mr. Williams will testify that, in his experience, it is not uncommon for small business owners like Mr. Goldstein to use the business's financial accounts for a variety of reasons, including personal purposes, and that this practice is not per se unlawful.

Ex. 2 at 2. This opinion is inadmissible and should be excluded for multiple reasons.

First, Williams is not qualified to testify about the practices of small business owners for all the reasons cited by the government in response to Topic 1—including because he was not even disclosed as an expert in small businesses or how they operate. *See* Ex. 2 at 1.

Second, this opinion will not "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). The Superseding Indictment does not allege that it was illegal—per se or otherwise—for Goldstein to make personal payments (including poker debts) from a G&R bank account. Instead, the Superseding Indictment alleges that Goldstein's subsequent, false deduction of those personal payments as business expenses was illegal in that it caused both G&R's income and Goldstein's individual income to be underreported on tax returns. *See, e.g.*, Dkt. 159, ¶¶ 31-33 (describing falsely deducted poker payments in 2016). Even if the jury credits Williams' opinion, it would not affect the analysis of whether those tax returns underreported income or whether Goldstein was willful in causing such underreporting. The opinion will not better equip the jury to decide any relevant factual issue or understand the case, and should be excluded.

Third, Williams' expert disclosure does not cite any "facts or data" in support of the opinion, and the opinion is not the "product of reliable principles and methods" that were "reliabl[y] appli[ed] . . . to the facts of the case." Fed. R. Evid. 702(b)-(d). Again, Williams relies

on his experience and his review of discovery to make a qualitative comparison of Goldstein's conduct to that of other small businesses. But without the facts or data supporting the opinion, and bereft of any reliable principles or methods that were used to reach the opinion (much less an explanation for how they were reasonably applied to this case), Goldstein has failed to satisfy the various factors that courts in the Fourth Circuit evaluate to assess the admissibility of expert testimony. *See Crisp*, 324 F.3d at 265-66 (outlining five-factor test). Williams' second opinion cannot not meet the *Daubert* standard.

Fourth, the opinion's probative value (if any) is substantially outweighed by multiple factors referenced in Rule 403. The opinion may unfairly prejudice the government, mislead the jury, and confuse the issues by suggesting that Goldstein is not guilty for charges related to his use of G&R funds to pay personal expenses including poker debts—even if Goldstein caused those expenses to be falsely deducted as business expenses. The opinion also will unduly delay the trial and waste time because it is cumulative of what certain fact witnesses can and likely will testify to: that Goldstein, as sole owner of G&R, was allowed to and did in fact use the bank account to make personal payments. Further, admitting the opinion would require the government to cross-examine Williams on the lack of facts, data, principles, and methods underlying the testimony—as well as its irrelevance—and that would only waste more time.

Fifth, the opinion—which says that Goldstein's use of the G&R bank account was "not per se unlawful"—would violate the Fourth Circuit's general bar on expert "testimony that states a legal standard or draws a legal conclusion by applying law to the facts." *McIver*, 470 F.3d at 562. The Court should not permit Williams to cross this line by instructing the jury on the law or opining on whether Goldstein followed it. Admitting such an opinion would be especially improper here because, as explained above, the Superseding Indictment does not even allege that Goldstein's use

11

of G&R's bank account to make personal payments was illegal—it was the false deduction of those payments as business expenses that supports certain of the tax charges against Goldstein.

Sixth, the opinion previews an improper attempt by Williams to testify regarding Goldstein's subjective intent in, or "variety of reasons for" (Ex. 2 at 2), using G&R's bank account to make personal payments. "[E]xpert testimony regarding a defendant's subjective intent in pursuing a particular activity, or expert testimony that a defendant had an *actual* thought or intent, is prohibited." *Mosby*, 626 F. Supp. at 857 (quotations and citation omitted) (emphasis in original). This is yet another basis on which the opinion should be excluded.

In sum, Goldstein has not carried his burden to establish the admissibility of expert testimony on Topic 2.

## III.    Topic #3 – GRF

The third topic from Williams' expert disclosure focuses on Goldstein's and G&R's outside accounting firm, GRF CPAs & Advisors ("GRF"), and reads:

> The Superseding Indictment alleges that GRF performed bookkeeping, accounting, and tax-preparation services for G&R and Mr. Goldstein. The defense's pretrial motions have identified numerous errors that G&R committed in the preparation of those returns, including with respect to matters that are the subject of allegations in the Superseding Indictment. Mr. Williams will testify that businesses that hire accountants to prepare their tax returns reasonably expect the accountants to utilize their professional training and experience to identify information that is necessary for accurate completion of tax returns and to communicate with an accounting client information that the accounting firm needs to accurately complete the client's tax return. Mr. Williams will further testify that aspects of GRF's work did not meet generally accepted standards, industry norms, and best practices. For example, Mr. Williams will identify failures by GRF to act on instructions or information provided to them by Mr. Goldstein or G&R employees, and failures to inquire of Mr. Goldstein when GRF lacked sufficient information to accurately complete a tax return. Mr. Williams will also identify incorrect and inaccurate advice that GRF provided regarding Mr. Goldstein and G&R's accounting and tax liability,

> and instances in which GRF failed to give proper treatment to pertinent tax forms. Mr. Williams will explain how specific errors in G&R's tax reporting impacted Mr. Goldstein's or G&R's tax liability for specific years, including errors that affected Mr. Goldstein's or G&R's tax liability.

Ex. 2 at 2-3. This opinion is inadmissible and should be excluded for multiple reasons.

First, Williams is not qualified as an expert to testify about the "reasonable expectations" of businesses or their owners for all the reasons cited by the government in response to Topics 1 and 2—including because he was not even disclosed as an expert in small businesses or how they operate. *See* Ex. 2 at 1. Further, there is nothing in Williams' disclosure or CV indicating that he has ever been a business owner, or that he has been tasked with interacting on behalf of a business with accountants or tax preparers. There is no evidence that he has experience interacting with, or conducted any survey of, businesses or their owners regarding their expectations for their relationships with accountants or tax preparers.

Second, and relatedly, Williams is not qualified as an expert to testify about the "generally accepted standards, industry norms, and best practices" for accountants or tax preparers. Williams is not a CPA and, according to his CV, has never worked as one. Williams does not have any degrees in accounting; he has an undergraduate degree in Russian and Russian Area Studies and a law degree. There are no accounting courses referenced in his disclosure or CV. Williams does not appear to have prior experience or training in analyzing the standards, norms, and best practices for accountants or tax preparers representing small law firms such as G&R. And therefore, his opinion on such matters should be excluded.

Third, this opinion will not "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Williams' disclosure previews that he "will identify failures by GRF" in the course of its representation of Goldstein and G&R. But notably, the disclosure does not say that any such "failures" or errors affected whether Goldstein committed the crimes in

the Superseding Indictment. The Superseding Indictment details specific items of income that Goldstein *affirmatively hid* from GRF or otherwise obscured such that they would not be reported on his or G&R's tax returns. At most, Williams should be allowed to testify only to errors that affected whether those items of income were reported to the IRS. Otherwise, and as explained below, this opinion is a transparent attempt to put GRF on trial regarding extraneous matters and distract the jury from determining whether Goldstein is guilty of the charges.

Fourth, as with Topics 1 and 2, the opinion is not the "product of reliable principles and methods" that were "reliabl[y] appli[ed] . . . to the facts of the case." Fed. R. Evid. 702(c)-(d). This opinion merely asserts that Williams will identify and explain GRF's errors or mistakes. Williams has not cited a method for identifying or explaining the errors or mistakes, nor stated how such a method was applied here. Goldstein has therefore failed to satisfy the various factors that courts in the Fourth Circuit evaluate to assess the admissibility of expert testimony. *See Crisp*, 324 F.3d at 265-66 (outlining five-factor test). Additionally, given that multiple GRF representatives are likely to testify live at the trial, Goldstein will have plenty of opportunity to cross-examine them about any supposed errors or mistakes (so long as they are relevant to the charges). There is no need for Williams to repeat that testimony in Goldstein's case-in-chief, especially since there is no specialized expertise or reliable methodology underlying the purported expert opinion. The opinion should be excluded.

Fifth, the opinion previews an improper attempt by Williams to testify regarding Goldstein's subjective intent or understanding. Specifically, by offering an opinion about the "reasonable expectation" (Ex. 2 at 2) of businesses and/or their owners in interacting with accountants or tax preparers, Williams has crossed the line into testifying "that [Goldstein] had an

*actual* thought or intent." *See Mosby*, 626 F. Supp. at 857 (quotations and citation omitted) (emphasis in original). This is another basis on which the opinion should be excluded.

Sixth, the opinion's probative value (if any) is substantially outweighed by multiple factors referenced in Rule 403. The opinion may unfairly prejudice the government, mislead the jury, and confuse the issues by suggesting that Goldstein is not guilty because his accountants or tax preparers made unidentified errors or mistakes (which may or may not have affected the reporting of the specific items at issue in the Superseding Indictment). The opinion would effectively put GRF and its representatives on trial despite that they have not been charged with any crime. The opinion also will unduly delay the trial and waste time because, as previously mentioned, GRF representatives will testify live, and Goldstein will have an opportunity to cross-examine them about any alleged errors or mistakes pertaining to the charges. Williams should not be permitted to simply repeat that testimony; he would be redundant.

In sum, Goldstein has not carried his burden to establish the admissibility of expert testimony on Topic 3.

## IV.    Topic #5 – Redirected Payments

The fifth topic from Williams' expert disclosure reads:

> The Superseding Indictment alleges that on a few occasions, Mr. Goldstein asked a party to pay legal fees to a source other than the G&R bank account. The Superseding Indictment alleges that this constituted willful tax evasion. Mr. Williams will testify that payors to law firms are in certain circumstances required to prepare and send a Form 1099-NEC to the law firm and to the IRS. Mr. Williams will explain the reasons for this requirement. Mr. Williams will explain that GRF's refusal to consider the Form 1099-NECs when preparing G&R's tax returns was not consistent with generally accepted practices. Mr. Williams will further explain that whether or not the payee receives and includes the form in their own tax return, the Form 1099-NEC is filed with the IRS.

Ex. 2 at 3. This opinion is inadmissible and should be excluded for multiple reasons.

First, Williams is not qualified as an expert to testify about the "generally accepted practices" regarding whether or the extent to which GRF or other accounting or tax preparation firms should request and consider Forms 1099[2] in preparing returns. Williams is not and has never worked as a CPA; he does not have any degrees in accounting and has not listed any accounting courses on his CV; and he has disclosed no prior experience or training in analyzing the standards, norms, and best practices for accountants or tax preparers. Williams should not be permitted to testify about the legal requirements or generally accepted practices surrounding Forms 1099—much less comment on GRF's purported "refusal" to consider Forms 1099 (some of which they never even received from Goldstein, as explained next).

Second, this opinion will not "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Goldstein had a duty to report all of his income to the IRS. Relatedly, as part of his retention of GRF, Goldstein "confirm[ed] that [he would] furnish [GRF] with all the information required for preparing the returns." *See* Ex. 3 at 1 (Engagement Letter for 2019 Tax Year). Goldstein also knew from the retention letters with GRF that its role was *not* to "audit or verify the data [Goldstein] submit[ted]." *See id.* More generally, Goldstein affirmed to GRF that he understood and agreed that he was "responsible for the accuracy and completeness of the records, documents, explanations, and other information provided to [GRF]," and that Goldstein "ha[d] the final responsibility for the income tax returns." *See id.* at 2. Goldstein knew that GRF was relying on him to provide evidence of his income so that GRF could prepare accurate tax returns, and that the accuracy of the returns ultimately was his responsibility.

---

[2] A Form 1099 is an IRS form listing how much nonemployee compensation a taxpayer earned from a third party during a given tax year. *See* Dkt. 159, ¶ 23.

That is all true regardless of whether Goldstein received a Form 1099 documenting a payment from a legal client or poker player. Further, there were multiple instances in which Goldstein received a Form 1099 documenting income and nonetheless failed to report it to GRF or to the IRS. For example, California Businessman-2[3] issued a Form 1099 to Goldstein documenting Goldstein's receipt of more than $26 million in poker winnings in 2016, and yet Goldstein never provided the Form 1099 to GRF, and Goldstein lied to GRF about the extent of his poker winnings in 2016. Therefore, if anything, Goldstein's attempt to suggest through an expert witness that he did not report income because it was not documented in a Form 1099 is inconsistent with the facts and will only distract from the real issues.

Third, the opinion's probative value (if any) is substantially outweighed by multiple factors referenced in Rule 403. The opinion may unfairly prejudice the government, mislead the jury, and confuse the issues by suggesting that Goldstein is not guilty because he was not issued Forms 1099 documenting his income—or because GRF never demanded them from him. That is misleading because Goldstein could (and should) have told GRF and/or the IRS about his income even if it was not documented on Forms 1099. For example, in 2021, Goldstein earned $500,000 representing the Actor as a legal client. Dkt. 159, ¶¶ 77-82. Goldstein personally negotiated the fee, personally handled the representation, and personally directed that the fee be directed not to a G&R bank account but rather that of California Businessman-3 (to whom Goldstein owed a substantial poker debt, memorialized in Note-2). *See id.* It would have been as easy as texting G&R's firm manager, or emailing the firm manager or GRF, to alert them of the $500,000 payment so that it could be accurately reported as income. Goldstein chose not to. Disclosing Williams on

---

[3] This brief uses certain anonymized descriptors—such as "California Businessman-2," "California Businessman-3," "the Actor," and "Note-2"—consistent with the Superseding Indictment.

this issue is another transparent effort to deflect blame onto third parties who, unlike Goldstein, are not ultimately responsible for ensuring Goldstein reported his income. The same is true if Goldstein or Williams argue that GRF should have ensured that the Actor (or any other individual who paid Goldstein) issued a Form 1099 to Goldstein. The Court should preclude such arguments or testimony at the trial including through Williams' testimony.

In sum, Goldstein has not carried his burden to establish the admissibility of expert testimony on Topic 5.

## V.    Topic #6 – Taxes Due and Owing

The sixth topic from Williams' expert disclosure reads:

> The Superseding Indictment alleges that Mr. Goldstein willfully failed to pay taxes due and owing. Mr. Williams will testify regarding Mr. Goldstein's IRS payment plans and his history of payments on his then-outstanding IRS liabilities. Mr. Williams will explain the purpose and timing of a payment plan, the IRS's general practices for taxpayers who agree to a payment plan, and specifics of Mr. Goldstein's payment plans.

Ex. 2 at 3. This opinion is inadmissible and should be excluded for multiple reasons.

First, this opinion will not "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Lying behind this seemingly innocuous topic is Goldstein's improper argument that his belated payment of his 2016 and 2017 tax debts (and his payment plans for those debts) means he did not willfully fail to *timely* pay his taxes (in violation of 26 U.S.C. § 7203), and/or that he did not need to pay his taxes on time. Goldstein made this argument expressly in a pretrial motion to dismiss (Dkt. 126) and now seeks to argue it to the jury at trial through an expert witness. But that argument and corresponding testimony are irrelevant and should be excluded.

The governing statutes and regulations plainly and unambiguously require taxpayers to pay taxes and file returns on the payment and filing due dates, *not* at some later date that a taxpayer

belatedly chooses. *See* 26 U.S.C. § 7203 (requiring filing of returns "at the time or times required by law or regulations"); 26 U.S.C. § 6072 (requiring filing on April 15); 26 U.S.C. § 6151(a) (requiring payment of tax on due date for filing return, irrespective of extension); 26 C.F.R. 1.6151-1(a) (same). The Supreme Court has held that Section 7203 "makes it a misdemeanor willfully to fail to perform a number of specified acts *at the time required by law*—the one here relevant being the failure to pay a tax *when due*. This misdemeanor requires only willfulness and the omission of the required act—here *the payment of the tax when due*." *Sansone v. United States*, 380 U.S. 343, 351 (1965) (emphases added). Therefore, Goldstein's 2016 and 2017 payment plan—which he did not enter until 2019—is not relevant, and Williams should not be permitted to describe or opine on those facts. Further, expert testimony suggesting that Goldstein's payment plans obviated his duty to timely pay taxes could veer into the prohibited realm of "stat[ing] a legal standard or draw[ing] a legal conclusion by applying law to the facts." *McIver*, 470 F.3d at 562.

Second, the opinion's probative value (if any) is substantially outweighed by multiple factors referenced in Rule 403. The opinion may unfairly prejudice the government, mislead the jury, and confuse the issues by suggesting that Goldstein's belated payment of his tax debts or his payment plan have anything to do with whether he violated Section 7203. That would be wrong and unfairly prejudicial in light of the authorities cited above, as well as those cited in the government's opposition (Dkt. 131) to Goldstein's pretrial motion to dismiss. This testimony would waste time and likely be cumulative of other fact witnesses who could testify to the facts (if deemed relevant) surrounding Goldstein's belated payment of his 2016 and 2017 tax debts and payment plan. For example, the government anticipates that fact witnesses will testify (as contemporaneous communications confirm) that Goldstein paid the 2016 and 2017 tax debts in 2021 only when doing so became necessary to lift tax liens on and sell a home in Chevy Chase,

Maryland—that is, Goldstein paid the tax debts when it was advantageous for him. There is no

need for an expert witness to provide any gloss or commentary on this story, and any such opinion

should be excluded.

In sum, Goldstein has not carried his burden to establish the admissibility of expert

testimony on Topic 6.

## VI.    Topic #7 – Mischaracterized Transactions

The seventh topic from Williams' expert disclosure reads:

> The Superseding Indictment alleges that a handful of expenditures
> from the G&R bank account were improperly characterized as
> business expenses. Mr. Williams will testify, based on his analysis
> of relevant financial records in this case, that many personal
> expenditures from G&R's bank account were not deducted on the
> G&R tax return. Mr. Williams will also testify that on several
> occasions GRF made errors in the characterization of personal
> expenditures despite explicit instructions from the firm office
> manager.

Ex. 2 at 3-4. This opinion is inadmissible and should be excluded for multiple reasons.

First, this opinion will not "help the trier of fact to understand the evidence or to determine

a fact in issue." Fed. R. Evid. 702(a). The Superseding Indictment concerns instances in which

Goldstein caused personal expenses to be deducted improperly as business expenses. Those

personal expenses included poker-related payments and payments to Goldstein's current or

prospective mistresses. It is irrelevant whether Goldstein correctly characterized *other* personal

expenses on some occasions. As the government explains in its motion *in limine* to preclude

improper arguments, evidence regarding specific instances in which Goldstein complied with the

tax laws are not relevant to his willful failures to comply with the tax laws, and such evidence is

therefore improper. *See, e.g.*, *United States v. Daulton*, 266 F. App'x 381, 387 (6th Cir. 2008)

(finding harmless the exclusion of evidence that the defendant, a tax return preparer, also prepared

accurate returns because such evidence "does not negate Daulton's guilt for the charged acts"). Therefore, Williams should not be permitted to testify about those acts.

Second, the opinion's probative value (if any) is substantially outweighed by multiple factors referenced in Rule 403. The opinion may unfairly prejudice the government, mislead the jury, and confuse the issues by suggesting that Goldstein should get credit or favor for accurate characterizations of personal expenses even if he willfully caused poker debts and payments to current or prospective mistresses to be improperly deducted as business expenses. Testimony along these lines by Williams would waste time and likely be cumulative of other fact witnesses who could testify (if the Court denies the government's separate motion *in limine* on the topic) based on first-hand knowledge about instances in which Goldstein correctly characterized personal payments. Williams' testimony also would waste time by requiring the government to cross-examine him to make clear to the jury that the personal expenses he highlighted on direct examination are not the subject of charges in the Superseding Indictment.

Third, Williams' opinion about "errors" GRF made in characterizing expenses is inadmissible for all the reasons cited by the government in response to Topic 3.

In sum, Goldstein has not carried his burden to establish the admissibility of expert testimony on Topic 7.

## VII.   Topic #8 – Other Transactions

The eighth topic from Williams' expert disclosure reads:

> The Superseding Indictment also includes allegations related to other transactions, including transfers of funds into and out of Montenegrin bank accounts and the transfer of funds in connection with the purchase of the Hawthorne property. Mr. Williams has analyzed the financial records associated with those transactions. He will explain to the jury the full set of transactions surrounding the transfers identified in the Superseding Indictment, as well as the tax treatment of those transactions. He will testify that the timing,

> structure, sequencing, and context of these transfers is not inconsistent with commercial banking and business practice.

Ex. 2 at 4. This opinion is inadmissible and should be excluded for multiple reasons.

First, Williams is not qualified as an expert to testify about whether Goldstein's conduct is consistent with (or "not inconsistent with") "commercial banking and business practice." None of Williams' education or prior experience and training supports the notion that he can opine broadly on "commercial banking and business practice." Goldstein disclosed Mr. Wiliams as "an expert in taxation reporting requirements and in financial and fraud investigations." Ex. 2 at 1. Even if Williams' experience at times involved reviewing bank records and investigating businesses, that cannot suffice to establish his expertise in the areas required by this opinion—otherwise, practically every former IRS-CI special agent (as well as financial investigators for other agencies or institutions) likely could qualify as an expert. Williams is not qualified to give this opinion, so it should be excluded.

Second, this opinion will not "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). The vast majority of this opinion would merely restate facts about Goldstein's transactions that would have already been testified to by fact witnesses and corroborated by contemporaneous communications—such that Williams' opinion would be duplicative and cumulative, not helpful. Williams' opinion that the transactions are "not inconsistent with commercial banking and business practice" is irrelevant: the question for the jury is not whether Goldstein's conduct complied with a vague notion of "commercial banking and business practice," but instead whether the conduct complied with federal law. Williams' opinion will not aid in the determination of the latter, and so it should be excluded.

Third, Williams' expert disclosure does not cite any "facts or data" in support of the opinion, and the opinion is not the "product of reliable principles and methods" that were

"reliabl[y] appli[ed] . . . to the facts of the case." Fed. R. Evid. 702(b)-(d). Regarding the lack of facts or data, Williams does not identify or define the "commercial banking and business practice" against which he purportedly is evaluating Goldstein's conduct and movement of money. Williams' disclosure also does not identify any method by which he was able to determine that Goldstein's movement of funds is "not inconsistent with commercial banking and business practice," nor explain how that method was reliably applied to the facts of the case. Goldstein has therefore failed to satisfy the various factors that courts in the Fourth Circuit evaluate to assess the admissibility of expert testimony. *See Crisp*, 324 F.3d at 265-66 (outlining five-factor test). This opinion should thus be excluded.

Fourth, the opinion's probative value (if any) is substantially outweighed by multiple factors referenced in Rule 403 for all the reasons cited by the government in response to Topic 1— including because Goldstein would argue or suggest to the jury based on the expert's opinion that he is not culpable because his conduct was "not inconsistent with commercial banking and business practice." Regarding Williams' opinion on "the transfer of funds in connection with the purchase of the Hawthorne property," it would waste time for the additional reason that the opinion ignores that Goldstein transferred personal funds *through G&R's Interest on Lawyers' Trust Account ("IOLTA") account*. Therefore, the government would need to cross-examine Williams to establish that—regardless of whether Goldstein's conduct was "not inconsistent with commercial banking and business practice"—it is at best highly unusual and at worst strictly unethical to deposit personal funds into an account that is supposed to be for *client* funds. Moreover, by using the IOLTA account to shield the funds from the IRS before closing on the home in 2021, Goldstein effectively disguised the funds as belonging to G&R's clients—thus making it less likely that they would be levied by the IRS. Indeed, the evidence at trial will prove

that Goldstein was aware of the possibility that the IRS could levy funds from his various bank accounts, and that it had repeatedly done so—including, in one instance, levying almost $1 million in cash that Goldstein had carried into the United States through Washington Dulles International Airport and later deposited into a personal bank account. The opinion therefore would run afoul of Rule 403, and should be excluded.

In sum, Goldstein has not carried his burden to establish the admissibility of expert testimony on Topic 8.

## VIII. Topic #9 – Analysis of Mr. Goldstein's and G&R's Tax Preparation and Filing History

The ninth topic from Williams' expert disclosure reads:

> Mr. Williams will explain in general the process and procedures followed by individuals and businesses working with tax professionals in collecting relevant information and preparing and filing tax returns. Mr. Williams will identify the areas of tax returns that are frequently subject to error by taxpayers. Mr. Williams will also explain Mr. Goldstein's and G&R's history of tax preparation and filing, and how that history compares to patterns of willful tax evasion from Mr. Williams' experience as an IRS investigator. Mr. Williams will explain that Mr. Goldstein and G&R's tax reporting is not consistent with certain factors that, on their face, indicate tax fraud, such as creating payments to fictious individuals or entities, keeping double sets of accounting records, and omitting entire sources of income. Mr. Williams will further explain that where a tax return is inaccurate due to errors, omissions, or failures to act, additional information is necessary to understand the source of the inaccuracy and whether the inaccuracy was intentional.

Ex. 2 at 4. This opinion is inadmissible and should be excluded for multiple reasons.

First, Williams is not qualified as an expert to testify "in general [about] the process and procedures followed by individuals and businesses working with tax professionals in collecting relevant information and preparing and filing tax returns." As reiterated throughout this motion, Williams' disclosure and CV provide no indication that he has specialized knowledge or experience concerning the working relationship between individuals or businesses and their

accountants or tax preparers. Goldstein has disclosed Mr. Wiliams as "an expert in taxation reporting requirements and in financial and fraud investigations," Ex. 2 at 1, not as an expert in how taxpayers interact with their accountants or tax preparers. The same lack of expertise should preclude testimony from Williams about "the areas of tax returns that are frequently subject to error by taxpayers." Although his disclosure and CV show that Williams has investigated tax and other offenses during his time as an IRS-CI special agent, there is no evidence that he gained unique knowledge or expertise regarding the "areas of tax returns that are frequently subject to error."

Second, this opinion will not "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). This case is not about mistakes made by Goldstein in completing his tax returns or whether those mistakes are consistent with errors made by other taxpayers. Nor is it about whether Goldstein evaded taxes in the same ways as other criminal defendants. The case is about (among other things) Goldstein's repeated and willful affirmative acts of tax evasion. Unless Williams plans to say that it is a common mistake for taxpayers to conceal millions of dollars of poker income from their tax preparers—or to commit the other affirmative acts of evasion and misconduct cited in the Superseding Indictment—this opinion is not relevant to the case and should be excluded. However, even if Williams is suggesting that Goldstein's misconduct is similar to mistakes by other taxpayers, he lacks the facts and data and reliably applied methodology to deliver that opinion to the jury (described next).

Third, Williams' expert disclosure does not cite any "facts or data" in support of the opinion, and the opinion is not the "product of reliable principles and methods" that were "reliabl[y] appli[ed] . . . to the facts of the case." Fed. R. Evid. 702(b)-(d). Williams' disclosure cites *no* facts or data supporting any conclusion about "the areas of tax returns that are frequently

subject to error by taxpayers." Williams has identified no principles or methods by which he was able to ascertain that Goldstein's willful misconduct is consistent with mistakes or errors by other taxpayers. The opinion therefore violates *Daubert*'s requirement that expert testimony "must be derived using scientific or other valid methods." *See Nease*, 848 F.3d at 229 (quotation and citation omitted). Relatedly, given his failure to disclosure any principles or methods, Williams has not identified how any such principles or methods were reliably applied to the facts of the case. Fed. R. Evid. 702(d). Goldstein has therefore failed to satisfy the various factors that courts in the Fourth Circuit evaluate to assess the admissibility of expert testimony. *See Crisp*, 324 F.3d at 265-66 (outlining five-factor test).

These shortcomings are particularly concerning here because Williams has apparently reached conclusions that contradict the facts of the case. Williams offers to explain that "Mr. Goldstein and G&R's tax reporting is not consistent with certain factors that, on their face, indicate tax fraud, such as creating payments to fictious individuals or entities, keeping double sets of accounting records, and omitting entire sources of income." This aspect of his opinion is at worst false and misleading and at best reveals that he has not been provided—and he has not relied on—key facts in the case. For example, Goldstein arguably *did* keep double sets of accounting records because he secreted his poker wins and losses in a separate bank account and did not provide records of that account to GRF or to the G&R firm managers who worked with GRF. Williams has not explained whether he considered that fact and how if at all it affected his opinion. As another related example, for tax year 2017, Goldstein expressly represented to GRF that he had "[n]o gambling winnings"—thereby "omitting [an] entire source[] of income" (of more than $3 million in income) from his tax return. *See* Dkt. 159, ¶ 48. Again, Williams has not explained whether he considered that fact and how if at all it affected his opinion. Williams' failure to cite

the facts underlying this opinion or to explain the methodology he employed justifies excluding the opinion.

Fourth, the opinion would violate the Fourth Circuit's general bar on expert "testimony that states a legal standard or draws a legal conclusion by applying law to the facts," *McIver*, 470 F.3d at 562, and expert testimony "about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense." Fed. R. Evid. 704(b); *Mosby*, 626 F. Supp. at 857. Williams wants to "explain [to the jury] that where a tax return is inaccurate due to errors, omissions, or failures to act, additional information is necessary to understand the source of the inaccuracy and whether the inaccuracy was intentional." This testimony would be superfluous because the Court will instruct the jury on the applicable law and standards by which it must decide whether Goldstein evaded taxes or committed the other offenses charged in the Superseding Indictment. And the government will not argue to the jury that mere inaccuracies on a tax return render Goldstein culpable. The government has the burden—and will prove—that Goldstein willfully violated the tax laws; Goldstein of course can introduce evidence and argument contrary to that conclusion, but not through an expert witness opining on his state of mind. Notably, willfulness (which the law requires) is distinct from intent (in which Williams couches his opinion), so his testimony about whether inaccuracies were intentional does not simply violate the Fourth Circuit's general bar on expert witnesses stating legal standards—it may very well also conflict with the Court's instructions, leading to jury confusion and other issues (described next).

Fifth, the opinion's probative value (if any) is substantially outweighed by multiple factors referenced in Rule 403. The opinion may unfairly prejudice the government, mislead the jury, and confuse the issues by suggesting that Goldstein is not guilty because his conduct was somehow

different than other criminal tax defendants. That suggestion would be unfairly prejudicial, misleading, and confusing because it is factually incorrect (as explained previously), and because the jury will not be asked to compare Goldstein's conduct to other criminal tax defendants. *See Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996) ("Expert evidence based on a fictitious set of facts is just as unreliable as evidence based upon no research at all."). The opinion is also misleading because (as previously explained) Williams' commentary on evaluating Goldstein's "intent" will either duplicate or contradict the Court's instructions on the requisite state of mind (willfulness) for convicting Goldstein on the tax charges he faces. The opinion will unduly delay the trial and waste time because the government will have to conduct an extensive cross-examination highlighting that Goldstein's alleged conduct *is* consistent with the factors that Williams says indicate tax fraud, and likewise proving that Williams' opinion is not based on facts or data or a reliably applied methodology.

In sum, Goldstein has not carried his burden to establish the admissibility of expert testimony on Topic 9.

*        *        *

## **CONCLUSION**

The government respectfully requests that the Court preclude David Williams from offering testimony on Topics 1-3 and 5-9 of his expert disclosure. Those opinions suffer from numerous legal and factual defects and would hinder, not help, the jury in evaluating the charges and evidence against Goldstein.

Respectfully submitted,

Kelly O. Hayes
United States Attorney

Dated: October 24, 2025

/s/  *Hayter L. Whitman*
Hayter L. Whitman
Trial Attorney
Department of Justice—Tax Division

Sean Beaty
Senior Litigation Counsel
Emerson Gordon-Marvin
Trial Attorney
Department of Justice—Tax Division

Adeyemi Adenrele
Assistant United States Attorney
District of Maryland