IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>THOMAS C. GOLDSTEIN,<br><br>Defendant. | CRIMINAL NO. LKG-25-0006 |

**GOVERNMENT'S MOTION TO EXCLUDE OPINIONS OF
DEFENDANT'S EXPERT WITNESS, JASON TRAGER**

Defendant Thomas Goldstein disclosed Jason Trager as a rebuttal expert on "financial and fraud investigations, cryptocurrency, and blockchain technology." Ex. 1 at 1 (Trager Expert Disclosure and CV). Trager's proffered opinions, however, should be excluded for multiple reasons: (1) they are untimely disclosed expert opinions (not true "rebuttal" opinions) and (2) they are legally and/or factually irrelevant, and any probative value of the opinions is substantially outweighed by the factors in Federal Rule of Evidence 403. *See Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999) (noting that expert testimony has "the potential to be both powerful and quite misleading") (quotations and citations omitted). Trager's expert disclosure appears to be yet another attempt by Goldstein to distract the jury from the relevant issues and evidence. Therefore, the United States respectfully requests that the Court preclude Trager from offering any opinions at the upcoming trial.

**BACKGROUND**

**I.       Opinions of IRS-CI Special Agent Nguyen (Government's Expert)**

On September 12, 2025, the government disclosed as an expert witness IRS-CI Special Agent Quoc Tuan Nguyen. *See generally* Ex. 2 (Nguyen Expert Disclosure and CV). On October 23, 2025, the government served an amended disclosure for Special Agent Nguyen that

did not meaningfully change the thrust or scope of his opinions. *Compare* Ex. 2, *with* Ex. 3 (Amended Expert Disclosure for Nguyen). Special Agent Nguyen's anticipated testimony will include "(1) how Proton Mail works; (2) why investigators often cannot access the contents of Proton Mail accounts and communications; (3) how Virtual Private Networks ('VPNs') work; and (4) how it appears that [Goldstein] used one or more VPNs to access Binance.Com despite its policy banning U.S. users from registering or maintaining an account on their platform." Ex. 3 at 2.

Proton Mail is an encrypted email service with headquarters and servers in Switzerland. *See* Ex. 3 at 3. Switzerland "provides a constitutional right to privacy, is outside United States and European Union jurisdiction, and heavily limits what Swiss companies may share with foreign law enforcement." *Id.* Therefore, the government anticipates that Special Agent Nguyen will explain to the jury, the contents of Proton Mail accounts generally "would be accessible only to a person that had the login and password . . . and would not be accessible to Proton, or Swiss or United States authorities without those credentials." *Id.* Proton Mail is relevant to this case because, as alleged in the Superseding Indictment, Goldstein created a near-contemporaneous ledger of his 2016 poker activities and transactions and emailed it to a Proton Mail account bearing his own name. Dkt. 159, ¶ 33. That ledger confirms that Goldstein lied to his outside accounting firm, GRF CPAs & Advisors ("GRF"), about his 2016 poker winnings, and in doing so caused the preparation and filing of a false tax return for 2016 and enabled his tax evasion. Moreover, Goldstein's decision to store the ledger in an encrypted account based outside the United States[1]—rather than simply emailing it to one of his employees or GRF so that they could prepare accurate tax returns— corroborates his willfulness in violating the tax laws throughout the relevant time period. Finally,

---

[1] Goldstein subsequently emailed an updated version of the ledger to his own G&R email account, but never shared it with GRF.

Special Agent Nguyen's anticipated testimony about the government's inability to discover through legal process the contents of Goldstein's Proton Mail accounts[2] is necessary to contextualize and to rebut any argument or suggestion from Goldstein that emails not shown at trial are or could be exculpatory.

VPN stands for "virtual private network." When a person connects to a VPN, all data that they send (including to third-party servers when they browse the web) appears to come from the VPN itself, rather than the person's true internet service provider (or "ISP"). VPNs are relevant to this case because Goldstein appears to have used them to create and access an account at Binance.Com ("Binance"), a prominent cryptocurrency exchange, in 2021. As alleged in the Superseding Indictment, Goldstein falsely reported on his 2020 and 2021 tax returns that he had not transacted in cryptocurrency, but the evidence shows that during those years he engaged in hundreds of cryptocurrency transactions worth almost $10 million. *See* Dkt. 159, ¶¶ 71-73, 83-85. However, because Goldstein used a VPN to access Binance, the access logs that Binance produced to the government indicate that Goldstein was located not in the United States but rather in other countries such as Italy, Norway, and Trinidad and Tobago. *See* Ex. 3 at 4. Because Goldstein may argue that he was not in those countries at a given time, and therefore could not have been the person accessing the Binance account, Special Agent Nguyen's anticipated explanation of VPNs—and how they can disguise a user's true location—is necessary context. That is, Special Agent Nguyen is expected to testify that "a VPN is the most likely explanation for the pattern of IP

---

[2] Goldstein used two Proton Mail accounts bearing his own name during the relevant time period. The government anticipates that Special Agent Nguyen's testimony will demonstrate to the jury that one possible explanation for Goldstein using two accounts was that he lost his credentials to the first account and had to create a new one. *See* Ex. 3 at 3.

3

addresses recorded by Binance (as opposed to, for example, [Goldstein] traveling to and between, or staying in, those locations)." Ex. 3 at 4.

## II.     Jason Trager's "Rebuttal" Opinions

On October 13, 2025, Goldstein disclosed Trager as a rebuttal expert to respond to Special Agent Nguyen's opinions. *See generally* Ex. 1. Trager's disclosure lists various opinions covering three topics of testimony: encryption, VPNs, and Binance. *Id.* at 2. Each topic explicitly states that Trager would be "respond[ing] to testimony from Agent Nguyen." *Id.*

Regarding the first topic, "encryption," the disclosure states that "Mr. Trager will testify that, in his experience, most cybersecurity experts (and even the U.S. government) recommend the use of encrypted communication platforms, and that many of the most common communication platforms employ encryption already." *Id.*

Regarding the second topic, "VPNs," the disclosure states that "Mr. Trager will explain what a VPN is, and explain reasons why users elect to use VPNs. Mr. Trager will further testify that VPN usage is consistent with many cybersecurity experts' (and even the U.S. government's) recommended best practices for security in accessing the internet, particularly when it comes to accessing websites that process financial transactions like cryptocurrency exchanges. Mr. Trager will explain that, for these reasons, the use of a VPN is now standard practice for corporations and many individuals engaged in financial activity on the Internet." *Id.*

And regarding the third topic, "Binance," the disclosure states that "Mr. Trager will explain that Binance is one of the most utilized cryptocurrency exchanges in the world, and that following 2019—when Binance took the official position that U.S.-based customers would be blocked from the platform—Binance continued to encourage U.S. customers (as well as all customers worldwide) to access its platform through the use of a VPN. Mr. Trager will further explain that

there are legitimate reasons why U.S. residents may choose to continue utilizing Binance through a VPN, including its large selection of cryptocurrency offerings; its large customer base providing high liquidity for trades; and its low transaction fees." *Id.*

## **LEGAL STANDARD**

The proponent of expert testimony "bears the burden of establishing its admissibility." *Morris v. Biomet, Inc.*, 491 F. Supp. 3d 87, 97 (D. Md. 2020). Federal Rule of Evidence 702 provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education, may testify in the form of an opinion or otherwise, if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Rule 702 requires district courts to perform a critical "gatekeeping" function concerning the admissibility of expert scientific evidence. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 588 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1998). It is the trial court's responsibility to "'ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *Nease v. Ford Motor Co.*, 848 F.3d 219, 229 (4th Cir. 2017) (quoting *Daubert*, 509 U.S. at 597). This is equally true for rebuttal experts. *G. W. Aru, LLC v. W. R. Grace & Co.-Conn.*, No. CV JKB-22-2636, 2025 WL 1068581, at *9 (D. Md. Apr. 9, 2025) (noting that "rebuttal experts must satisfy the basic reliability requirements of *Daubert*").

Under *Daubert*, the Rule 702 evidentiary analysis focuses on two components: reliability and relevance. *See Daubert*, 509 U.S. at 595-96. First, the "reliability" component requires this Court to "ensure that the proffered expert opinion is 'based on scientific, technical, or other specialized knowledge and not on belief or speculation, and inferences must be derived using

scientific or other valid methods.'" *Nease*, 848 F.3d at 229 (emphasis omitted) (quoting *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999)). Second, the "relevance" component requires that the proposed testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 591 (quoting Fed. R. Evid. 702). "Simply put, if an opinion is not relevant to a fact at issue, *Daubert* requires that it be excluded." *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 281 (4th Cir. 2021).

The government's motion to exclude certain opinions of Goldstein's other expert witness, David Williams, describes in more detail the rules and principles surrounding *Daubert* and Rule 702, and well-established applications of those rules and principles.

Pertinent to this motion, experts may not state any opinion "about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense." Fed. R. Evid. 704(b); *United States v. Mosby*, 626 F. Supp. 3d 847, 857 (D. Md. 2022), *aff'd*, 143 F.4th 264 (4th Cir. 2025). "[E]xpert testimony regarding a defendant's subjective intent in pursuing a particular activity, or expert testimony that a defendant had an *actual* thought or intent, is prohibited." *Mosby*, 626 F. Supp. at 857 (quotations and citation omitted) (emphasis in original). "Those matters are for the trier of fact alone." Fed. R. Evid. 704(b).

Further, as with all other evidence, expert testimony may be excluded "if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *See* Fed. R. Evid. 403; *Mosby*, 626 F. Supp. at 860 (quotation and citation omitted). As the Supreme Court noted in *Daubert*, "[e]xpert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay

6

witnesses." 509 U.S. at 595 (quoting Judge Jack Weinstein, *Rule 702 of the Federal Rules of Evidence Is Sound; It Should Not Be Amended*, 138 F.R.D. 631, 631 (1991)).

## ARGUMENT

The Court should exclude Trager's opinions because (1) they are untimely disclosed expert opinions (not true "rebuttal" opinions) and (2) they are legally and/or factually irrelevant, and any probative value of the opinions is substantially outweighed by the factors in Rule 403.

## I.   Trager's Opinions Were Not Timely Disclosed

The Court's pre-trial scheduling order set a September 12, 2025 deadline for disclosing expert witnesses. Dkt. 155 at 1 (pre-trial scheduling order in effect at time of deadline). There is no deadline for disclosure of rebuttal experts, nor has Goldstein moved for leave to modify the schedule to include such a deadline. On September 12, the government disclosed two expert witnesses, and Goldstein disclosed one expert witness (David Williams). Goldstein did not disclose Trager as an expert witness until about a month later, on October 13, 2025.

Although Goldstein characterizes Trager as a "rebuttal" expert, and Trager's opinions are styled as "response[s]" to one of the government's experts (Special Agent Nguyen), they are not true rebuttal opinions. "The function of rebuttal is to explain, repel, counteract or disprove evidence of the adverse party." *See United States v. Lamoreaux*, 422 F.3d 750, 755 (8th Cir. 2005) (quotations and citations omitted). Here, Trager's proffered testimony does not "explain, repel, counteract or disprove" any of Special Agent Nguyen's opinions. They merely add irrelevant and unfairly prejudicial facts pertaining to the same topics on which Special Agent Nguyen is expected to testify. For example, regarding encryption: the government anticipates Special Agent Nguyen will explain the technological implications of Goldstein's decision to store his poker ledger in his Proton Mail account, and the difficulty or impossibility of the government discovering the contents

7

of that account due to encryption. Trager proposes testifying that "most cybersecurity experts (and even the U.S. government) recommend the use of encrypted communication platforms, and that many of the most common communication platforms employ encryption already." That is not responsive to or rebutting Special Agent Nguyen's proffered opinions as reflected in his expert disclosure.[3]

Trager's opinions on VPNs and Binance suffer from the same flaw. While the government anticipates Special Agent Nguyen will explain VPNs and Binance and offer helpful context for the jury in evaluating evidence presented at the trial, Trager's "rebuttal" offers extraneous facts about the security advantages of VPNs and why individuals in the United States may use VPNs to access Binance. In sum, reviewing and comparing Special Agent Nguyen's and Trager's proffered opinions shows that Trager's are not rebuttal opinions.

Accordingly, Trager's expert disclosure is untimely and his opinions should be excluded outright. Even if Goldstein had moved for leave to modify the pre-trial schedule or to belatedly disclose Trager's opinions, he could not have shown good cause. As the Court observed days ago, "[g]ood cause means that scheduling deadlines cannot be met despite a party's diligent efforts." Dkt. 196 at 1 (quotations and citations omitted). Here, it was clear well before September 12 that the issues on which Trager is disclosed (encryption, VPNs, and Binance) would be relevant to the upcoming trial. As explained below, those *issues* are relevant, but Trager's proffered *opinions* on those issues are at best tangentially relevant, and regardless should be excluded under Rule 403.

---

[3] As discussed below, even if Trager's opinion were stretched to the tenuous claim that Goldstein used Proton Mail not to hide his crimes and poker income but rather because experts recommended it, this would not be relevant without evidence that Goldstein saw, heard about, or otherwise knew about such a recommendation.

Indeed, Goldstein already retained Trager in or about March 2025 to offer opinions in connection with his appeal of release conditions. There, the government argued that Goldstein engaged in "difficult-to-track cryptocurrency transactions," including by "creat[ing] an account at Binance.com" and apparently "us[ing] a [VPN] to make his devices appear to be abroad." Dkt. 84 at 7-8. In reply, Goldstein exhibited an expert declaration from Trager and argued "Binance expressly encourages U.S. customers to access the platform through a VPN" and, "[a]s Mr. Trager explains, as a general matter VPN usage is not suspect and is in fact encouraged by the U.S. government." Dkt. 88 at 12-13. Consistent with his proffered opinions here, Trager's March 2025 declaration asserted that "Binance encouraged U.S. customers to continue to access the platform through use of a VPN." Dkt. 88-1 at 6.

Under these circumstances, a diligent party would have been able to meet the established expert disclosure deadline for Trager. Therefore, Trager's opinions should be excluded as untimely expert opinions (not true "rebuttal" opinions).

## II. Trager's Opinions Are Irrelevant, And Should Be Excluded Under Rule 403

Under *Daubert*, expert testimony (whether rebuttal or not) must be "relevant," meaning that it must "assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 591. Expert testimony may be excluded "if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *See* Fed. R. Evid. 403; *Mosby*, 626 F. Supp. at 860.

### A. Topic #1 -- Encryption

Trager's proffered opinions on encryption (Ex. 1 at 2) have nothing to do with this case or the charges against Goldstein. Trager apparently seeks to testify that "most cybersecurity experts (and even the U.S. government) recommend the use of encrypted communication platforms, and

9

that many of the most common communication platforms employ encryption already." *Id.* Assuming this is all true, it will not help the jury understand the evidence or determine a fact at issue. To the contrary, the opinion will unfairly prejudice the government, mislead the jury, and confuse the issues by suggesting that Goldstein is not guilty because he followed the supposed recommendation of unidentified cybersecurity experts. *See* Fed. R. Evid. 403.

Trager's statement that experts generally recommend encrypted messaging does not address the facts at hand: that Goldstein used Proton Mail—based in Switzerland, where the government's ability to collect evidence is particularly limited—rather than any number of other encrypted communication platforms, used it *for his 2016 poker ledger specifically*, and never sent the ledger to his accountants (who then could have used it to file his tax return *with the government*). This disconnect underscores Trager's cherry-picked fact about encryption recommendations is hardly probative of relevant issues. Any probative value is substantially outweighed by the confusion his testimony will sow.

The scant probative value of the opinion is also substantially outweighed by the risk of delaying the trial and wasting time because the government will need to cross-examine Trager to establish, among other things, the lack of evidence that Goldstein used Proton Mail to store his poker ledger because "most cybersecurity experts" recommend encrypted messaging. The government also would need to cross-examine Trager to remind the jury of the facts indicating that Goldstein used Proton Mail as a hidden repository for information about his 2016 poker winnings that he never relayed to GRF or to the IRS. Further, the government would need to make clear that, regardless of the security or prominence of encryption as a general matter, Proton Mail

10

is uniquely helpful for tax cheats because it is based in Switzerland and the U.S. government cannot collect evidence from it—no matter how relevant.

In sum, Goldstein has not carried his burden to establish the admissibility of expert testimony on Topic 1.

**B.     Topic #2 -- VPNs**

Trager's proffered opinion on VPNs (Ex. 1 at 2) likewise are irrelevant. As with encryption, Trager's opinion injects superfluous facts about the security benefits of using VPNs. Again, even if Trager's views on VPN security are true, they will not help the jury. VPNs are relevant because Goldstein used them to access his account on the cryptocurrency exchange Binance, and in doing so disguised his true location such that the access logs that Binance produced on their face may suggest someone other than Goldstein was accessing the account. Whether or not cybersecurity experts recommend VPNs is not relevant to evaluating the access logs and other evidence relating to Goldstein's undisclosed transactions in cryptocurrency. Further, Trager's touting of VPN security along with his assertion that "the use of a VPN is now standard practice for . . . many individuals" (*id.*) hints at an express or implied argument that the reason Goldstein used VPNs was for security purposes. That would be improper because "expert testimony regarding a defendant's subjective intent in pursuing a particular activity, or expert testimony that a defendant had an *actual* thought or intent, is prohibited." *See Mosby*, 626 F. Supp. at 857 (quotations and citation omitted) (emphasis in original); Fed. R. Evid. 704(b) ("Those matters are for the trier of fact alone.").

As with the prior topic, this opinion will unfairly prejudice the government, mislead the jury, and confuse the issues by suggesting that Goldstein is not guilty because he followed the supposed recommendation of unidentified cybersecurity experts. Admitting the opinion will unduly delay the trial and waste time because the government will need to cross-examine Trager

to establish, among other things, the lack of evidence that Goldstein used VPN in reliance on the recommendation of the cybersecurity experts—and to remind the jury that the pertinent question is whether Goldstein transacted in cryptocurrency (including through use of VPNs) and subsequently, willfully denied it on his tax returns for 2020 and 2021. These opinions should be excluded.

In sum, Goldstein has not carried his burden to establish the admissibility of expert testimony on Topic 2.

C.     **Topic #3 -- Binance**

Trager's proffered opinions on Binance (Ex. 1 at 2) should be excluded for similar reasons. Whether or not Binance "encourage[d] U.S. customers . . . to access its platform through the use of a VPN" is irrelevant especially without evidence—and there is none, to the government's knowledge—that Goldstein heard that advice and relied on it. More fundamentally, if the government presents evidence that Goldstein transacted in cryptocurrency through the Binance account and willfully failed to report such activity to the IRS, then Binance's view or "official position" could not excuse Goldstein's crimes. Trager's reference to "legitimate reasons why U.S. residents may choose to continue utilizing Binance through a VPN"—such as Binance's "large selection of cryptocurrency offerings" and "low transaction fees"—is not tethered to the facts of this case. And even if Trager was offering an opinion about the reasons Goldstein specifically (as opposed to U.S. residents generally) used a VPN to access Binance, it would be an inadmissible opinion on Goldstein's state of mind or intent. *See Mosby*, 626 F. Supp. at 857; Fed. R. Evid. 704(b). Trager's opinions on Binance read more like an advertisement for Binance than relevant, helpful testimony to evaluate the evidence and Goldstein's culpability for the charged offenses. It should be excluded as irrelevant.

Trager's proffered opinions on this topic will unfairly prejudice the government, mislead the jury, and confuse the issues by suggesting that Goldstein is not guilty because he followed the supposed recommendation or official position of Binance, and/or because there are potentially non-criminal reasons why the average U.S. resident seeking to transact in cryptocurrency would choose Binance. Admitting the opinion will unduly delay the trial and waste time because the government will need to cross-examine Trager to establish, among other things, the lack of evidence that Goldstein knew about or relied on Binance's advice—and to remind the jury that the pertinent question is whether Goldstein transacted in cryptocurrency (including through Binance) and subsequently, willfully denied it on his tax returns for 2020 and 2021.

In sum, Goldstein has not carried his burden to establish the admissibility of expert testimony on Topic 3.

\*     \*     \*

## CONCLUSION

The government respectfully requests that the Court preclude Jason Trager from offering testimony on the topics listed in his expert disclosure. Those opinions were untimely disclosed, and would unduly delay the trial with irrelevant and misleading issues.

Respectfully submitted,

Kelly O. Hayes
United States Attorney

Dated: October 24, 2025

/s/ *Hayter L. Whitman*
Hayter L. Whitman
Trial Attorney
Department of Justice—Tax Division

Sean Beaty
Senior Litigation Counsel
Emerson Gordon-Marvin
Trial Attorney
Department of Justice—Tax Division

Adeyemi Adenrele
Assistant United States Attorney
District of Maryland