# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
# SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| Plaintiff, | * | |
| v. | * | CRIMINAL NO. LKG-25-6 |
| THOMAS C. GOLDSTEIN, | * | |
| Defendant. | * | |

*******

**DEFENDANT THOMAS C. GOLDSTEIN'S RESPONSE TO GOVERNMENT'S MOTION IN LIMINE TO ADMIT CERTAIN OF GOLDSTEIN'S STATEMENTS TO THE *NEW YORK TIMES* (GOV'T EX. 5)**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................................1
ARGUMENT.......................................................................................................................2
I.     THE *NEW YORK TIMES* ARTICLE IS INADMISSIBLE HEARSAY ............................2
     A.     The Government's Effort To Admit the *New York Times* Article Is Squarely Foreclosed By Fourth Circuit Precedent...................................................2
     B.     The *New York Times* Article Is Not Admissible Under the Residual Exception .......................................................................................................5
     C.     The *New York Times* Article Is Not Admissible as an Adopted Statement ...........10
II.     ADMISSION OF THE *NEW YORK TIMES* ARTICLE IS BARRED BY THE CONFRONTATION CLAUSE..................................................................................12
III.     THE GOVERNMENT CANNOT EVADE THE RULE OF COMPLETENESS ............14
CONCLUSION..................................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Berry v. Virginia Dep't of Corr.*,
  No. 1:22CV1302, 2024 WL 1376214 (E.D. Va. Mar. 28, 2024) ..............................4

*Boyd v. City of Oakland*,
  458 F. Supp. 2d 1015 (N.D. Cal. 2006) ...................................................................7

*In re C.R. Bard, Inc., MDL No. 2187, Pelvic Repair Sys. Prods. Liab. Litig.*,
  810 F.3d 913 (4th Cir. 2016) ....................................................................................5

*Crawford v. Washington*,
  541 U.S. 36 (2004) .............................................................................................12, 13

*Davis v. Washington*,
  547 U.S. 813 (2006) ...........................................................................................12, 13

*Gantt v. Whitaker*,
  57 F. App'x 141 (4th Cir. 2003) ..............................................................3, 5, 10, 11

*Greene v. Scott*,
  637 F. App'x 749 (4th Cir. 2016) ................................................................... passim

*Horta v. Sullivan*,
  4 F.3d 2 (1st Cir. 1993) .............................................................................................5

*Larez v. City of Los Angeles*,
  946 F.2d 630 (9th Cir. 1991) ........................................................................2, 3, 6, 9

*Mandal v. City of New York*,
  No. 02 CIV. 1234 (WHP), 2006 WL 3405005 (S.D.N.Y. Nov. 26, 2006) ...............7

*Manning v. Alamance Cnty., N. Carolina*,
  No. 1:15CV290, 2017 WL 2703532 (M.D.N.C. June 22, 2017) ..........................4, 5

*Melendez-Diaz v. Massachusetts*,
  557 U.S. 305 (2009) .................................................................................................13

*Nelson v. Three Points Ctr., LLC*,
  No. 1:23CV527, 2025 WL 1027846 (M.D.N.C. Apr. 7, 2025) ................................4

*New England Mut. Life Ins. Co. v. Anderson*,
  888 F.2d 646 (10th Cir. 1989) ...............................................................................5, 6

*Nooner v. Norris*,
   594 F.3d 592 (8th Cir. 2010) ............................................................................................1, 5

*Sec. & Exch. Comm'n v. Jacoby*,
   No. CV CCB-17-3230, 2021 WL 351176 (D. Md. Feb. 2, 2021) ...................................10, 11

*United States v. Cunningham*,
   761 F. App'x 203 (4th Cir. 2019) ............................................................................... passim

*United States v. Dunford*,
   148 F.3d 385 (4th Cir. 1998) .......................................................................................1, 5, 10

*United States v. Ealy*,
   No. 1:00CR00104, 2002 WL 1205035 (W.D. Va. June 3, 2002) ..............................................5

*United States v. Hale*,
   422 U.S. 171 (1975) ..........................................................................................................11

*United States v. Heyward*,
   729 F.2d 297 (4th Cir. 1984) ................................................................................................5

*United States v. Huskey*,
   90 F.4th 651 (4th Cir. 2024) .............................................................................................1, 5

*United States v. Mathis*,
   559 F.2d 294 (5th Cir. 1977) ................................................................................................9

*United States v. McFadden*,
   116 F.4th 1069 (10th Cir. 2024) ............................................................................................5

*United States v. ReBrook*,
   58 F.3d 961 (4th Cir. 1995) ..................................................................................................3

*United States v. Williams*,
   445 F.3d 724 (4th Cir. 2006) .........................................................................................10, 11

*VLOX, LLC v. Mirzada Transp. & Logistics Co.*,
   549 F. App'x 150 (4th Cir. 2013) .........................................................................................11

**FEDERAL RULES**

Fed. R. Evid. 106 ....................................................................................................................14

Fed. R. Evid. 403 ......................................................................................................................7

Fed. R. Evid. 801 ......................................................................................................................3

Fed. R. Evid. 801(d)(2) ..........................................................................................................3, 4

Fed. R. Evid. 807(a)(2) ................................................................................................4, 5, 8, 10

**INTRODUCTION**

"Newspaper articles are rank hearsay." *Greene v. Scott*, 637 F. App'x 749, 752 (4th Cir. 2016) (quoting *Nooner v. Norris*, 594 F.3d 592, 603 (8th Cir. 2010)). That blackletter law squarely forecloses the government's gambit to present an article from *The New York Times Magazine* as evidence to the jury—and, as the government candidly admits, even to *open on* that hearsay.

This Court should reject the government's request out of hand as inconsistent with controlling law. Even if Mr. Goldstein's statements to the *New York Times* reporter are non-hearsay statements of an opponent, the government has no defensible theory for why *the reporter's* out-of-court recounting of those statements is admissible. The fact that the government's first-line justification for its request is a resort to the "residual exception"—a "narrow exception" to the rule against hearsay, *United States v. Dunford*, 148 F.3d 385, 392, 394 (4th Cir. 1998), that "is 'used very rarely, and only in exceptional circumstances,'" *United States v. Huskey*, 90 F.4th 651, 670 (4th Cir. 2024) (citation omitted)—tells this Court everything it needs to know about the merits of the government's motion *in limine*. And the government's backup argument, i.e., that Mr. Goldstein somehow adopted everything printed in the article as his own statement because he did not demand a retraction, is even more frivolous. Tellingly, the government has not identified *any* decision by *any* court adopting that radical reasoning.

Separately, admitting the *New York Times* article would run afoul of the Confrontation Clause, which guarantees criminal defendants the right to cross-examine witnesses against them. The government cannot ignore the Confrontation Clause by presenting a newspaper article as unquestionable evidence. Rather, it must offer the testimony of the person who actually wrote it.

These rules are not mere technicalities. They protect a defendant from precisely the sort of unfair presentation of evidence that the government proposes here—the admission of snippets

1

of out-of-court statements by a third party (in this case, the reporter) without the opportunity to examine the third party about the context in which those statements were made. If the government had actual, competent evidence of Mr. Goldstein's statements, the rule of completeness—not mentioned in the government's filing—would entitle the defense to give the jury the proper context for the statements that the government seeks to admit. The government's effort to admit a newspaper article through the residual exception to the hearsay rule is a transparent effort to deprive the jury of that critical context for the statements. The Rules of Evidence and the Confrontation Clause forbid such a one-sided and unfair presentation.

## ARGUMENT

I. **THE *NEW YORK TIMES* ARTICLE IS INADMISSIBLE HEARSAY**

   A. **The Government's Effort To Admit the *New York Times* Article Is Squarely Foreclosed By Fourth Circuit Precedent**

As the government acknowledges (at 1-2), the *New York Times* article involves *two* out-of-court statements: (1) Mr. Goldstein's "actual statements" to the reporter, Mr. Toobin, and (2) those statements' "later repetition by [the] reporter[]" in the article itself. *Larez v. City of Los Angeles*, 946 F.2d 630, 642 (9th Cir. 1991). Even assuming that Mr. Goldstein's statements to Mr. Toobin are admissible as an opposing party's statement, *Mr. Toobin's* recounting of those statements—as presented in an article edited and refined by an unknown number of other *New York Times* employees—is an out-of-court statement. *See id.* ("[T]he reporters' transcriptions were out-of-court statements. By attributing quotations to Gates, the reporters necessarily made the implicit statement, 'Gates said this!' As the reporters' statements were made in newspapers, they were, *a fortiori,* statements made out-of-court where they were not subject to the rigors of

cross-examination.").[1] And the government plainly seeks to present that out-of-court statement "to prove the truth of the matter asserted," Fed. R. Evid. 801—i.e., that Mr. Goldstein "did in fact make the quoted statement." *Larez*, 946 F.2d at 642.

The Fourth Circuit "has consistently held that newspaper articles are inadmissible hearsay" where "they are introduced 'to prove the factual matters asserted therein.'" *Gantt v. Whitaker*, 57 F. App'x 141, 150 (4th Cir. 2003) (quoting *United States v. ReBrook*, 58 F.3d 961, 967 (4th Cir. 1995)). That is true even where, as here, the proponent of the evidence purports to offer the article solely to prove that an opposing party made a certain statement. In *Greene*, for example, the Fourth Circuit held that a "news article . . . was inadmissible hearsay" because "[t]he declarant, the article's writer, did not attest before the district court that the statements printed in the article actually occurred." *Greene*, 637 F. App'x at 751–52. The court rejected the plaintiff's argument that "the [defendant's] statements in the newspaper article should be admitted as a non hearsay statement by a party-opponent under Fed.R.Evid. 801(d)(2)" because that theory "fail[ed] to distinguish the [defendant's] statement, which is not hearsay, from the conveyance of that statement in the newspaper article, which is hearsay."[2] *Id.* at 752.

The government's effort to distinguish *Greene* (at 9-10) relies on blatantly false factual assertions. First, the government claims (at 9) that the court considered only whether "the

---

[1] In this respect, a newspaper article is akin to a memorandum prepared by a law enforcement agent summarizing an interview of the defendant. The defendant's statements in the interview may be admissible as an admission of a party opponent, but the memorandum reporting the statements is hearsay. That is why the government is required to introduce the defendant's statements to law enforcement through the testimony of an agent rather than admission of the interview memorandum.

[2] *Greene* involved a § 1983 claim against the Chief of the Columbia, South Carolina, Police Department and the City of Columbia. 637 F. App'x at 750. The news article at issue "convey[ed] statements by the Mayor of Columbia," *id.* at 751, which the court treated as the statement of a party opponent, *see id.* at 752. For convenience, in the quotation above, the defense has replaced references to the "Mayor" with references to the "defendant."

3

*entirety*" of the article was admissible, "not just statements of a party opponent contained in that article." As just discussed, *see supra*, that is simply untrue: the Court expressly held that "the conveyance of [the defendant's] statement in the newspaper article" was "hearsay" *even though* the defendant's statement—i.e., the statement made to the reporter—was itself "not hearsay." 637 F. App'x at 752. Second, the government asserts (at 9-10) that the appellant in *Greene* "failed to provide the Court *any* basis for the admission of the newspaper article as either non-hearsay (*e.g.*, as an adopted statement of a party opponent under Rule 801(d)(2)(B) . . . ) or as an exception to the hearsay exclusion rule (e.g., the residual exception provided by Rule 807)." Again, that's wrong: the appellant's brief argued that the defendants had "adopted the newspaper statements" by "refusing to deny the statements and craving reference to the newspaper article." Am. Opening Br. of Appellant, 2015 WL 6598728, at *20-21 (Oct. 27, 2015). The Fourth Circuit necessarily rejected that contention when it held that the "district court [had] properly held that the news article . . . was inadmissible hearsay." 637 F. App'x at 751.

In all events, the government's request to admit the *New York Times* article is precluded by more than just *Greene*. "[T]he Fourth Circuit has repeatedly held that newspaper articles are inadmissible hearsay when presented for the truth of their contents." *Manning v. Alamance Cnty., N. Carolina*, No. 1:15CV290, 2017 WL 2703532, at *1 (M.D.N.C. June 22, 2017); *see also, e.g., Berry v. Virginia Dep't of Corr.*, No. 1:22CV1302 (CMH/WEF), 2024 WL 1376214, at *2 n.2 (E.D. Va. Mar. 28, 2024) (same); *Nelson v. Three Points Ctr., LLC*, No. 1:23CV527, 2025 WL 1027846, at *9 (M.D.N.C. Apr. 7, 2025) (same). Following that clear precedent, district courts in the Fourth Circuit have consistently rejected requests to admit news articles recounting the statements of party-opponents—including where, as here, the article's proponent

4

argues that the article should be admitted under Rule 807's residual exception.³ *See, e.g.*, *Manning*, 2017 WL 2703532, at *1-2; *Gantt*, 57 F. App'x at 150. This Court should follow the same course here.

### B. The *New York Times* Article Is Not Admissible Under the Residual Exception

The government cites no case admitting the statements of a criminal defendant recounted in a newspaper article under the residual exception to the rule against hearsay. And the government's effort to persuade this Court to break new ground fails; indeed, the government falls far short of carrying its "heavy burden" to justify application of Rule 807 here. *United States v. McFadden*, 116 F.4th 1069, 1082 (10th Cir. 2024); *see United States v. Ealy*, No. 1:00CR00104, 2002 WL 1205035, at *3 (W.D. Va. June 3, 2002) ("Hearsay not falling within the express exceptions is presumptively unreliable and the party seeking to introduce the evidence has the burden of overcoming that presumption."). "Rule 807 is 'a narrow exception' to the rule against hearsay,'" *United States v. Cunningham*, 761 F. App'x 203, 206 (4th Cir. 2019) (quoting *Dunford*, 148 F.3d at 392), that "is 'used very rarely, and only in exceptional circumstances,'" *United States v. Huskey*, 90 F.4th 651, 670 (4th Cir. 2024) (quoting *United States v. Heyward*, 729 F.2d 297, 299–300 (4th Cir. 1984)); *see also In re C.R. Bard, Inc., MDL No. 2187, Pelvic Repair Sys. Prods. Liab. Litig.*, 810 F.3d 913, 925 (4th Cir. 2016) ("[T]he residual hearsay exception 'was meant to be invoked sparingly.'" (citation omitted)).

This case is not one of those "exceptional circumstances." *Huskey*, 90 F.4th at 670. In fact, the *New York Times* article flunks all four requirements that must be satisfied in order for a Court to "admit hearsay under the residual exception." *Cunningham*, 761 F. App'x at 206.

---

³ Other Courts of Appeals have reached the same result. *See, e.g.*, *Nooner v. Norris*, 594 F.3d 592, 603 (8th Cir. 2010); *Horta v. Sullivan*, 4 F.3d 2, 8 (1st Cir. 1993); *New England Mut. Life Ins. Co. v. Anderson*, 888 F.2d 646, 650 (10th Cir. 1989).

5

*First*, the article lacks the "circumstantial guarantees of trustworthiness equivalent to those of the recognized exceptions." *Cunningham*, 761 F. App'x at 206. Even if the quotations attributed to Mr. Goldstein by Mr. Toobin are literally accurate, the article's presentation of those quotations reflects authorial and editorial choices about which quotations to include and exclude, when to quote versus when to paraphrase, and what context to provide—all with an eye towards maximizing readership and engagement. *See New England Mut. Life Ins. Co. v. Anderson*, 888 F.2d 646, 650 (10th Cir. 1989) (holding that newspaper article recounting party's admission to murder was inadmissible hearsay and explaining that "[t]he fact that the statement was in the form of a newspaper account reinforces its hearsay character, for the final product is not the reporter's alone," and "[t]he article was intended, after all, to capture the interest of Los Angeles readers, who might otherwise have little interest in what occurs in Emporia, Kansas"). Those are the sorts of choices that should be subject to cross-examination. *See Larez*, 946 F.2d at 644 (holding that erroneous admission of newspaper article was not harmless, in part, because "the denial of the right to cross-examine the reporters may have deprived Gates of the opportunity to show the context in which the statements were made").

The trustworthiness problem is even more acute with respect to statements in the *New York Times* article that are *not* direct quotations. The government's brief reads as if the government seeks only to admit Mr. Goldstein's "quoted remarks." Br. 4; *see also, e.g.*, Br. 1 ("Goldstein was quoted on numerous topics"); Br. 2 ("there is no genuine dispute that Goldstein was quoted accurately in the article"); Br. 8 ("if Goldstein took the stand, the government would not need to seek this relief because it could cross examine Goldstein on his own quotes"). But that is inaccurate: the government also wants to admit factual statements *written by Mr. Toobin* (or his editor), including, for example, "specific amounts of money won and lost while playing

poker during the relevant time period" and the assertion that Mr. Goldstein was "out of the country for almost a full year." Br. 3-4. The government hypothesizes that Mr. Goldstein must have "admitted" those facts to Mr. Toobin, Br. 3-4—but the only way to confirm that theory would be to ask Mr. Toobin himself.

The government's reliance on *Boyd v. City of Oakland*, 458 F. Supp. 2d 1015 (N.D. Cal. 2006), and *Mandal v. City of New York*, No. 02 CIV. 1234 (WHP), 2006 WL 3405005 (S.D.N.Y. Nov. 26, 2006), is misplaced. As a threshold matter, those out-of-circuit district court decisions are not binding on this Court, and they certainly cannot countermand clear Fourth Circuit caselaw. Moreover, *Boyd* and *Mandal* involved indicia of trustworthiness not present here: in *Boyd*, corroborating deposition testimony of the quoted party, *see* 458 F. Supp. 2d at 1050; and in *Mandal*, deposition testimony of the reporter, the reporter's contemporaneous notes, *and* the availability of both the reporter and the declarants "to be called as witnesses and cross examined," 2006 WL 3405005, at *3.

*Second*, many of the statements in the article are not "evidence of a material fact," *Cunningham*, 761 F. App'x at 206; on the contrary, they are at best irrelevant and at worst prejudicial (and thus inadmissible under Rule 403). A non-exhaustive list of such immaterial, prejudicial statements—many of which pertain to conduct that happened long before or after the charged period—includes:

- "Goldstein's style of play reflected his swaggering, risk-friendly approach to litigation." ECF No. 327-2, at 6.
- "He bet wildly and recklessly, but his opponents were flummoxed by his blind aggression." *Id.*

7

- "That Goldstein had law clients in the poker world helped him explain to his wife his increasingly long absences from Washington." *Id.* at 8.
- "'I have both the benefit and the great disadvantage of not placing particular value on the money,' he said. 'So that means that I can play at very large stakes and not get psyched out about it, but it also means that I will take too many risks with too much money. So it's a blessing and a curse. It does not bother me.'" *Id.* at 12.
- "Goldstein's lifetime win-loss record has been frozen for the past year." *Id.* at 17.
- "I asked Goldstein whether he thought he had a problem. 'Definitely not,' he said. 'Because, for example, I haven't played in quite a while; I feel no desire to. I was very happy not gambling. I have no interest in other forms of gambling.'" *Id.*

*Third*, a hearsay statement is admissible under Rule 807 only if "it is more probative on the point for which it is offered than *any other evidence* that the proponent can obtain through reasonable efforts." Fed. R. Evid. 807(a)(2) (emphasis added); *accord Cunningham*, 761 F. App'x at 206. Yet the government has not even *attempted* to demonstrate that it has made an effort, much less a "reasonable" one, to obtain equivalent non-hearsay evidence—for example, by subpoenaing the "audio recordings" that the government claims exist (at 2), or by calling Mr. Toobin to testify. The government's argument (at 8 n.1) that presenting Mr. Toobin's testimony would be "[in]efficien[t]" and "[un]fair[]" is nothing more than an attack on the hearsay rule itself. "[O]ur common law heritage has always favored the presentation of live testimony over the presentation of hearsay testimony by the out-of-court declarant" because "[t]he live

8

testimony" of a witness, "whose demeanor the jury" is "able to observe and whose testimony" is "subject to cross-examination," categorically has "more probative value in establishing the truth than . . . bare statements transcribed" in writing. *United States v. Mathis*, 559 F.2d 294, 298 (5th Cir. 1977); *see also Larez*, 946 F.2d at 644 (explaining that the residual exception "creates a 'best evidence' requirement" and holding that a statement's admission "was erroneous because the newspaper quotations were not the best available evidence of what Gates said; testimony from the reporters themselves would have been better"). The government's complaint that allowing Mr. Goldstein to cross-examine Mr. Toobin might "give [him] an opportunity to cast doubt on the accuracy of statements" (at 8 n.1) in the article proves too much: that is *exactly* the purpose of the rule against hearsay.

*Fourth*, admitting the article will not "best serve the purposes of the Federal Rules of Evidence and the interests of justice." *Cunningham*, 761 F. App'x at 206. Revealingly, the government's reasons for admitting the *New York Times* article (at 6-8) would apply to *any* statement by a defendant in a news article. For example, the government claims (at 7) that the article carries "circumstantial guarantees of trustworthiness" because Mr. Goldstein willingly participated in the interview, the article was (according to the government) fact-checked by undisclosed fact-checkers, Mr. Goldstein has not requested a formal retraction, and the article contains exculpatory statements. Those purported indica of trustworthiness will be true of the vast majority of newspaper articles one party seeks to admit for use against an opposing party—yet the Fourth Circuit "has consistently held that newspaper articles are inadmissible hearsay." *Gantt*, 57 F. App'x at 150. Admitting the *New York Times* article under the residual exception

would therefore impermissibly "cause the exception to swallow the rule."[4] *Dunford*, 148 F.3d at 394.

## C. The *New York Times* Article Is Not Admissible as an Adopted Statement

The government's alternative argument (at 10) that the *New York Times* article is admissible as an adopted statement likewise lacks merit. "When a statement is offered as an adoptive admission, the primary inquiry is whether the statement was such that, under the circumstances, an innocent defendant would normally be induced to respond, and whether there are sufficient foundational facts from which the jury could infer that the defendant heard, understood, and acquiesced in the statement." *United States v. Williams*, 445 F.3d 724, 735 (4th Cir. 2006) (citation omitted).

The government has established none of those prerequisites here. *See Sec. & Exch. Comm'n v. Jacoby*, No. CV CCB-17-3230, 2021 WL 351176, at *12 (D. Md. Feb. 2, 2021) ("The burden of showing adoption is on the party seeking admission of the purported adoptive statement."). The government observes that Mr. Goldstein voluntarily sat for interviews, and supposes (without any substantiation) that Mr. Goldstien "confirmed his contributions" with *New York Times* fact-checkers. But the government does not know what the fact-checkers actually asked Mr. Goldstein to confirm, nor whether any corrections or clarifications offered by Mr. Goldstein were accepted. The government also does not know—and proffers no "foundational

---

[4] While the Court can easily rule now that the *New York Times* article is *inadmissible*, it would (at minimum) be premature to affirmatively rule that the article is *admissible*. The Fourth Circuit has cautioned that "Rule 807 . . . 'should be utilized only after much consideration and examination.'" *Cunningham*, 761 F. App'x at 206 (quoting *Dunford*, 148 F.3d at 392). And, as the forgoing discussion makes clear, whether any particular statement in the article is admissible under Rule 807 will turn on fact-intensive questions, including whether that specific statement is "evidence of a material fact" and whether the government could "reasonably obtain" other evidence on that point. *Id.* Those decisions must be made on a case-by-case basis at trial; not in a vacuum on an expedited basis less than a week before trial is set to begin.

facts" from which to infer—whether Mr. Goldstein actually read (i.e., "heard" and "understood") the published article. *Id.* And even if he had, the government offers no reason to conclude that "an innocent defendant would normally be induced to respond" to an inaccuracy in a newspaper article, *Williams*, 445 F.3d 724, 735, by "demand[ing] . . . a retraction," Br. 5. At least one recent Fourth Circuit decision strongly implies that such behavior should *not* be expected. *VLOX, LLC v. Mirzada Transp. & Logistics Co.*, 549 F. App'x 150, 162 (4th Cir. 2013) (newspaper article inadmissible where the proponent relied on a "silent admission theory" because "for silence to be admitted into evidence as a tacit admission, there must be preliminary proof of an accusatory statement"); *see also, e.g.*, *Jacoby*, 2021 WL 351176, at *12 ("Silence . . . is often 'thought to lack probative value on the question of whether a person has expressed tacit agreement or disagreement with contemporaneous statements of others.'" (quoting *United States v. Hale*, 422 U.S. 171, 176 (1975)).

In effect, admitting the *New York Times* article as an adoptive admission would require this Court to embrace a *per se* rule that a party "adopts" any and all statements made about him in a newspaper article unless he affirmatively "requested a retraction or corrections." Br. 6. Unsurprisingly, the government offers no case from any court adopting such a rule. In fact, the government does not cite a single case from *any* court admitting a newspaper article as an adoptive admission under *any* circumstances, *see* Br. 10—much less a court in the Fourth Circuit, which "has consistently held that newspaper articles are inadmissible hearsay," *Gantt*, 57 F. App'x at 150. The government also entirely fails to grapple with the fact that, as noted above, the appellant in *Greene* made precisely the same argument the government advances here—i.e., that the defendant city had "adopted . . . [a] statement" made by its mayor "in the newspaper" "by refusing to deny the statement[]." Am. Opening Br. of Appellant, 2015 WL 6598728, at *20

11

(Oct. 27, 2015). Nonetheless, the Fourth Circuit ruled that "the conveyance of that statement in the newspaper article . . . [was] hearsay." *Greene*, 637 F. App'x at 752.

## II. ADMISSION OF THE *NEW YORK TIMES* ARTICLE IS BARRED BY THE CONFRONTATION CLAUSE

"The Sixth Amendment's Confrontation Clause provides that, '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.'" *Crawford v. Washington*, 541 U.S. 36, 42 (2004) (citation omitted). Thus, the Confrontation Clause "bars 'admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination.'" *Davis v. Washington*, 547 U.S. 813, 821 (2006) (quoting *Crawford*, 541 U.S. at 53-54).

The government makes hardly any effort to defend the constitutionality of admitting the *New York Times* article without affording Mr. Goldstein the opportunity to cross-examine a live witness. The government asserts in a single, unreasoned sentence that "statements . . . like those that Goldstein made to the *Times* reporter . . . do not implicate the Confrontation Clause" because they are "non-testimonial" (Br. 11), but even that threadbare *ipse dixit* misses the mark: the dispositive question is not whether Mr. Goldstein's statements to Mr. Toobin were testimonial, but rather whether Mr. Toobin's statements in the article were. *See* pp. 2-3, *supra* (discussing the two different out-of-court statements contained in the article). On that critical issue, the government offers no analysis whatsoever.

Mr. Toobin's article is clearly "testimonial" within the meaning of the Confrontation Clause. As the Court explained in *Crawford*: "The text of the Confrontation Clause . . . applies to 'witnesses' against the accused—in other words, those who 'bear testimony.' [And] '[t]estimony,' in turn, is typically '[a] solemn declaration or affirmation made for the purpose of

12

establishing or proving some fact.'" 541 U.S. at 51. A reporter's presentation of the facts (as he has found them to be) in a major, well-respected newspaper is precisely that.[5] Moreover, the Court has explained that a statement is "testimonial" when it is "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 310-11 (2009). Any "objective" witness—including a sophisticated witness like Mr. Toobin, whose by-line describes him as "a former assistant U.S. attorney who writes about the intersection of law and politics," ECF No. 327-2 at 19—would understand that a profile about a criminal defendant and the pending case against him could "be available for use at" that "trial." *Melendez-Diaz*, 557 U.S. at 311.

The government's *ad hominem* attacks on Mr. Goldstein and his decision to grant Mr. Toobin an interview (at 11) are entirely beside the point. The defense is aware of no case holding that a defendant forfeits his rights under the Confrontation Clause by speaking to the press. Nor is the defense familiar with any judicial decision adopting the government's apparent view that a court may ignore the Confrontation Clause based on its own equitable balancing. What the Confrontation Clause requires here is simple: If the government wishes to present Mr. Toobin's statements as evidence, it must call Mr. Toobin to the stand.

---

[5] To the extent the government contends that a statement can be testimonial only if it "result[s] from questioning" (Br. 10), it ignores clear precedent. *See Davis*, 547 U.S. at 822 n.1 ("Our holding refers to interrogations because . . . the statements in the cases presently before us are the products of interrogations . . . . This is not to imply, however, that statements made in the absence of any interrogation are necessarily nontestimonial. The Framers were no more willing to exempt from cross-examination volunteered testimony or answers to open-ended questions than they were to exempt answers to detailed interrogation.").

### III. THE GOVERNMENT CANNOT EVADE THE RULE OF COMPLETENESS

The clear, settled legal rules that bar the government's gambit to admit the article are not mere technicalities. They are intended to prevent the sort of one-sided, acontextual, unfair presentation of out-of-court statements that the government contemplates here. If the government wishes to admit Mr. Goldstein's out-of-court statements as an admission of a party opponent, then the government must do so through competent evidence that allows Mr. Goldstein to place the government's cherrypicked statements in context under the rule of completeness.[6] Federal Rule of Evidence 106 provides that "[i]f a party introduces all or part of a statement, an adverse party may" even *"over a hearsay objection"* "require the introduction, at that time, of any other part—or any other statement—that in fairness ought to be considered at the same time." Fed. R. Evid. 106 (emphasis added). Without knowing more about how the government plans to present its case, the defense cannot predict which additional statements, if any, "ought to be considered at the same time" as the government's evidence. *Id.* But the government's effort to nullify the rule altogether by seeking admission of the article is improper.

### CONCLUSION

For the reasons set forth herein, the Court should deny the government's motion *in limine*.

Dated: January 8, 2025                                  Respectfully submitted,

                                                        /s/ *Jonathan I. Kravis*
                                                        Jonathan I. Kravis (Bar No. 31556)
                                                        Stephany Reaves (Bar No. 19658)
                                                        Sarah E. Weiner (*pro hac vice*)

---

[6] For the avoidance of doubt, even if this Court were to admit the *New York Times* article, the defense objects to any mention of the article's title—which is both inadmissible hearsay and highly prejudicial. *See* ECF No. 327-1 ("He Was a Supreme Court Lawyer. Then His Double Life Caught Up With Him."). The government has correctly proposed to redact the article's title. *See* ECF No. 327-2, at 1.

MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue NW, Suite 500E
Washington, DC 20001
(202) 220-1100
Jonathan.Kravis@mto.com
Stephany.Reaves@mto.com
Sarah.Weiner@mto.com

Adeel Mohammadi (*pro hac vice*)
MUNGER, TOLLES & OLSON LLP
350 S. Grand Avenue, 50th Floor
Los Angeles, CA 90071
(213) 683-9100
Adeel.Mohammadi@mto.com

*Attorneys for Defendant Thomas Goldstein*