IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | CRIMINAL NO. LKG-25-6 |
| | * | |
| THOMAS C. GOLDSTEIN, | * | |
| | * | |
| Defendant. | * | |
| | ******** | |

### DEFENDANT THOMAS C. GOLDSTEIN'S MOTION TO EXCLUDE TESTIMONY BY JONATHAN LEVITAN REGARDING CERTAIN G&R EMPLOYEES

This Court previously ruled that it would determine the admissibility of evidence regarding the "four employees" in the context of witness testimony. At 5:00pm today, the government advised the defense that it intends to introduce testimony from Jonathan Levitan, one G&R's former office managers, tomorrow. The defense expects the government will seek to elicit testimony from Mr. Levitan regarding the four employees, including their onboarding, salary, and benefits.

The Court previously granted the defense motion to dismiss allegations concerning particular firm employees as supporting a theory of criminal liability that is void for vagueness. *See* ECF Nos. 286, 297 at 10-14. At that time, the Court limited its holding to the tax evasion charge. The Court denied without prejudice a defense motion to exclude evidence relating to the employees evidence, ruling that the admissibility of this evidence on alternative grounds should be decided in the context of trial. The Court stated that it would "need to hear more in terms of" the government's alternative theories for admission of the employees evidence on other grounds,

1

but critically took care to highlight that "the substantial prejudice is probably going to outweigh any probative value." 12/12/25 Hr'g Tr. at 272:18-21.

Respectfully, the defense submits that the issue of the employees evidence cannot be deferred any longer. The government asked Mr. Russell today a short series of questions about whether G&R had hired a Russian translator. That was the government's opening foray into the employees evidence.[1] Tomorrow's witness will go into much more detail, at much greater length, on this issue. And if he is permitted to do so, the defense will be forced to begin presenting responsive evidence (because the witness cannot be recalled).

Any testimony Mr. Levitan may give regarding the four employees would be of vanishingly low probative value and incredibly prejudicial. Indeed, even the questions the government might *ask* of Mr. Levitan, not to mention the documents the government might publish to the jury before defense counsel has had the opportunity to object, will be highly prejudicial. The defense therefore submits this written motion so that the Court can resolve the defense's objection outside the presence of the jury.

## **ARGUMENT**

The government has previously offered two alternative grounds for admissibility of the employees evidence. In its opposition to the defense's initial pretrial motion to dismiss, the government argued only that the employees evidence *incidentally* supported the willful failure-to-pay *misdemeanors*. It reasoned that this was one of countless ways in which Mr. Goldstein had spent money in the relevant period. *See* ECF No. 135, at 27-28. More recently, in a supplemental filing, the government argued that the employees evidence is relevant to the false

---

[1] Defense counsel renewed our objection the employees evidence as a general matter and objected specifically to the government's use of a particular document with the witness. This Court sustained the defense's objection to the document for lack of foundation.

2

tax return charges.  Importantly, the government relied on the *exact* same theory as the tax evasion charges that this Court already invalidated.  *See* ECF No. 230, at 3 & n.1.  Evidence regarding the four employees is inadmissible under either theory.

*First*, with respect to the false return charges, which now seems to be the government's primary argument, testimony regarding the employees is inadmissible because this theory is squarely foreclosed by the Court's prior ruling.  In dismissing "the allegations concerning the four women employees related to the Government's tax evasion charges in Count 3," this Court explained that "the Court is not satisfied that the Defendant, or a person of ordinary intelligence, would know that the conduct alleged . . . with regards to the four women employees falls within the scope of Section 7201."  ECF No. 297, at 12-13.  If Mr. Goldstein would not have known that causing the four employees to receive salaries and benefits constituted tax evasion under 26 U.S.C. § 7201, then it follows *a fortiori* that Mr. Goldstein could not have known that listing those salaries and benefits as deductions would make a return "false" under 26 U.S.C. § 7206(2), because the government's theory of liability as to both charges was precisely the same—i.e., that the salaries and benefits were not deductible as ordinary and necessary business expenses.  *See* ECF No. 297, at 11 (recounting government's theory of liability).[2]

---

[2] The government previously argued that its theory of liability under Section 7206(2) was not void for vagueness because "by the time [Mr.] Goldstein aided and assisted in preparing the false returns, he knew that the women had been paid excessive and unreasonable compensation for doing little or no work."  ECF No. 230, at 3 n.1.  But that proves the defense's point.  The government's current theory depends entirely on Mr. Goldstein knowing that the compensation at issue was excessive and unreasonable.  The Court already held that there is no relevant statutory, regulatory, or judicial guidance that would tell an employer like Mr. Goldstein in advance that was true.  The government thus cites no standard by which a person of ordinary intelligence could determine what makes someone's compensation "excessive" or "unreasonable" in relation to the amount of work they did.  *Id.*

All the same reasons this Court gave for rejecting the government's theory of Section 7201 liability apply with equal force to Section 7206(2). Like Section 7201, Section 7206(2) "does not address whether and when the deduction of an employee's salary and/or health insurance premiums as a business expense would," ECF No. 297, at 11, make a tax return "fraudulent or is false as to any material matter," 26 U.S.C. § 7206(2).[3] And as with Section 7201, "the relevant case law" on Section 7206(2) does not "identify a clear standard . . . to allow a reasonable person to distinguish the line between lawful and criminal conduct" when it comes to "treating the salary and/or health insurance premiums of an employee as an ordinary and necessary business expense . . . when the employee performed . . . 'little[]' work." ECF No. 297, at 11. Indeed, the government has never cited a single relevant case under Section 7206(2) at all.

While the government told the Court today that it would not get into the personal relationships between Mr. Goldstein and the employees, it is inevitable that the government will seek to introduce that evidence at some point if it is permitted to pursue this unconstitutional theory. Although the government has previously conceded that "hiring and paying a salary to an individual with whom an employer is having romantic relationship does not, alone, render the employee's salary to be a personal expense," ECF No. 297, at 11-12, the government's *entire theory* of criminality hinges on the fact that Mr. Goldstein had a personal relationship with the employees in question—because, in the government's telling, the nature of that relationship

---

[3] In fact, Mr. Goldstein had even *less notice* that it would violate Section 7206(2) to list the employees' salaries and benefits as deductions, because that is precisely the information requested by the allegedly false Form 1120S. *See* GX-0066 (Line 8 requesting "Salaries and wages (less employment credits)" and Line 18 requesting "Employee benefits programs"). There was nothing "false" about the tax return stating that the firm paid those salaries and provided those benefits.

4

means that the employees were somehow not "bona fide" and their salaries and benefits were not deductible.

The government's earlier halfhearted suggestion that this argument is untimely is without merit. Courts regularly consider it appropriate to adjudicate as-applied vagueness challenges at trial. *See United States v. Gotti*, No. S4 02 –CR 743 (RCC), 2004 WL 32858, at *6 (S.D.N.Y. Jan. 6, 2004); *United States v. Bastian*, 112 F. Supp. 2d 378, 380 (S.D.N.Y. 2000) (void-for-vagueness challenges should be "examined in light of the facts of the case at hand"). In fact, courts frequently defer or deny pretrial void-for-vagueness motions without prejudice as premature. *See, e.g.*, *United States v. Costianes*, 673 F. Supp. 3d 756, 759 (D. Md. 2023) (collecting cases); *United States v. Madison*, 337 F. Supp. 3d 1186, 1195 (M.D. Fl. 2018) (denying as "premature" an as-applied vagueness challenge). Indeed, the government itself previously argued that the Court should not consider whether the charges against Mr. Goldstein were void for vagueness until trial. *See* ECF No. 230 at 2; *cf. Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1308 (11th Cir. 2009) ("Because [an as-applied] challenge asserts that a statute cannot be constitutionally applied in particular circumstances, it . . . requires the development of a factual record for the court to consider.").

In any event, testimony regarding the employees would be far more prejudicial than probative of the false return charges that remain in the case. The value of testimony on this theory is negligible: Even if the government proves *everything* it has promised with respect to the employees—i.e., that they *collectively* were paid less than $32,000 in salary and that the firm paid less than $16,000 in health insurance premiums on their behalf, *see* ECF No. 135, at 4, 7, 9, 14—that would mean G&R's deduction of those employees' salaries and benefits *at most* saved Mr. Goldstein $17,722.63 in taxes (assuming the highest tax bracket of 37%). These are

incredibly small numbers, particularly in light of the fact that the firm took deductions of approximately $6 million and $4 million in the years in question.

On the other hand, as this Court has already recognized, testimony regarding the employees would be enormously prejudicial. *See* 12/12/25 Hr'g Tr., at 272:16-23 ("I'm inclined to say the substantial prejudice is probably going to outweigh any probative value . . . ."). At the government's insistence, every juror was asked in voir dire about their opinions on extramarital affairs. (Counsel for the government even disclosed to one potential juror that the affairs in question were *Mr. Goldstein's.*) If Mr. Levitan is permitted to testify regarding the four female employees in question, those same jurors will easily infer—or, at the very least, strongly suspect—that those employees were involved in romantic relationships with Mr. Goldstein. That is a bell that simply cannot be unrung.

Moreover, even if the government somehow manages to entirely avoid the topic of the employees' relationship with Mr. Goldstein (which, again, seems exceedingly unlikely), *any* testimony that invites the jury to question whether the employees did "enough" work is necessarily prejudicial because it raises a serious risk that the jury will convict based on an unconstitutionally vague theory of liability. Even if this Court were to limit such evidence down the line, the seed will already have been planted, and therefore the damage will already have been done.

In a similar situation, the Fourth Circuit cautioned against permitting the government to do exactly what it hopes to do here: "to use th[e] least serious charge as a conduit for bringing in unseemly acts," because doing so "then might affect [the jury's] consideration of the more serious charges." *United States v. Briley*, 770 F.3d 267, 277 (4th Cir. 2014). Even though the evidence in *Briley* had "some slight probative value" (which is not true here), the court reasoned

that the government's attempt "to push the defendant's personal habits and inclinations forward raise[d] Rule 403 concerns" because it "risked directing the jury's attention to the wrong place." *Id.*

*Second*, the government's alternative theory—that evidence regarding the employees is relevant to the failure-to-pay misdemeanors—fares no better. This theory has nothing to do with the employees' employment at the firm or their relationships with Mr. Goldstein. Rather, the government apparently seeks to use this testimony to establish that, in the years Mr. Goldstein had outstanding tax liabilities, he spent money on things other than his taxes. But the government does not need the employees evidence to make that point: the defense notes that the Court has already conditionally admitted roughly 70 pages of "personal spending" evidence under Rule 902(11) at the government's request, *see, e.g.*, GX-780, GX-1066, GX-1067, GX-1068, GX-1070, GX-1071, and the government's exhibit lists discloses that it intends to offer hundreds upon hundreds of pages more[4]—some of which was already presented in the government's opening statement. Given the nature of Mr. Goldstein's relationships with the four employees, they would be an especially and unnecessarily prejudicial conduit for such evidence.

## CONCLUSION

Testimony from Mr. Levitan regarding the employees would be enormously prejudicial to Mr. Goldstein and a deep intrusion on the personal privacy of those women. Once elicited before the jury, there will be no way to cure the damage if the Court later concludes (as it must)

---

[4] *See, e.g.*, GX-28, GX-589, GX-590, GX-596, GX-653, GX-654, GX-765, GX-767, GX-768, GX-771, GX-772, GX-773, GX-774, GX-775, GX-776, GX-777, GX-778, GX-779, GX-781, GX-782, GX-803, GX-848, GX-851, GX-853, GX-854, GX-857, GX-858, GX-859, GX-860, GX-861, GX-862, GX-863, GX-864, GX-865, GX-866, GX-867, GX-868, GX-869, GX-870, GX-872, GX-873, GX-874, GX-875, GX-876, GX-877, GX-927, GX-930, GX-1033, GX-1034, GX-1044, GX-1045, GX-1046, GX-1133, GX-1142, GX-1150, GX-1151, GX-1152, GX-1153, GX-1154, GX-1155.

that this evidence is inadmissible in light of the Court's prior ruling, the evidence's minimal probative value, and its substantially prejudicial effect. The defense therefore requests that the Court exclude testimony by Mr. Levitant on this topic.

Dated: January 20, 2026

Respectfully submitted,

/s/ *Jonathan I. Kravis*
Jonathan I. Kravis (Bar No. 31556)
Stephany Reaves (Bar No. 19658)
Sarah E. Weiner (*pro hac vice*)
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue NW, Suite 500E
Washington, DC 20001
(202) 220-1100
Jonathan.Kravis@mto.com
Stephany.Reaves@mto.com
Sarah.Weiner@mto.com

Adeel Mohammadi (*pro hac vice*)
MUNGER, TOLLES & OLSON LLP
350 S. Grand Avenue, 50th Floor
Los Angeles, CA 90071
(213) 683-9100
Adeel.Mohammadi@mto.com

*Attorneys for Defendant Thomas Goldstein*