IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>THOMAS C. GOLDSTEIN,<br><br>Defendant. | CRIMINAL NO. LKG-25-0006 |

**GOVERNMENT'S MOTION *IN LIMINE* TO ADMIT
GOLDSTEIN'S FAILURE TO FILE TAX RETURNS FOR 2022-2024**

Thomas Goldstein's attacks on his former accounting firm Gelman, Rosenberg & Freedman CPAs ("Gelman") have opened the door to his failure to file tax returns for 2022 through 2024. Throughout the trial, Goldstein has introduced cherrypicked and marginally relevant evidence to support his central theme: blame everyone else, especially Gelman. The campaign against Gelman has only intensified in recent days, culminating in hours of testimony from Goldstein's paid expert, Zachary Marks, who rehashed evidence about Gelman and opined that Gelman violated numerous professional standards.

Goldstein's gratuitous assault on Gelman provides good cause to bring this evidentiary motion mid-trial. Goldstein has gone too far, and the government should be permitted to rebut the farcical notion that Goldstein is only facing charges because of Gelman. Specifically, the government seeks to introduce evidence that Goldstein failed to file tax returns for 2022 through 2024 (after Gelman was out of the picture). This evidence is highly probative both of Mr. Goldstein's willfulness in violating the tax laws prior to 2022 and as a response to his attacks on Gelman. And this evidence will not unfairly prejudice Goldstein because the jury has already heard evidence of conduct that is much more egregious than failing to file tax returns.

**BACKGROUND**

**I.   Pretrial Litigation**

On September 12, 2025, the government notified Goldstein that it intended to introduce evidence of his failure to file tax returns after the charged period (that is, after his tax year 2021 returns were filed). On October 24, 2025, Goldstein filed a motion *in limine* to preclude evidence of, among other things, his "failure to file or pay federal and state taxes outside of the charged period." Dkt. 210 at 12-15 ("Rule 404(b) motion"). In its opposition, the government argued that the evidence was relevant to Goldstein's willfulness and to show a lack of mistake, and cited cases supporting the admissibility of such evidence. Dkt. 224 at 19-22. The Court heard argument on the Rule 404(b) motion on December 12, 2025. The Court then issued a written order denying Goldstein's Rule 404(b) motion except as to specific categories including "evidence that the Defendant did not timely file" tax returns after the 2021 tax year. *See* Dkt. 287 at 2.

**II.   Trial**

    **A.   Opening Statements and Government's Motion to Clarify (Dkt. 352)**

On January 15, 2025, trial began with opening statements. Goldstein spent much of his opening statement blaming Gelman for his tax crimes. Among other things, Goldstein argued that:

- he "acted in good faith relying on his accountants to accurately report his income and his deductions," Ex. 1, 1/15/26 Tr. 53:15-17;

- he "sits here accused of willful crimes because [Gelman] didn't do their jobs properly," Ex. 1, 1/15/26 Tr. 75:3-8;

- "all of the errors that [Gelman] made in its accounting, in its reporting, in its advice, are going to translate directly to the charges that the government is bringing against Mr. Goldstein," Ex. 1, 1/15/26 Tr. 67:16-21; and

- "Mr. Goldstein went out of his way to ask for [certain income] to be reported to make sure it was in the books and the accounting firm ignored that," Ex. 1, 1/15/26 Tr. 67:3-9.

2

These arguments were reinforced by Goldstein's opening slides, which included an entire section—comprising 19 slides out of 75—focused on "GRF ERRORS." Goldstein's gripes with Gelman were summarized on the following slides from his opening statement:

**GRF ERRORS**
- GRF ERRORS
  - MISREPORTED 2016 POKER
  - CAN OF WORMS ADVICE
  - FAILED TO REPORT FOREIGN BANK ACCOUNT
  - FAILED TO REPORT MALAYSIA INCOME
  - ADVISED TO AVOID TAX COLLECTION

**GRF ERRORS**
- GRF CPAs & ACCOUNTANTS
  - KNEW ABOUT PERSONAL PAYMENTS
  - THEIR JOB TO CLARIFY
  - DIDN'T ASK FOR DOCUMENTS
  - DIDN'T CHECK CLASSIFICATIONS
  - DIDN'T REVIEW WITH MR. GOLDSTEIN
  - LAST MINUTE FILING

Goldstein also argued to the jury in his opening that Gelman deleted or destroyed relevant documents.

On January 18, 2025, before the second day of trial, the government filed a motion to clarify that certain evidence from 2022 and later was admissible. Dkt. 352. The motion argued that

Goldstein's opening statement—and specifically the attacks on Gelman—opened the door to evidence that he failed to file tax returns in 2022 through 2024. Although, at the time, the Court denied the motion, it explained that the motion was better raised at a later time. The Court stated that the appropriate time to raise the argument was after Goldstein "presented evidence . . . to suggest . . . that [he] . . . was just relying on [Gelman] and the government felt that that really wasn't what was going on." Ex. 2, 1/20/2026 Tr. 8-9.

### B. Evidence Introduced by Goldstein at Trial

The evidence introduced by Goldstein at trial confirms his central themes are (i) he relied on Gelman and (ii) Gelman's "colossal" mistakes are what led to the tax charges Goldstein faces.

For example, Goldstein cross-examined his former firm managers/personal assistants for hours on purported mistakes made by Gelman and its representatives, as well as Goldstein's purported reliance on Gelman. *See, e.g.,* Ex. 2, 1/20/2026 Tr. 34:15-19 (Molly Runkle) ("Q: So, essentially, it seemed that the accountant who was responsible for preparing Mr. Goldstein's tax returns didn't know his own office was responsible for maintaining the accounting books; right?"); Ex. 4, 1/22/2026 Tr. 38:14-16 (Jonathan Levitan) ("Q: But to be clear, at the end of the day, you all followed the accountant's advice; right?"); Ex. 6, 2/2/2026 Tr. 71:21-23 (Kathleen Bart) ("Q: And the accountants at GRF, essentially, admitted to you that this was their mistake?"); Ex. 6, 2/2/2026 Tr. 238:5-9 (Angie Gou) ("Q: But [Goldstein and his wife] were relying on Mr. Deyhle and the accounting firm to help them prepare their taxes accurately each year; right?").

Goldstein reiterated the same themes during his cross-examinations of witnesses who had no interactions whatsoever with Gelman. *See, e.g.*, Ex. 1, 1/15/2026 Tr. 196:17-20 (Alec Gores) ("You rely on the expertise of the tax people who advise you about how to handle the gambling winnings when it comes to tax stuff; right?"); Ex. 2, 1/20/2026 Tr. 79:9-11 (Bob Safai) ("You rely

on [your] accountant's expertise to figure out how to treat that stuff, gambling wins and losses?"); Ex. 3, 1/21/2026 Tr. 116:18-21 (Darren Robbins) ("Your firm relies on the expertise of accountants for tax stuff; right?"); Ex. 5, 1/28/2026 Tr. 60:5-8 (Vivek Rajkumar) ("You rely on the expertise of your accountant to help you figure out the tax treatment of your gambling wins and losses over the year; right?"); Ex. 5, 1/28/2026 Tr. 82:15-17 (Tobias Maguire) ("You rely on them, the accountant, the business manager firm, to know the rules for tax purposes; right?").

This week, Goldstein cross-examined his former tax preparer, Walter Deyhle, for hours about his or Gelman's purported errors. *See, e.g.*, Ex. 7, 2/4/2026 Tr. 43:9-13 ("Q: There are a bunch of mistakes on that 2016 tax return aren't there?"), 85:1-5 ("Q: No. No. No. No. No. No. No. It's not just that this number was placed on the wrong line. This number wasn't supposed to be on the tax return at all, was it?"). Goldstein also cross-examined Mr. Deyhle on Gelman's alleged deletion of documents and persisted with the questioning even after Mr. Deyhle testified he had no personal knowledge of the issue. *See* Ex. 7, 2/4/2026 Tr. 124:9-11 ("Q: So, if the defense learned that GRF had destroyed emails, you wouldn't know about that?"), 133:18-20 ("Q: Do you know that GRF told us that they destroyed a bunch of those e-mails?"). And, in questioning that the Court subsequently held improper, Goldstein elicited that Mr. Deyhle had never told Goldstein that failing to timely pay taxes was a crime. Ex. 7, 2/4/2026 Tr. 149:3-8.

Also, this week, Goldstein called Zachary Marks, a paid expert witness from a large consulting firm. Mr. Marks, who has never been a professional tax preparer, testified for hours about Gelman's purported errors and shortcomings. Mr. Marks walked the jury through an extensive demonstrative slide deck (Ex. 9, DX797) focusing entirely on the conduct of Gelman and its representatives while ignoring Goldstein's blatant misconduct and concealment. Mr. Marks paired his attacks on Gelman with suggestions that Goldstein was relying in good faith on Gelman.

Ex. 8, 2/5/2026 Tr. 163:18-164:2 ("clients generally hire [tax preparers] to rely on that expertise because the tax client does not have that expertise themselves"), 218:22-219:9 (tax preparers "should specifically assume that clients are going to rely on the tax advice they receive").

Mr. Marks did not stop at criticizing Gelman based on his own expertise and experience. Mr. Marks also testified to (and showed the jury) specific "relevant standards and best practices" that, according to Mr. Marks, Gelman did not meet in its work for Goldstein and his law firm. Ex. 9, DX797 at 11 (quoting AICPA Statement on Standards for Tax Services No. 2 and AICPA FAQs on Statement on Standards for Tax Services No. 2), 12 (quoting AICPA Tax Section Practice Guide "Due Diligence in Tax Services" (May 2015), p. 12), 13 (quoting AICPA Statement on Standards for Tax Services No. 3); 17 (quoting AICPA Statement on Standards for Tax Services No. 7). Mr. Marks' critiques of Gelman were summarized in this slide:



Ex. 9, DX797 at 8.

Indeed, Mr. Marks was so laser focused on Gelman that he could not give intelligible answers to simple questions about Goldstein's failure to report poker winnings to Gelman. *See* Ex. 8, 2/5/2026 Tr. 250:10-15 (conceding he did not analyze "whether or not the [poker] amounts that Mr. Goldstein reported were accurate"). For example, Mr. Marks did not know that Goldstein's

poker ledgers (GX2 and GX3) were in fact poker ledgers. Ex. 8, 2/5/2026 Tr. 252:9-13 ("I don't know if this is a gambling ledger, and I don't know who it was shared with."). Mr. Marks had not even seen the poker ledgers until he observed Mr. Deyhle's trial testimony. Ex. 8, 2/5/2026 Tr. 249:8-13. In other words, after Goldstein chose not to provide the poker ledgers to Mr. Deyhle in 2016 and 2017, he again chose not to provide the poker ledgers to the expert witness he picked to criticize Mr. Deyhle's and Gelman's work.

## ARGUMENT[1]

### I. Good Cause Exists to File This Motion Now

The government has good cause for filing this motion *in limine* after the deadline. Once Goldstein introduced the evidence outlined above, the government promptly informed the Court of its position and prepared and filed this motion *in limine*. The government filed a similar motion (Dkt. 352) after opening statements, but the Court noted that the appropriate time to raise the argument was after Goldstein "presented evidence . . . to suggest . . . that [he] . . . was just relying on [Gelman] and the government felt that that really wasn't what was going on." Ex. 2, 1/20/2026 Tr. 8-9. That is precisely where we are now. Goldstein has presented evidence suggesting he was relying on Gelman, and that Gelman was the reason he was charged with tax crimes. The government disagrees on both points. The Court should entertain this motion on the merits.

### II. Goldstein's Failure to File Returns for 2022-2024 Is Admissible Evidence

Goldstein is trying to transform his criminal trial into a wide-ranging investigation of Gelman's conduct and purported mistakes—while simultaneously arguing that he relied in good faith on Gelman throughout the charged time period. Mr. Marks' testimony this week was perhaps

---

[1] The government previously briefed the reasons why Goldstein's failure to file tax returns for 2022 through 2024 should be admissible at trial, *see* Dkt. 224 at 19-22; Dkt. 352 at 11-15, and incorporates that briefing here.

7

the best encapsulation of this strategy. He testified at length about Gelman's shortcomings and opined "that [Gelman's] work did not comply with professional standards or best practices in several significant areas." Ex. 8, 2/5/2026 Tr. 153:17-22. At the same time, Mr. Marks indicated to the jury—without saying it—that Goldstein relied in good faith on Gelman. Ex. 8, 2/5/2026 Tr. 163:18-164:2 ("clients generally hire [tax preparers] to rely on that expertise because the tax client does not have that expertise themselves").

The government should be permitted to respond with evidence rebutting the argument—which Goldstein made expressly in his opening statement—that he is only facing tax charges because of Gelman.

Introducing Goldstein's failure to file tax returns in 2022 through 2024 is a logical and just solution. A defendant's tax misconduct after the charged time period is relevant and admissible to prove intent and willfulness. *See, e.g.*, *United States v. Johnson*, 893 F.2d 451, 452-53 (1st Cir. 1990) (affirming admission of defendant's failure to "file an income tax return for 1987[]" because it "was relevant to show [his] willfulness and absence of mistake in filing [false forms] during the years 1982-86 [so t]he jury could reasonably infer from that the improper filings in the years immediately previous were likewise infected by tax evasion purpose"); *United States v. Upton*, 799 F.2d 432, 433 (8th Cir.1986) ("Evidence of [defendant's] questionable compliance with tax laws, both in the years prior to and *subsequent to* [the years of the charged conduct] is probative of willfulness in the present context." (emphasis added)).[2]

Here, Goldstein continued to violate the tax laws after he stopped using Gelman for tax preparation. Goldstein chose to hide his poker winnings from the government during and after his

---

[2] This norm of admitting subsequent tax misconduct mirrors the general rule that a defendant's uncharged past tax misconduct is admissible to prove intent. *See, e.g.*, *United States v. Daraio*,
(continued...)

8

relationship with Gelman.³ The government should be able to make that straightforward, chronological point. It is probative of his willfulness and squarely rebuts Goldstein's incessant attacks on Gelman because—as his failure to file will confirm—the driving force behind Goldstein's tax evasion and false returns was not Gelman but rather Goldstein's serial concealment of poker winnings from the government.

This type of evidence is especially important, and all the more admissible, when a defendant blames the charged conduct on his accountants—just as Goldstein is now. *See United States v. Bok*, 156 F.3d 157, 165-66 (2d Cir. 1998) (affirming admission of defendant's entities' failure "to file federal . . . corporate returns for the years during *and after* those in the indictment" to prove willfulness where the defendant "suggested that *his reliance on his accountant* effectively negated his willfulness" (emphasis added)). This evidence is critical to "provide the jury with the necessary context for the government's claim" that Goldstein's conduct was willful. *Cf. United States v. Siegel*, 536 F.3d 306, 316-17 (4th Cir. 2008) (reversing exclusion of subsequent conduct and noting this conduct were intrinsic as necessary context to the charges). Otherwise, it may be left with the profoundly wrong impression that its deliberations will entail passing judgment on Gelman's compliance with the professional standards discussed by Mr. Marks, and/or that Goldstein became fully compliant with his tax obligations after he stopped using Gelman.

---

445 F.3d 253, 264 (3d Cir. 2006) (collecting cases and summarizing, "In cases involving violations of federal tax laws such as tax evasion, a defendant's past taxpaying record is admissible to prove willfulness circumstantially" (cleaned up)); *United States v. Farr*, 701 F.3d 1274, 1281 (10th Cir. 2012) (affirming admission of tax penalties prior to the charged conduct to prove willfulness); *see also United States v. Lord*, 404 F. App'x 773, 779 (4th Cir. 2010) ("[The defendant]'s willfulness also can be inferred from her pattern of failing to pay over the taxes for an extended period of time.").

³ To be clear, the government is not asking in this motion to introduce any additional evidence of Goldstein's poker winnings or losses after 2022. But of course if Goldstein testifies it could open up any number of doors including to post-2022 poker activities.

Further, the evidence would not unfairly prejudice Goldstein in the context of the rest of the admissible evidence. *See* Fed. R. Evid. 403. His failure to report poker winnings in 2022 through 2024 is "substantially similar, or at least no more sensational, than the crimes charged," so "there is *no* unfair prejudice" at all. *See United States v. Chaudhri*, 134 F.4th 166, 184 (4th Cir. 2025) (emphasis added). Thus, there is *zero* risk of the probative value being substantially outweighed by unfair prejudice. The evidence at trial has shown that Goldstein hid his poker activity and winnings from the government including by omitting it from his tax returns. Introducing Goldstein's failure to file tax returns in 2022 through 2024 is no more sensational than the evidence already presented at trial including his false statements to government representatives, retrieving $1 million in cash from a junket cage in Macau and bringing it back to the U.S. in a duffel bag, offering things of value including Bitcoin to a former firm manager/personal assistant after the IRS-CI investigation went overt, and on and on. He is already charged with multiple federal felonies, including tax evasion (which Goldstein twice called the "lead charge" in opening), so his subsequent misdemeanor failure to file tax returns is arguably *less* sensational than this charged conduct. And while true that "all evidence suggesting guilty is prejudicial to a defendant," "[t]hat kind of general prejudice . . . is not enough to warrant exclusion of otherwise relevant, admissible evidence." *See Siegel*, 536 F.3d at 319 (quoting *United States v. Williams*, 445 F.3d 724, 730 (4th Cir. 2006)). Goldstein's failure to file tax returns in 2022 through 2024 will not cause him any harm cognizable under Rule 403.

Goldstein's unending attacks on Gelman has rendered essential—to even the playing field—his failure to file tax returns in 2022 through 2024. Indeed, Mr. Marks' testimony alleging that Gelman representatives violated binding professional standards—and Goldstein's repeated references to spoliation by Gelman—may also necessitate other corrective remedies such as jury

instructions at the close of evidence. But for now, the government has proposed a reasonable way forward to curing the unfair prejudice and confusion wrought by Goldstein's presentation of evidence at trial.

## CONCLUSION

The government respectfully requests a ruling that Goldstein's failure to file tax returns for tax years 2022 through 2024 is admissible at trial.

Respectfully submitted,

Kelly O. Hayes
United States Attorney

Dated: February 7, 2026

/s/ *Hayter L. Whitman*
Hayter L. Whitman
Trial Attorney
Department of Justice—Tax Division

Sean Beaty
Senior Litigation Counsel
Emerson Gordon-Marvin
Trial Attorney
Department of Justice—Tax Division

Adeyemi Adenrele
Assistant United States Attorney
District of Maryland