IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | CRIMINAL NO. LKG-25-6 |
| | * | |
| THOMAS C. GOLDSTEIN, | * | |
| | * | |
| Defendant. | * | |

*******

## DEFENDANT THOMAS C. GOLDSTEIN'S MOTION IN LIMINE REGARDING HIS TESTIMONY

Tomorrow, the defense will call Defendant Thomas C. Goldstein to testify in his own defense. As the Court is aware, the decision of whether to testify belongs to Mr. Goldstein alone, and it is a decision which implicates significant constitutional rights under the Fifth Amendment. Accordingly, in advance of his testimony, the defense respectfully requests that the Court grant this motion *in limine* to clarify the scope of any cross-examination by the government and to order that certain records the defense may introduce with Mr. Goldstein are admissible. While the defense believes that each of the issues briefed below are straightforward applications of well-established law, the defense brings this motion out of an abundance of caution.

Mr. Goldstein has good cause to bring this motion *in limine* at this stage. Mr. Goldstein has a constitutional right to decline to testify in his own defense, which includes the right to evaluate the government's case-in-chief before making any decision to testify. *See United States v. Ryan*, 448 F. Supp. 810, 811 (S.D.N.Y.), aff'd, 594 F.2d 853 (2d Cir. 1978) ("It is perfectly normal and proper for a defendant to postpone the decision as to whether or not he will testify

1

until the end of the government's case.  Only then can he truly weigh the strength and weakness of the government's case . . . .").  Now that the government has rested its case-in-chief, Mr. Goldstein is filing this motion *in limine* concerning the scope of his testimony as well as seeking the admission of certain records.

## ARGUMENT

I.   **The Court Should Order That the Government is Precluded From Eliciting Testimony about Any Extramarital Relationship.**

The Court should order that Mr. Goldstein's personal relationships, including extramarital relationships, are impermissible subjects of cross-examination.  Courts have long recognized that evidence of an extramarital relationship runs headlong into Rule 403's unfair prejudice analysis.  *See, e.g.*, *United States v. Bistrup*, 449 F.3d 873, 882 (8th Cir. 2006)*; Jones v. Swanson*, 341 F.3d 723, 735 (8th Cir. 2003); *Bans Pasta, LLC v. Mirko Franchising, LLC*, No. 7:13-CV-360, 2014 WL 12920975, at *2 (W.D. Va. Dec. 29, 2014).  As the Fourth Circuit has recognized, "[s]hining such a bright light on [the defendant's] . . . sexual activities risk[s] directing the jury's attention to the wrong place."  *United States v. Briley*, 770 F.3d 267, 277 (4th Cir. 2014).  Indeed, this Court recently recognized that evidence about "Mr. Goldstein's personal choices and relationships" is unduly prejudicial to Mr. Goldstein, and ordered that the government would not be able to put forward evidence related to the four women mentioned in the Indictment on that basis.  1/21/26 Tr. 22:10-12; *see also id.* at 23:13-14 ("We're not going any further on those topics."); 2/2/26 Tr. 89:13-18 (not permitting the government to question Ms. Bart on "something to do with the wom[e]n"); 2/9/26 Tr. 63:16-17 ("[W]e're not going to talk about the transactions involving the women.").[1]

---

[1]   In its ruling on pretrial motions, the Court already held that the government's charged theory of tax evasion as related to the four women was void for vagueness.  ECF No. 297, at 10.  On January 21, 2026, the Court further held that any evidence relating to Mr. Goldstein's

2

Nor is evidence of any extramarital relationships admissible under Rule 608. It is black-letter law that "evidence that a witness engaged in an extramarital affair, standing alone, is not probative of the witness's character for truthfulness." *See, e.g.*, *Bans Pasta, LLC*, 2014 WL 12920975, at *2 (citing cases). Rule 608 does not, therefore, permit a witness to be cross-examined on whether he engaged in an extramarital relationship. *Id.*; *see also* Fed. R. Evid. 608(b) ("[T]he court may, on cross-examination, allow [specific instances of a witness's conduct] to be inquired into if they are probative of the character for truthfulness or untruthfulness of . . . the witness[.]").

## II. The Court Should Order That Certain Phone Messages With Mr. Goldstein Are Admissible Over Any Hearsay Objections.

As the Court is aware, phone messages involving Mr. Goldstein will play a central role in the defense's case. Now that the defense is calling Mr. Goldstein to testify, the defense requests that the Court admit the following documents: DX 462.1 (messages between Mr. Goldstein and Employee 4); DX 738.1 – 738.2 (messages between Mr. Goldstein and Mr. Phua); DX 737.1 – 737.14 (messages and images sent between Mr. Goldstein and an associate of Mr. Phua named "Kids"). The government has been in possession of each of these messages for at least two months.

### A. The Government Has Conceded that Mr. Goldstein Can Testify As To His Own Phone Messages.

The government has at multiple points during this trial objected to the admission of evidence on the ground that it is ostensibly Mr. Goldstein's "self-serving hearsay," and the government has insisted that those materials are *only* admissible if Mr. Goldstein takes the stand.

---

personal relationships with the women is inadmissible as it relates to the false statement and failure-to-pay charges. 1/21/26 Tr. 21-22.

3

*E.g.*, 1/20/26 Tr. 253:25-254:2 (Mr. Gordon-Marvin: "If Mr. Goldstein wants to take the stand and testify as to these documents, he's welcome to do so. But otherwise, this is self-serving hearsay."); 2/3/26 Tr. 47:1-3 (Mr. Adenrele: "Obviously, unless the defendant wants to take the stand and discuss it. Otherwise, it's a hearsay objection."); 2/10/26 Tr. 8:9-10 (Mr. Beaty: "[T]hese are his text messages, and there is one person who could absolutely authenticate them"). The government should be held to its stated position — if Mr. Goldstein takes the stand, the government should not be permitted to object on the basis of "self-serving hearsay."

    **B.**     **In All Events, Each of the Documents Discussed Below Is Not Hearsay, "Self-Serving" or Otherwise.**

        **1.**     **The Court Should Order That Mr. Goldstein's Text Exchange With Employee 4 Is Admissible.**

The Court should order that the attached phone message thread with Employee 4 (DX 462.1), *see* Exhibit A, is admissible. The Court should also order that the government is not permitted to elicit testimony about Mr. Goldstein's extramarital relationships as a result of those messages.

*First,* the defense intends to elicit testimony from Mr. Goldstein about critical phone messages with Employee 4 concerning the approximately $1 million cash loan that Mr. Goldstein obtained in Asia and brought with him to the United States. One of the key contested factual issues in this case is whether those funds were in fact a loan, as Mr. Goldstein contends, or whether they represented gambling winnings, as the government has argued.[2] In contemporaneous phone messages exchanged between Mr. Goldstein and Employee 4 — sent mere days before his trip to Asia in October 2018 — Mr. Goldstein expresses his intent to go to

---

[2]     The government also at one point elicited testimony from Kevin Russell to suggest that the cash represented "client" funds, 1/22/26 Tr. 60:10-14, though the government has since abandoned this theory. *See, e.g.*, 1/222/26 Tr. 140:24-25 (Karime Foy).

4

"HK [Hong Kong] . . . to go pick up $1-2m in cash I'm *borrowing* to pay taxes." *See* Exhibit X (DX 462.1) (emphasis added). This is relevant, and indeed, critical, evidence that would greatly assist the jury in making its factual determination as to whether the cash represented a loan or gambling winnings.

The evidence is admissible under Rule 803(3)'s hearsay exception for a "statement of the declarant's then-existing state of mind." The message demonstrates that Mr. Goldstein had a then-existing intention to go to Asia to pick up a loan in cash. *See* Fed. R. Evid. 803(3); *see also Mut. Life Ins. Co. of New York v. Hillmon*, 145 U.S. 285, 297 (1892). Moreover, the Fourth Circuit has held that then-existing intention evidence is admissible for the additional purpose of proving "subsequent conduct in conformity with [a person's] stated intention." *Phoenix Mut. Life Ins. Co. v. Adams*, 30 F.3d 554, 566 (4th Cir. 1994) (citation omitted). Accordingly, the messages are admissible not only to prove that Mr. Goldstein had the intention to travel to Asia to pick up a loan, but also that Mr. Goldstein acted in conformity with that stated intention.

*Second*, while the admissibility and probative value of this message are clear, the defense requests the Court to order that the scope of any cross-examination regarding the counterparty to this message exchange, Employee 4, be limited so as to prevent the government from eliciting that Mr. Goldstein was engaged in a personal, extramarital relationship with her. As discussed above in Section I, courts prohibit eliciting evidence of an extramarital relationship as classic Rule 403 prejudicial material, particularly where that relationship is completely collateral to any of the issues at trial, as is the case here. The fact that the messages happened to be exchanged with Employee 4 is irrelevant: they could have been with any other individual. And while the government may be permitted to ask generally about who that individual (e.g., that Mr. Goldstein

5

had a "personal" relationship with her), it should not be permitted to ask anything further designed to elicit evidence about the existence of an extramarital relationship.

### 2. The Court Should Order That the Phone Message with Mr. Phua at DX 738.1 is Admissible.

Similarly, the Court should also order that the attached phone message with Mr. Phua, Exhibit B (DX 738.2) is admissible.[3] This message directly undercuts the government's theory that the $1 million cash Mr. Goldstein received from Mr. Phua in October 2018 represented gambling winnings because in that message thread — dated about a week before Mr. Goldstein flew to Asia to retrieve the cash — Mr. Goldstein explicitly asks Mr. Phua for a $1 million loan following "another communication from the IRS." The jury is entitled to receive this crucial evidence directly addressing one of the key contested factual issues in this trial.

The record is not hearsay. In it, Mr. Goldstein is asking for a loan from Mr. Phua. It is well established that requests and questions of this nature are not hearsay because they are not "statements" for purposes of Rule 801, as they are not "intended . . . as an assertion." Fed. R. Evid. 801(a). "Instructions to an individual to do something are not hearsay because they are not declarations of fact and therefore are not capable of being true or false." *Planmatics, Inc. v. Showers*, 137 F. Supp. 2d 616, 621 (D. Md. 2001) (citation modified), *aff'd*, 30 F. App'x 117 (4th Cir. 2002); *see also United States v. Mosby*, No. 22-cr-00007-LKG, 2024 WL 96349, at *13 (D. Md. Jan. 9, 2024) (admitting a phone message because "the Defendant's text . . . is a question or inquiry and, therefore, not hearsay unless it can be construed as an intended assertion.").

---

[3] The defense is also seeking to admit DX 738.2 for the limited purpose of establishing that the user identified in the messages, "user89308144," is Mr. Phua because that message mentions Mr. Phua by name.

### 3. The Court Should Order That Phone Messages with Mr. Phua's Associate, Kids, at DX 737.1 – 737.14 Are Admissible.

The defense also requests the Court to order that certain phone messages with an associate of Mr. Phua known as "Kids" are admissible, along with ledger information sent by Kids to Mr. Goldstein about a running balance of Mr. Goldstein's transactions with Mr. Phua. *See* Exhibit C (DX 737.1 – 737.14). These are contemporaneous records from late 2016 and early 2017 that show what share of Mr. Goldstein's poker matches belong to Mr. Phua, and how amounts owed to Mr. Phua were handled. The government has repeatedly suggested to the jury that Mr. Goldstein was the full recipient of approximately $49 million in poker wins in 2016, and these records are necessary to correct the government's repeated mischaracterizations that go to the heart of the 2016 tax evasion charge in this case.

These records are admissible over any hearsay objection for the following reasons:

**Business Records**. Mr. Phua's associate, Kids, maintained an excel ledger of Mr. Goldstein's outstanding balance with Mr. Phua. This ledger was exchanged by phone messages between Mr. Goldstein and Mr. Phua's associate. Mr. Goldstein and Mr. Phua's associate also maintained records discussing Mr. Phua's share in various poker matches by phone messages. *See* Exhibit C, at DX 737.1, 737.3-737.6, 737.8-737.11, 737.13-737.14 (messages); Exhibit C, at DX 737.2, 737.7, 737.12 (the ledgers). Each is an admissible business record under Rule 803(6). Business records are admissible if (1) "the record was made at or near the time by — or from information transmitted by — someone with knowledge;" (2) "the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;" (3) "making the record was a regular practice of that activity;" (4) "all these conditions are shown by the testimony of the custodian or another qualified witness." Fed. R. Evid. 803(6). Each of these elements is met here. The messages show that Mr. Phua's

associates kept and maintained the ledger showing Mr. Goldstein's balance with Mr. Phua in real time, and that the ledger was maintained by Mr. Phua's associates in the course of Mr. Phua's regularly-conducted gambling activities. The messages also show that Mr. Goldstein is a "qualified witness" who can establish the foundation for these business records. *See Gen. Ins. Co. of Am. v. United States Fire Ins. Co.*, 886 F.3d 346, 349, 358 (4th Cir. 2018) ("[A] 'qualified witness' need not have personally participated in the creation of the document, nor know who actually recorded the information" so long as he is able to testify that the records were "kept in the course of a regularly conducted business activity and also that it was a regular practice of that business activity to make the record[s].") (citation omitted). That these records were exchanged by phone message does not undermine the clear conclusion that they are business records. *See* 30B Fed. Prac. & Proc. Evid. § 6864 (2025 ed.) (even documents like personal diaries, desk calendars, and planners can qualify for admission under Rule 803(6) (citing cases)).

    ***State of Mind***. Rule 803(3) provides an exception for hearsay statements when the statement represents "[a] statement of the declarant's then-existing state of mind." Fed. R. Evid. 803(3). "The threshold requirements for invoking this hearsay exception are that (1) the statement must be contemporaneous with the mental state sought to be proven; (2) there must be no suspicious circumstances suggesting a motive for the declarant to fabricate or misrepresent his or her thoughts; and (3) the declarant's state of mind must be relevant to an issue in the case." *United States v. Srivastava*, 411 F. App'x 671, 684 (4th Cir. 2011). As the Court is aware, Mr. Goldstein's willfulness is a central contested issue in this case. These contemporaneous messages speak directly to Mr. Goldstein's state of mind — they demonstrate that Mr. Goldstein *believed* that Mr. Phua had significant shares in his poker matches. Even if the information Mr.

8

Goldstein was receiving from Mr. Phua's associate was incorrect, these records directly show that Mr. Goldstein did not *willfully* misreport gambling winnings involving Mr. Phua's shares.

***Statements of Future Intent***.  Certain messages describe Mr. Goldstein's future intent to play poker matches and are admissible under Rule 803(3).  *See Hillmon*, 145 U.S. at 297.  For example, Mr. Goldstein states that he intends to "play Gores Sat and Sun" and at that game, Mr. Phua "has 70%."  Exhibit C, at DX 737.4.  These messages reflect Mr. Goldstein's "then-existing state of mind" — and, in particular, his future "intent" — and are therefore admissible hearsay.  *See* Fed. R. Evid. 803(3).

***Requests and Negotiations***.  Certain messages describe requests and negotiations between Mr. Goldstein and Mr. Phua's associate, Kids, and clear the hearsay bar on those grounds.  For example, Mr. Goldstein and Kids go back and forth in messages in which Mr. Goldstein and Mr. Phua's associate ask each other about certain calculations relating to Mr. Phua's shares in matches.  *E.g.*, Exhibit C, at DX 737.5, 737.6, 737.8, 737.11.  These negotiations and requests are admissible non-hearsay because they are not "statements" (i.e., "intended . . . as . . . assertion[s]").  Fed. R. Evid. 801(a); *see Mosby*, 2024 WL 96349, at *13 (admitting a phone message because "the Defendant's text . . . is a question or inquiry and, therefore, not hearsay unless it can be construed as an intended assertion").  To the extent that the messages represent negotiations between Mr. Goldstein and Mr. Phua's representative, they are also non-hearsay because they are not statements for purposes of the hearsay rule.  *See Mueller v. Abdnor*, 972 F.2d 931, 937 (8th Cir. 1992) ("[V]arious communications—*e.g.,* conversations, letters, and telegrams—relevant to the making of the contract are also not hearsay.").

***Prior Consistent Statement.***  The messages are also admissible as prior consistent statements.  The Federal Rules state that a testifying defendant's prior consistent statement is admissible "to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying."  Fed. R. Evid. 801(d)(1)(B).  In this case, the government has at length offered arguments to the jury that Mr. Goldstein did not have investors in certain 2016 poker matches against individuals named Chairman and Tango, and that any argument to the contrary was a recent fabrication.  *E.g.*, 2/4/26 Tr. 251:9-15 (Agent McDonald) ("Q: What did Mr. Goldstein say [in the October 2020 interview] about whether he ever had stakers in his poker games outside of the matches against Alec Gores in 2016?  A: Mr. Goldstein said that Mr. Gores was the only time he had investors or stakers when he had played poker.").  The phone messages with Mr. Phua's associate are contemporaneous evidence that shows that Mr. Goldstein *did* in fact have investments in those other poker matches, and will be offered to rebut the government's allegations that he recently fabricated that explanation.

***Past Recollection Recorded.***  The messages with Mr. Phua's associate, Kids, are also records recording Mr. Goldstein's prior understanding about certain complex transactions that date back approximately ten years.  They are admissible as past recorded recollections under Rule 803(5).  This hearsay exception applies where "(1) the witness once had knowledge about the matters in the document, (2) the witness now has insufficient recollection to testify fully and accurately, and (3) the record was made at a time when the matter was fresh in the witness' memory and reflected the witness' knowledge correctly."  *United States v. Shorter*, 188 F.3d 505 (4th Cir. 1999) (unpublished).  These phone messages, which reflect details about Mr. Phua's shares in certain poker matches and Mr. Goldstein's balance with Mr. Phua, were created

contemporaneously and Mr. Goldstein was fully knowledgeable about their contents at the time they were made.

### III.  If Mr. Goldstein Testifies, The Government's Scope of Cross Examination Must Be Limited To Topics About Which He Testified On Direct Examination.

As this Court has previously noted, "the Defendant does not waive [his] Fifth Amendment privilege as to all matters when [he] testifies in [his] own defense." *Mosby*, 2024 WL 96349, at *7. Thus, while a "Defendant who testifies waives his Fifth Amendment privilege in all areas subject to proper cross-examination," the waiver only reaches "subject matters relevant to the direct examination" since that is the scope of "proper cross-examination." *United States v. Ellis*, 951 F.2d 580, 584 (4th Cir. 1991); *see Mitchell v. United States*, 526 U.S. 314, 321 (1999) ("The privilege is waived for the matters to which the witness testifies, and the scope of the 'waiver is determined by the scope of relevant cross-examination.'" (citation omitted)). "The witness himself, certainly if he is a party, determines the area of disclosure and therefore of inquiry." *Id.* (citation omitted).

Rule 608(b) does not interfere with Mr. Goldstein's ability to invoke the Fifth Amendment privilege as to topics not explored on his direct examination. Generally, that Rule permits cross-examination of a witness regarding specific instances of conduct "if they are probative of the [witness's] character for truthfulness or untruthfulness." Fed. R. Evid. 608(b). But that Rule also explicitly preserves the Fifth Amendment privilege by stating that "[b]y testifying on another matter, a witness does not waive any privilege against self-incrimination for testimony that relates only to the witness's character for truthfulness." *Id.*; *see* 28 Fed. Prac. & Proc. Evid. § 6121 (2d ed.) ("[B]y testifying as to specific instances, a witness does not waive the privilege with respect to misconduct where it relates only to character for truthfulness.").

## **CONCLUSION**

For the reasons discussed above, the Court should order that:

1. The government is precluded from eliciting any testimony about any extramarital relationships; and

2. The following documents are admissible: Exhibit A (DX 462.1) (Mr. Goldstein's messages with Employee 4); Exhibit B (DX 738.1-738.2) (Mr. Goldstein's messages with Mr. Phua); and Exhibit C (DX 737.1-737.14) (Mr. Goldstein's messages and associated images with Mr. Phua's associate, Kids).

Dated: February 10, 2026

Respectfully submitted,

/s/ *Jonathan I. Kravis*
Jonathan I. Kravis (Bar No. 31556)
Stephany Reaves (Bar No. 19658)
Sarah E. Weiner (*pro hac vice*)
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue NW, Suite 500E
Washington, DC 20001
(202) 220-1100
Jonathan.Kravis@mto.com
Stephany.Reaves@mto.com
Sarah.Weiner@mto.com

Adeel Mohammadi (*pro hac vice*)
MUNGER, TOLLES & OLSON LLP
350 S. Grand Avenue, 50th Floor
Los Angeles, CA 90071
(213) 683-9100
Adeel.Mohammadi@mto.com

*Attorneys for Defendant Thomas Goldstein*