IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | CRIMINAL NO. LKG-25-6 |
| | * | |
| THOMAS C. GOLDSTEIN, | * | |
| | * | |
| Defendant. | * | |
| | ******* | |

## MR. GOLDSTEIN'S MEMORANDUM IN SUPPORT OF REMAINING ON RELEASE WITH CONDITIONS PENDING SENTENCING

This morning, the government announced for the first time that it intends to seek the detention of defendant Thomas Goldstein pending sentencing. That request directly contravenes the recommendation of Pretrial Services that Mr. Goldstein remain on release under his current conditions, and is completely unwarranted. Mr. Goldstein's extensive current release conditions are more than sufficient to assure his appearance, and his consistent compliance with those conditions provides clear and convincing evidence that he will not flee pending sentencing. Indeed, Mr. Goldstein returned to court this morning after hearing the jury's verdict yesterday, and he will return to court today after hearing that the government intends to seek his detention. Should the Court have any concerns on this point, the appropriate way to address those concerns would be through additional release conditions, as discussed below.

Under 18 U.S.C. § 3143, the Court "shall order the release" of a defendant pending sentencing so long as the Court finds by clear and convincing evidence that the defendant "is not likely to flee or pose a danger to the safety of any other person or the community." The government has never argued that Mr. Goldstein poses a danger to any person or to the

1

community. And the record in this case strongly supports a finding that Mr. Goldstein is not likely to flee, for the following reasons.

*First*, Mr. Goldstein has complied with his current conditions of release over the past year. Those conditions—over 20 in number—are set forth in the January 7, 2026 release status report filed by Senior United States Probation Officer Adam Smith. They include: (1) execution of a bond on the residence of Mr. Goldstein and his wife; (2) surrender of passport; (3) restriction of travel to the Washington DC metropolitan area; (4) no contact with over 80 individuals; (5) prohibition on opening new bank accounts; (6) prohibition on gambling; (7) extensive computer monitoring; and (8) monthly disclosure of all financial records. Mr. Goldstein has met those conditions, and he has missed no court appearances. Indeed, Mr. Goldstein was permitted by the Court—with no opposition from the government—to attend his child's graduation overseas in the spring. This track record of compliance with release conditions supports a finding that Mr. Goldstein is unlikely to flee.

*Second*, the probation officer assigned to this matter, Senior United States Probation Officer Adam Smith, has issued a status report recommending that Mr. Goldstein remain on release pending sentencing subject to his current release conditions. Officer Smith has extensive experience with defendants and release conditions generally, and over a year of supervising Mr. Goldstein in particular. His recommendation should carry significant weight with the Court.[1]

---

[1] The defense will concurrently send a courtesy copy of the report to chambers. Officer Smith's report describes Mr. Goldstein's adjustment to supervision as "marginal," Report at 3, but that assessment appears to be principally based on the now-discredited allegation that Mr. Goldstein engaged in cryptocurrency transfers while on release in February 2025. Mr. Smith's report also cites Mr. Goldstein's failure to file his 2024 tax return, and a single August 2025 transfer between two financial accounts that are monitored by Pretrial Services. None of these suggests that Mr. Goldstein is likely to flee pending sentencing. For purposes of these proceedings, the most significant portion of Officer Smith's report is the recommendation that Mr. Goldstein remain on release pending sentencing. Should the Court have any concerns on this score, the

*Third*, the factors set forth in 18 U.S.C. § 3142(g) strongly support Mr. Goldstein's release.  This was not a crime of violence.  Mr. Goldstein has extensive ties to the community—he has lived and practiced law in this area for nearly three decades.  He is a longstanding member of the bar with a deep respect for the courts and the legal system.  A decision to flee now would utterly destroy the life he has built in this community.  Mr. Goldstein has no criminal history and he was not on release at the time of these offenses.  And there is no evidence that Mr. Goldstein would pose any danger to the community on release.

*Fourth*, detention pending sentencing will significantly impair Mr. Goldstein's ability to participate in his defense.  As an accomplished appellate lawyer, Mr. Goldstein is uniquely well suited to assist in the drafting of post-trial motions.  He will be unable to provide that assistance from jail.

*Fifth*, Mr. Goldstein does not believe that he is facing a period of incarceration so significant that he would have any incentive to flee.  The defense's assessment of the jury's verdict at this point is very preliminary, and subject to further analysis.  But on an initial review, the most sensible explanation for the jury's guilty verdict on some counts and not guilty verdict on others is that the jury convicted Mr. Goldstein on the tax offenses based on mischaracterized transactions in 2016, 2017, and 2019, and the failure to check the cryptocurrency box in 2020 and 2021.

The jury found Mr. Goldstein not guilty of Count 6, as to which the only alleged act of aiding or assisting the preparation of a false return was failing to report gambling income.[2]  At

---

defense requests that the Court schedule a hearing with Officer Smith in attendance to clarify this aspect of his report.

[2] For the Court's convenience, the defense has reproduced the chart detailing the allegations in support of Counts 2 through 9, *see* ECF No. 408, at 4-6, as Exhibit A.

3

trial, Mr. Goldstein did not dispute the *fact* that his gambling income was unreported; he argued only that his failure report his gambling winnings was not willful.  The jury's verdict indicates that they agreed—both as to Count 6, and presumably for the similar allegations in other counts.

The jury also found Mr. Goldstein not guilty of Counts 4 and 5, as to which the indictment alleged that Mr. Goldstein omitted nearly $1 million in cash income from Paul Phua, and another $1,000,000 in alleged income transferred into a Montenegrin account by Mr. Phua.  In finding Mr. Goldstein not guilty on these counts, the jury necessarily found that Mr. Goldstein truthfully testified about his relationship with Mr. Phua, including the fact that Mr. Phua lent him roughly $2 million dollars in 2018.  That the jury credited Mr. Goldstein's testimony regarding Mr. Phua seriously undermines any claim by the government that the jury found that Mr. Goldstein lied about holding $9 million of Mr. Phua's share of the Gores games in late 2016.

On the other hand, the tax evasion and false return counts as to which the jury did find Mr. Goldstein guilty—Counts 1, 3, 7, 8, and 9—alleged either that Mr. Goldstein willfully mischaracterized personal payments as businesses expenses (Counts 1, 3, and 7) or that Mr. Goldstein willfully failed to disclose on his personal tax returns that he had engaged in cryptocurrency transactions in the relevant tax years (Counts 8 and 9).

The defense calculates that the tax loss for the foregoing conduct is approximately $500,000, which is roughly one-third of $1.5 million in unreported income.  A tax loss of approximately $500,000 corresponds to a base offense level of 18 which, for a person like Mr. Goldstein in Criminal History Category I, corresponds with a guidelines range of 27 – 33 months.  Of course, in advance of sentencing, the parties will provide detailed submissions to the Court regarding the full guidelines calculations and other important factors that the Court will

consider to determine the appropriate sentence. Indeed, the defense anticipates that the appropriate sentence in this case will be significantly shorter.

*Sixth*, as the Court is aware, this case involves numerous complex legal issues that will be raised on appeal. Those issues are relevant to the Court's release decision both because they affect Mr. Goldstein's perception of his risk and because they provide strong grounds for release pending appeal, *see* 18 U.S.C. § 3143(b).

The defense recognizes that the Court previously concluded that Mr. Goldstein presented a risk of flight. However, any risk on that score has been adequately addressed to this point by the numerous existing release conditions, including restrictions on travel, computer monitoring, and financial reporting. Mr. Goldstein's consistent compliance with those conditions gave the Court sufficient reassurance to allow Mr. Goldstein to travel overseas while this case was pending (without opposition from the government). Mr. Goldstein complied with the additional conditions imposed by Pretrial Services for that trip and returned. The earlier conclusion that Mr. Goldstein presented a risk of flight was also informed by allegations that have since been disproved—namely that Mr. Goldstein engaged in cryptocurrency transfers while on release and that Mr. Goldstein held overseas foreign bank accounts.

If the Court still has any such concerns, those concerns should be addressed by the imposition of additional release conditions. Mr. Goldstein's parents have attended much of the trial, and they are present in court today. They are willing to allow Mr. Goldstein to remain on home detention at their family home in South Carolina. They will agree to participate with Mr. Goldstein in daily check-ins with Pretrial Services to confirm Mr. Goldstein's whereabouts—the condition that was used successfully when Mr. Goldstein traveled abroad last spring. Mr. Goldstein will also agree to ankle monitoring to confirm his compliance with home detention.

And Mr. Goldstein's parents will consent to the imposition of a security bond on their home. These conditions, in addition to all the other conditions imposed on Mr. Goldstein, should be more than sufficient to address any concerns with his continued appearance. Should the Court require further information on additional possible release conditions, then the defense requests that the Court schedule a further hearing next week at a time when Officer Smith can be present.

Dated: February 26, 2026

Respectfully submitted,

/s/ *Jonathan I. Kravis*
Jonathan I. Kravis (Bar No. 31556)
Stephany Reaves (Bar No. 19658)
Sarah E. Weiner (*pro hac vice*)
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue NW, Suite 500E
Washington, DC 20001
(202) 220-1100
Jonathan.Kravis@mto.com
Stephany.Reaves@mto.com
Sarah.Weiner@mto.com

Adeel Mohammadi (*pro hac vice*)
MUNGER, TOLLES & OLSON LLP
350 S. Grand Avenue, 50th Floor
Los Angeles, CA 90071
(213) 683-9100
Adeel.Mohammadi@mto.com

*Attorneys for Defendant Thomas Goldstein*