IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO. LKG-25-6 |
| | * | |
| THOMAS C. GOLDSTEIN, | * | |
| | * | |
| Defendant | * | |
| | * | |

*******

**UNITED STATES' OPPOSITION TO GOLDSTEIN'S MOTION TO MODIFY
THE CONDITIONS OF RELEASE PENDING SENTENCING**

As the government said numerous times prior to and throughout trial, Thomas Goldstein is not special. He stands before the Court convicted by an impartial jury of his peers of multiple felonies, and he is facing a sentence of eight to ten years in prison.[1] Just like *any other criminal* convicted at trial, it is *Goldstein*'s burden to prove by clear and convincing evidence that he is not likely to flee before sentencing.[2] *United States v. Freitekh*, No. 3:20-CR-00435-FDW-DCK, 2022 U.S. Dist. LEXIS 80603, at *3 (W.D.N.C. May 3, 2022) (citing 18 U.S.C. § 3143(a)(1)).

Goldstein has not and cannot meet his burden here. Ultimately, Goldstein's seeks to *weaken* the conditions of his release, thereby increasing the likelihood that he will fail

---

[1] The United States currently calculates Goldstein's total offense level as 30 levels, corresponding to a Sentencing Guidelines range of 97 to 121 months' imprisonment.

[2] Once again, Goldstein attempted to mislead the Court, claiming "the Court **shall** release a defendant pending sentencing based on a finding 'by clear and convincing evidence that [they are not likely to flee]…" Dkt. 491, p. 5. Goldstein's brief flips the general orientation of the Bail Reform Act's default position regarding defendants convicted at trial. In fact, 18 U.S.C. § 3143(a)(1) says that the Court "**shall order** that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence … **be detained**" unless the Court finds by clear and convincing evidence that they are not likely to flee.

to appear for sentencing. The Court should deny Goldstein's motion and detain him pending sentencing in June.

## Argument

### 1. Goldstein has not yet accepted reality: he is a criminal destined for prison.

As was his right, Goldstein went to trial and spun his narrative for the jury from the witness stand. The jury rejected his claims—his self-professed innocence—and convicted him on twelve of sixteen counts, including eight felony charges.

But Goldstein still has not accepted that he is a criminal, and that he is facing a lengthy term in prison (as many as ten years, if the Court does not vary upwards from the anticipated Guidelines range). Goldstein's strategy here is plain: put off sentencing as long as possible by drowning the Court with frivolous claims for post-trial relief and then demand release pending his appeal to the Fourth Circuit. Goldstein currently imagines a world where he remains at large well into 2027, all in desperate hope that he is never punished for his crimes.

However, eventually the gravity of this case—and the inevitability of his recompense for his crimes—will penetrate Goldstein's rose-tinted world, and *that* is when he is most likely to flee the jurisdiction to evade punishment. **Any other defendant** who (1) has access to millions of dollars at a moment's notice through offshore "virtual accounts," (2) has significant ties to foreign jurisdictions and waning ties to the District of Maryland, and (3) who admitted at trial to lying to the Court about his finances would be detained pending sentencing. Take for example a defendant convicted at trial of selling drugs. If the drug dealer had testified that there was a billionaire in Asia who "felt very indebted" to the dealer, and "was the person in [the dealer's] life . . . who [he] could turn

to" in a time of need, it is exceedingly unlikely that the drug dealer would be released pending sentencing. Here, GOLDSTEIN said exactly that about Wei Seng Phua or Paul Phua. Dkt. 447 (Trial Day 17), Tr. 33:17-25.

But Goldstein continues to imagine that he is special. He is not, and he should be treated the same as any other convicted defendant.

### 2. **Goldstein's proposed modifications—which are light on the details— diminish the likelihood Goldstein will appear for sentencing.**

Goldstein's motion is ultimately a demand to *loosen* the restrictions and supervision that currently burden him. Presently, Amy Howe serves as Goldstein's (now involuntary) custodian. But both Goldstein and Howe understand that if Goldstein fails to appear for sentencing, there is a real consequence: Howe will forfeit her interest in the Hawthorne property, which is collateral for Goldstein's bond.

Goldstein's proposed modifications are woefully inadequate because they either take him farther from the jurisdiction (and thus the Court's supervision) or permit Goldstein to live *by himself* with no collateral to secure his bond. Neither situation is acceptable.

Goldstein committed the crimes for which the jury convicted him while he was married to Howe. If his own wife was unable to dissuade Goldstein from violating his known legal duty in Maryland and the District of Columbia, the Court has no basis to believe that Goldstein's elderly father is any better suited to supervise his son in South Carolina. Letting Goldstein reside in South Carolina also places him farther from the District of Maryland, which makes it easier for Goldstein to imagine himself as unburdened by his conviction and flout the Court's conditions of release.

3

Goldstein's proposal to live by himself in Maryland or DC is even less palatable. Goldstein, who as recently as August 2025 told the Court that he had "no significant assets" with which to fund his defense (Gov't Ex. 790), now has sufficient funds to rent a downtown apartment? Also, Goldstein suggests that he can live by himself under the non-residential supervision of his former law partner, Tejinder Singh, but Singh is unwilling to put up collateral equivalent to that which kept Howe invested in ensuring Goldstein obeyed the terms of his release. In short, a "non-resident custodian" with no stake in the game is insufficient to ensure that Goldstein abides by the Court's rules.

### 3. **There is no set of conditions that will sufficiently assure Goldstein's appearance at sentencing.**

It is Goldstein's burden to prove to the Court—by clear and convincing evidence—that he is not a flight risk. 18 U.S.C. § 3143(a)(1). If he fails to do so, the Court *shall* remand him into custody.

The United States was already concerned about Goldstein's risk of flight, but Howe's unwillingness to continue serving as Goldstein's custodian caused the government to reevaluate its position on Goldstein's release pending sentencing. The United States is more certain than ever that Goldstein simply cannot be trusted to appear for sentencing on his own volition.

Facing as much as a decade in prison, Goldstein has more motivation to flee than he has faced at any point in this case. Goldstein's own testimony about his deep friendship with billionaire Wei Seng Phua—a man who was purportedly willing to loan Goldstein $1 million in cash with no paperwork whatsoever—should deeply trouble the Court because it is evidence of Goldstein's easy access to money with which to make good his escape. Indeed, after claiming for years that the government wrongly pursued him for failing to

4

disclose foreign accounts, Goldstein admitted on the witness stand that he had a "virtual account" with Phua (Dkt. 446 (Trial Day 16), Tr. 150:15-22), an account that he never disclosed to the IRS or pretrial services.

Most importantly, Goldstein's crumbling family and professional life weakens his ties to the District of Maryland and the United States generally. Goldstein and Howe are divorcing, and his children want nothing to do with him. Goldstein knows that he is going to lose his equity in the Hawthorne property to future forfeiture proceedings (*i.e.*, as a substitute asset in satisfaction of the money judgment he faces in conjunction with his conviction on Count Sixteen), which means he will have one fewer financial tie to the DC area. Goldstein already quit the practice of law, and he will likely lose his law license as a result of his criminal conviction.

In short, nothing ties Goldstein to the District of Maryland anymore, while he imagines a future for himself—far from DC—in which he milks a quarter of a billion dollars from Andy Beal through poker. Dkt. 447, Tr. 150:22-24. Goldstein's future plans necessarily require him to reenter the orbit of Phua and others outside the United States so that he can build up a large enough financial stake to take a run at Beal. Facing years in prison, and having learned nothing from his prosecution and conviction, Goldstein has every incentive to leave the United States and get a head start on the next phase of his life.

### Conclusion

The United States respectfully submits that Goldstein poses a serious risk of flight in the face of just punishment. The government asks the Court to set a hearing on Goldstein's motion to modify the conditions of his release pending sentencing, and to remand Goldstein into custody pending his sentencing in this case.

Respectfully submitted,

KELLY O. HAYES
United States Attorney

Sean Beaty
Senior Litigation Counsel
Department of Justice, Criminal Division
Emerson Gordon-Marvin
Hayter Whitman
Trial Attorneys
Department of Justice, Criminal Division

Adeyemi Adenrele
Assistant United States Attorney
District of Maryland