**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **v.** | * | **CRIMINAL NO. LKG-25-6** |
| | * | |
| **THOMAS C. GOLDSTEIN,** | * | |
| | * | |
| **Defendant.** | * | |
| | ******* | |

**DEFENDANT THOMAS C. GOLDSTEIN'S
REPLY IN SUPPORT OF MOTION TO MODIFY CONDITIONS OF RELEASE**

After the jury rendered its verdict, the Court found by clear and convincing evidence that defendant Thomas Goldstein would not be likely to flee if released to home confinement at the Hawthorne property with ankle monitoring (in addition to the other release conditions imposed prior to trial). Neither the government nor Pretrial Services opposed Mr. Goldstein's release. At that time, the defense advised the Court that Mr. Goldstein's marital circumstances might prompt a request to modify his release conditions, and the Court invited the defense to raise that issue if it arose. The defense motion did just that, offering two alternatives that would continue home confinement and ankle monitoring. Pretrial Services does not oppose either alternative. The government's dyspeptic opposition is filled with invective and ad hominem attacks but offers no persuasive reason to override the judgment of Pretrial Services. And the government's suggestion that Mr. Goldstein should be incarcerated after following the Court's instruction to raise any change in his personal circumstances is deplorable and unfounded. If the Court denies the defense motion, then the current conditions should remain in place pending sentencing, and Ms. Howe is willing to agree to that arrangement if necessary.

1

As an initial matter, the credibility of the government's position is deeply undermined by its own waffling.  When Mr. Goldstein first raised this issue, the government advised that it would be willing to agree to at least one of the alternatives—transfer of home confinement to South Carolina—if Mr. Goldstein would be willing to stipulate to forfeiture of his share of any proceeds from the sale of the Hawthorne property, notwithstanding the jury's verdict in favor of the defense on this issue.  It was only when the defense demurred, requesting more time to evaluate the forfeiture issue before agreeing to a stipulation, that the government reversed course and demanded that Mr. Goldstein be incarcerated pending sentencing.  The government's apparent willingness to barter release conditions for a forfeiture stipulation belies the candor of its recommendation.

Indeed, immediately after trial, the government took precisely the opposite position on the circumstances of home confinement, arguing that Mr. Goldstein's parents would be *more suitable* custodians than Ms. Howe.  But now, when the defense files its motion proposing as an alternative the very arrangement that the government had recommended, the government demands Mr. Goldstein's immediate incarceration.

The defense's post-trial motion also severely undermines the government's position.  The government calls the motion "frivolous" on the same day that it seeks an additional thirty days to respond to it.  Neither government filing addresses the patent injustice of asking that Mr. Goldstein be detained pending sentencing while also requesting an extension of the government's deadline to oppose his post-trial motion.  And contrary to the government's dismissive characterization, the defense post-trial motion is well grounded in binding Fourth Circuit precedent that squarely forecloses the positions taken by the government on jury instructions and critical evidentiary issues.  That motion raises serious questions about the

integrity of the jury's verdict, and Mr. Goldstein would have no reason to forfeit those arguments by fleeing now.

Stripped of its name-calling and overwrought imagery, the government's opposition makes two arguments in opposition to the defense motion.  Neither has merit.

First, the government contends that relocating Mr. Goldstein's home confinement to an apartment in Washington, DC or to his parents' home in South Carolina increases the likelihood that he will flee, perhaps with the assistance of Paul Phua.  The government never attempts to explain how Mr. Goldstein would achieve such a feat while under home confinement, subject to ankle monitoring, with his passport in the possession of Pretrial Services, under a strict no-contact order, while his financial accounts and his computer usage are closely monitored.

Nor does the government adequately explain why this far-fetched scenario is more likely if Mr. Goldstein is subject to home confinement in a Washington, DC apartment or his parents' home in South Carolina.  The government implies that the only thing keeping Mr. Goldstein from fleeing the jurisdiction is the threat that Ms. Howe would lose her share of the Hawthorne property, but that is just not so.  Under either alternative proposed by the defense, Mr. Goldstein would be subject to *ankle monitoring* (as well as all the other release conditions noted above), which is precisely why Pretrial Services does not oppose either alternative suggested by the defense.  Moreover, the alternative custodians proposed by Mr. Goldstein would be equally motivated—Tejinder Singh is a respected member of the bar who would face professional consequences if he allowed Mr. Goldstein to abscond, and Mr. Goldstein's parents have offered several times to post their property in South Carolina as security.

Second, the government says that Mr. Goldstein's ties to the District of Maryland—principally his equity in the Hawthorne property—have weakened as a result of his

3

conviction.  This is a strange argument coming from the government, which advised the defense that it would not oppose relocation of Mr. Goldstein's home confinement to South Carolina if Mr. Goldstein agreed to stipulate to the forfeiture of his equity in the Hawthorne property.  Apparently Mr. Goldstein's purported weakened ties to the area concern the government only when Mr. Goldstein is not willing to relent on forfeiture.  And here again the government's opposition says nothing new—the consequences of Mr. Goldstein's conviction for his personal and professional life were well known to the Court and the parties at the time the Court ordered that Mr. Goldstein be released on home confinement.  And none of this has anything to do with the alternative release conditions proposed in the defense motion.

*     *     *     *     *

The Court has already found by clear and convincing evidence that Mr. Goldstein will not flee while subject to home confinement, ankle monitoring, and a host of other release conditions pending sentencing.  That finding applies equally to home confinement in an apartment in Washington, DC.  That alternative would address the changed circumstances in Mr. Goldstein's marriage while allowing Mr. Goldstein to remain in the area and to continue receiving treatment from the mental health provider he has been seeing.  Pretrial Services does not oppose this modification, and the government's opposition provides absolutely no basis to conclude that Mr. Goldstein would or even could flee under those conditions.  In the alternative, Mr. Goldstein should be permitted to serve home confinement at his parents' house in South Carolina.  If the Court denies the defense motion, then the proper course is not (as the government suggests) to incarcerate Mr. Goldstein, but rather to maintain the current release conditions pending sentencing.  Mr. Singh and Mr. Goldstein's parents are willing to attend any hearing on the defense motion to address any questions from the Court.

Dated: April 1, 2026

Respectfully submitted,

/s/ *Jonathan I. Kravis*
Jonathan I. Kravis (Bar No. 31556)
Stephany Reaves (Bar No. 19658)
Sarah E. Weiner (*pro hac vice*)
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue NW, Suite 500E
Washington, DC 20001
(202) 220-1100
Jonathan.Kravis@mto.com
Stephany.Reaves@mto.com
Sarah.Weiner@mto.com

Adeel Mohammadi (*pro hac vice*)
MUNGER, TOLLES & OLSON LLP
350 S. Grand Avenue, 50th Floor
Los Angeles, CA 90071
(213) 683-9100
Adeel.Mohammadi@mto.com

*Attorneys for Defendant Thomas Goldstein*