**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | |
| **v.** | **CRIMINAL NO. LKG-25-6** |
| **THOMAS C. GOLDSTEIN,** | |
| **Defendant.** | |

**DEFENDANT THOMAS C. GOLDSTEIN'S OPPOSITION TO MOTION FOR
PRELIMINARY ORDER OF FORFEITURE**

**INTRODUCTION**

It is undisputed that Mr. Goldstein's failure to report his gambling debts to NFM Lending caused no harm to NFM or anyone else.  Mr. Goldstein has made all required payments on his home equity loan, which is secured by his house in Washington, DC—a property that is far more valuable than the loan.  Because there is no loss, the Sentencing Guidelines recommend a maximum fine of $9,500.

Nevertheless, the government seeks forfeiture of $1,987,500 as punishment for Mr. Goldstein's misrepresentations to NFM.  At trial, the government asked the jury to find that Mr. Goldstein's house was subject to forfeiture for the same offense.  But the jury rejected that request, finding that the government had failed to establish a nexus to his misrepresentations to NFM. Undeterred, the government now seeks a money judgment equal to the value of the home equity loan that Mr. Goldstein and his wife obtained from NFM.  And because Mr. Goldstein lacks sufficient funds to satisfy that judgment, the government seeks forfeiture of Mr. Goldstein's house as a substitute asset.

The government's motion fails for three reasons.  First, the statute does not authorize the government's proposed forfeiture.  The government offers no evidence to support its argument that Mr. Goldstein's omissions were a but-for cause of NFM's decision to issue the home equity loan.  Second, it does not offer any evidence that could rebut the presumption that half the loan proceeds belong to Mr. Goldstein's wife (and are thus not subject to forfeiture).  Third, the proposed forfeiture of $1,987,500 is grossly disproportionate to the gravity of the offense and therefore violates the Excessive Fines Clause of the Eighth Amendment.  Accordingly, the Court should deny the government's Motion.

**BACKGROUND**

In 2021, Mr. Goldstein and his wife purchased a home located at 4323 Hawthorne Street NW, Washington, DC (the "Hawthorne Property"). The appraised value of the Hawthorne Property at that time was $2,650,000. *See* GX-10 at 2. Using the Hawthorne Property as collateral, Mr. Goldstein and his wife obtained a $1,987,500 home equity loan from a mortgage lender called NFM Lending. *Id.* They agreed that if they were to default on the loan, NFM would have the right to sell the Hawthorne Property and use the proceeds to satisfy any unpaid principal and interest. *Id.* at 64. The proceeds of the loan were used to pay off a mortgage loan he received from an investment firm called Parabellum Capital. 2/12/26 Tr. 124:12-23.

The government's theory at trial was that when Mr. Goldstein and his wife applied for the home equity loan, he failed to disclose that he had several large outstanding debts. 2/12/26 Tr. 125:4-16. That omission was the basis for Count 16 (originally labeled as Count 22 in the Second Superseding Indictment), which charged Mr. Goldstein with committing or serving as an accessory to mortgage fraud under 18 U.S.C. § 1014 and 18 U.S.C. § 2. ECF No. 239 at 53-54; *see* ECF No. 472 at 4. In the indictment, the government indicated that if Mr. Goldstein were found guilty on Count 16, the government intended to seek forfeiture of any property Mr. Goldstein obtained as a result of his misrepresentations to NFM. ECF No. 239 at 55.

The loan originator for Mr. Goldstein's home equity loan was an NFM employee named Darran Anthony. GX-10 at 6. In its pre-trial investigation and its direct examination at trial, the government repeatedly attempted and failed to get Mr. Anthony to state that NFM would not have issued the loan were it not for the omissions; he carefully went no further than stating that the debts "could affect" the determination or would have been "a factor" in a multi-factor inquiry. Specifically, as part of its investigation into Mr. Goldstein's taxes, the IRS interviewed Mr. Anthony in May 2022. *See* Exh. A. In that interview, Mr. Anthony explained how the loan

2

application process works and stated that "[u]ndisclosed debts could affect to [*sic*] outcome of the loan determination." *Id.* at 2. Mr. Anthony reiterated that assessment in his trial testimony. Specifically, when the government asked Mr. Anthony whether Mr. Goldstein's failure to disclose a debt he owed to Stewart Resnick would have been "material," Mr. Anthony stated that "[i]t would have been a factor of whether the loan would have gotten approved or not." 2/9/26 Tr. 127:24-128:6. Similarly, when the government asked Mr. Anthony about Mr. Goldstein's failure to disclose a debt he owed to Bob Safai and Mr. Goldstein's failure to disclose his status as guarantor of another loan, Mr. Anthony stated that those omissions "would have been a factor." *Id.* at 128:10-21.

On cross examination, Mr. Anthony acknowledged that NFM had not "lost money on this loan" and that Mr. Goldstein "never defaulted on the loan" and "is still paying on time." 2/9/26 Tr. 134:17-24. Mr. Anthony also confirmed that the "appraised property value" of Mr. Goldstein's collateral was "higher than the loan amount." *Id.* at 135:10-136:12. Mr. Anthony thus agreed that "if Mr. Goldstein hadn't paid back the mortgage, if he had defaulted on the loan to NFM, NFM could have used the home as collateral to get its money back." *Id.* at 136:8-12.

The jury found Mr. Goldstein guilty on Count 16. ECF No. 472 at 4. At Mr. Goldstein's request, the Court retained the jury to determine whether the government could seek forfeiture of the Hawthorne Property as punishment for Count 16. 2/25/26 Tr. 13:22-14:1; *see* Fed. R. Crim. P. 32.2(b)(5). The jury found that the government failed to establish a nexus between the Hawthorne Property and Mr. Goldstein's misrepresentations to NFM and therefore could not seek forfeiture of the Hawthorne Property directly. ECF No. 473.

Now, instead of seeking direct forfeiture of the Hawthorne Property, the government seeks to achieve the identical result through the back door: to impose a forfeiture money judgment of "at

3

least $1,987,500 in U.S. currency"—*i.e.*, the full value of the home equity loan.  The government

then uses that amount as a basis for forfeiting the home as a "substitute asset" under 21 U.S.C.

§ 853(p).  Mot. 8. [1]

**ARGUMENT**

**I.    THE COURT LACKS STATUTORY AUTHORITY TO ORDER FORFEITURE OF $1,987,500**

    **A.    The Government Has Failed To Show That The Loan From NFM Lending Is Subject To Forfeiture**

Under 18 U.S.C. § 982(a)(2), the government must overcome a significant evidentiary

hurdle before the Court may order Mr. Goldstein to forfeit money as punishment for Count 16.

Specifically, Section 982(a)(2) limits forfeiture to "property constituting, or derived from,

proceeds the [defendant] obtained . . . *as the result of* [his] violation" of the law.  18 U.S.C.

§ 982(a)(2) (emphasis added).  That causal language stands in contrast to Section 982(a)(1), which

authorizes forfeiture of "any property . . . involved in [an] offense, or any property traceable to

such property."  *Id.* § 982(a)(1).  Thus, as the Fourth Circuit has explained, the Court may not

order forfeiture of funds under Section 982(a)(2) unless the government proves that the defendant

"would not have [the funds] *but for* the criminal offense."  *United States v. Farkas*, 474 F. App'x

349, 360 (4th Cir. 2012) (alterations in original) (citation omitted); *see Burrage v. United States*,

571 U.S. 204, 209, 212 (2014) (holding that in a criminal statute, the term "'results from' . . .

require[s] but-for causality").  Here, that means the government must show that NFM would not

have provided Mr. Goldstein with the home equity loan "but for" Mr. Goldstein's failure to report

his debts.

---

[1] Mr. Goldstein agrees with the government that "a hearing is unnecessary" and that, in light of the seven-week trial and Mr. Anthony's testimony, the Court should resolve the Motion based on "the evidence introduced at trial."  Mot. 8.  Defense counsel will be prepared to answer any questions the Court has regarding the Motion at the upcoming June 16 Hearing.

4

The government concedes (Mot. 2-3) that "the Fourth Circuit applies a 'but for' test" and that it is "the government's burden to establish the forfeitability of property."  But it scarcely attempts to satisfy that burden.  Indeed, the only evidence the government cites (Mot. 8) is Mr. Anthony's testimony that, if Mr. Goldstein had disclosed his debts, those debts "would have been a factor of whether the loan would have gotten approved or not."  2/9/26 Tr. 127:24-128:6; *see id.* at 128:10-21.  And the only other relevant evidence in the record is Mr. Anthony's 2022 statement to the IRS that "[u]ndisclosed debts *could* affect to [*sic*] outcome of the loan determination."  Exh. A at 2 (emphasis added).

That evidence comes nowhere close to establishing that Mr. Goldstein's failure to report his debts was a "but for" cause of NFM's decision to provide him the home equity loan.   As the Supreme Court has explained, Congress's decision to require "strict but-for causality" in a criminal statute is a *rejection* of the common law "substantial factor" test.  *Burrage*, 571 U.S. at 214-15. Accordingly, evidence showing that a defendant's conduct "was a 'substantial' or 'contributing' factor in producing a given result" is not enough to show that the conduct was a "but-for cause" of the result.  *Id.* at 215-16.  And here, the government's evidence does not even tend to show that Mr. Goldstein's omissions were a *substantial* factor in NFM's decision to provide him the home equity loan—Mr. Anthony simply (and repeatedly) stated that they were just "*a* factor."  2/9/26 Tr. 127:24-128:6 (emphasis added); *see id.* at 128:10-21.  Asserting that an omission is a mere factor in a decision plainly does not establish that the omission is the but-for cause of that decision. Tellingly, the "Discussion" section of the government's motion (Mot. 7-9) never even references—much less attempts to satisfy—the but-for causation standard that it concedes is applicable.  Thus, while the government's cited evidence may have been sufficient to establish that Mr. Goldstein's omissions were "material" because they had a "tendency to influence," *United*

*States v. Williams*, 865 F.3d 1302, 1310 (10th Cir. 2017), proof that omissions were "material" is insufficient to establish "but-for causality," *Burrage*, 571 U.S. at 215-16.

Given that the value of Mr. Goldstein's collateral—the Hawthorne Property—far exceeded the value of the home equity loan, the government's failure to meet its evidentiary burden is unsurprising. Even if Mr. Goldstein's omission of his debts caused NFM to underestimate the likelihood of a default, NFM's ability to sell the Hawthorne Property meant that NFM faced little (if any) risk of harm from a default. As Mr. Anthony explained, NFM always had (and has) the ability "to sell the property and be whole" because the "appraised property value" for the collateral "is higher than the loan amount." 2/9/26 Tr. 135:21-136:7.

Accordingly, this case is nothing like *United States v. Mosby*, in which this Court ordered forfeiture of a property the defendant obtained as a result of her mortgage fraud offense. *See* Preliminary Order of Forfeiture, *United States v. Mosby* (*Mosby*), No. 22-cr-7-LKG (D. Md.), ECF No. 529. In *Mosby*, the defendant was able to meet the mortgage lender's underwriting requirements—and thereby obtain a mortgage loan for the property—*only* because she presented the lender with a fraudulent gift letter stating that she received a $5,000 gift from her then-husband (she had not). 5/23/24 Tr. 39:15-40:12, *Mosby* ECF No. 544. The Court heard testimony from the underwriter, who stated that without the $5,000, the mortgage could not "actually proceed into clear to close status"—in other words, the mortgage *would not have closed* without the fraudulent gift letter. 1/23/24 Tr. 107:1-108:14, *Mosby* ECF No. 494. The Court also heard testimony from the defendant's mortgage broker, who confirmed that the mortgage *would not have closed* absent the $5,000 gift letter. 1/29/24 Tr. 201:2-203:12, *Mosby* ECF No. 502. Here, by contrast, no witness testified that the NFM loan would not have closed if Mr. Goldstein disclosed his debts. Nor did any witness testify that Mr. Goldstein omitted those debts so that the loan would close.

6

On the contrary, Mr. Goldstein's unrebutted explanation is that he omitted the debts so that his wife would not find out about them.  2/11/26 Tr. 102:3-11.  And unlike the defendant in *Mosby*, Mr. Goldstein satisfied all of NFM's underwriting requirements—there is thus no evidence that could support a finding of but-for causation.

The government's failure to identify *any* evidence of but-for causation also means that it has failed to identify any evidence that could allow the Court to conduct the necessary apportionment analysis.  It is well-established that the government bears the burden of proving the specific portion of the proceeds that are attributable to a defendant's misstatements.  *See, e.g.*, *United States v. Robertson*, 162 F.4th 209, 253 (1st Cir. 2025); *United States v. Hodge*, 558 F.3d 630, 637 (7th Cir. 2009).  And as the First Circuit explained in *Robertson*, a court may *not* assume that when a defendant obtains financial benefits after submitting an application that "omit[s] material information" that "all of it . . . is forfeitable."  162 F.4th at 254.  Instead, the government must "carve out what portion [the defendant] would have received, as distinct from what portion he wouldn't have sans the fraud."  *Id.* at 253.  Here, the government has not even attempted to "carve out what portion" of the NFM loan Mr. Goldstein and his wife would have received absent Mr. Goldstein's omissions.  That failure further reinforces that the Court lacks the authority to order forfeiture of any amount.

### B.    The Government Has Failed To Show That More Than Half The Proceeds Of The NFM Loan Belonged To Mr. Goldstein

The government's failure to establish but-for causation means that no part of the loan from NFM is subject to forfeiture.  But even if the government had established but-for causation, the Court would not be authorized to order forfeiture of more than half the loan amount.  That is because Section 982(a)(2) authorizes forfeiture only of the "proceeds" that Mr. Goldstein *personally* "obtained."  18 U.S.C. § 982(a)(2).  Because Mr. Goldstein's wife was a co-borrower

7

on the loan, half the proceeds belong to her and are thus not subject to forfeiture. This ought to be obvious: His wife was not even aware of the misstatements, yet the government seeks to forfeit the funds she obtained through the loan.

The Supreme Court and Fourth Circuit have made clear that forfeiture "is limited to property the defendant himself *actually acquired* as the result of the crime." *Honeycutt v. United States*, 581 U.S. 443, 454 (2017); *see United States v. Chittenden*, 896 F.3d 633, 638-39 (4th Cir. 2018) (applying *Honeycutt* to Section 982(a)(2)). Accordingly, a court may not order forfeiture of proceeds that belong to a third party, even if the third party received those proceeds as the result of the defendant's criminal activity. A court may not, for instance, "hold a defendant liable for proceeds that only her co-conspirator acquired." *Chittenden*, 896 F.3d at 639. Nor may a court allow the "Government to confiscate substitute property from other defendants or co-conspirators." *Id.* at 638 (citing *Honeycutt*, 581 U.S. at 452). And if courts may not order forfeiture of proceeds that belong to a co-conspirator who directly participated in the criminal activity, they certainly may not order forfeiture of proceeds that belong to an innocent third party.

Applying that rule here, the Court may not order forfeiture of the half of the NFM loan proceeds that presumptively belongs to Mr. Goldstein's wife. Mr. Goldstein and his wife were co-borrowers on the loan from NFM, who conveyed the proceeds to an account they jointly controlled. *See* GX-10 at 2-6. Thus, under DC law, Mr. Goldstein and his wife were presumptively entitled to "an equal amount" of those proceeds. *See* D.C. Code Ann. § 19-602.11(b); *see also* D.C. Code Ann. § 16-910 (dividing marital property in event of divorce or separation).

The government has not even attempted to rebut the presumption that half of the proceeds from the NFM loan belonged to Mr. Goldstein's wife. Although the government notes that "Goldstien [*sic*] testified that he *sought* the mortgage from NFM 'to pay Parabellum money.'"

8

Mot. 8 (emphasis added), it does not seriously suggest that the proceeds belonged to Mr. Goldstein alone.  Nor could it.  As the record and loan documents demonstrate, Mr. Goldstein and his wife jointly obtained the loan as part of a broader set of transactions related to the house that they jointly owned.  And in any event, the defendant's motivations are not the relevant measure—it simply does not matter whose idea it was to seek the loan.  Accordingly, even if the government could establish but-for causation (it cannot), the maximum forfeiture that the Court may order consistent with the statute would be $993,750.

## II.   THE PROPOSED FORFEITURE IS AN UNCONSTITUTIONAL EXCESSIVE FINE

If the government's proposed forfeiture were statutorily authorized (it is not), it would violate the Eighth Amendment's Excessive Fines Clause.  *See* U.S. Const., amend. VIII ("Excessive bail shall not be required, *nor excessive fines imposed*, nor cruel and unusual punishments inflicted." (emphasis added)).  "[A] punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense." *United States v. Bajakajian*, 524 U.S. 321, 334 (1998).  Courts in the Fourth Circuit "consider four factors" to "make the determination of whether a forfeiture is 'grossly disproportional'": (1) "the amount of the forfeiture and its relationship to the authorized penalty"; (2) "the harm caused by the charged crime"; (3) "the nature and extent of the criminal activity"; and (4) "the relationship between the charged crime and other crimes." *United States v. Sanders*, 107 F.4th 223, 232 (4th Cir. 2024) (citation omitted).  Here, those factors demonstrate that the government's proposed forfeiture—whether $1,987,500 or $993,750—is grossly disproportional to the single mortgage fraud violation on which it is based.

To start, the proposed forfeiture is several orders of magnitude greater than the fine recommended by the Sentencing Guidelines for Count 16.  In *Bajakajian*, the Court held that a

"forfeiture of . . . $357,144" was excessive where, "under the Sentencing Guidelines," the "maximum fine [for the offense] was $5,000." 524 U.S. at 337-38. Here, all parties agree that the relevant mortgage fraud count has an offense level of 7, U.S.S.G. § 2B1.1(a), which means that the Sentencing Guidelines recommend a fine of no more than $9,500, U.S.S.G. § 5E1.2(c)(3). Accordingly, the government's proposed forfeiture of $1,987,500 is *210 times* the maximum recommended fine under the Sentencing Guidelines—making it even more extreme than the "forfeiture the Supreme Court disapproved in *Bajakajian*, where the forfeiture amount for a reporting violation was more than seventy times the maximum permissible fine." *United States v. Bennett*, 986 F.3d 389, 399 (4th Cir. 2021); *see also United States v. 3814 NW Thurman St.*, 164 F.3d 1191, 1198 (9th Cir. 1999) (forfeiture for false statements on mortgage application violated Eighth Amendment where "[t]he $200,686 the government seeks to forfeit is more than 40 times the maximum fine permitted under the Guidelines"). Even if the Court were to cut that proposed forfeiture in half, it would be *105 times* the maximum recommended fine.[2]

The gross disparity between the proposed forfeiture and the recommended penalty is exacerbated by the fact that Mr. Goldstein's mortgage fraud offense has caused no harm. As already explained, Mr. Anthony testified at trial that NFM has not "lost money" and that Mr. Goldstein has "never defaulted on the loan" and "is still paying on time." 2/9/26 Tr. 134:17-24. Moreover, even if Mr. Goldstein did default, the loan was (and is) fully secured by the Hawthorne Property—as a result, there was never a realistic possibility that NFM *could* be financially harmed

---

[2] *Bajakajian* was decided before *United States v. Booker*, 543 U.S. 220 (2005), in which the Court determined that the Guidelines are "advisory," not mandatory. *Id.* at 245. But "[e]ven after *Booker* rendered the Sentencing Guidelines advisory, district courts have in the vast majority of cases imposed either within-Guidelines sentences or sentences that depart downward from the Guidelines on the Government's motion." *Peugh v. United States*, 569 U.S. 530, 545 (2013). The Guidelines' recommended fines thus continue to provide a helpful benchmark for assessing the excessiveness of a proposed forfeiture.

by Mr. Goldstein's violation. Thus, like in *Bajakajian*, where the only effect of the violation was to "deprive[]" the government "of . . . information" it wanted, the lack of any financial harm reinforces that the government's proposed forfeiture is excessive. 524 U.S. at 339; *see also 3814 NW Thurman St.*, 164 F.3d at 1198 (forfeiture for false statements on mortgage application violated Eighth Amendment where creditors did not "suffer[] any actual loss" and would be reimbursed completely "upon sale of the Property").

For similar reasons, the "nature" of Mr. Goldstein's mortgage fraud offense confirms that the government's proposed forfeiture is excessive. Since *Bajakajian*, which involved a single "reporting offense," 524 U.S. at 337, courts have held that the mere failure to disclose financial information cannot justify a significant fine—including in the mortgage context. For instance, in *3814 NW Thurman St.*, the Ninth Circuit held that a forfeiture judgment of $200,686.18 violated the Eighth Amendment where the offense consisted of a "loan application overstating [the applicant's] monthly income and failing to disclose outstanding liabilities totalling [*sic*] $108,356.63." 164 F.3d at 1194, 1198. By contrast, the cases in which the Fourth Circuit has upheld multi-hundred-thousand-dollar forfeitures have involved prostitution and money-laundering rings, *United States v. Jalaram, Inc.*, 599 F.3d 347, 356 (4th Cir. 2010), violent robberies, *United States v. Blackman*, 746 F.3d 137, 145 (4th Cir. 2014), and large-scale frauds where "many victims lost their life savings," *Bennett*, 986 F.3d at 399. Mr. Goldstein's violation—"failing to disclose outstanding liabilities" on a "loan application"—falls squarely within the reporting-offense category. *3814 NW Thurman St.*, 164 F.3d at 1194, 1198. Although the liabilities that Mr. Goldstein omitted were larger than those at issue in *3814 NW Thurman St.*, that distinction has no significance given that his omissions caused no harm. And Mr. Goldstein's

11

offense bears no resemblance to the offenses the Fourth Circuit has deemed sufficiently serious and harmful to justify large forfeitures.

Finally, although Mr. Goldstein was convicted of other offenses, his mortgage fraud offense had little (if any) relation to those offenses.  No court has upheld an otherwise unconstitutional fine simply because a defendant committed multiple offenses.  Instead, the Fourth Circuit has found the commission of multiple offenses significant primarily where those offenses are linked as part of a broad scheme to cause widespread harm.  *See, e.g.*, *United States v. Bollin*, 264 F.3d 391, 417-18 (4th Cir. 2001) (explaining that conspiracy to commit securities fraud spanned a long period of time and was connected to a money laundering scheme); *United States v. Ahmad*, 213 F.3d 805, 817 (4th Cir. 2000) (explaining that defendant engaged in a "series of sophisticated commercial transactions over a period of years that were related to a customs fraud scheme").  Here, nothing in the record suggests that Mr. Goldstein's mortgage fraud offense furthered his tax offenses.  Indeed, although the government alleged that Mr. Goldstein engaged in a six-year "scheme to evade taxes, file false and fraudulent tax returns, and fail to pay taxes when due," the government did not allege that Mr. Goldstein's failure to report his debts to NFM was part of that scheme.  *See* ECF No. 239 at 8-11 (alterations omitted).  Accordingly, the government cannot bootstrap its proposed mortgage-fraud forfeiture upon Mr. Goldstein's unrelated tax offenses.

In sum, the government's proposed forfeiture of $1,987,500 has no "relationship to the gravity of the offense that it is designed to punish" and thus violates the Excessive Fines Clause. *Bajakajian*, 524 U.S. at 334.[3]  The same is true of a forfeiture half that amount.

---

[3] Moreover, the government fails to notify the Court that the substitute asset it seeks—the Hawthorne Property—is worth far more than $1,987,500.  But the statute authorizes the Court to order forfeiture of substitute property to satisfy a forfeiture money judgment only "up to the value

12

**CONCLUSION**

For the reasons set forth herein, the Court should deny the government's Motion for Preliminary Order of Forfeiture.

---

of" that judgment.  21 U.S.C. § 853(p)(2).  Thus, if the Court were to order forfeiture of the Hawthorne Property, it would also need to order the government to "remit [the] excess to" Mr. Goldstein upon sale.  *United States v. Alamoudi*, 452 F.3d 310, 315 n.3 (4th Cir. 2006).  If it did not do so, then the statutory and constitutional violations would be all the more egregious.

Dated: June 4, 2026

Stephany Reaves (Bar No. 19658)
Sarah E. Weiner (*pro hac vice*)
**MUNGER, TOLLES & OLSON LLP**
601 Massachusetts Avenue NW, Suite 500E
Washington, DC 20001
(202) 220-1100
Stephany.Reaves@mto.com
Sarah.Weiner@mto.com

Adeel Mohammadi (*pro hac vice*)
**MUNGER, TOLLES & OLSON LLP**
350 S. Grand Avenue, 50th Floor
Los Angeles, CA 90071
(213) 683-9100
Adeel.Mohammadi@mto.com

Respectfully submitted,

/s/  Elizabeth B. Prelogar
Elizabeth B. Prelogar (*pro hac vice*)
**COOLEY LLP**
1299 Pennsylvania Avenue NW, Suite 700
Washington, DC 20004
(202) 842-7800
eprelogar@cooley.com

Jonathan I. Kravis (Bar No. 31556)
**LIU SHUR KRAVIS LLP**
607 14th Street NW, Suite 625
Washington, DC 20005
(202) 240-7100
jonathan.kravis@lskllp.com