**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| v. | * | **CRIMINAL NO. LKG-25-6** |
| | * | |
| **THOMAS C. GOLDSTEIN,** | * | |
| | * | |
| **Defendant.** | * | |
| | ******** | |

### DEFENDANT THOMAS C. GOLDSTEIN'S MOTION TO VACATE NO-CONTACT ORDER

At the conclusion of the sentencing hearing, the pretrial no-contact order entered in this case pursuant to the Bail Reform Act, 18 U.S.C. 3142, will expire. Yet the government refuses to agree that defendant Thomas Goldstein is no longer subject to the no-contact order once the Court imposes its sentence. The government's position is consistent with its practice of misusing the no-contact order in this case to arbitrarily prohibit Mr. Goldstein from contacting his friends and associates. It also has no legal or factual basis. There is no legal support for the remarkable proposition that a no-contact order entered as a condition of pretrial release under the Bail Reform Act remains in force after trial proceedings conclude. And the courts that have invoked their inherent authority to impose a new no-contact order after sentencing have done so only when necessary to protect victims and witnesses who have been harassed by the defendant. Those cases do not apply here—the charges against Mr. Goldstein have no individual victims and the government has never alleged that a no-contact order is necessary to protect the safety of any individual. To clarify the scope of Mr. Goldstein's legal obligations post-sentencing, the

1

defense respectfully requests that the Court confirm that the pretrial no-contact order is vacated when it imposes sentence.

On January 27, 2025, at Mr. Goldstein's initial appearance, the Court entered an order prohibiting Mr. Goldstein from contacting 67 individuals identified by the government.  The order also prohibited Mr. Goldstein from discussing the case with 10 additional individuals identified by the government.  The government actually called just 1/3 of the 77 individuals it identified in the no-contact order as witnesses at trial.[1]

Shortly after the trial ended, the defense sent the government a proposal narrowing the no-contact list to 21 individuals.  The government added nine more names to that revised list. The government's primary justification for the inclusion of these additional names was its representation that these individuals were possible witnesses at sentencing.  Earlier this week, the government advised the Court that it intends to call no witnesses at sentencing.

In advance of the sentencing hearing, the defense contacted the government to request agreement that the no-contact order would be vacated once the Court imposed sentence.  The government refused to agree, citing Mr. Goldstein's intent to appeal his conviction.  The government stated that it was "open to discussing the issue" of the no-contact order only "after sentencing is complete," apparently in the mistaken belief that a pretrial order imposed under the Bail Reform Act remains in force after trial proceedings conclude.

The government's error is obvious.  The Bail Reform Act authorizes a court to impose conditions—including a no-contact order—on a defendant's *pretrial release*.  18 U.S.C. § 3142(c)(1)(B)(v).  Once the Court imposes a sentence, trial proceedings are concluded.  At that

---

[1] While the defense did not agree that the no-contact provision was appropriate, the defense did not contest this issue in light of other contested pretrial release conditions.

point, neither the Act nor any other statutory authority authorizes the Court to prohibit a defendant from contacting particular individuals while serving a sentence.  The defense is aware of no authority suggesting that the Bail Reform Act authorizes a court to extend a pretrial no-contact order beyond sentencing.

Some courts have held that they possess inherent authority to enter a separate, post-trial no-contact order.  But those courts exercise that authority only in "rare and compelling circumstances," *United States v. Morris*, 259 F.3d 894, 901 (7th Cir. 2001), when necessary to protect the safety of a victim or witness who has been harassed by the defendant.  *See, e.g.*, *Wheeler v. United States*, 640 F.2d 1116 (9th Cir. 1981) (adopting a two-part test that the government must meet to obtain post-sentencing no-contact order); *United States v. Turner*, 2024 WL 4700650, at *10 (W.D. Va. Nov. 6, 2024) (collecting cases).  That is for good reason—a post-trial no-contact order risks imposing punishments not authorized by statute and infringement on a defendant's First Amendment rights.  *See United States v. Santos-Diaz*, 66 F.4th 435, 446 n.6 (3d Cir. 2023) (declining to impose post-trial no-contact order as "punishment not authorized by statute"); *United States v. Honors*, 160 F.4th 1089, 1107 (10th Cir. 2025) (reversing post-sentencing no-contact order as unsupported by "rare and compelling circumstances").  The very limited circumstances in which the courts have exercised inherent authority to impose a post-sentence no-contact order notwithstanding these concerns obviously do not apply here—the government has never alleged that any of the individuals on the no-contact order is a victim of Mr. Goldstein or requires protection from him.

Instead, the government's sole justification for a post-sentencing no-contact order is Mr. Goldstein's intent to appeal.  The government's view appears to be that, because Mr. Goldstein might win his appeal, the Court should effectively treat the post-sentencing phase of this case as

"pre-retrial proceedings" before the Fourth Circuit has even heard Mr. Goldstein's appeal. That position is just one more effort to misuse the no-contact order. It has no legal support, and it would effectively swallow the rule that post-sentencing no-contact orders should be used only in "rare and compelling" circumstances, as many criminal defendants appeal their convictions. As the Seventh Circuit held in *Morris*, absent such circumstances, the mere possibility of a retrial does not alone justify a no-contact order. 259 F.3d at 901.

The government's position that Mr. Goldstein should be subject to a no-contact order after he is sentenced has no legal or factual support. The defense therefore respectfully requests that the Court vacate the no-contact order on or before the date of Mr. Goldstein's sentencing.

Dated: July 17, 2026

Respectfully submitted,

/s/ *Jonathan I. Kravis*
Jonathan I. Kravis (Bar No. 31556)
LIU SHUR KRAVIS
607 14th Street N.W. Suite 625
Washington, D.C. 20005
(202) 240-7103
jonathan.kravis@lskllp.com

Stephany Reaves (Bar No. 19658)
Sarah E. Weiner (*pro hac vice*)
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue NW, Suite 500E
Washington, DC 20001
(202) 220-1100
Stephany.Reaves@mto.com
Sarah.Weiner@mto.com

Adeel Mohammadi (*pro hac vice*)
MUNGER, TOLLES & OLSON LLP
350 S. Grand Avenue, 50th Floor
Los Angeles, CA 90071
(213) 683-9100
Adeel.Mohammadi@mto.com

*Attorneys for Defendant Thomas Goldstein*